1  PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
   PRICE AND ASSOCIATES
2  The Latham Square Building
   1611 Telegraph Avenue, Suite 1450
3  Oakland, CA 94612
   Telephone: (510) 452-0292
4  Facsimile: (510) 452-5625

5  Attorneys for Plaintiff
   JOHN CAMPBELL
6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11

12 JOHN EARL CAMPBELL,              )  NO. C05-5434 MJJ (MEJ)
                                    )
13          Plaintiff,              )  **PLAINTIFF'S NOTICE OF MOTION AND**
                                    )  **MOTION TO COMPEL PRODUCTION**
14 v.                               )  **OF DOCUMENTS AND ENLARGE TIME**
                                    )  **FOR NON EXPERT WITNESS**
15 NATIONAL PASSENGER RAILROAD      )  **DISCOVERY**
   CORPORATION dba AMTRAK, JOE      )
16 DEELY, and DOES 1-15, inclusive, )
                                    )  DATE:        TBD
17          Defendants.             )  TIME:        9:30 a.m.
                                    )  DEPT.:       Courtroom 11, 19th Floor
18 _____ )
                                       HON. JUDGE MARTIN J. JENKINS
19
                                       DISCOVERY CUT-OFF:    March 23, 2007
20
                                       TRIAL DATE:           July 23, 2007
21

22                        **DISCOVERY MATTER**

23

24

25

26

27

28

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  MR. CAMPBELL IS ENTITLED TO FURTHER RESPONSES
    TO HIS REQUEST FOR PRODUCTION OF DOCUMENTS    . . . . . . . . . . .    4

II.  DEFENDANT AMTRAK WAIVED ALL OF ITS
     OBJECTIONS BY ITS UNTIMELY SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

III.  THE INFORMATION SOUGHT IS RELEVANT AND
      CRUCIAL TO THE PROSECUTION OF MR. CAMPBELL'S
      CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

        A.    Defendant Amtrak's Boilerplate Objections Lack Merit . . . . . . . . .    7

        B.    Defendant Amtrak's Privacy Objections Are Outweighed
              by Mr. Campbell's Right to  Discovery . . . . . . . . . . . . . . . . . . . . . . .    8

        C.    Defendant Amtrak Should Not Be Allowed to Hide Complaints of
              Racial Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

IV.  MR. CAMPBELL IS ENTITLED TO DISCOVER EVIDENCE
     OF DEFENDANT DEELY'S FINANCIAL CONDITION . . . . . . . . . . . . . . . . .    12

V.  GOOD CAUSE EXISTS TO ENLARGE TIME FOR DISCOVERY . . . . . . . . .    14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

**TABLE OF AUTHORITIES**
**FEDERAL CASES**

*Broderick v. Ruder*
(D.D.C 1988) 685 F.Supp. 1269 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Burns v. McGregor Electronics Industries, Inc.*
(8th Cir. 1992) 955 F.2d 559 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*CEH, Inc. v. FV "Seafarer,"*,
153 F.R.D. 491 (D.R.I. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Ceramic Corp. of America v. Inka Maritime Corp.*,
163 F.R.D. 584, 589 (C.D.Cal 1995 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*E.E.O.C. v. University of New Mexico*,
504 F.2d 1296 (10th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*E.& J. Gallo Winery v. Cantine Rallo, S. P. A.*,
2006 WL. 2583672 (E.D.Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*FMS Corporation v. Vendo Company*,
196 F. Supp. 2d 1023 (E.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Garrett v. City and County of San Francisco*,
818 F.2d 515 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Hall v. Gus Construction Company*, *Inc.*
842 F.2d 1010 (8th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Heyne v. Caruso*,
69 F.3d 1475 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*In re Air Crash at Taipei, Taiwan*,
211 F.R.D. 374 (C.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Jones v. Commander*,
147 F.R.D. 248 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Kelly v. City of San Jose*,
114 F.R.D. 653 (N.D.Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Lipsett v. University of Puerto Rico*
864 F.2d 881  (1st Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Miller v. Safeco Title Insurance Co.*
758 F.2d 364 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Morgan v. National Passenger Railroad Corporation,*
232 F.3d 1008 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Narayan v. EGL, Inc., et al.*
(N.D.Cal. 2006) 2206 WL. 3507918 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*National Railroad Passenger Corporation v. Morgan*
    536 U.S. 101, 122 S.Ct. 2061, 2074 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Oakes v. Halvorsen Marine Ltd.,*
179 F.R.D. 281 (C.D.Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Orbovich v. Macalester College,*
119 F.R.D. 411 (D.Minn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Priest v. Rotary*
634 F. Supp. 571 (N.D.Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Ramirez v. County of Los Angeles,*
231 F.R.D. 407 (C.D.Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Richmark Corp. v. Timber Falling Consultants,*
959 F.2d 1468 (9th Cir. 1992), *cert. dismissed*, 506 U.S. 948,
113 S.Ct. 454, 121 L.Ed.2d 325 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Robinson v. Jacksonville Shipyards, Inc.*
760 F. Supp.1486 (M.D.Fla. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 13

