Pt.1

KATHLEEN MAYLIN (SBN (SBN 155371)
CARA CHING-SENAHA (SBN 298467)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile: (415) 394-9401

Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK and JOE DEELY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive,<br><br>    Defendants. | Case No. C05-05434 MJJ<br><br>**DECLARATION OF CARA CHING-SENAHA IN SUPPORT OF DEFENDANTS' NATIONAL RAILROAD PASSENGER CORPORATION'S AND JOE DEELY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>[Notice of Motion, Memorandum of Points and Authorities, and Declarations in Support of Motion concurrently filed]<br><br>Date:    May 8, 2007<br>Time:    9:30 a.m.<br>Courtroom:  11<br>Floor:    19<br>Judge:   The Hon. Martin J. Jenkins<br><br>Complaint Filed:  12/30/05<br>FAC Filed:    2/23/06<br>Trial Date:    7/23/2007<br><br>[Fed.R.Civ.Proc. 56] |

I, Cara Ching-Senaha, declare on the basis of personal knowledge:

    1.    I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

---

1                                          Case No. C05-05434 MJJ
DECL. OF CARA CHING-SENAHA ISO DEF. NAT'L RAILROAD'S NOTICE OF MOT. & MOT. FOR SUMM. J. AND PARTIAL SUMM J.

1  DEELY. I am licensed to practice law in the above-referenced district court. I make the
2  following statements based on personal knowledge.

3      2.    I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,
4  taken February 26, 2007. Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages
5  from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'
6  Memorandum of Points and Authorities.

7      3.    I have reviewed in its entirety the transcript for Susan Venturelli's deposition,
8  taken March 23, 2007. Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages
9  from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and
10  Authorities.

11      4.    I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken
12  February 15, 2007. Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from
13  Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14  Executed this 3rd day of April, 2007 in San Francisco, California. I declare under penalty
15  of perjury under the laws of California and the United States of America that the foregoing is true
16  and correct.

17
18                                      *Cara Ching-S*
19                                      CARA CHING-SENAHA

# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                       ---oOo---
 4   JOHN EARL CAMPBELL,         )
                                 )
 5              Plaintiff,       )
                                 )
 6   vs.                         )   No. C05-05434 MJJ
                                 )
 7   NATIONAL RAILROAD PASSENGER )
     CORPORATION dba AMTRAK, JOE )
 8   DEELY and DOES 1 through 15 )
     inclusive,                  )
 9                               )
                Defendants.      )
10   _____)
11
12
13
14
15          DEPOSITION OF JOHN EARL CAMPBELL
16                 February 26, 2007
17 .
18
19
20           Taken by SHARON TRUJILLO
21                CSR No. 6120
22
23
24       JANE GROSSMAN REPORTING SERVICES
          1939 Harrison Street, Suite 460
25          Oakland, California 94612
                   510.444.4500
```



CERTIFIED COPY
JG  Jane GROSSMAN
RS  REPORTING Services

DEPOSITION OF JOHN EARL CAMPBELL

1

```
 1      A.   No.                                                12:02:55
 2      Q.   And as a member of that union, you were able
 3 to file a grievance if you ever felt that you were being
 4 treated unfairly, correct?
 5      A.   Yes.                                               12:03:04
 6      Q.   Did you ever file any grievances while you
 7 were at Southern Pacific?
 8      A.   No.
 9      Q.   Did you ever feel that you were treated
10 unfairly while you worked at Southern Pacific?               12:03:10
11      A.   No.
12      Q.   Do you have any understanding, sir, as to why
13 Southern Pacific wanted you to leave your job as a
14 condition of the settlement agreement?
15      A.   They wasn't sure my back was 100 percent           12:03:30
16 well.
17      Q.   That was your understanding?
18      A.   Yes.
19      Q.   Did you have any other understanding?
20      A.   No.                                                12:03:46
21      Q.   What were your duties at Southern Pacific?
22      A.   Track laborer.
23      Q.   What does that mean?
24      A.   Basically, hard manual labor.
25      Q.   And when you say "track," meaning on the           12:04:02
```

DEPOSITION OF JOHN EARL CAMPBELL

36

