Pt. 2
KATHLEEN MAYLIN (SBN (SBN 155371)
CARA CHING-SENAHA (SBN 298467)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile: (415) 394-9401

Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK and JOE DEELY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN EARL CAMPBELL,

    Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive,

    Defendants.

Case No. C05-05434 MJJ

**DECLARATION OF CARA CHING-SENAHA IN SUPPORT OF DEFENDANTS' NATIONAL RAILROAD PASSENGER CORPORATION'S AND JOE DEELY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

[Notice of Motion, Memorandum of Points and Authorities, and Declarations in Support of Motion concurrently filed]

Date: May 8, 2007
Time: 9:30 a.m.
Courtroom: 11
Floor: 19
Judge: The Hon. Martin J. Jenkins

Complaint Filed: 12/30/05
FAC Filed: 2/23/06
Trial Date: 7/23/2007

[Fed.R.Civ.Proc. 56]

I, Cara Ching-Senaha, declare on the basis of personal knowledge:

    1.    I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

1

Case No. C05-05434 MJJ
DECL. OF CARA CHING-SENAHA ISO DEF. NAT'L RAILROAD'S NOTICE OF MOT. & MOT. FOR SUMM. J. AND PARTIAL SUMM J.

1  DEELY. I am licensed to practice law in the above-referenced district court. I make the
2  following statements based on personal knowledge.

3      2.    I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,
4  taken February 26, 2007. Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages
5  from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'
6  Memorandum of Points and Authorities.

7      3.    I have reviewed in its entirety the transcript for Susan Venturelli's deposition,
8  taken March 23, 2007. Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages
9  from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and
10  Authorities.

11      4.    I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken
12  February 15, 2007. Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from
13  Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14  Executed this 3rd day of April, 2007 in San Francisco, California. I declare under penalty
15  of perjury under the laws of California and the United States of America that the foregoing is true
16  and correct.

*[signature]*
CARA CHING-SENAHA

```
 1  one was filed?                                                01:42:07
 2       A.   Actually, this is the second one, I think.
 3       Q.   Are you sure about that?
 4       A.   Yeah.
 5       Q.   Hum.  Well, let's see here.  That was January       01:42:16
 6  '04.
 7       A.   Uh-huh.
 8       Q.   All right.  You think there was one filed
 9  before that?
10       A.   Yes.                                                01:42:33
11                      (Whereupon, Defendants' Exhibit No.
12                      5 was marked for identification.)
13            MS. MAYLIN:  Q.  Okay.  What I'm marking now
14  as Exhibit 5 -- this is going to be a test.  Let's
15  see -- is a one-page document, with a little rip at the       01:42:54
16  top left.  There you go, Mr. Campbell.  It's
17  Bates-stamped 0000001 (sic).  Mr. Campbell, is that your
18  signature at the bottom?
19       A.   Yes.
20       Q.   Okay.  And did you sign that around August 16,      01:43:23
21  2005?
22       A.   It is dated that, yes.
23       Q.   Okay.  Well, do you believe that you signed it
24  the -- on the day that you dated it?
25       A.   Yes.                                                01:43:34
```

DEPOSITION OF JOHN EARL CAMPBELL

```
 1    Q.   All right.  And, sir, you signed it also under       01:43:34
 2  penalty of perjury, correct?
 3    A.   Yes.
 4    Q.   All right.  And, sir, is this the second
 5  administrative charge that you filed?                        01:43:44
 6    A.   Apparently this is the second.
 7    Q.   Okay.  And it looks like that's August '05, as
 8  opposed to 2004.  So let me ask you a question here.
 9  Does that refresh your recollection that the one we just
10  looked at, Exhibit (sic) 3 and 4, that that was the          01:44:01
11  first one you filed?
12    A.   Yes.
13    Q.   Okay.  And what we're looking at now, Exhibit
14  5, that was the second one that you filed?
15    A.   Yes.                                                  01:44:14
16    Q.   All right.  And, sir, it looks to me like this
17  administrative charge was filed with the Department of
18  Fair Employment and Housing.  Is that your recollection
19  as well?
20    A.   Yes.                                                  01:44:27
21    Q.   Okay.  Did you have counsel at the time you
22  filed this?
23    A.   '05.  Yes.
24    Q.   Okay.  And was -- is that your current
25  counsel, Price and Associates?                               01:44:37
```

