```
1  KATHLEEN MAYLIN (SBN (SBN 155371)
   CARA CHING-SENAHA (SBN 298467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California 94105
   Telephone: (415) 394-9400
4  Facsimile: (415) 394-9401

5  Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
6  CORPORATION dba AMTRAK and JOE DEELY
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive,<br><br>Defendants. | Case No. C05-05434 MJJ<br><br>**DECLARATION OF CARA CHING-SENAHA IN SUPPORT OF DEFENDANTS' NATIONAL RAILROAD PASSENGER CORPORATION'S AND JOE DEELY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>[Notice of Motion, Memorandum of Points and Authorities, and Declarations in Support of Motion concurrently filed]<br><br>Date: May 8, 2007<br>Time: 9:30 a.m.<br>Courtroom: 11<br>Floor: 19<br>Judge: The Hon. Martin J. Jenkins<br><br>Complaint Filed: 12/30/05<br>FAC Filed: 2/23/06<br>Trial Date: 7/23/2007<br><br>[Fed.R.Civ.Proc. 56] |

I, Cara Ching-Senaha, declare on the basis of personal knowledge:

1. I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

1 DEELY. I am licensed to practice law in the above-referenc       rt. I make the
2 following statements based on personal knowledge.

3     2.    I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,
4 taken February 26, 2007. Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages
5 from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'
6 Memorandum of Points and Authorities.

7     3.    I have reviewed in its entirety the transcript for Susan Venturelli's deposition,
8 taken March 23, 2007. Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages
9 from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and
10 Authorities.

11     4.    I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken
12 February 15, 2007. Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from
13 Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14 Executed this 3rd day of April, 2007 in San Francisco, California. I declare under penalty
15 of perjury under the laws of California and the United States of America that the foregoing is true
16 and correct.

*[signature]*
CARA CHING-SENAHA

```
 1   several incidents of misconduct during your employment.    02:44:32
 2   Can you tell me the first time there was an incident
 3   where you were charged with a rules infraction?
 4           MS. PRICE:  Objection.  Lacks foundation;
 5   assumes facts.  It's also argumentative.  Also, object    02:44:46
 6   to the preface.
 7           Do you need to have the question read back?
 8   Do you know what the question is?
 9           THE WITNESS:  Yeah.
10           MS. MAYLIN:  Q.  When is the first time you       02:45:05
11   were charged with a rules infraction when you were
12   employed by Amtrak?
13       A.  I don't know the date, but it involved the
14   boxcar derailing.
15           MS. PRICE:  Okay.  She's asking you for the       02:45:16
16   date.
17           THE WITNESS:  I don't have the dates.
18           MS. MAYLIN:  Q.  Okay.  Was it in 2000,
19   Mr. Campbell, March 24, 2000; does that sound right?
20       A.  Yeah.                                             02:45:27
21       Q.  Okay.  And there was a boxcar derailment?
22       A.  Yes.
23       Q.  Okay.  And I understand that the recommended
24   discipline for that misconduct was termination; is that
25   correct?                                                  02:45:41
```

DEPOSITION OF JOHN EARL CAMPBELL

113

| | | |
|---|---|---|
| 1 | A.   No. | 02:45:41 |
| 2 | MS. PRICE:  Objection.  Lacks foundation; | |
| 3 | calls for speculation. | |
| 4 | MS. MAYLIN:  Q.  Okay.  Well, do you recall, | |
| 5 | Mr. Campbell, that that was the recommended discipline, | 02:45:47 |
| 6 | but that you acknowledged your misconduct, and you | |
| 7 | waived your right to an formal investigation, and as a | |
| 8 | result, you were issued instead a letter of reprimand? | |
| 9 | MS. PRICE:  Objection.  Or, I'm sorry.  Are | |
| 10 | you finished with the question? | 02:46:02 |
| 11 | MS. MAYLIN:  Yes. | |
| 12 | MS. PRICE:  Okay.  Objection.  The question is | |
| 13 | compound; lacks foundation; assumes facts. | |
| 14 | THE WITNESS:  Ask me the first part first. | |
| 15 | Like she said, you asked me four different questions | 02:46:15 |
| 16 | there. | |
| 17 | MS. MAYLIN:  Q.  Okay.  Let's try it -- I'll | |
| 18 | try to ask you fewer than four.  I'll try to ask you | |
| 19 | one. | |
| 20 | Mr. Campbell, it is true in March 24, 2000 -- | 02:46:28 |
| 21 | on March 24, 2000, that that incident resulted in a | |
| 22 | charge of misconduct, but you admitted the misconduct; | |
| 23 | is that correct? | |
| 24 | MS. PRICE:  Objection.  It's still compound; | |
| 25 | assumes facts, lacks foundation. | 02:46:50 |

DEPOSITION OF JOHN EARL CAMPBELL

```
 1                                                              02:46:53
        ░░░░░░░░░░ (illegible/redacted) ░░░░░░░░░░
 2
 3
 4
 5         MS. PRICE:  Don't just say yes.  You need to         02:47:04
 6   make sure your answer is accurate.
