Pt. 5

KATHLEEN MAYLIN (SBN (SBN 155371)
CARA CHING-SENAHA (SBN 298467)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile: (415) 394-9401

Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK and JOE DEELY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive,<br><br>Defendants. | Case No. C05-05434 MJJ<br><br>**DECLARATION OF CARA CHING-SENAHA IN SUPPORT OF DEFENDANTS' NATIONAL RAILROAD PASSENGER CORPORATION'S AND JOE DEELY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>[Notice of Motion, Memorandum of Points and Authorities, and Declarations in Support of Motion concurrently filed]<br><br>Date:        May 8, 2007<br>Time:        9:30 a.m.<br>Courtroom:   11<br>Floor:       19<br>Judge:       The Hon. Martin J. Jenkins<br><br>Complaint Filed:   12/30/05<br>FAC Filed:         2/23/06<br>Trial Date:        7/23/2007<br><br>[Fed.R.Civ.Proc. 56] |

I, Cara Ching-Senaha, declare on the basis of personal knowledge:

1.  I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

1  DEELY. I am licensed to practice law in the above-referenc       rt. I make the
2  following statements based on personal knowledge.

3      2.    I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,
4  taken February 26, 2007. Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages
5  from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'
6  Memorandum of Points and Authorities.

7      3.    I have reviewed in its entirety the transcript for Susan Venturelli's deposition,
8  taken March 23, 2007. Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages
9  from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and
10 Authorities.

11     4.    I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken
12 February 15, 2007. Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from
13 Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14 Executed this 3rd day of April, 2007 in San Francisco, California. I declare under penalty
15 of perjury under the laws of California and the United States of America that the foregoing is true
16 and correct.

                                            _Cara Ching-Senaha_ (signature)
                                            CARA CHING-SENAHA

| | | |
|---|---|---|
| 1 | A.    They've got these little valves on the bottom | 03:39:11 |
| 2 | of the locomotive near the wheels.  If the wheels lock | |
| 3 | up, you turn the valves, and it releases the brakes so | |
| 4 | you can pull the locomotive, you know, without brakes. | |
| 5 | Q.    Okay.  And is that true, Mr. Campbell? | 03:39:25 |
| 6 | MS. PRICE:  Objection.  Is what true? | |
| 7 | THE WITNESS:  Yeah.  Is what true? | |
| 8 | MS. MAYLIN:  Q.  Sure.  The -- the charge that | |
| 9 | you violated that rule? | |
| 10 | MS. PRICE:  Objection.  Lacks foundation; | 03:39:43 |
| 11 | calls for speculation; vague as to "that rule." | |
| 12 | MS. MAYLIN:  Q.  Do you understand what I'm | |
| 13 | asking, Mr. Campbell? | |
| 14 | A.    I understand it, but you're wording it wrong. | |
| 15 | Q.    Okay.  Well, why don't you correct me.  I'm | 03:39:57 |
| 16 | not in the business like you are. | |
| 17 | A.    It's true I was charged with that violation. | |
| 18 | Q.    Okay. | |
| 19 | A.    That's the answer.  It's true I was charged | |
| 20 | with that violation. | 03:40:08 |
| 21 | Q.    Okay.  Is it true that you committed that | |
| 22 | violation? | |
| 23 | A.    No. | |
| 24 | Q.    Okay.  All right.  Okay.  I understand that | |
| 25 | there was a formal hearing in response to that charge; | 03:40:23 |

DEPOSITION OF JOHN EARL CAMPBELL

|  |  |  |
|---|---|---|
| 1 | is that correct? | 03:40:27 |
| 2 | A. Yes. | |
| 3 | Q. Do you recall when the hearing took place? | |
| 4 | A. I don't have the exact dates. | |
| 5 | Q. All right. A couple of months after the | 03:40:35 |
| 6 | incident? | |
| 7 | A. Yes. | |
| 8 | Q. Okay. And do you recall who the hearing | |
| 9 | officer was? | |
| 10 | A. I know the charging officer was Tim Sheridan. | 03:40:46 |
| 11 | The hearing officer I can't recall. | |
| 12 | Q. Okay. How about Patrick Gallagher; does that | |
| 13 | refresh your recollection? | |
| 14 | A. Yes. | |
| 15 | Q. And do you recall what decision Patrick | 03:40:58 |
| 16 | Gallagher came to? | |
| 17 | A. Termination. | |
| 18 | Q. Okay. All right. How many charges were you | |
| 19 | charged with from that incident, do you recall? | |
| 20 | A. I don't recall. | 03:41:14 |
| 21 | Q. Okay. All right. And did your union appeal | |
| 22 | that decision? | |
| 23 | A. Yes. | |
| 24 | Q. Okay. And what was the finding of the appeal, | |
| 25 | if you recall? | 03:41:35 |

