P+.6

1  KATHLEEN MAYLIN (SBN (SBN 155371)
   CARA CHING-SENAHA (SBN 298467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California 94105
   Telephone: (415) 394-9400
4  Facsimile: (415) 394-9401

5  Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
6  CORPORATION dba AMTRAK and JOE DEELY

7

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10

11 | JOHN EARL CAMPBELL,              | Case No. C05-05434 MJJ
12 |                                   |
   |        Plaintiff,                | **DECLARATION OF CARA CHING-
13 |                                   | SENAHA IN SUPPORT OF
   |   v.                             | DEFENDANTS' NATIONAL
14 |                                   | RAILROAD PASSENGER
   | NATIONAL RAILROAD PASSENGER      | CORPORATION'S AND JOE DEELY'S
15 | CORPORATION dba AMTRAK, JOE DEELY,| MOTION FOR SUMMARY
   | and DOES 1-15, inclusive,         | JUDGMENT, OR IN THE
16 |                                   | ALTERNATIVE, SUMMARY
   |                                   | ADJUDICATION**
17 |        Defendants.                |
   |                                   | [Notice of Motion, Memorandum of Points
18 |                                   | and Authorities, and Declarations in
   |                                   | Support of Motion concurrently filed]
19 |                                   |
   |                                   | Date:       May 8, 2007
20 |                                   | Time:       9:30 a.m.
   |                                   | Courtroom:  11
21 |                                   | Floor:      19
   |                                   | Judge:      The Hon. Martin J. Jenkins
22 |                                   |
   |                                   | Complaint Filed:  12/30/05
23 |                                   | FAC Filed:        2/23/06
   |                                   | Trial Date:       7/23/2007
24 |                                   |
   |                                   | **[Fed.R.Civ.Proc. 56]**
25

26  I, Cara Ching-Senaha, declare on the basis of personal knowledge:

27    1.    I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

28  Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

DEELY. I am licensed to practice law in the above-referenc       rt. I make the following statements based on personal knowledge.

2.   I have reviewed in its entirety the transcript for Mr. John Campbell's deposition, taken February 26, 2007. Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants' Memorandum of Points and Authorities.

3.   I have reviewed in its entirety the transcript for Susan Venturelli's deposition, taken March 23, 2007. Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

4.   I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken February 15, 2007. Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

Executed this 3rd day of April, 2007 in San Francisco, California. I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

*Cara Ching-s*
CARA CHING-SENAHA

```
 1    Amtrak would have to have a safe work record, correct?    05:16:25
 2         A.    Correct.
 3         Q.    Okay.  After June 1999, sir, did you again
 4    ever apply for an engineer position at Amtrak?
 5         A.    Yes.                                            05:16:49
 6         Q.    When was that?
 7         A.    Every six months, twice a year.
 8         Q.    Okay.  And how did you submit those
 9    applications?
10         A.    Fax and mail.                                   05:16:58
11         Q.    To the L.A. HR?
12         A.    (Nods head.)
13         Q.    Got to say the word.
14         A.    Oh.  Yes.
15         Q.    Okay.  And, sir, when you did that, did you    05:17:06
16    keep a copy of your application?
17               MS. PRICE:  Objection.  Vague; overbroad.
18               THE WITNESS:  No.
19               MS. MAYLIN:  Q.  Okay.  Well, did you do it
20    every six months just as a matter of routine regardless   05:17:20
21    of what was posted, or did you do it in response to
22    seeing a posting?
23         A.    I did it in response to seeing a posting.
24         Q.    Okay.  So, let's see, you saw a posting in
25    June '99, and you sent in your fax, right?                05:17:33
```

DEPOSITION OF JOHN EARL CAMPBELL

```
 1            MS. MAYLIN:  Just a moment.                    05:28:59
 2                  (Discussion off the record.)
 3            MS. MAYLIN:  Q.  Okay.  So Mr. -- or Jason was
 4   lackadaisical in your opinion --
 5       A.   Yeah.                                           05:29:31
 6       Q.   -- and Mr. Poitier was just not smart?
 7       A.   Yeah.
 8       Q.   Okay.  And, sir, what makes you think that
 9   they had less seniority than you?
10       A.   Well, the seniority roster told me.             05:29:43
11       Q.   Okay.  But we have agreed, haven't we, that
12   seniority has nothing to do with whether or not an
13   individual is hired into an engineer position, correct?
14            MS. PRICE:  Objection.  Misstates the
15   witness's testimony.                                     05:29:56
16            THE WITNESS:  Yeah.
17            MS. MAYLIN:  Q.  I think we talked about that
18   there's no bid rights, right?
19       A.   We talked about it, yes.
20       Q.   Okay.  Is that true?                            05:30:05
21       A.   Is what true?
22       Q.   There's no bid rights, yes.
23       A.   Oh, there is no bid rights, yes.
24       Q.   Okay.  So seniority really doesn't matter
25   then, does it?                                           05:30:14
```

