P4.8



KATHLEEN MAYLIN (SBN (SBN 155371)
CARA CHING-SENAHA (SBN 298467)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile: (415) 394-9401

Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK and JOE DEELY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN EARL CAMPBELL,

Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK, JOE DEELY,
and DOES 1-15, inclusive,

Defendants.

Case No. C05-05434 MJJ

**DECLARATION OF CARA CHING-SENAHA IN SUPPORT OF DEFENDANTS' NATIONAL RAILROAD PASSENGER CORPORATION'S AND JOE DEELY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

[Notice of Motion, Memorandum of Points and Authorities, and Declarations in Support of Motion concurrently filed]

Date:          May 8, 2007
Time:          9:30 a.m.
Courtroom:     11
Floor:         19
Judge:         The Hon. Martin J. Jenkins

Complaint Filed:    12/30/05
FAC Filed:          2/23/06
Trial Date:         7/23/2007

[Fed.R.Civ.Proc. 56]

I, Cara Ching-Senaha, declare on the basis of personal knowledge:

1.      I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

1

Case No. C05-05434 MJJ

DECL. OF CARA CHING-SENAHA ISO DEF. NAT'L RAILROAD'S NOTICE OF MOT. & MOT. FOR SUMM. J. AND PARTIAL SUMM. J.

1    DEELY.  I am licensed to practice law in the above-referenced district court.  I make the

2    following statements based on personal knowledge.

3        2.      I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,

4    taken February 26, 2007.  Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages

5    from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'

6    Memorandum of Points and Authorities.

7        3.      I have reviewed in its entirety the transcript for Susan Venturelli's deposition,

8    taken March 23, 2007.  Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages

9    from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and

10   Authorities.

11       4.      I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken

12   February 15, 2007.  Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from

13   Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14       Executed this 3rd day of April, 2007 in San Francisco, California.  I declare under penalty

15   of perjury under the laws of California and the United States of America that the foregoing is true

16   and correct.

17

18                                                    _Cara Ching-s_____

19                                                    CARA CHING-SENAHA

20

21

22

23

24

25

26

27

28

Mar 22 02 04:17p    Jay Commer CalifCorr      510-433-5915        p.4
3-20-2002 2:46PM   FROM   W DEPAPTMENT 8185472532                 ⌐ a

**Decision Letter**
**Mr. John Campbell**
**Case #019.02**
**Page Three**

Based on the decision of Hearing Officer Butler, you are hereby assessed discipline of:

*   TEN DAYS SUSPENSION TO INCLUDE THE FOLLOWING:

*   4 Days Time Served from January 12, 2002 - January 15, 2002
    and 6 Days Suspension to be served between April 3, 2002 and to
    include April 8, 2002, and Ten Days to be held in abeyance.

Sincerely,

Jay Commer
General Manager
California Corridor

cc:    G. Baxter
       R. Belluomini-FedEx Tracking #8313 2752 1989
       Personnel
       Labor Relations

AMTRAK JOB

501735 83

Engine SERVICE

C/O

EXTERNAL PAUL HO

FAXED
Dan Ben
to Paul

11-19-03

EXHIBIT 17
PLT
DEFT
for identification.
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

D09960

JOHN CAMPBELL
2210 109th. AVE.
(510) 632-5081
OAKLAND, CALIFORNIA
94603-4032


JOB HISTORY

5-84/2-92    SOUTHERN PACIFIC TRANS.
             MACHINE OPERATOR
             REPAIR RAILROAD RIGHT-OF-WAY; OPERATED SEVERAL TRACK MACHINES
             TAMPERS,BALLAST REGULATOR,HI-RAILER, ETC

2-92/4-97    VIA MESSENGER SERVICE
             COURIER
             DELIVERED INTER-OFFICE IN DOWNTOWN SAN FRANCISCO

4-97/PRESENT COUNTY OF ALAMEDA
             IN-HOME CARE GIVER
             PROVIDE IN-HOME SERVICE TO THE AGING & DISABLE


EDUCATION

9-80/6-81
             MERRITT COLLEGE  1 SEMESTER-LITERATURE         OAKLAND.CA

10-77/6-80
             OAKLAND HIGH SCHOOL   CLASS OF 80        3.26  G.P.A.


ACTIVITIES   FISHING,HIKING,FOOTBALL,BASEBALL & BOWLING.
AWARDS       PERFECT ATTENDENCE SR.YEAR OF HIGH SCHOOL.
             SAFETY AWARD 1987 SOUTHERN PACIFIC.