*U.S. v. Bonanno Organized Crime Family of La Cosa Nostra,*
119 F.R.D.625 (E.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*United States v. Westinghouse Electric Corp.*
638 F.2d 570 (3rd Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*United States v. Zolin,*
491 U.S. 554, 109 S. Ct. 2719, 105 L.Ed.2d 469 (1969) . . . . . . . . . . . . . . . . . . . .  13

*University of Penn. v. EEOC*
493 U.S. 182, 110 S. Ct. 577  (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Taylor v. Los Angeles Police Department*,
1999 WL. 33101661 (C.D.Cal.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Vance v. Southern Bell Telephone and Telegraph Company*
863 F.2d 1503 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Walker v. Lakewood Condominium Owners Association*,
186 F.R.D. 584 (C.D.Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Weahkee v. Norton*,
621 F.2d 1080 (10th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Welsh v. City and County of San Francisco*,
887 F.Supp. 1293 (N.D.Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

### STATE CASES

*Adams v. Murakami*,
54 Cal.3d 105, 284 Cal.Rptr. 318 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Harris v. Superior Court*
(1992) 3 Cal.App.4th 661, 4 Cal.Rptr.2d 564 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

### FEDERAL STATUTES

Federal Rule of Civil Procedure 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Federal Rule of Civil Procedure 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Federal Rule of Civil Procedure 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

### MISCELLANEOUS

The Rutter Group, *California Practice Guide*, *Federal Civil Procedure Before
Trial*, 11-229 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

1    **TO:    DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE** that at a date and time to be determined, Plaintiff JOHN EARL

3    CAMPBELL (hereinafter "MR. CAMPBELL") will move the Court for an order compelling

4    Defendant NATIONAL PASSENGER RAILROAD CORPORATION ("AMTRAK") to provide

5    further discovery responses to Plaintiff's Request for Production of Documents, Set One,

6    forthwith pursuant to the Federal Rules of Civil Procedure, Rules 26, 34 and 37 on the grounds

7    that Defendant AMTRAK's failure to serve a timely and complete response to MR.

8    CAMPBELL's written discovery was unreasonable within the meaning and spirit of the Federal

9    Rules and good cause exists for requiring further responses to this discovery because the

10   information is relevant to the subject matter of this dispute and reasonably calculated to lead to the

11   discovery of admissible evidence and to enlarge the time for thirty-five (35) days after the

12   Defendants' further production date for MR. CAMPBELL to complete his discovery.

13        This Motion shall be based upon this Notice, the Memorandum of Points and

14   Authorities and the Declaration of Pamela Y. Price, all filed concurrently herewith, the pleadings,

15   records and files herein, and upon such other and further matters as may be presented at the time

16   of the hearing.

17    Dated: March 2, 2007                    PRICE AND ASSOCIATES

18

19                                      _____/s/_____

20                                      PAMELA Y. PRICE, Attorneys for Plaintiff
                                        JOHN EARL CAMPBELL

21

22        **MEMORANDUM OF POINTS AND AUTHORITIES**

23              **INTRODUCTION**

24        MR. CAMPBELL is a veteran trainman who worked on the railroad for fourteen

25   (14) years. At the time of his termination, MR. CAMPBELL had worked as a Conductor for

26   Defendant AMTRAK for six years. MR. CAMPBELL thought he was a valued employee. His

27   life dream was to become an Engineer, but he was repeatedly passed over for promotion.

28

1    MR. CAMPBELL brings this Motion to Compel further discovery responses to

2  Plaintiff's First Request for Production of Documents in order to obtain the necessary documents

3  that he needs to prepare for trial.  The documents that MR. CAMPBELL seeks are directly

4  relevant to the issues in dispute and reasonably calculated to lead to the discovery of admissible

5  evidence at trial.  Finally, MR. CAMPBELL has no other way of obtaining this evidence.  MR.

6  CAMPBELL served his First Request for Production of Documents in July 2006, yet Defendant

7  AMTRAK did not serve legally understandable responses until January 22, 2007, more than five

8  (5) months after MR. CAMPBELL originally propounded his Request.  Defendant AMTRAK's

9  unreasonable delay was clearly intended to obstruct discovery and cause MR. CAMPBELL's

10  counsel to spend unnecessary time and energy attempting to obtain appropriate responses.

11  Accordingly, discovery should be enlarged to allow MR. CAMPBELL additional time to receive

12  and review any documents compelled by the Court and to do follow-up discovery prior to trial.

13                    **SUMMARY OF FACTS**

14    MR. CAMPBELL began his work on the railroad at Southern Pacific Railroad in

15  May 1984.  He worked for Southern Pacific for eight (8) years as a Machine Operator.  This job

16  involved maintenance and repair of the tracks, including those caused by derailments.  As a

17  Machine Operator, he also maintained and repaired railroad right of ways and operated heavy

18  track machinery.  MR. CAMPBELL became very knowledgeable of railroad operations, learning

19  virtually all of the rules of the railroad trade.  He was well prepared for his work with Defendant

20  AMTRAK.

21    MR. CAMPBELL was employed by Defendant AMTRAK from November 1998

22  to September 17, 2004.  During his employment with AMTRAK, he applied for promotion to the

23  position of Engineer six (6) times.  Each time his application was rejected and lesser qualified,

24  less senior Caucasian applicants were promoted to the position.