```
 1   tracks?                                                    12:04:04
 2       A.   Yes.
 3       Q.   Could you give me maybe a paragraph as to what
 4   you would do on a daily basis?
 5       A.   If something derailed, track laborers would be    12:04:11
 6   one of the ones that fixed it.  We repaired any damage
 7   to the track.  Replace ties.  Replace rail.  Basically,
 8   hard, grueling work.
 9       Q.   Heavy lifting?
10       A.   Exactly.                                          12:04:30
11       Q.   Did you use machinery as well?
12       A.   Yes.
13       Q.   What type of machinery did you use?
14       A.   Backhoe.  Tamper.  End loaders.  Dump truck.
15   Tie handlers.  Scaffolder.  Spike -- spike -- there's     12:04:40
16   numerous.  I could -- I can't think of nothing else, but
17   it's numerous machines.
18       Q.   Okay.  How long did you work at Southern
19   Pacific?
20       A.   Eight years.                                      12:05:03
21       Q.   While you were there, sir, had you ever been
22   subjected to discipline?
23       A.   No.
24       Q.   Okay.
25            MS. MAYLIN:  What I'd like to do is mark as       12:05:16
```

DEPOSITION OF JOHN EARL CAMPBELL

37

|   |   |   |
|---|---|---|
| 1 | Q. | What position did you apply for? | 12:09:06 |
| 2 | A. | Assistant conductor. |
| 3 | Q. | Okay. And did you eventually interview for |
| 4 | the position? |
| 5 | A. | Yes. | 12:09:22 |
| 6 | Q. | Okay. Who did you interview with? |
| 7 | A. | Denise Sargeant, Tom Oughton, and Dan Johnson. |
| 8 | Q. | And I understand you were hired? |
| 9 | A. | Yes. |
| 10 | Q. | Okay. What was your starting salary, sir? | 12:09:43 |
| 11 | A. | Nine thirty an hour. |
| 12 | Q. | And did you join the union at that time? |
| 13 | A. | After 90 days, yes. |
| 14 | Q. | Which union did you join? |
| 15 | A. | The UTU. | 12:09:59 |
| 16 | Q. | And what was your -- I'm sorry -- What were |
| 17 | your job duties as an assistant conductor? |
| 18 | A. | Basically, I help passengers on and off the |
| 19 | train, take tickets, make sure of the safe operation of |
| 20 | the train I was assigned to. | 12:10:21 |
| 21 | Q. | No hard labor I take it? |
| 22 | A. | No. |
| 23 | Q. | And, sir, you mentioned safe operation of the |
| 24 | trains. Did you have a -- a handbook or a guideline |
| 25 | that you had to follow as far as safety regulations? | 12:10:41 |

DEPOSITION OF JOHN EARL CAMPBELL

41

|  |  |  |
|---|---|---|
| 1 | A. Yes. | 12:10:44 |
| 2 | Q. Okay. How many booklets or handbooks did you | |
| 3 | have, do you recall? | |
| 4 | A. Five. | |
| 5 | Q. Do you recall the names of those books? | 12:10:53 |
| 6 | A. I -- ATM (sic) -- AMT, Amtrak Safety Book. | |
| 7 | Union Pacific Special Instruction. Union Pacific | |
| 8 | Timetable. BNSF Special Instruction. BNSF Timetable. | |
| 9 | Q. Okay. And it was your job to understand the | |
| 10 | safety rules in those five books? | 12:11:20 |
| 11 | A. Correct. | |
| 12 | Q. Okay. All right. Let's see, here. So when | |
| 13 | was it that you were initially hired, sir? | |
| 14 | A. September of '98. | |
| 15 | Q. Okay. How long did you remain in the position | 12:11:36 |
| 16 | of assistant conductor? | |
| 17 | A. One year. | |
| 18 | Q. So to September '99? | |
| 19 | A. Yes. | |
| 20 | Q. Who was your supervisor at that time? | 12:11:46 |
| 21 | A. Tom Oughton and Mark Schulthies. | |
| 22 | Q. I'm sorry? | |
| 23 | A. Mark Schulthies. | |
| 24 | Q. What were their positions, if you know? | |
| 25 | A. One was road foreman of engines. I don't know | 12:12:07 |

DEPOSITION OF JOHN EARL CAMPBELL