DEPOSITION OF JOHN EARL CAMPBELL

76

|   |   |   |
|---|---|---|
| 1 |       MS. PRICE: Same objection. Calls for a legal | 01:31:39 |
| 2 | conclusion, and I'm -- it's also argumentative and | |
| 3 | misstates the witness's testimony. | |
| 4 |       THE WITNESS: No. | |
| 5 |       MS. MAYLIN: Q. Mr. Campbell, you filed a | 01:32:01 |
| 6 | couple of administrative charges with the EEOC and DFEH. | |
| 7 | Do you recall that? | |
| 8 |     A. Yes. | |
| 9 |     Q. Let's see what I did with them. Here we go. | |
| 10 | Okay. How many charges did you file, that you can | 01:32:20 |
| 11 | recall? | |
| 12 |     A. Two. | |
| 13 |     Q. Two? | |
| 14 |     A. Yes. | |
| 15 |     Q. All right. Were they both with the EEOC or | 01:32:28 |
| 16 | with the DFEH, or one each, or do you recall? | |
| 17 |     A. I think they were both with the EEOC. | |
| 18 |     Q. All right. Well, I'll give you the one that I | |
| 19 | have as being the first one, and I'll see if that's | |
| 20 | true. What I'm marking as Exhibit 3 is a one-page | 01:32:49 |
| 21 | document, Bates-stamped D09919. Here you go. | |
| 22 |       (Whereupon, Defendants' Exhibit No. | |
| 23 |       3 was marked for identification.) | |
| 24 |       MS. MAYLIN: Q. Mr. Campbell, this appears to | |
| 25 | me to be a charge of discrimination filed with the EEOC. | 01:33:11 |

DEPOSITION OF JOHN EARL CAMPBELL

| | | |
|---|---|---|
| 1 | It looks like it was signed on January 28, 2004 and | 01:33:15 |
| 2 | marked received by the EEOC on February 9, 2004. Sir, | |
| 3 | is that your signature at the bottom? | |
| 4 | A. Yes. | |
| 5 | Q. Okay. Do you recall submitting this form to | 01:33:27 |
| 6 | the EEOC, Mr. Campbell? | |
| 7 | A. Yes. | |
| 8 | Q. And, sir, was this the first of the charges | |
| 9 | that you filed with either the EEOC or DFEH? | |
| 10 | A. Yes. | 01:33:38 |
| 11 | Q. Okay. And, sir, were you represented by | |
| 12 | counsel at the time that you signed this and submitted | |
| 13 | it? | |
| 14 | A. No. | |
| 15 | Q. Okay. Did anyone help you fill this out? | 01:33:49 |
| 16 | A. No. | |
| 17 | Q. You did it all on your own? | |
| 18 | A. Yes. | |
| 19 | Q. Okay. So the typed part of the document, | |
| 20 | where there's some fill-in-the-blanks, or there's Xs and | 01:34:00 |
| 21 | some blanks, and then there's some typed-in information, | |
| 22 | did you type that in yourself? | |
| 23 | A. No. | |
| 24 | Q. Who typed that, as far as you know? | |
| 25 | A. I suppose somebody at the EEOC. | 01:34:15 |

DEPOSITION OF JOHN EARL CAMPBELL

```
 1              you sent in an old resume?                        01:52:14
 2              "Isn't that true?
 3              "Answer:  I also sent in an Amtrak
 4              application with this resume, so...")
 5              MS. PRICE:  Thank you.                             01:53:09
 6              MS. MAYLIN:  Q.  I guess we're taking a break,
 7   Mr. Campbell.
 8              THE VIDEOGRAPHER:  It is 1:53.  We're going
 9   off the record.
10              (Recess taken:  1:53 p.m. until 2:02 p.m.)         01:53:18
11              THE VIDEOGRAPHER:  We are back on the record.
12   It is 2:02.
13              MS. MAYLIN:  Q.  Actually, I'm sorry, we've
14   got to go off the record just for a sec.
15              THE VIDEOGRAPHER:  We're going off the record.    02:03:30
16   It is 2:03.
17              (Recess taken:  2:03 p.m. until 2:04 p.m.)
18              THE VIDEOGRAPHER:  We are back on the record,
19   and it is 2:04.
20              MS. MAYLIN:  Q.  Okay.  Mr. Campbell, you were     02:04:14
21   initially hired, as you said, as an assistant conductor.
22   What I'm marking here as Exhibit 7 is a multiple-page
23   document, D01276 (sic) and 77.  Here you go.  This is
24   the letter you received from Amtrak, correct?
25        A.    Correct.                                           02:04:39
```