 7         MS. MAYLIN:  Q.  Well, if you'd like to see
 8   that language written on a piece of paper that you
 9   signed, Mr. Campbell, I can certainly provide that.
10   Here's what I've marked as Exhibit 13.                     02:47:18
11      A.   Okay.
12      Q.   There you go.  Maybe you'll find that amusing
13   as well.
14                     (Whereupon, Defendants' Exhibit No.
15                     13 was marked for identification.)       04:48:10
16         MS. PRICE:  Okay.  And the language that
17   you're suggesting to him where he says, "I acknowledge
18   my misconduct," is in what paragraph, Counsel?
19         MS. MAYLIN:  Q.  Is that your signature on the
20   page, sir?                                                 02:47:28
21      A.   No.
22         MS. PRICE:  Can you -- you asked (sic) a
23   question pending when you made a statement that this
24   document reflected him acknowledging his misconduct.
25   Can you --                                                 02:47:37
```

DEPOSITION OF JOHN EARL CAMPBELL

115

| | | |
|---|---|---|
| 1 | MS. MAYLIN:  I'm going to take him through it, | 02:47:38 |
| 2 | Counsel, if you'll stop talking.  I'd like to ask a | |
| 3 | question. | |
| 4 | MS. PRICE:  Well, I object.  The question you | |
| 5 | asked earlier lacks foundation.  It was misleading.  It | 02:47:44 |
| 6 | was argumentative.  And I don't know if you're doing | |
| 7 | that intentionally, but the record will reflect the | |
| 8 | language that you just represented to the witness would | |
| 9 | be in this document.  I don't see it here.  And you're | |
| 10 | obviously declining to make that representation on the | 02:47:58 |
| 11 | record now that the document has been marked, but that's | |
| 12 | contrary to what you represented to the witness before | |
| 13 | you showed him the document. | |
| 14 | MS. MAYLIN:  Q.  Mr. Campbell, is this your | |
| 15 | signature on this page that I just marked as Exhibit 132? | 02:48:11 |
| 16 | A.  That is my signature. | |
| 17 | Q.  Okay.  And see under "Charges" it states your | |
| 18 | alleged failure to follow the general code of operating | |
| 19 | rules, third edition, and it has a lot of numbers there, | |
| 20 | but Safety Rule 5316E, and AMT3, Rule 16.2.  You | 02:48:27 |
| 21 | understood that that's what you were charged with, | |
| 22 | correct? | |
| 23 | A.  Correct. | |
| 24 | Q.  And, specifically, under "Specification," it | |
| 25 | states that there was damage to equipment during the | 02:48:45 |

DEPOSITION OF JOHN EARL CAMPBELL

116

|  |  |  |
|---|---|---|
| 1 | 11 p.m. yard assignment of March 24, 2000, damage to the | 02:48:45 |
| 2 | cables occurred when 8804 was cut from 8030 on two | |
| 3 | tracks, and further damage was done when 8804 was moved | |
| 4 | to A track, and damages were unreported. Did you | |
| 5 | understand that those were the specifications of the | 02:49:04 |
| 6 | charges, Mr. Campbell? | |
| 7 |     A.    Yes. | |
| 8 |     Q.    Okay. And did you agree to accept the | |
| 9 | following discipline assessed by Amtrak, that a letter | |
| 10 | of reprimand will be issued to you and placed in your | 02:49:18 |
| 11 | file? | |
| 12 |     A.    Yes. | |
| 13 |     Q.    Okay. And you signed that you accepted that | |
| 14 | discipline for those infractions on April 13, 2000, | |
| 15 | correct? | 02:49:31 |
| 16 |     A.    Correct. | |
| 17 |     Q.    Okay. And you waived your right to a formal | |
| 18 | investigation that had been scheduled for April 12, | |
| 19 | 2000, correct? | |
| 20 |     A.    Correct. | 02:49:43 |
| 21 |     Q.    Okay. And when you -- you understood that | |
| 22 | when you waived your right to a formal investigation, | |
| 23 | and you accept the discipline, that that means that you | |
| 24 | did not contest the charges or the specifications, | |
| 25 | correct? | 02:49:58 |

DEPOSITION OF JOHN EARL CAMPBELL

117

```
 1         MS. PRICE:  Objection, lacks foundation,      02:49:59
 2   calls for a legal conclusion.
 3         MS. MAYLIN:  Q.  Correct, Mr. Campbell?
 4         A.   Correct.
 5         MS. PRICE:  Same objections.                   02:50:06
 6         MS. MAYLIN:  Q.  Did you ever learn,
 7   Mr. Campbell, that had you not agreed to the discipline,
 8   that that charge, those actually charges, three charges,
 9   would be grounds for termination?
10         A.   First I'm hearing of it.                  02:50:41
11         Q.   So the answer is no?
12         A.   No.
13         Q.   And as far as you know, a formal letter of
14   reprimand was put in your personnel file, correct?