DEPOSITION OF JOHN EARL CAMPBELL

141

```
 1      A.    They upheld the company's position of                03:41:37
 2   termination.
 3      Q.    Okay.  Did you receive -- and was that by the
 4   Public Law Board?
 5      A.    Say that again.                                       03:41:50
 6      Q.    Sure.  Was that decision by the Public Law
 7   Board?
 8      A.    I believe so.
 9      Q.    All right.  And did you receive a copy of the
10   decision?                                                      03:42:01
11      A.    Yes.
12      Q.    And I think I asked you, there was a hearing
13   where you testified; is that correct?
14      A.    Correct.
15      Q.    All right.  And others testified as well?             03:42:17
16      A.    One other person testified.  Two people
17   testified.
18      Q.    Okay.  Who else testified?
19      A.    I believe Dave West and Earl Friend.
20      Q.    Okay.  Did you hear Dave and Earl's testimony?        03:42:36
21      A.    I read it later.
22      Q.    When you read the testimony, did you form the
23   opinion that they had testified truthfully?
24            MS. PRICE:  Objection.  Lacks foundation;
25   calls for speculation; assumes facts.                          03:42:49
```

DEPOSITION OF JOHN EARL CAMPBELL

142

```
 1  of rules infractions?                                         03:54:33
 2      A.   No.
 3      Q.   Okay.  Now that we've been talking about it
 4  for a little bit, can you think of any other employees
 5  who had more than two formal rules infractions and were      03:54:48
 6  not fired?
 7      A.   At this time, I can't recollect.  There are
 8  some, but I can't recollect.
 9      Q.   What I'm marking -- oh, you know what, I
10  marked some other documents a while ago and didn't use       03:55:22
11  them.
12                  (Whereupon, Defendants' Exhibit No.
13                   12 was marked for identification.)
14      MS. MAYLIN:   Q.  Here's Exhibit 12,
15  Mr. Campbell, Bates-stamped D10292, Acknowledgement of       03:55:28
16  Receipt of Amtrak's Standards of Excellence.  Sir, did
17  you sign that on September 30, '98?
18      A.   Yes.
19      Q.   Okay.  And at that time, you received a copy
20  of the booklet, correct?                                     03:55:45
21      A.   Correct.
22                  (Whereupon, Defendants' Exhibit No.
23                   11 was marked for identification.)
24      MS. MAYLIN:   Q.  Okay.  And here is Exhibit
25  11, a one-page document, D10498.  Mr. Campbell, is that      03:55:51
```

DEPOSITION OF JOHN EARL CAMPBELL

153

| | | |
|---|---|---|
| 1 | your signature there? | 03:56:00 |
| 2 | A. Yes. | |
| 3 | Q. It's a receipt, and you received on -- it | |
| 4 | looks like -- May 14, 2004, a copy of the "Service | |
| 5 | Standards Reference Manual for Train Service and | 03:56:10 |
| 6 | On-Board Service Employees," correct? | |
| 7 | A. Correct. | |
| 8 | Q. Okay. And you understood that you were | |
| 9 | responsible for reading and updating the manual, and you | |
| 10 | had to follow the procedures, correct? | 03:56:23 |
| 11 | A. Correct. | |
| 12 | Q. And that's true of all the booklets and | |
| 13 | policies and procedures you received, you were | |
| 14 | responsible for reading, understanding and following, | |
| 15 | correct? | 03:56:37 |
| 16 | A. Correct. | |
| 17 | (Whereupon, Defendants' Exhibit No. | |
| 18 | 19 was marked for identification.) | |
| 19 | MS. MAYLIN: Q. All right. What I am marking | |
| 20 | now as Exhibit 19 is a two-page document. It's a | 03:56:43 |
| 21 | September 17, 2004 letter to you signed by Patrick | |
| 22 | Gallagher. There you go. And this is Mr. Gallagher | |
| 23 | informing you that he finds that you were guilty of the | |
| 24 | charges, correct? | |
| 25 | A. Correct. | 03:57:11 |