DEPOSITION OF JOHN EARL CAMPBELL

202

| | | |
|---|---|---|
| 1 | MS. PRICE: Objection. Misstates the | 05:30:15 |
| 2 | witness's testimony. | |
| 3 | THE WITNESS: Yeah! Seniority and bid rights | |
| 4 | are two different things. | |
| 5 | MS. MAYLIN: Q. Oh, all right. Well, let me | 05:30:21 |
| 6 | ask you, as far as you understand, is there any | |
| 7 | requirement that Amtrak only hire, or first hire | |
| 8 | employees into an engineer position from a conductor | |
| 9 | position based on length of service? | |
| 10 | A. No. | 05:30:40 |
| 11 | Q. Okay. All right. Did you -- so we're up to | |
| 12 | November '03. Thus far, sir, have you had any | |
| 13 | interviews for an engineer position? | |
| 14 | A. I had one. | |
| 15 | Q. When was that? | 05:31:00 |
| 16 | A. I think either December '02 or January '03. | |
| 17 | Q. Okay. Who did you interview with? | |
| 18 | A. I know one was Rich Barnes. And I cannot | |
| 19 | remember the other two. But Rich Barnes was definitely | |
| 20 | one of them. | 05:31:24 |
| 21 | Q. Okay. Can you describe the other two? | |
| 22 | A. They was Caucasian, and they were engineers. | |
| 23 | One was a union rep. That was Rich. And the other two | |
| 24 | were engineers. | |
| 25 | Q. Okay. All right. And you think that was in | 05:31:36 |

| | | |
|---|---|---|
| 1 | A.  I spoke to him. | 05:41:31 |
| 2 | Q.  Meaning, hello, how you doing or -- | |
| 3 | A.  Lou Bellotti introduced the crew one morning, | |
| 4 | and he said, "That's my night crew: Ray Clarke, John | |
| 5 | Campbell, Lars Michelson." | 05:41:42 |
| 6 | And I had said, "Hi, Joe." I don't think he | |
| 7 | liked that. I think I was supposed to say, "Hi, | |
| 8 | Mr. Deely." | |
| 9 | Q.  Okay. Did you have any other communications | |
| 10 | with him? | 05:42:03 |
| 11 | A.  I left him a message on his phone a couple of | |
| 12 | times, when I had a problem with -- a mechanical | |
| 13 | problem. I called him directly. | |
| 14 | Q.  Did he call you back? | |
| 15 | A.  No. | 05:42:10 |
| 16 | Q.  Okay. All right. What information do you | |
| 17 | have, Mr. Campbell, that Mr. Deely had any influence on | |
| 18 | your termination? | |
| 19 | A.  All I have is word of mouth, you know. | |
| 20 | Q.  Okay. And who told you that Mr. Deely had | 05:42:26 |
| 21 | anything to do with your termination? | |
| 22 | MS. PRICE: I'm going to have to instruct -- | |
| 23 | I'm compelled to instruct the witness, do not disclose | |
| 24 | any conversations with counsel. She's asking you about | |
| 25 | conversations you've had with people outside of | 05:42:41 |

DEPOSITION OF JOHN EARL CAMPBELL

212

| | | |
|---|---|---|
| 1 | You know how you hear things, you know, so... | 05:43:57 |
| 2 | Q. So just little bits and pieces of -- | |
| 3 | A. Yes. | |
| 4 | Q. -- small talk out there? | |
| 5 | A. Yes. | 05:44:05 |
| 6 | Q. Okay. All right. Okay. How about this now, | |
| 7 | again with Mr. Deely, do you have any information, sir, | |
| 8 | that Mr. Deely had any influence on whether or not you | |
| 9 | were promoted to engineer during the times you applied | |
| 10 | for an engineer position? | 05:44:22 |
| 11 | A. No. No. Nothing like on paper, or concrete | |
| 12 | evidence as you called it, no. | |
| 13 | Q. Well, did anybody tell you that or -- | |
| 14 | A. I just told you the Chad Skinner story. | |
| 15 | MS. PRICE: And other than what he's already | 05:44:39 |
| 16 | testified to? | |
| 17 | MS. MAYLIN: Right. | |
| 18 | Q. Chad Skinner told you after you applied the | |
| 19 | last time. Was there any other time that you heard that | |
| 20 | Mr. Deely had anything to do with the decision making as | 05:44:49 |
| 21 | far as your application for an engineer position? | |
| 22 | A. No. | |
| 23 | Q. Now, from the June 2004 application that you | |
| 24 | made, sir, do you know who -- which employees were given | |
| 25 | an engineer position in '04, after that time? | 05:45:21 |