REFERENCES        AVAILABLE UPON REQUEST


D09961

09/17/2004  14:31    5104376015                                    AMTRAK ● 
;. 09/16/2004  10:15    121●●97092                                  LAW. DEPARTMENT ●                    PAGE  01
                                                                                                        PAGE  01

NATIONAL RAILROAD PASSENGER CORPORATION
810 North Alameda Street, Los Angeles, CA 90012

## *DECISION*



September 17, 2004
File #LAX-UTU-04/DISC
Case #386.04

Federal Express #7919 3003 8200

Mr. John Campbell
2210 109th Avenue
Oakland, CA 94603

Dear Mr. Campbell:

By letter, dated August 6, 2004, Case #386.04, you were directed to appear for a formal investigation.

A formal disciplinary investigation was conducted on September 9, 2004, in which you and your union representative were in attendance. The following findings are based on the evidence and testimony presented at the investigation:

1.    The rules cited were in effect and applicable to you at the time of the alleged wrongdoing, as it is applicable to all Amtrak employees in your job category.

2.    Charge 2 was not sustained.

3.    Charges 1, 3, 4 and 5 were proven.  It is evident on the record by the testimony of the Corporation's witnesses and your own testimony that you clearly violated the rules and instructions regarding the movement and coupling of cars and engines.

Based on the foregoing findings and the hearing record as a whole, I find that you are guilty of the charges.  The transcript of the aforementioned investigation is enclosed.

Sincerely,

Patrick Gallagher
Hearing Officer
Western Region

EXHIBIT  PLT.
         DEF.        19            for identification
WITNESS:             J. Campbell
DATE:                2-26-07
         SHARON TRUJILLO, CSR 8120

EXHIBIT  J

09/17/2004  14:31  510438__915          AMTRAK          ●          PAGE  02

**Decision Letter**
**Mr. John Campbell**
**Case No. 386.04**
**Page Two**



Based on the decision of Hearing Officer, Gallagher, you are hereby assessed discipline of:

Termination from service, effective immediately.  This decision is based on the current charges and your previous Discipline Record listed below:

| Date | Charge/Rule Violation | Discipline Assessed |
|------|----------------------|---------------------|
| 4/4/00 | GCOR Rules - 1.1.3 Accidents, Injuries, and defects, 6.28 Other than Main Track Movements, 7.1 Switching safely, 7.3 Switching precautions, 7.5 Testing Hand Brakes, 7.6 Securing cars and engines | Waived |
| 1/14/02 | GCOR Rules – 7.1 Switching Safely and Efficiently, 7.4 Precautions for Coupling and Moving Cars or Engines, 7.12 Movements into Spur Tracks | S10 |

Sincerely,

*SE Shelton*

S. E. Shelton
District Superintendent
Pacific Division – Bay District

SES/lr

cc:    E. Adams – UTU Chairman – Fed Ex Tracking 7902 6820 6654
       L. C. Hriczak – Director – Labor Relations
       T. Duffy – Director – Human Resources

November 9, 2004

Mr. A. L. Suozzo, General Chairperson
United Transportation Union
1515 Market Street, Suite 708
Philadelphia, PA 19102

Re:    OC-UTU-SD-1678D
       J. Campbell

Dear Mr. Suozzo:

We discussed this case during our conference on October 27, 2004, with Mr. R. M. Lenfest, of
your staff. The case involves the dismissal of Conductor John Campbell, Oakland, California, in
connection with the following charges:

> "Charge 1: Your alleged violation of Amtrak's Service Standards for Train Service
> Employees - Manual No. 2 (effective 5/3/2004) - Chapter 3B - Safety Rules for Train
> Service Employees - Rule 5800 - Coupling or Uncoupling Engine or Cars, which reads
>
> > 'Prior to going on, under or between standing equipment for the purpose
> > of coupling or uncoupling engines or cars, crewmembers must:
> >
> > - Discuss safety matters and work to be performed.
> > - Communicate before action is taken.
> > - Protect against moving equipment.
> > - Secure equipment before action is taken.
> > - Mentor less experienced employees to perform service safely.'

Charge 2: Your alleged violation of General Code of Operating Rules - Fourth Edition -
April 2, 2000 - Rule 7.1 - Switching Safely and Efficiently, which reads in part... 'While
switching, employees must work safely and efficiently and avoid damage to contents of
cars, equipment, structures, or other property.'

Charge 3: Your alleged violation of General Code of Operating Rules - Fourth Edition -
April 2, 2000 - Rule 1.47 - Duties of Trainmen and Enginemen, Item D Other Crew
Members' Responsibilities, Part 1. 'To ensure the train is operated safely and rules are
observed, other crew members must assume as much responsibility as possible to prevent
accidents or rules violations.'