25    In June 1999, MR. CAMPBELL applied for the Engineer position for the first

26  time.  His application was rejected on the grounds that he was not eligible to apply based on the

27  length of his employment with AMTRAK.  In 2000 and 2001, MR. CAMPBELL applied again,

28

1  and was interviewed for the Engineer position, but other applicants with less seniority than he

2  were selected.  In 2002, his scheduled interview was cancelled.  MR. CAMPBELL was never

3  given a reason why.

4          In November 2003, MR. CAMPBELL applied for the Engineer position for the

5  fifth time.[1]  Interviews were held in December 2003, but he was not scheduled for an interview,

6  even though he was qualified for the position.  In January 2004, MR. CAMPBELL learned that

7  two less qualified Caucasian applicants with less seniority were selected for the position.

8          On January 28, 2004, MR. CAMPBELL filed a Charge of Discrimination with the

9  California Department of Fair Employment & Housing (DFEH) and the United States Equal

10  Employment Opportunity Commission (EEOC), challenging his non-selection for the Engineer

11  position and asserting that Defendant AMTRAK discriminated against African-Americans on the

12  basis of race in promoting applicants to the Engineer position.

13          In June 2004, while his charge of discrimination was pending, MR. CAMPBELL

14  applied for the Engineer position for the sixth time.[2]  There were seven (7) positions available in

15  Oakland and Sacramento.  MR. CAMPBELL was willing and able to take any one of these

16  positions.  He was interviewed on July 7, 2004 by a panel which included the Vice Local

17  Chairman of the BLET Division 144-Amtrak for Oakland Sacramento, Chad M. Skinner.  Mr.

18  Skinner reported to MR. CAMPBELL that:

19                    "Your interview was very enlightening and in my opinion
                      ranked among the best. Your overall score ranked among
20                    the highest of all the applicants we interviewed over the
                      three-day period. It is unknown to the Organization why
21                    you were not selected however, it was later discovered the
                      Mr. Patrick Preusser had a meeting with Susan Venturelli
22                    (HR) on Monday, July 11, 2004 to discuss the potential
                      candidates that were to be selected.  The Organization was
23                    never informed of this meeting nor asked to participate in
                      any capacity despite our contractual right to partake."
24                    (Exhibit A to the Declaration of Pamela Y. Price
                      (hereinafter "Price DEN").)
25

26  _____

    [1]  This is the first discriminatory promotion that fall within the statute of limitations.
27
    [2]  This is the second discriminatory promotion that falls within the statute of limitations.
28

1    In August 2004, seven (7) Caucasian applicants with less seniority were selected

2   for the positions.  MR. CAMPBELL was not promoted or given any reason for his non-selection.

3    On or about August 6, 2004, MR. CAMPBELL was accused of violating

4   Defendant AMTRAK's Operating Rules.  He was accused of failing to properly secure the brakes

5   on a locomotive inside the Oakland Yard prior to coupling it on July 24, 2004.  An internal

6   hearing was held on September 9, 2004, and Defendant AMTRAK's Hearing Officer sustained

7   four (4) of the five (5) charges against MR. CAMPBELL.  On September 17, 2004, Defendant

8   AMTRAK's District Superintendent for the Pacific Division-Bay District, Steve Shelton,

9   terminated MR. CAMPBELL's employment, ostensibly for these rules violations.[3]

10    MR. CAMPBELL's union vehemently objected to this termination, stating that:

11   "the discipline was harsh, excessive and not consistent with discipline assessed in similar cases,

12   not just on Amtrak, but in the entire industry."[4]  MR. CAMPBELL contends that a violation of

13   these work rules did not usually result in termination, and that his termination is excessive and

14   inconsistent with discipline assessed in similar cases.  He intends to prove that he was fired in

15   September 2004 in retaliation for his complaints to DFEH and EEOC in February 2004.

16

17   **I.    MR. CAMPBELL IS ENTITLED TO FURTHER RESPONSES**
       **TO HIS REQUEST FOR PRODUCTION OF DOCUMENTS**

18    Non-expert discovery cut-off was initially set by this Court for **February 16, 2007**.[5]

19

---

20    [3]    For the past five (5) years, MR. CAMPBELL switched in the same manner and
21   employed the same safety practices as every other crew that switched in that territory.  The record
     reveals that the physical characteristic of the territory is flat and supports the fact that there was no
22   accident, no derailment, no damage and no train delay.  Furthermore, MR. CAMPBELL was in
     control of the move and made the "joint" at about 2 miles an hour.  The engine in question rolled
23   approximately a half-engine length.  The engine was coming to a stop even before the brakes were
     cut in.
24

25    [4]    See Organization Member's Dissent To Award No.120 Of Public Law Board No. 6478.
     (Exhibit B to Price DEN.)
26

27    [5]    On February 9, 2007, the parties submitted a stipulation and proposed order to enlarge
     the time for non-expert discovery up to and including March 23, 2007.  The Court filed an order
     approving the stipulation on February 14, 2007.
28

1   MR. CAMPBELL served his First Request for Production of Documents on July 14, 2006.

2   Defendant AMTRAK's response was due on August 17, 2006. MR. CAMPBELL agreed to a two-

3   week extension, making the new date of production August 31, 2006. (Price DEN @ 2:13-14.) On

4   August 16, 2006, defense counsel agreed to produce some responsive documents by August 17,

5   2006. That promise was not kept. (Price DEN @ 2:14-15.) On August 31, 2006, Defendant

6   AMTRAK delivered five boxes of over 10,000 unidentified documents to MR. CAMPBELL's

7   counsel. (Price DEN @ 2:16-18.) The documents were not identified by case number or name, nor

8   was there any cover letter or verification included.