```
 1  at that site?                                                    12:16:30
 2       A.   The boss of the crew, not of the yard.
 3       Q.   Got it.  Got it.  Okay.  All right.  And did
 4  you get that position, Mr. Campbell?
 5       A.   The first time, no.                                    12:16:39
 6       Q.   Did you have an understanding as to why you
 7  didn't get that position?
 8       A.   Someone with more seniority bidded on it.
 9       Q.   Okay.  So you didn't have a problem with that,
10  did you?                                                         12:16:54
11       A.   No.  Seniority based, no problem.
12       Q.   Okay.  All right.  And when -- did you
13  continue after that, then, working the extra boards?
14       A.   No.  I became the assistant yard conductor
15  after that.                                                      12:17:09
16       Q.   How did you acquire that job?
17       A.   I bidded on it.
18       Q.   Okay.  Can you give me a month and year?
19       A.   No -- I can't narrow it down to exact -- but
20  it was 1999, thereabouts.                                        12:17:30
21       Q.   Okay.  Who was your supervisor then?
22       A.   I think it's still Oughton, Schulthies.
23       Q.   Okay.  What was your shift?
24       A.   First part it was the swing shift, which is
25  4 p.m. to 2 a.m.                                                 12:17:53
```

DEPOSITION OF JOHN EARL CAMPBELL

|   |   |   |
|---|---|---|
| 1 | Q.   Okay. | 12:17:58 |
| 2 | A.   And several months later I got the 10 p.m. to | |
| 3 | 6 a.m. midnight yard. | |
| 4 | Q.   Okay.  Did your pay change when you got that | |
| 5 | position? | 12:18:11 |
| 6 | A.   No. | |
| 7 | Q.   Okay.  So you were still making nine thirty an | |
| 8 | hour? | |
| 9 | A.   No.  Nine thirty an hour is for class when | |
| 10 | they're training us.  After 90 days it went up to like | 12:18:22 |
| 11 | 17 bucks. | |
| 12 | Q.   Oh.  Okay.  All right.  So the same pay, | |
| 13 | though, for an assistant yard conductor as an assistant | |
| 14 | conductor? | |
| 15 | A.   An assistant conductor on the road make a | 12:18:35 |
| 16 | little more than a yard conductor.  The -- the hourly | |
| 17 | rate is the same, but we get other things, like being | |
| 18 | away from home for more than three or four hours.  Stuff | |
| 19 | like that.  Little things that makes it more.  The yard | |
| 20 | conductor is just a flat hourly rate. | 12:18:56 |
| 21 | Q.   Okay.  All right.  Okay.  So in '99, you're | |
| 22 | the assistant yard conductor.  You have the same | |
| 23 | supervisors.  Did your job change after that time? | |
| 24 | A.   I became a yard conductor maybe a year later, | |
| 25 | 2000. | 12:19:23 |

DEPOSITION OF JOHN EARL CAMPBELL

```
 1      Q.   Okay.  Prior to -- so you put a bid on a yard          12:19:31
 2   conductor job?
 3      A.   Exactly.
 4      Q.   Okay.  Prior to that time in 2000 -- by the --
 5   oh, before I ask that, do you recall the month in  2000?       12:19:40
 6      A.   No.  I do not.
 7      Q.   Okay.  Prior to putting a bid on a yard
 8   conductor job, though, in 2000, had you bid on any other
 9   jobs, or applied for any other jobs, other than what
10   you've testified to?                                           12:19:55
11      A.   I applied for the train engineer's job.
12      Q.   Okay.  And when did you do that?
13      A.   October of '98.
14      Q.   How are you sure about the date, sir?
15      A.   Because I only been there a month, and my              12:20:11
16   supervisor, Mark Schulthies, saw me moving the
17   locomotive around the yard, and he was just surprised I
18   was -- I just got hired, and he didn't know I knew how
19   to do that, so he gave me an application for a train
20   engineer.                                                      12:20:29
21      Q.   And that was in October '98?
22      A.   Uh-huh.
23      Q.   That's a yes?
24      A.   Yes.
25      Q.   And, sir, was it within proper Amtrak protocol         12:20:35
```

DEPOSITION OF JOHN EARL CAMPBELL

```
 1   AFTERNOON SESSION                                1:27 P.M.      12:30:56
 2
 3              EXAMINATION BY MS. MAYLIN (Resumed)
 4
 5            THE VIDEOGRAPHER:  We are back on the record.          01:27:18
 6   It is 1:27.
 7            MS. MAYLIN:  Okay.  What I marked here as
 8   Exhibit 2 is a -- let's see, one, two -- four-page
 9   document, Bates-stamped D10282 through 285.
10            (Whereupon, Defendants' Exhibit No.                    01:27:43
11             2 was marked for identification.)
12            MS. MAYLIN:  Q.  There you go, Mr. Campbell.
13   Mr. Campbell, this appears to be your application for
14   employment with Amtrak; is that correct?
15       A.   Yes.                                                   01:27:52
16       Q.   Okay.  And that is your signature at the
17   bottom of the first page?
18       A.   Yes.
19            MS. PRICE:  Counsel, before we go on,
20   Mr. Campbell has two items of information he needs to           01:28:01
21   clarify.
22            Go ahead.
23            THE WITNESS:  My job insurance only lasted a
24   year, not two years.  And the second year I cashed in my
25   401K and my savings, so that's -- so that's -- that --          01:28:16
```

DEPOSITION OF JOHN EARL CAMPBELL