DEPOSITION OF JOHN EARL CAMPBELL

```
 1              (Whereupon, Defendants' Exhibit No.        02:04:41
 2         7 was marked for identification.)
 3         MS. MAYLIN:  Q.  And that was sent to you by
 4    Denise Sargeant, who you testified was the
 5    African-American member of the panel who you interviewed   02:04:49
 6    with, correct?
 7         A.   Correct.
 8         Q.   Okay.  And when you started with Amtrak, you
 9    got quite a few booklets and documents to look at,
10    didn't you?                                               02:05:04
11         A.   Yes.
12         Q.   Okay.  And what I'm marking here as Exhibit 8
13    is a "New-Hire Checklist - Agreement..."  There you go,
14    Mr. Campbell.  D10275.
15              (Whereupon, Defendants' Exhibit No.           02:05:17
16         8 was marked for identification.)
17         MS. MAYLIN:  Q.  And that's your signature on
18    that page, correct?
19         A.   Correct.
20         Q.   Okay.  And on September 30, 1998, you signed   02:05:23
21    that you received all of the information that are marked
22    as "yes" checks, correct?
23         A.   Correct.
24         Q.   Okay.  And, sir, you do see that you've
25    checked "yes" that you received the company's Equal       02:05:50
```

DEPOSITION OF JOHN EARL CAMPBELL

84

```
 1   Employment Opportunity Policy; do you see that?        02:05:54
 2       A   Yes.
 3       Q   Okay.  And you did receive that, didn't you?
 4       A   Yes.
 5       Q   Okay.  And you also received harassment        02:06:00
 6   information as well?
 7       A   Yes.
 8       Q   Okay.  And you understood, didn't you,
 9   Mr. Campbell, that Amtrak had a pretty detailed
10   harassment and -- non-harassment, non-discrimination   02:06:15
11   policy and complaint procedure, correct?
12           MS. PRICE:  Objection.  Vague and ambiguous as
13   to "pretty detailed."
14           THE WITNESS:  Correct.
15           MS. MAYLIN:  Q.  Okay.  And indeed, you        02:06:28
16   understood, over the years of your employment at Amtrak,
17   that Amtrak has an EEOC -- I'm sorry, an EEO officer who
18   is responsible for taking any complaints and
19   investigating complaints, correct?
20           MS. PRICE:  Objection.  Lacks foundation;      02:06:47
21   assumes facts; calls for speculation.
22           THE WITNESS:  Correct.
23           MS. MAYLIN:  Q.  Okay.  And you had two times
24   during your employment where you had contact with the
25   EEOC officer, didn't you?                              02:07:02
```

DEPOSITION OF JOHN EARL CAMPBELL

85

```
 1      Q.   And I don't recall if I asked you, who were      02:25:58
 2  your supervisors when you were a yard conductor?
 3      A.   At the time, Mark Schulthies and Tom Oughton.
 4      Q.   Okay.  And how did your duties change as a
 5  yard director from being an assistant conductor?          02:26:11
 6      A.   Just the bid process.
 7      Q.   But what was -- what was the change in your
 8  actual day-to-day duties?
 9           MS. PRICE:  Objection.  Lacks foundation,
10  assumes facts.                                            02:26:22
11           THE WITNESS:  I just went from being number
12  two to number one in charge of -- you know,
13  authority-wise.
14           MS. MAYLIN:  Q.  So it didn't change your
15  duties at all?                                            02:26:33
16      A.   It just gave me more responsibilities.
17      Q.   What more responsibility did it give you?
18      A.   I was in charge of all of the moves in the
19  yard involving the trains, make-up, break-up.
20  Everything was basically on me.                           02:26:45
21      Q.   Okay.  When you say you're in charge of all
22  the moves in the yard, what does that mean?
23      A.   The mechanical foreman would give us a switch
24  list, and I would have to perform, you know, and I had
25  like ten hours to do it, so...                            02:27:05
```

DEPOSITION OF JOHN EARL CAMPBELL

97