15         A.   Correct.                                  02:51:04
16         Q.   Okay.  Do you recall having any -- being
17   charged with any rule infraction prior to 2000?
18         A.   No, I don't recall.
19         Q.   All right.  When is the next time you were
20   charged with a rule infraction?                      02:51:19
21         A.   2002, maybe.
22         Q.   Okay.  What occurred then?
23         A.   That was the incident with the boxcar being
24   pushed off the track.
25         Q.   Oh, that was the derailment?              02:51:33
```

DEPOSITION OF JOHN EARL CAMPBELL

| | | |
|---|---|---|
| 1 | A. Yes. | 02:51:35 |
| 2 | Q. Okay. So that was where a boxcar actually | |
| 3 | came off altogether, right? | |
| 4 | A. One wheel came off. Not the whole bus. Just | |
| 5 | one wheel. | 02:51:45 |
| 6 | Q. Okay. Is that not serious when just one wheel | |
| 7 | comes off, as opposed to all four? | |
| 8 | MS. PRICE: Objection. Vague and ambiguous. | |
| 9 | THE WITNESS: Depends on who the boss is. | |
| 10 | MS. MAYLIN: Q. Is that right, Mr. Campbell? | 02:51:59 |
| 11 | So a one-wheel derailment is not considered significant, | |
| 12 | as far as you know? | |
| 13 | MS. PRICE: Objection. Lacks foundation; | |
| 14 | calls for speculation. Also, vague and ambiguous. | |
| 15 | THE WITNESS: Any derailment is serious. | 02:52:16 |
| 16 | MS. MAYLIN: Q. All right. How many rules | |
| 17 | infractions were you charged with for that incident? | |
| 18 | A. I have no idea. | |
| 19 | Q. Okay. Well, isn't it true, Mr. Campbell, that | |
| 20 | you were charged with four infractions? And I'll list | 02:52:33 |
| 21 | them and see if that refreshes your recollection. | |
| 22 | Failing to work safely and to avoid damage to equipment | |
| 23 | is one. Failing to verify cars were properly secured | |
| 24 | before coupling or moving. That's two. Failing to | |
| 25 | control train movement while moving cars onto a spur | 02:52:52 |

DEPOSITION OF JOHN EARL CAMPBELL

119

```
 1   track.  That's three.  And moving a train at an unsafe       02:52:56
 2   speed.  Four.  Does that refresh your recollection, sir?
 3       A.  Yes.
 4       Q.  Okay.  And it's true, isn't it, that Amtrak
 5   conducted a formal investigation in March 2002?              02:53:09
 6       A.  Yes.
 7       Q.  Okay.  And there was a hearing where you
 8   testified, correct?
 9       A.  Correct.
10       Q.  Okay.  And based largely on your own                 02:53:17
11   admissions, you were assessed a 20-day suspension,
12   correct?
13           MS. PRICE:  Objection.  Lacks foundation;
14   calls for speculation.
15           THE WITNESS:  I thought it was ten.                  02:53:32
16           MS. MAYLIN:  Q.  Yeah.  And actually what I
17   have here, sir, and maybe this will refresh you
18   recollection, it was a 20-day suspension, but ten days
19   were held in abeyance.  Does that sound right?
20       A.  Yes.                                                 02:53:42
21       Q.  Okay.  And you completed your suspension in
22   April 2002?
23       A.  Yes.
24       Q.  All right.  And your union appealed the
25   suspension to the Public Law Board; is that true?            02:53:53
```

DEPOSITION OF JOHN EARL CAMPBELL

| | | |
|---|---|---|
| 1 | I got blamed for it. Simple as that. | 02:55:37 |
| 2 | Q. Okay. Well -- and then you didn't report the | |
| 3 | damage, right? | |
| 4 | A. I didn't know it was damaged until somebody | |
| 5 | came and told me. | 02:55:47 |
| 6 | Q. Okay. Well, how did you know that the crew | |
| 7 | hadn't done -- the electrical crew hadn't done their job | |
| 8 | with the flag, though? | |
| 9 | A. At the end of the shift they told me the car | |
| 10 | was damaged, after I had pulled it out and re-spotted, | 02:55:58 |
| 11 | getting ready to go home. They said, oh, those cables | |
| 12 | were pulled out. | |
| 13 | I said, "What?" | |
| 14 | They said, "Yeah." They were still hooked up, | |
| 15 | so that's how I knew. It was like three hours later. | 02:56:12 |
| 16 | Q. Okay. So it was the delay in the three hours | |
| 17 | of non-reporting? | |
| 18 | A. Yeah. | |
| 19 | MS. PRICE: Objection. Vague. | |
| 20 | MS. MAYLIN: Q. When was it -- when was it | 02:56:20 |
| 21 | reported, as far as you can recall? | |
| 22 | A. They reported it to their supervisor, and then | |
| 23 | they -- their supervisor told me, and I wrote up a | |
| 24 | report. | |
| 25 | Q. Okay. As part of the yard conductor protocol, | 02:56:35 |

DEPOSITION OF JOHN EARL CAMPBELL