DEPOSITION OF JOHN EARL CAMPBELL

154

| | | |
|---|---|---|
| 1 | Q. Okay. And on page two, it details the charge | 03:57:11 |
| 2 | and the rule violation and the decision is to terminate | |
| 3 | you from service effective immediately, correct? | |
| 4 | A. Correct. | |
| 5 | (Whereupon, Defendants' Exhibit No. | 03:37:38 |
| 6 | 20 was marked for identification.) | |
| 7 | MS. MAYLIN: Q. Okay. All right. And then | |
| 8 | on your behalf, the UTU requested that the discipline be | |
| 9 | expunged, correct? And here I've got a September 28, | |
| 10 | 2004 letter -- there you go, Mr. Campbell -- addressed | 03:57:55 |
| 11 | to the Director-Labor Relations, at Amtrak. It's from | |
| 12 | a Mr. A.L. -- oh, I'm going to mispronounce it -- | |
| 13 | Suozzo, S-u-o-z-z-o. You received a copy of that, | |
| 14 | Mr. Campbell? | |
| 15 | A. Yes. | 03:58:17 |
| 16 | Q. All right. | |
| 17 | (Whereupon, Defendants' Exhibit No. | |
| 18 | 21 was marked for identification.) | |
| 19 | MS. MAYLIN: Q. And here what I've marked as | |
| 20 | Exhibit 21 is a three-page letter, November 9, 2004. | 03:58:40 |
| 21 | It's directed to Mr. Suozzo, and it is from Larry | |
| 22 | Hriczak, Director-Labor Relations, where the appeal on | |
| 23 | your behalf is denied. You received that, Mr. Campbell? | |
| 24 | A. Yes. | |
| 25 | Q. Sir, during the hearing where you testified, | 03:59:10 |

DEPOSITION OF JOHN EARL CAMPBELL

```
 1  other applicants, correct?                                05:13:41
 2          MS. PRICE:  Objection.  Incomplete
 3  hypothetical; assumes facts.
 4          THE WITNESS:  Yes.
 5          (Whereupon, Defendants' Exhibit No.               04:48:10
 6          23 was marked for identification.)
 7          MS. MAYLIN:  Q.  I'm marking as Exhibit 23, a
 8  two-page document.  Here you go, Mr. Campbell.  It's a
 9  job reference 50173583.  Have you seen this job posting
10  before, Mr. Campbell?                                     05:14:07
11      A.  Yes.
12      Q.  Okay.  And this is the November 21, '03
13  posting, right?
14      A.  Yes.
15      Q.  Okay.  And this is the one where you faxed        05:14:16
16  your resume over to Mr. Ho, right?
17      A.  Yes.
18      Q.  Okay.  And, sir, do you have any reason to
19  dispute the -- well, that's going to be phrased badly.
20  Sir, you understood that the summary of duties here are   05:14:32
21  the duties that Amtrak requires their engineers to
22  perform, correct?
23      A.  Yes.
24      Q.  Okay.  And you understood that the "Education"
25  criteria, which is the next paragraph, is the required   05:14:48
```

DEPOSITION OF JOHN EARL CAMPBELL

190

```
 1   education for Amtrak engineers, correct?                         05:14:54
 2       A.   Correct.
 3       Q.   And you understood that the "Work Experience,"
 4   the next section is the work experience that's required
 5   for Amtrak engineers or applicants to an Amtrak engineer          05:15:07
 6   position, that they must have that, correct?
 7       A.   Correct.
 8       Q.   Okay.  And under "Other Requirements," you
 9   understood that those other requirements are also
10   necessary for an applicant to have who was trying for an          05:15:17
11   engineer position, correct?
12       A.   Correct.
13       Q.   Okay.  And then on the second page, it says,
14   "Other."  Then you understood that the applicant, or
15   successful applicant would undergo engineering training,          05:15:41
16   correct?
17       A.   Correct.
18       Q.   And then at the end, under "Job Notes" it
19   has a last day to apply category, years experience,
20   et cetera, you understood that those were additional              05:15:54
21   criteria for applicants, correct?
22       A.   Correct.
23       Q.   Okay.  Under "Work Experience," sir, and also
24   it's listed in "Summary of Duties," you understood that
25   a successful applicant for an engineer position with              05:16:24
```

DEPOSITION OF JOHN EARL CAMPBELL

191