DEPOSITION OF JOHN EARL CAMPBELL

214

```
 1      A.   Again, the seniority list would tell you that,    05:45:27
 2  but I know it was five people this time.
 3      Q.   Okay.  How about their races, do you know
 4  their races?
 5      A.   Four were Caucasian and one was Vietnamese.        05:45:53
 6      Q.   Okay.  So the first time you filed a DFEH
 7  charge or EEOC charge was January '04; I think we talked
 8  about.  Did you have any communication with anybody
 9  within Amtrak about the fact that you had filed a DFEH
10  charge, or I'm sorry.  I think at that time it was an     05:46:31
11  EEOC charge.  Did you have any communication with
12  anybody about that?
13      A.   No supervisors.
14      Q.   Okay.  Well, how about co-workers?
15      A.   Probably.                                         05:46:44
16      Q.   What makes you say "probably"?
17      A.   You know, frustration.  Vent.  You talk to
18  people.
19      Q.   So you mentioned it to some co-workers?
20      A.   Yes.                                              05:46:56
21      Q.   All right.  Other than that, did you have any
22  communication with anybody within Amtrak about the fact
23  that you filed that EEOC charge in 2004 - January 2004?
24      A.   Supervisor-wise, I don't think so.
25      Q.   Yeah.  How about anybody from HR?                 05:47:12
```

DEPOSITION OF JOHN EARL CAMPBELL

215

| | |
|---|---|
| 1   A.  [redacted] | 05:47:15 |
| 2   Q.  All right. Anybody from administration? | |
| 3   A.  I don't believe so. | |
| 4   Q.  Okay. Do you have any information that | |
| 5   anybody at Amtrak even knew that you had filed a -- an | 05:47:26 |
| 6   EEOC charge in January '04? | |
| 7         MS. PRICE:  I'm going to object and instruct | |
| 8   the witness again. | |
| 9         You have to filter out any questions when she | |
| 10  says any information. | 05:47:42 |
| 11        I object.  The question is overbroad.  It | |
| 12  seeks to invade the attorney-client privilege. | |
| 13        I will allow you to answer the question, but | |
| 14  you cannot -- you cannot disclose any communications | |
| 15  between you -- | 05:47:54 |
| 16        THE WITNESS:  Between you and me. | |
| 17        MS. PRICE:  Right.  Any conversation with me | |
| 18  or anybody in my office. | |
| 19        THE WITNESS:  Okay.  Repeat the question. | |
| 20        MS. MAYLIN:  Could you reread it?  Thank you, | 05:48:05 |
| 21  Sharon. | |
| 22        (Whereupon, the record was read as follows: | |
| 23        "Question:  Do you have any information | |
| 24        that anybody at Amtrak even knew that you | |
| 25        had filed a -- an EEOC charge in January | 05:48:07 |

DEPOSITION OF JOHN EARL CAMPBELL

216

```
 1          '04?")                                              05:48:07
 2          THE WITNESS:  I would assume EEOC sent them a
 3    copy of my complaint.
 4          MS. MAYLIN:  Q.  Okay.  I'm not asking for
 5    your assumption, Mr. Campbell.  Do you have any           05:48:35
 6    information that anybody at Amtrak knew that you filed
 7    it?
 8          MS. PRICE:  Well, I'm going to object.  The
 9    question is argumentative.  He's given you his response,
10    so you want to answer --                                  05:48:48
11          Do you have some other information you can
12    give her?
13          THE WITNESS:  No.
14          MS. MAYLIN:  Q.  Okay.  All right.  Is there
15    any other time, Mr. Campbell, that you can recall         05:49:03
16    applying for an engineer position at Amtrak?
17          A.  I think we've covered all of it.
18          Q.  Okay.  Let me ask you this, Mr. Campbell:  Do
19    you have any information that you -- your filing an EEOC
20    charge in January '04 had any bearing on Amtrak's         05:49:35
21    decision to terminate you in September of '04?
22          MS. PRICE:  I'm going to object.  The question
23    is overbroad.  It calls for a legal conclusion.  It
24    lacks foundation, calls for speculation.  Also, to the
25    extent it's overbroad, I'm going to ask -- have to        05:50:00
```

DEPOSITION OF JOHN EARL CAMPBELL

217