EXHIBIT PLT. DEPT.  21  for identification
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

EXHIBIT  M

Mr. A. L. Suozzo
November 9, 2004
Page 2

Re:    OC-UTU-SD-1678D
J. Campbell

Charge 4: Your alleged violation of General Code of Operating Rules - Fourth Edition -
April 2, 2000 - Rule 7.4 - Precautions for Coupling or Moving Cars or Engines, which
reads in part... 'Before coupling to or moving cars or engines, verify that the cars or
engines are properly secured and can be coupled and moved safely.'

Charge 5: Your alleged violation of Amtrak Air Brake and Train Handling Rules and
Instructions, AMT-3 - Revised and Reissued August 19, 2002 - Rule 2.14.16: which
reads... 'Multiple lite locomotives may be moved within the confines of a yard or terminal
without connecting the M.U. hoses, as long as the brake pipe and main reservoir hoses are
connected with associated angle and main reservoir cocks open.'

Specification: It is alleged that on July 24, 2004 while assigned to position CYO103
working as the Conductor in the Oakland Diesel Shop you cut out the brakes on a
locomotive and failed to properly secure it prior to coupling."

During conference, the Organization contended that the Carrier failed to call the assistant
conductor to testify; that the Claimant's inability to connect air hoses on the pit mitigated his
guilt; and that Claimant's actions did not result in damage or delay to a train. The union
contended further, that in any event, the discipline assessed was excessive. For these reasons, the
Organization requested that the discipline be expunged from the Claimant's record and that he be
restored to service with pay for time lost and all rights and benefits unimpaired.

The record indicates that the Claimant was properly notified, in writing, of the charge against him
and was given proper notice to appear for the investigation on August 10, 2004. At the
investigation, which had been postponed–by mutual agreement–until September 9, 2004, the
Claimant was present and represented by a duly authorized representative of the Organization,
who was permitted to cross-examine witnesses and present evidence on his behalf.

There is no evidence in the record in this case that any action of the carrier was an abuse of the
discretion vested in it. The record clearly shows that the Claimant's rights to a fair and impartial
investigation were not violated and that there is substantial evidence to support the Hearing
Officer's finding that he was guilty of charges 1, 3, 4 and 5. Charge 2 was not sustained.

The Carrier was not required to call the assistant conductor to testify inasmuch as the charges
were proven through the testimony of Mr. Dave West, Foreman, as well as Claimant's admission
that he disabled the brakes on the locomotive and left it on the pit. Their testimony disclosed that
the locomotive rolled away during a hard coupling on the service track because the Claimant had
disabled its brakes. The record reveals that Foreman West ran after the locomotive, boarded it,
cut the trucks back in, and was able to stop it from rolling further.

Mr. A. L. Suozzo         Re:    <u>OC-UTU-SD-1678D</u>
November 9, 2004                J. Campbell
Page 3

The Claimant has offered no evidence in support of his unsubstantiated assertion that it was unsafe to cut in the locomotive's trucks while it was on the pit. Such contention is nothing more than a self-serving attempt to mitigate his admitted violation of the rules with which charged.

Finally, in view of the Claimant's admission and in consideration of his service record, which includes progressive discipline, both a reprimand and a twenty-day suspension (ten days actual and ten held in abeyance), for operating rule violations involving switching, securing, and coupling equipment, the discipline assessed was commensurate and was not arbitrary, capricious or excessive. The Claimant has been afforded sufficient opportunity to correct his behavior to comply with the Carrier's operating rules and failed to do so. The Carrier need not retain employees in its service who are unable to work safely and are either unable or unwilling to comply with the Carrier's operating rules.

For these reasons, your appeal is denied in its entirety.

Very truly yours,

*LC 11/9/04*

Larry C. Hriczak
Director-Labor Relations

bc:     Joe Deely
       Steve Shelton
       Bob Schmitt
       Milton Lundy
       Betty Blair
       Jim Ryan
       Lou De Phillips
       Jennifer Rieker
       Val Giulian
       Lisa Caridine
       Dick Wood
       Rick Sandler
       Library



Job Reference # 50173583

**Amtrak - California-Oakland/East Bay - Passenger Enigneer (2) eff 11/14/2003**

The closing date for this position is November 21, 2003. The salary for this position is $16.11 per hour.

Internal applicants only.

Summary of Duties:
Consistently and safely operates locomotives and trains in compliance with federal regulations and corporate policies. Operates equipment during varying work hours within a 24/7 transportation environment maintaining alertness, situational awareness and vigilance. Thinks and functions independently and utilizes clear and effective verbal communication skills in interaction with fellow crew members and other personnel responsible for safe and efficient train movement.

Education:
High School diploma or GED required. Some college or vocational training preferred.

Work Experience:
Some work experience demonstrating the ability to maintain alertness, awareness and vigilance, as well as clear, effective verbal communication skills in the performance of work. Satisfactory attendance and safe work record. Prior railroad operating experience and work history that demonstrates ability to adapt to variable and often changing work hours preferred. Preference given to individuals who were trained by a Class 1 carrier or equivalent passenger railroad and are currently certified as Class 1 Train Service Engineers.