9        On September 12, 2006, MR. CAMPBELL's counsel informed defense counsel that

10   the responses were inadequate. (See Exhibit C to Price DEN.) MR. CAMPBELL's counsel

11   requested that defense counsel identify the documents produced, including which request each

12   document was responsive to, pursuant to Rule 34(b) and the Local Rules. Defense counsel never

13   responded. On October 5, 2006, MR. CAMPBELL's counsel sent a second letter to defense

14   counsel, requesting a second time that defense counsel identify the produced documents. (Exhibit

15   D to Price DEN.)

16        On October 10, 2006, defense counsel left a telephone message for MR.

17   CAMPBELL's counsel stating that he thought that the responses had been served. (Price DEN @

18   3:6-8.) On October 11, 2006, Defendant AMTRAK served its first formal responses to Plaintiff's

19   First Request for Production of Documents. (Price DEN @ 3:9-10.) Defendant objected to each

20   and every request. Defendant AMTRAK further stated that it would produce some documents,

21   however it still did not identify which documents were responsive to which request. On

22   December 22, 2006, MR. CAMPBELL's counsel made a final attempt to meet and confer,

23   requesting that Defendant AMTRAK supplement its responses by January 3, 2006. (Price DEN @

24   3:14-16.) On January 22, 2007, more than five months after MR. CAMPBELL originally

25   propounded his First Request for Production of Documents, Defendant AMTRAK supplemented its

26   objections and responses, identifying some documents, but continuing to assert boilerplate

27   objections to Request Nos. 3-13 and 15. (Price DEN @ 4:4-6.)

28   ///

## II.    DEFENDANT AMTRAK WAIVED ALL OF ITS OBJECTIONS BY ITS UNTIMELY SERVICE

Pursuant to Federal Rule of Civil Procedure 34(b), "the party upon whom the request [for production of documents] is served shall serve a written response within 30 days after the service of the request." Failure to serve a timely response to a request for production results in a waiver of all objections, including privilege. (*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992), *cert. dismissed*, 506 U.S. 948, 113 S.Ct. 454, 121 L.Ed.2d 325 (1992).)  Further, pursuant to Federal Rule of Civil Procedure 37(a)(3), "[E]vasive or incomplete disclosure, answer or response is to be treated as a failure to disclose, answer or respond."

On August 31, 2006, Defendant AMTRAK delivered five boxes of 10,000 unidentified documents, apparently in response to MR. CAMPBELL's First Request for Production, but failed to identify which of the documents produced responded to each document request, in violation of Rule 34.   Defendant AMTRAK also failed to clearly and unambiguously state that it had no responsive documents in response to each request for which that was the case. Defendant AMTRAK also failed to identify documents it had withheld from production or produce a privilege log which fully complied with the requirements of Rule 26(e)(5) of the Federal Rules of Civil Procedure.  Given that Defendant AMTRAK's responses were both incomplete and evasive, Defendant AMTRAK's conduct violated both the letter and spirit of the Federal Rules of Civil Procedure, and its objections should be deemed waived.

## III.    THE INFORMATION SOUGHT IS RELEVANT AND CRUCIAL TO THE PROSECUTION OF MR. CAMPBELL'S CASE

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  It is customary for responses to include the identity of the responding party; the identity of the propounding party and the set number to which the response pertains.  (The Rutter Group, *California Practice Guide*, *Federal Civil Procedure Before Trial*, § 11-229.)

1          According to Rule 34(b), each item in the response should bear the same number (or

2 letter) and be in the same sequence as the item or category of the request to which it pertains; the

3 request should be quoted in full before each response or objections and the party to whom the Rule

4 34 request is directed must respond separately to each item in the request by one of the following:

5 agreement to comply (stating with respect to *each* item or category that inspection and related

6 activities will be permitted as requested; inability to comply or objections.)

7          Rule 34(a) allows parties to request documents and things within the scope of

8 Rule 26(b) and within the possession, custody or control of the party upon whom the request is

9 served.  The rule mandates that the response will state, with respect to each item or category, that

10 inspection and related activities will be permitted as requested, unless the request is objected to, in

11 which event the reasons for the objection will be stated.  If objection is made to part of an item or

12 category, the part shall be specified and inspection permitted of the remaining parts.  The party

13 submitting the request may move for an order under Rule 37(a) with respect to any objection to or

14 other failure to respond to the request or any part thereof, or any failure to permit inspection as

15 requested.  (*See E.& J. Gallo Winery v. Cantine Rallo, S. P. A.*, 2006 WL 2583672 (E.D.Cal.

16 2006).)