Other Requirements:
1. Must provide a certified copy of motor vehicle driving record from the chief of the state driver's licensing agency in which the applicant was last issued a license and any license(s) issued or reissued from other state(s) within the preceding 60 months. Motor vehicle records must be void of any drug and alcohol violations within the previous 36 months.
2. Must have a motor vehicle driving record void of any convictions or state action canceling, revoking, suspending or denying a driver's license for operating a motor vehicle while under the influence of or impaired by alcohol or a controlled substance within the last 36 months or a record of refusal to undergo such testing as required by state law within the last 36 months.
3. Must sign a release of records authorizing all previous railroad employers to provide Amtrak with background information, if applicable. In accordance with FRA regulations, previous

railroad service records must be void of any drug and alcohol
violations within the previous 60 months.

Other:
If selected, incumbent will be required to successfully complete
Engineer Training as follows:
Individuals not previously certified as Class 1 Train Service
Engineers:
7-10 weeks classroom and field work while headquartered at
Amtrak's Training Center in Wilmington, DE; followed by extensive
qualifying and on-the-job training associated with the Crew Base
for which hired; paid at the student training rate until incumbent
achieves certification as a Class 1 Train Service Engineer
(currently $16.11/hour straight time).

Individuals currently certified as Class 1 Train Service
Engineers:
2-4 weeks classroom and field work while headquartered at Amtrak's
Training Center in Wilmington, DE, followed by additional
qualifying associated with the Crew Base for which hired; paid at
the rate determined by the agreement schedule.

Incumbents are subject to periodic medical examinations including
random drug and alcohol screenings.

Travel:
100 percent
Job Notes

**Last Day to Apply:** 11/21/2003
**Job Category:** Transportation
**Years of Experience:** 1- 5
**Travel Requirements:** High
**Relocation Benefits may Apply:** No
**Referral Bonus:** 0 points

AMTRAK is an equal opportunity employer committed to employing a diverse workforce.
Internal AMTRAK employees must complete a job opportunities application to apply for
positions.
© Copyright 2001 TeamRewards.com. All Rights Reserved.

# Notice of Formal Investigation
### Fed Ex Tracking # 7917 5568 9868

January 17, 2002

*EXH #1*

Mr. John E. Campbell
2210 109th Avenue
Oakland, CA 94603

**Case No. 019.02**

Dear Mr. Campbell:

You are hereby directed to appear for a Formal Investigation to be conducted as follows:

|            |                                         |
|------------|-----------------------------------------|
| **Date:**  | January 25, 2002                        |
| **Time:**  | 3:00 PM                                 |
| **Location:** | Amtrak's Jack London Station         |
|            | 245 2nd Street, 2nd Floor               |
|            | Oakland, CA 94607                       |

The purpose of this investigation is to develop the facts and determine your responsibility, if any, in connection with the following:

**Charge 1:** Your alleged violation of the **General Code of Operating – Fourth Edition – April 2, 2000 – Rule 6.28 – Movement on Other than Main Track,** which reads, "Except when moving on a track where a block system is in effect, trains or engines must move at a speed that allows them to stop within half the range of vision short of:

- ❖ Train.
- ❖ Engine.
- ❖ Railroad car.
- ❖ Men or equipment fouling the track.
- ❖ Stop Signal or Derail or switch lined improperly."

**Charge 2:** Your alleged violation of the **General Code of Operating Rules – Fourth Edition – April 2, 2000 – Rule 7.1, Switching Safely and Efficiently,** which reads in part… "While switching, employees must work safely and efficiently and avoid damage to contents of cars, equipment, structures, or other property."

EXHIBIT PLT DEFT 27 for identification
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

Mr. John Campbell
Case No. 019.02
Page 2

**Charge 3:** Your alleged violation of the **General Code of Operating Rules – Fourth Edition – April 2, 2000 – Rule 7.4 Precautions for Coupling or Moving Cars or Engines,** which reads, "Before coupling to or moving cars or engines, verify that the cars or engines are properly secured and can be coupled and moved safely.

Make couplings at a speed of not more than 4 MPH. Stretch the slack to ensure that all couplings are made."

**Charge 4:** Your alleged violation of the **General Code of Operating Rules – Fourth Edition – April 2, 2000 – Rule 7.12 Movements into Spur Tracks,** which reads in part… "When shoving into a spur track, control movement to prevent damage at the end of track…."

**Specifications:** It is alleged that while working as the Conductor on Yard Job CYO-4 on January 10, 2002, while shoving into Fume track in the Oakland Yard with 17 cars and 3 units, you were directing the movement when an alleged hard coupling resulted in equipment damage and the derailment of a box car.