17          Additionally, Local Rule, Rule 34-1, *Form of Responses to Requests for Production*

18 states: "A response to a request for production or inspection made pursuant to FRCP 34(a) must set

19 forth each request in full before each response or objection."  Finally, although a verification is not

20 required, like all pleadings, the party's attorney must sign the responses, certifying that it is made

21 in good faith.  (Rule 26(g).)

### A.    Defendant Amtrak's Boilerplate Objections Lack Merit

24          Defendant AMTRAK's blanket, boilerplate objections to each of MR.

25 CAMPBELL's requests lack merit.  As a result, the Court should compel Defendant AMTRAK to

26 provide a further response to the Request for Production and produce documents responsive to

27 each of the requests.

28 ///

-7-

1    Defendant AMTRAK provided a litany of general objections.  Such objections will

2  not alone constitute a successful objection, nor will a general objection fulfill the objecting party's

3  burden to explain its objections.  (*Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409

4  (C.D.Cal. 2005).)  General objections are not sufficient to raise any substantial, meaningful or

5  enforceable objections to any particular discovery request.  (*In re Air Crash at Taipei, Taiwan,* 211

6  F.R.D. 374, 376 (C.D.Cal. 2002); *Walker v. Lakewood Condominium Owners Association*, 186

7  F.R.D. 584, 587 (C.D.Cal. 1999); *Taylor v. Los Angeles Police Department,* 1999 WL 33101661

8  (C.D.Cal. 1999).) In addition to its general objections, Defendant AMTRAK asserted the following

9  five objections, in various combinations, to each of MR. CAMPBELL's requests:

10    (1)    vague, overbroad, ambiguous and susceptible to a variety of interpretations

11

12    (2)    compound and unduly burdensome

13    (3)    seeking information neither relevant to the claim or defense of any party, nor

14         reasonably calculated to lead to the discovery of admissible evidence

15    (4)    seeks information protected from disclosure by either the attorney-client privilege or

16         the attorney work product doctrine

17    (5)    seeks materials protected from disclosure the California Constitutional right of

18         privacy and/or the federally recognized right to privacy

19
20    **B.    Defendant Amtrak's Privacy Objections Are Outweighed
          by Mr. Campbell's Right to  Discovery**

21    Defendant AMTRAK makes a laundry list of objections to Requests Nos. 4-13,

22  including relevancy, vague, overbroad, ambiguous, that the requests are unduly burdensome and

23  privacy. Since one of MR. CAMPBELL's claims against Defendant AMTRAK is failure to

24  promote based on racial discrimination, his requests are clear and directly relevant and narrowly

25  tailored to lead to further discoverable information.  Additionally, Defendant AMTRAK

26  presumably keeps employment records and records pertaining to applications and promotions

27  because in its response to Request No. 14, Defendant AMTRAK agreed to produce these

28  documents in regard to MR. CAMPBELL.

1    "In recent years, the courts have **routinely** **ordered** the production of personnel

2  files of third parties in employment discrimination and police brutality cases." (*Ceramic Corp. of*

3  *America v. Inka Maritime Corp.,* 163 F.R.D. 584, 589 (C.D.Cal 1995) (emphasis added)*; see also,*

4  *Garrett v. City and County of San Francisco*, 818 F.2d 515, 1519 n. 6 (9th Cir. 1987) (privilege

5  claims grounded in state law will be disregarded when the discovery sought includes personnel

6  files in federal question cases, including Title VII actions); *Jones v. Commander*, 147 F.R.D. 248

7  (1993) (court ordered production of evaluation reports of a nonparty supervisor both during and

8  outside the period that the plaintiff was supervised); *E.E.O.C. v. University of New Mexico,* 504

9  F.2d 1296 (10th Cir. 1974) (personnel files for all faculty members were deemed discoverable in a

10  failure to promote case); *Orbovich v. Macalester College,* 119 F.R.D. 411 (D.Minn. 1988) (tenure

11  and personnel files of third parties were ordered to be produced in a denial of tenure case); *United*

12  *States v. Westinghouse Elec. Corp.,* 638 F.2d 570 (3rd Cir. 1980) (medical information contained

13  within nonparty employees' personnel files was discoverable in an action brought under OSHA);

14  and *Weahkee v. Norton,* 621 F.2d 1080 (10th Cir. 1980) (Nonparty employees' files were

15  discoverable in a discrimination case).)

16                          <u>Request No. 4 - Steve Shelton</u>

17             In Request No. 4, MR. CAMPBELL requests the employment records, including

18  personnel files, discipline records and promotion applications of Steve Shelton, the Amtrak

19  manager who signed MR. CAMPBELL's termination letter.  Given Mr. Shelton's apparent role in

20  MR. CAMPBELL's termination, it is reasonable and relevant for MR. CAMPBELL to explore

21  whether Mr. Shelton has been the subject of other complaints of race discrimination.  Additionally,

22  MR. CAMPBELL is informed and believes that Defendant DEELY provided direct supervision

23  and/or orders to Mr. Shelton in regard to MR. CAMPBELL's termination.  Thus, the discovery of

24  Mr. Shelton's personnel files and discipline records are further warranted in that this file may

25  contain other pertinent information directly related to MR. CAMPBELL's termination.  MR.

26  CAMPBELL has no other way to discover whether MR. SHELTON's personnel file includes other

27  complaints of race discrimination.