You may produce any witnesses you desire and may be accompanied by a representative as provided in your current and governing agreement, without expense to the National Railroad Passenger Corporation.

All requests for postponements of this investigation must be handled through the Hearing Office at (818) 547-2519.

Sincerely,


Gregg Baxter
Assistant General Manager
California Corridor

cc:     L. J. Commer - GM
        S. Birckett – AGM
        R. Wood – Labor Relations
        R. Butler – Hearing Office
        R. Belluomini – UTU Local Chairman
        L. Bellotti – Facility Manager
        D. Roberts – General Foreman
        M. McBride – Manager Operating Rules
        R. Robusto – Senior Director OPS

**PUBLIC LAW BOARD NO. 6478**

Case No. 37
Award No. 37

(United Transportation Union

**PARTIES TO DISPUTE: (**

(National Railroad Passenger Corporation (Amtrak)

**STATEMENT OF CLAIM:**

"Request the discipline of a ten days suspension to include the following: 4 days time served from January 12, 2002 - January 15, 2002 and 6 days suspension to be served between April 3, 2002 and to include April 8, 2002, and ten days to be held in abeyance, imposed upon John Campbell be rescinded and expunged from this record, and that he be compensated for all time lost in connection with the following charges:

**Charge 1:** Your alleged violation of the <u>General Code of Operating - Fourth Editions - April 2, 2000 - Rule 6.28 - Movement on Other Than Main Track</u>, which reads, 'Except when moving on a track where a block system is in effect, trains or engines must move at a speed that allows them to stop within half the range of vision short of:

- • Train
- • Engine
- • Railroad Car.
- • Men or equipment fouling the track.
- • Stop Signal or Derail or switch lined improperly.'

**Charge 2:** Your alleged violation of the <u>General Code of Operating - Fourth Editions - April 2, 2000 - Rule 7.1 Switching Safely and Efficiently</u>, which reads in part... 'While switching, employees must work safely and efficiently and avoid damage to contents of cars, equipment, structures, or other property.'

**Charge 3:** Your alleged violation of <u>General Code of Operating - Fourth Editions - April 2, 2000 - Rule 7.4 Precautions for Coupling or Moving Cars or Engines</u>, which reads, 'Before coupling to or moving cars or engines, verify that the cars or engines are properly secured and can be coupled and moved safely.

EXHIBIT PLT 29
DEFT      for identification
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

D09554

Public Law Board No. 6478
Case No. 37: Award No. 37
Page 2 of 3

'Make couplings at a speed of not more than 4 MPH.  Stretch the slack to
ensure that all couplings are made.'

Charge 4: Your alleged violation of <u>General Code of Operating - Fourth
Editions - April 2, 2000 - Rule 7.12 Movements into Spur Tracks</u>, which
reads in part... 'When shoving into a spur track, control movement to
prevent damage at the end of the track...'

<u>Specifications</u>: It is alleged that while working as the Conductor on Yard
Job CYO-4 on January 10, 2002, while shoving into the Fume track in the
Oakland yard with 17 cars and 3 units, you were directing the movement
when an alleged hard coupling resulted in equipment damage and the
derailment of a boxcar."        [System Docket OC-UTU-SD-829D]

## FINDINGS:

This Board, after hearing upon the whole record and all the evidence finds that
the Carrier and the Employee involved in this dispute are respectively Carrier and
Employee within the meaning of the Railway Labor Act, as amended; this Board has
jurisdiction over the dispute involved herein; and, the parties were given due notice of
hearing thereon.

This Board will forego a full discussion of the instant case due to its careful
examination of the record on the property.  The Agreement provision specifically sets
forth in Rule 25 (Discipline) the procedures for appeal.  Once the discipline is imposed,
the appeal must be made within fifteen (15) days "to the Labor Relations officer having
jurisdiction" in the process.  There is no dispute in this record, that the Claimant was
notified by date of March 28, 2002 of the Carrier's findings of guilt.  There is no dispute
in this record that the Organization filed claim with the Carrier's highest officer by
letter of April 12, 2002.  There is no record of any proper handling at the second level
of appeal before it went to the highest officer.

The Board is compelled by Section 3, First (I) of the Railway Labor Act, which
precludes consideration of claims that are not "handled in the usual manner up to and
including the chief operating officer of the carrier designated to handle such disputes",
*to dismiss such claims.* When, as here, the appeal process has clearly not been followed
in the usual manner on the property, the Board has no recourse, but to dismiss the

D09555

Public Law Board No. 6478
Case No. 37: Award No. 37
Page 3 of 3

dispute without reaching the merits.  The Carrier's position on property with regards to this issue is deemed proper.  The claim must be dismissed.