28

1

<u>Request Nos. 5-6: Ray Clark and Mike Cecconi</u>

2

In Request Nos. 5-6, MR. CAMPBELL requests the personnel file or files,

3

discipline records and promotion applications of Ray Clark and Mike Cecconi. Ray Clark is a

4

Conductor and Mike Cecconi an Engineer with Defendant AMTRAK. Both of these employees

5

have committed or were accused of committing the same or similar rules violations as MR.

6

CAMPBELL, yet they were not disciplined as harshly, nor were they terminated.

7

<u>Requests Nos. 7-13</u>

8

9

MR. CAMPBELL applied for an engineer position in June 2004 for the sixth time.

10

At this point in his career, he had an abundance of seniority, was well skilled and qualified to work

11

as an engineer. Of the seven people that were hired as Engineers, MR. CAMPBELL was more

12

senior than each of them and acted as a mentor and trainer to most when they were first hired by

13

Defendant AMTRAK. In Request Nos. 7-13, MR. CAMPBELL requests the personnel file or

14

files, discipline records and promotion applications of the seven (7) AMTRAK employees who

15

were promoted to engineer position over him: Mike Yacovetti, Patrick Duncan, Than Ly, John

16

Hanson, Wes Duvall, Heidi Snyder and Brice Carroll.

17

       1.    **Mike Yacovetti.**

18

Mr. Yacovetti was hired in or about 2001 as an Assistant Conductor, three years

19

after MR. CAMPBELL. Yacovetti was trained by MR. CAMPBELL when he first came to work

20

for Defendant AMTRAK. Both men were colleagues and identified each other as friends. Mr.

21

Yacovetti interviewed for the Engineer position the same day as MR. CAMPBELL. Mr. Yacovetti

22

confided in MR. CAMPBELL that he was participating in the interview process in a longshot

23

attempt to land the position. Yacovetti told MR. CAMPBELL he was shocked when he was

24

promoted to Engineer because he didn't believe that he was qualified, nor did he believe that the

25

position would be offered to him.

26

       2.    **Patrick Duncan**

27

28

While Mr. Duncan has more years of service than MR. CAMPBELL, his experience

1  was that of a Foreman in the Mechanical Department.  It was not the general practice that someone

2  from the Mechanical Department would be promoted to an Engineer position in the Operating

3  Department.  In such a situation, the employee from the Mechanical Department would generally

4  make a lateral transfer to the Operating Department as an Assistant Conductor, not an Engineer.

5          3.    **Than Ly**

6

7          Mr. Ly was hired in or about 1999 or 2000 as an Assistant Conductor, a year after

   MR. CAMPBELL.  MR. CAMPBELL trained Mr. Ly when he first came to work at Defendant
8
   AMTRAK.   English is a second language for Mr. Ly, which he has not yet mastered.  One of the
9
   job requirements is that an Engineer have a strong command of the English language, as one of the
10
   functions of his or her job is to communicate clearly with dispatch.
11
           4.    **John Hanson**
12

13         Mr. Hanson was hired after 1998 and has less seniority and experience than MR.

14  CAMPBELL.

15          5.    **Wes  Duvall**

16

17         Mr. Duvall was hired in or about 2001 or 2002 as an Assistant Conductor, three to

   four years after MR. CAMPBELL.  MR. CAMPBELL trained Mr. Duvall when he first came to
18
   work at Defendant AMTRAK.
19
           6.    **Heidi Snyder**
20

21         Ms. Snyder was hired in or about 2000 or 2001 as an Assistant Conductor, two to

22  three years after MR. CAMPBELL.  MR. CAMPBELL trained Ms. Snyder when she first came to

23  work at Defendant AMTRAK.

24          7.    **Brice Carroll**

25

26         Mr. Carroll was hired in or about 2002 as an Assistant Conductor, four years after

   MR. CAMPBELL.  MR. CAMPBELL trained Mr. Carroll when he first came to work at
27
   Defendant AMTRAK.
28
   ///

1    Defendant AMTRAK makes the same laundry list of objections: relevancy, vague,

2  overbroad, ambiguous, that the requests are unduly burdensome and privacy.  Since one of MR.

3  CAMPBELL's claims against Defendant AMTRAK is failure to promote based on racial

4  discrimination, his requests are clear and directly relevant and narrowly tailored to lead to further

5  discoverable information.  Additionally, Defendant AMTRAK presumably keeps employment

6  records and records pertaining to applications and promotions because in its response to Request

7  No. 14, Defendant AMTRAK agreed to produce these documents in regard to MR. CAMPBELL.

8    MR. CAMPBELL's right to civil discovery outweighs these employees' rights to

9  privacy.  (*Narayan v. EGL, Inc., et al.* (N.D.Cal. 2006) 2206 WL 3507918 citing *Harris v.*

10  *Superior Court* (1992) 3 Cal.App.4th 661, 664, 4 Cal.Rptr.2d 564, "one's constitutional right of

11  privacy is not absolute and, upon a showing of some compelling public interest, the right of

12  privacy must give way".)  Access to confidential personnel information is widely recognized as

13  necessary in order to adequately protect rights of individuals through litigation.  (*See e.g.*,

14  *University of Penn. v. EEOC* (1990) 493 U.S. 182, 110 S.Ct. 577.)