**AWARD:**

    The claim is dismissed.

Marty E. Zusman, Chairman
Neutral Member

C. A. Iannone
Organization Member

Wm. H. Robinson, Jr.
Carrier Member

Date: 8/2/04

D09556

# *united transportation union*

A.L. Suozzo
General Chairperson

GENERAL COMMITTEE OF ADJUSTMENT GO-769

NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK)
MASSACHUSETTS BAY COMMUTER RAILROAD (MBCR)
HERZOG TRANSIT SERVICES, INC.
CONRAIL SAA

**CERTIFIED MAIL**
**RETURNED RECEIPT REQUESTED**
**& REGULAR MAIL**
**7004 1350 0005 2727 1918**

R. M. Lenfest, Jr.
Vice Chairperson

G. R. Galvin
Secretary

July 18, 2005

Mr. John E. Campbell
2210 109th Ave.
Oakland, CA 94603

Dear Sir and Brother:

This is to advise you that the following claim in connection with which you are the Claimant, will be heard by Public Law Board No. 6478, on Monday, August 8, 2005, at 9:00 AM in the Carrier's office, Labor Relations Conference Room, 30th Street Station, 2nd Floor South Tower, Philadelphia, PA.

**System Docket No. OC-UTU-SD- SD-1678D-** Request the discipline of dismissal imposed upon J. Campbell be expunged from his record and that he be restored to service with seniority and vacation rights unimpaired and compensated for all time and expenses incurred inclusive of Health and Welfare premiums, Reduced Train Crew Allowance and Productivity Savings Sharing Allowance and credit for Railroad Retirement payments for each month for all time lost in connection therewith:

**"Charge 1:**   Your alleged violation of Amtrak's Service Standards for Train Service Employees - Manual No. 2, (effective 5/3/2004–Chapter 3B - Safety Rules for Train Service Employees - Rule 5800 – Coupling or Uncoupling Engine or Cars, which reads:

'Prior to going on, under or between standing equipment for the purpose of coupling or uncoupling engines or cars, crewmembers must:

- Discuss safety matters and work to be performed.
- Communicate before action is taken.
- Protect against moving equipment.
- Secure equipment before action is taken.
- Mentor less experienced employees to perform service safely.'



000109

1515 MARKET STREET, SUITE 708, PHILADELPHIA, PENNSYLVANIA 19102

Mr. John E. Campbell
July 18, 2005
Page 2

**Charge 2:**   Your alleged violation of **General Code of Operating Rules-Fourth Edition - April 2, 2000-Rule 7.1 - Switching Safely and Efficiently,** which reads in part . . . 'While switching, employees must work safely and efficiently and avoid damage to contents of cars, equipment, structures, or other property.'

**Charge 3:** Your alleged violation of **General Code of Operating Rules - Fourth Edition - April 2, 2000--Rule 1.47 - Duties of Trainmen and Enginemen, Item D Other Crew Members' Responsibilities, Part 1.** 'To ensure the train is operated safely and rules are observed, other crew members must assume as much responsibility as possible to prevent accidents or rule violations."

**Charge 4:**   Your alleged violation of **General Code of Operating Rules-Fourth Edition - April 2, 2000--Rule 7.4- Precautions for Coupling or Moving Cars or Engines,** which reads in part . .. 'Before coupling to or moving cars or engines, verify that the cars or engines are properly secured and can be coupled and moved safely.

**Charge 5:**   your alleged violation of **Amtrak Air Brake and Train Handling Rules And Instructions, AMT-3-Revised and Reissued August 19, 2002-Rule 2.14.16:** which reads: 'Multiple lite locomotives may be moved within the confines of a yard or terminal without connecting the M.U. hoses, as long as the brake pipe and main reservoir hoses are connected with associated angle and main reservoir cocks open.

**Specification:**   It is alleged that on July 24, 2004 while assigned to position CYO103 working as the Conductor in the Oakland Diesel Shop you cut out the brakes on a locomotive and failed to properly secure it prior to coupling."

If you desire to attend, you may do so, without expense to the United Transportation Union. Please advise this office if your intention is to attend the hearing.