15
        **C.    Defendant Amtrak Should Not Be Allowed to Hide**
16  <u>                     **Complaints of Racial Discrimination**                     </u>

17    In Request No. 3, MR. CAMPBELL sought production of EEO complaints and

18  investigations involving race discrimination against Amtrak in the Bay Area locations where MR.

19  CAMPBELL was assigned.  Defendants produced portions of their file relating to MR.

20  CAMPBELL's complaint and one other file.  (Price DEN @ 2:20-27.)  Evidence of other

21  complaints against Amtrak would be highly relevant, and admissible under Rule 404 of the Federal

22  Rules of Evidence.  (*See Heyne v. Caruso*, 69 F.3d 1475, 1469-1481 (9th Cir. 1994); *Morgan v.*

23  *National Passenger Railroad Corporation*,  232 F.3d 1008, 1018 (9th Cir. 2000), *affirmed in part*

24  *and reversed in part on other grounds* in *National Railroad Passenger Corporation v. Morgan*,

25  536 U.S. 101, 122 S.Ct. 2061, 2074 (2002).) Accordingly, Defendant Amtrak should have

26  produced documents in response to Request No. 3.

27    Federal cases have often addressed the issue of the admissibility of evidence of

28

1  other complaints; those cases are persuasive authority for the proposition that discovery of such

2  information is allowed.  (*See e.g.*, *Broderick v. Ruder* (D.D.C 1988) 685 F.Supp. 1269, 1277; *Hall*

3  *v. Gus Construction Company*, *Inc.* (8th Cir. 1988) 842 F.2d 1010, 1015; *Robinson v. Jacksonville*

4  *Shipyards, Inc.* (M.D.Fla. 1991) 760 F.Supp. 1486, 1499; *Lipsett v. University of Puerto Rico* (1st

5  Cir. 1988) 864 F.2d 881; *Priest v. Rotary* (N.D.Cal. 1986) 634 F.Supp. 571, 582; *Burns v.*

6  *McGregor Electronics Industries, Inc.* (8th Cir. 1992) 955 F.2d 559, 562; *Vance v. Southern Bell*

7  *Telephone and Telegraph Company* (11th Cir. 1989) 863 F.2d 1503, 1511.)

8
9  ### IV.    MR. CAMPBELL IS ENTITLED TO EVIDENCE OF DEFENDANT DEELY'S FINANCIAL CONDITION

10          MR. CAMPBELL also seeks documents regarding the financial condition of

11  Defendant JOE DEELY.  Defendant AMTRAK argues that the California Constitution, Article I,

12  Section 1, provides a privacy right that protects it from producing financial records.  The standard,

13  however, for the disclosure of financial documents in Federal Court does not include the privacy

14  safeguards set forth under the California Constitution.  Instead, claims of privilege arising in the

15  course of the adjudication of federal rights are governed by principles of federal common law and

16  not state law.  (*United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2719, 2625, 105 L.Ed.2d 469

17  (1969), citing Rule 501 of the Federal Rules of Evidence; *see also Kelly v. City of San Jose*, 114

18  F.R.D. 653, 656 (N.D.Cal. 1987).)

19          Further, State privacy statutes do not control discovery in federal court: "[w]hile

20  this Court may give some weight to privacy rights protected by state statutes, the 'ultimate

21  responsibility for deciding how much weight to ascribe such interests, and how that weight

22  compares with the significance of competing interests must reside with the federal courts.'" (*See*

23  *Welsh v. City and County of San Francisco,* 887 F.Supp. 1293, 1301 (N.D.Cal. 1995), citing *Kelly*

24  *v. City of San Jose,* 114 F.R.D. *supra* at 656.)

25          Further, the Federal Rules require specific claims as to privilege and do not allow

26  for generalized privacy concerns offered without legal basis.  Federal Rule 26(b)(5) requires:

27

28          When a party withholds information otherwise discoverable
           under these rules by claiming that it is privileged or subject to

1
2
3
4

protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

5    MR. CAMPBELL bears the burden of proving Defendant DEELY's net worth as a

6  prerequisite to a punitive damages award.  Financial information is relevant to punitive damages

7  claims and is discoverable under the Federal Rules of Civil Procedure, whether or not such

8  evidence would be admissible at trial.  (See *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 286

9  (C.D.Cal. 1998).)  The Federal Rules of Civil Procedure encourage courts to compel production of

10  financial documents during the discovery period because "one of the purposes behind the broad

11  federal discovery rules is to facilitate settlement, and such financial information is valuable in

12  assisting both sides in making a realistic appraisal of the case, and may lead to settlement and

13  avoid protracted litigation."  (*See Oakes*, *supra* at 286, citing *CEH, Inc. v. FV "Seafarer,"* 153

14  F.R.D. 491, 498-99 (D.R.I. 1994).)

15    MR. CAMPBELL needs the requested documents to meet his burden of

16  demonstrating the Defendants' net worth for purposes of assessing punitive damages.  (*See, e.g.,*

17  Ninth Circuit Model Civil Jury Instruction No. 7.5 *Punitive Damages* (plaintiff bears burden of

18  establishing amount of punitive damages that should be assessed; instruction notes contemplate

19  evidence of defendant's net worth being offered by plaintiff); *see also Adams v. Murakami*, 54

20  Cal.3d 105, 284 Cal. Rptr. 318 (1991) (under California law Plaintiff bears the burden of proving

21  financial worth).)  Moreover, evidence of net worth "is crucial to the issue of punitive damages. ."