Fraternally yours,

*A. L. Suozzo*
A. L. Suozzo
General Chairperson

ALS/rmb

G: Amtrak Discipline 2004/am Campbell

SO131788

## AMTRAK JOB REQUISITION AND QUALIFICATION PROFILE

POSTING NO._____                                                    DATE:_____

| **DEPARTMENT:** CUSTOMER SERVICE | **REPORTS TO:** M. COLLINS |
|---|---|
| **JOB TITLE:** LOCOMOTIVE ENGINEER (12) | **CONTACT:** C. T. Miller |
| TRAINEE | **PHONE #:** ATS: 767-4993 |

| JOB CODE: | | GRADE: | | DATE REQUIRED: | 11/1/01 | MINIMUM SALARY: | BLE Agmt. |
|---|---|---|---|---|---|---|---|
| **RES CEN:** 7270 | **FIS LOC:** 6184 | **FUNC:** 1642 | **MSA LOC:** SJC01 | | | | |
| **PARTIALLY EXCEPTED:** | | | | **NON-AGREEMENT:** | | | |
| **FULLY EXCEPTED:** | | | | **AGREEMENT:** | X | | |
| **DEPARTMENT UNDERUTILIZED:** | | | | **NEW POSITION:** YES | | | |
| **FEMALE:** | **MINORITY:** | **NONE:** | | **REPLACEMENT FOR:** RETIREES & TRANSFERS | | | |

| **OUTSIDE CANDIDATES CONSIDERED:** | NO | **RELOCATION BENEFITS APPLY:** | NO |
|---|---|---|---|
| **POSITION SUBJECT TO REASSIGNMENT:** | NO | | |

**SUMMARY OF DUTIES:**

Locomotive engineers are responsible for the safe operation of diesel electric locomotive, complying with train orders, bulletin orders, wayside signals, railroad regulations, railroad operating rules, special instructions and federal, state, and local regulations to transport passengers and equipment safely and efficiently. Locomotive engineers perform required tests and make inspections of equipment and air brakes, as required. The position involves working alone and apart in physical isolation while integrating activities with others. Locomotive engineers must have the ability to multitask and retain large amounts of material to memory and must make timely and critical decisions under stressful situations to safeguard lives and property.

**EDUCATION:**
    **MUST HAVE.** High school diploma or equivalent.
    **PREFERRED:**

**WORK EXPERIENCE:**          (include specific areas, length time, type of work, etc.)
    **MUST HAVE:** Valid drivers license and meet FRA regulation requirements for drivers license check.
    **PREFERRED:** GCOR qualifications. Must have satisfactory prior work record. Preference may be given to locally
          qualified candidates.

**COMMUNICATION AND INTERPERSONAL SKILLS:**
Strong written and verbal communication skills are needed. Must be able to read and write English.

**OTHER REQUIREMENTS:**
    Must be able to accept work assigned, willing to work and travel away from home. Work rotating shifts and holidays, weekends and irregular hours. Must be able to report to work within two hours from time of call.

**SUPERVISORY RESPONSIBILITIES:**          (number of people, scope, etc.)
                    NONE

| **TRAVEL:** | Yes | **PERCENTAGE:** | 100% |
|---|---|---|---|

**COMMENTS:**
REPLACEMENTS FOR RETIREES AND TRANSFERS - 100% COMMUTER

|  | (print name below) |  | **DATED:** |
|---|---|---|---|
| **DEPARTMENTAL APPROVAL:** David Nogar | | **SIGNATURE:** | 7/23/01 |
| **PERSONNEL APPROVAL:** | | **SIGNATURE:** | |

| **PERSONNEL OFFICE USE ONLY:** | | **CONTROL NUMBER:**_____ |
|---|---|---|
| _DATE FILLED:_____ | _PERSON HIRED:_____ | _SOURCE OF HIRE:_____ |
| _DATE OFFER LETTER SENT:_____ | _DATE ACCEPTANCE RECEIVED:_____ | _REPORTING DATE:_____ |
| _PERSONNEL_ | | |
| _REPRESENTATIVE:_ PAUL Ho | | _TOTAL DAYS REQUIRED TO FILL POSITION:_____ |
| _COMMENTS:_ | | |

IRPC 2002          adapted by rls/engineering/lax = 1/99          date filled out:          typist:

Post for 2weeKS

**EXHIBIT** PLT. **DEF.** 31 for identification

WITNESS: _J. Campbell_
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

D01794

# EXHIBIT B

1

UNTIED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN EARL CAMPBELL,

               Plaintiff,

      vs.                     No. C-05-05434 MJJ

NATIONAL RAILROAD PASSENGER
CORPORATION, et al.,



            Defendants.

_____/

DEPOSITION OF SUSAN VENTURELLI

March 23, 2007

PATRICIA CALLAHAN & ASSOCIATES, INC.
Certified Shorthand Reporters
Oakland, California   510-835-3993
San Francisco, California   415-788-3993
Castro Valley, California   510-885-2371

Facsimile 510-247-9775
WeReport@aol.com

Reported by:
DEBORAH A. PIERSON
CSR NO. 7988

1    Mr. Pruesser?

2        MS. MAYLIN:            Vague and ambiguous.  I

3    assume you are talking about Mr. Campbell.

4        MS. PRICE:            Yes, about Mr. Campbell.  We

5    don't have to assume.