22  (*See Oakes,* 179 F.R.D. *supra* at 284; *see also U.S. v. Bonanno Organized Crime Family of La*

23  *Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988) ("the party resisting disclosure should bear the

24  burden of establishing alternative sources for the information").)

25  **V.    GOOD CAUSE EXISTS TO ENLARGE TIME FOR DISCOVERY**

26    MR. CAMPBELL seeks additional time beyond the March 23rd discovery cut-off

27  deadline to conduct any additional discovery including depositions, depending on Defendant

28  AMTRAK's supplemental responses and production of documents.  Good cause exists to enlarge

1    the time for discovery to allow MR. CAMPBELL to review and evaluate Defendant AMTRAK's

2    responses and conduct any further discovery.

3                Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, the District Court

4    may modify the pretrial discovery order upon a showing of good cause.  (*FMS Corporation v.*

5    *Vendo Company*, 196 F.Supp.2d 1023, 1030 (E.D.Cal. 2002).)  The good cause requirement of

6    Rule 16(b) mirrors the good cause requirement under Federal Rule of Civil Procedure 56(f) and the

7    Court has broad discretion to modify a scheduling order.  (*Johnson v. Mammoth Recreations, Inc.*,

8    975 F.2d 604, 607 (9th Cir. 1992), *quoting Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th

9    Cir. 1985).)

10                In exercising its discretion, the Court should consider the diligence of the party

11   seeking relief.  (*FMS Corp.*, 196 F.Supp.2d at 1030.)  While the degree of the existence of any

12   prejudice to the opposing party of the modification might supply the court with some reason to

13   deny a motion to modify a scheduling order, the court's focus in its inquiry is on the moving

14   party's reasons for seeking modification.  (*Id.*, *citing Johnson*, 975 F.2d at 609.)

15

16                Non-expert discovery in this matter will close on March 23, 2007.  Depositions

17   have been continuously postponed due to Defendant AMTRAK's unduly delay in responding to

18   MR. CAMPBELL's First Request for Production of Documents.  Prior to scheduling depositions,

19   MR. CAMPBELL's counsel spent dozens hours reviewing more than ten thousand unidentified

20   documents in a long shot attempt to find necessary information to prepare for depositions.

21   Defendant AMTRAK not only failed to comply with the Federal and Local Rules by not

22   identifying these documents, it acted in bad faith by failing to respond to repeated requests by MR.

23   CAMPBELL's counsel to supplement its responses, resulting in its purposeful attempt to delay

24   discovery.  Indeed, it was not until January 2007 that Defendant AMTRAK supplemented its

25   responses.

26                Due to Defendant AMTRAK's untimely objections and delaying tactics, reasonable

27   and significant discovery may not be completed by MR. CAMPBELL, despite his attorneys'

28   diligent efforts before the end of discovery cutoff.  MR. CAMPBELL requires an extension of the

1  discovery cutoff date so that he can have a reasonable and meaningful opportunity to pursue

2  relevant evidence.  This accommodation is required to ensure a fair trial or any meaningful

3  settlement discussions.  MR. CAMPBELL thus respectfully requests an Order, pursuant to Civil

4  Local Rules 6-2 and 7-11, enlarging the time for non-expert discovery by thirty-five (35) days from

5  the date of defendant AMTRAK's supplemental production of documents so that the appropriate

6  discovery can be conducted and completed in a reasonable fashion.

7                                                    **CONCLUSION**

8              Defendant AMTRAK should be compelled to supplement its responses to Request

9  Nos. 3, 15, and 4 through 13, and produce the requested documents.  If Defendant AMTRAK is not

10  compelled to supplement its responses, MR. CAMPBELL will face prejudice and be at a severe

11  disadvantage in preparing for trial.  Defendant AMTRAK's refusal to comply with the Rules has

12  already caused substantial prejudice to MR. CAMPBELL's ability to complete discovery.

13  Defendant AMTRAK has effectively stalled discovery.

14              MR. CAMPBELL respectfully seeks an Order compelling Defendant AMTRAK to

15  produce a complete set of supplemental responses which will allow MR. CAMPBELL to

16  determine, with certainty, the request for which Defendant AMTRAK is producing documents.

17  These responses should be made without objections within five (5) days from the date of the Order.

18   Additionally, good cause has been shown for the Court to compel Defendant AMTRAK to provide

19  supplemental responses to Requests Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 15 forthwith, within

20  ten (10) days from the date of the Order, and to enlarge the time for MR. CAMPBELL to complete

21  his non-expert witness discovery for thirty-five (35) days after the Defendants' further production

22  date.

23  

24  Dated: March 2, 2007                          PRICE AND ASSOCIATES

25                                                 _____

26                                                 /s/

27                                                 PAMELA Y. PRICE Attorneys for Plaintiff
                                                   JOHN CAMPBELL

28