6    Q.   The question is, do you recall what you asked

7    Mr. Pruesser about Mr. Campbell?

8    A.   I asked Mr. Preusser to provide information on the

9    background checks for a number of candidates, all the

10   candidates that he would have been directly supervising

11   or indirectly supervising.  Specifically, I asked about

12   attendance, safety, operating rules, discipline.

13   Q.   Do you have a memory of what Mr. Pruesser said to

14   you on those subjects, as it related to John Campbell?

15   A.   Not specifically.

16   Q.   Do you have any kind of general recollection of

17   what Mr. Pruesser told you?

18   A.   That he had rule violations on his record.

19   Q.   Did he tell you what type of rule violations?

20   A.   A rule violation would be considered a serious

21   rule violation, operating --

22   Q.   Yes.  My question is what type.

23   A.   Oh, no, no.

24   Q.   They have all kinds of rule violations.

25   A.   I apologize.  My familiarity with all the rules is

39

1    not such that I'd be an expert in understanding exactly

2    what rule it was.

3         MS. MAYLIN:          She's just asking what you

4    you can recall.  Can you recall?

5         THE WITNESS:          No.  I don't, other than what

6    I have told you.

7         MS. PRICE:          Q.  So you don't remember if

8    Mr. Preusser told you what type of rule violations or

9    what particular rule violation?

10   A.    No.  I don't remember that.

11   Q.    Did you ask him to fill out the background check

12   form for Mr. Campbell?

13   A.    I remember having sent out the background check

14   forms.  I don't remember whether I got that specific

15   form back or not.

16        When we began the recruitment process, the first

17   step was testing, which was actually a personality

18   index, because I hadn't gotten the background checks

19   back, and the time to recruit was limited.

20        I went ahead and invited all the applicants to

21   take the test.  I still hadn't gotten the background

22   checks back by the time I needed to schedule

23   interviews.  So again, I invited all the candidates who

24   were recommended based on the personality survey to

25   come for the interview.

40

1        I believe I received the background checks after

2    that, or information, at least, after that.

3    Q.    Do you believe you received the information in

4    writing after the interviews?

5    A.    Yes.

6    Q.    Do you believe you had your conversation with

7    Mr. Pruesser about the candidates after the interviews?

8    A.    Yes.

9    Q.    In the interviews, do you recall that there were

10   persons other than yourself who participated in the

11   interviews?

12   A.    Yes.

13   Q.    Who else participated in the interviews?

14   A.    Managers from San Jose, managers, I believe, from

15   Sacramento, and managers from Oakland representing each

16   crew base for where the vacancy was posted.

17   Q.    Do you recall who those persons were?

18   A.    I don't have a visual memory of who was actually

19   there.  Again, to the best of my knowledge,

20   Billy Rogers from San Jose was there.  A union rep was

21   there; I believe it was Chad Skinner, and I'm not sure

22   who the management representatives from Oakland and

23   Sacramento were.

24   Q.    How was it determined who would be on the

25   interview panel?

# EXHIBIT C

1

1          IN THE UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3

4

5     JOHN EARL CAMPBELL,

6             Plaintiff,

7        vs.                    No. C05-05434 MJJ

8     NATIONAL RAILROAD PASSENGER
      CORPORATION dba AMTRAK, JOE
9     DEELY and DOES 1 through 15,
      inclusive,
10
              Defendants.
11     _____/

12

13

14

15             DEPOSITION OF JOE DEELY

16               February 15, 2007

17

18

19

20        PATRICIA CALLAHAN & ASSOCIATES, INC.
            Certified Shorthand Reporters
21          Oakland, California  510-835-3993
          San Francisco, California  415-788-3993
22        Castro Valley, California  510-885-2371

23          Facsimile 510-247-9775
               WeReport@aol.com

24    Reported by:
      LaRelle M. Fagundes
25    CSR No. 9762

1    A.    No.

2    Q.    Okay.

3          Are there any changes you wish to make to

4    your testimony from this morning?

5    A.    No.

6    Q.    Okay.

7          Do you receive any reports on any regular

8    basis, whether annually, quarterly, monthly, of

9    identifying the people hired in the Pacific

10   division?

11   A.    No.

12   Q.    All right.  Same question with respect to

13   promotions within the Pacific division.

14   A.    Not a specific report, no.

15   Q.    Okay.  All right.

16          Is it your testimony that you did not --

17   you don't recall any involvement that you had in

18   Mr. Campbell's termination?

19          MR. OBORNE:  Objection.  Vague and

20   ambiguous.

21          THE WITNESS:  I don't recall any

22   involvement.

23  *       MS. PRICE:  Q.  Do you recall any

24   involvement in Mr. -- in the decision not to

25   promote Mr. Campbell in either 2003 or 2004?