PH.1

1    KATHLEEN MAYLIN (SBN  (SBN 155371)
     CARA CHING-SENAHA (SBN  298467)
2    JACKSON LEWIS LLP
     199 Fremont Street, 10th Floor
3    San Francisco, California  94105
     Telephone:  (415) 394-9400
4    Facsimile:  (415) 394-9401

5    Attorneys for Defendants
     NATIONAL RAILROAD PASSENGER
6    CORPORATION dba AMTRAK and JOE DEELY

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11   JOHN EARL CAMPBELL,                    Case No. C05-05434 MJJ

12            Plaintiff,                    **DECLARATION OF CARA CHING-
                                            SENAHA IN SUPPORT OF
13        v.                               DEFENDANTS' NATIONAL
                                            RAILROAD PASSENGER
14   NATIONAL RAILROAD PASSENGER            CORPORATION'S AND JOE DEELY'S
     CORPORATION dba AMTRAK, JOE DEELY,     MOTION FOR SUMMARY
15   and DOES 1-15, inclusive,             JUDGMENT, OR IN THE
                                            ALTERNATIVE, SUMMARY
16                                          ADJUDICATION**
            Defendants.
17                                          [Notice of Motion, Memorandum of Points
                                            and Authorities, and Declarations in
18                                          Support of Motion concurrently filed]

19                                          Date:      May 8, 2007
20                                          Time:      9:30 a.m.
                                            Courtroom: 11
21                                          Floor:     19
                                            Judge:     The Hon. Martin J. Jenkins
22
                                            Complaint Filed:    12/30/05
23                                          FAC Filed:          2/23/06
                                            Trial Date:         7/23/2007
24
                                            **[Fed.R.Civ.Proc. 56]**
25

26   I, Cara Ching-Senaha, declare on the basis of personal knowledge:

27        1.     I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

28   Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

                                            1                    Case No. C05-05434 MJJ

1   DEELY.  I am licensed to practice law in the above-referenced district court.  I make the
2   following statements based on personal knowledge.

3        2.     I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,
4   taken February 26, 2007.  Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages
5   from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'
6   Memorandum of Points and Authorities.

7        3.     I have reviewed in its entirety the transcript for Susan Venturelli's deposition,
8   taken March 23, 2007.  Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages
9   from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and
10  Authorities.

11       4.     I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken
12  February 15, 2007.  Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from
13  Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14       Executed this 3rd day of April, 2007 in San Francisco, California.  I declare under penalty
15  of perjury under the laws of California and the United States of America that the foregoing is true
16  and correct.

17

18                                        _Cara Ching-s_
19                                        CARA CHING-SENAHA

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               ---oOo---

4  JOHN EARL CAMPBELL,       )

5         Plaintiff,    )

6  vs.               )    No. C05-05434 MJJ

7  NATIONAL RAILROAD PASSENGER )
   CORPORATION dba AMTRAK, JOE )

8  DEELY and DOES 1 through 15 )
   inclusive,          )

9                  )

10        Defendants.   )
   _____)

**CERTIFIED COPY**

J|G| Jane GROSSMAN
R|S| REPORTING Services

11

12

13

14

15       DEPOSITION OF JOHN EARL CAMPBELL

16          February 26, 2007

17

18

19

20       Taken by SHARON TRUJILLO

21         CSR No. 6120

22

23

24    JANE GROSSMAN REPORTING SERVICES
       1939 Harrison Street, Suite 460

25     Oakland, California 94612
          510.444.4500

DEPOSITION OF JOHN EARL CAMPBELL

```
 1        A.    No.                                              12:02:55

 2        Q.    And as a member of that union, you were able

 3   to file a grievance if you ever felt that you were being

 4   treated unfairly, correct?

 5        A.    Yes.                                             12:03:04

 6        Q.    Did you ever file any grievances while you

 7   were at Southern Pacific?

 8        A.    No.

 9        Q.    Did you ever feel that you were treated

10   unfairly while you worked at Southern Pacific?            12:03:10

11        A.    No.

12        Q.    Do you have any understanding, sir, as to why

13   Southern Pacific wanted you to leave your job as a

14   condition of the settlement agreement?

15        A.    They wasn't sure my back was 100 percent        12:03:30

16   well.

17        Q.    That was your understanding?

18        A.    Yes.

19        Q.    Did you have any other understanding?

20        A.    No.                                             12:03:46

21        Q.    What were your duties at Southern Pacific?

22        A.    Track laborer.

23        Q.    What does that mean?

24        A.    Basically, hard manual labor.

25        Q.    And when you say "track," meaning on the       12:04:02
```

DEPOSITION OF JOHN EARL CAMPBELL

36

| | | |
|---|---|---|
| 1 | tracks. | 12:04:04 |
| 2 | A.    Yes. | |
| 3 | Q.    Could you give me maybe a paragraph as to what | |
| 4 | you would do on a daily basis? | |
| 5 | A.    If something derailed, track laborers would be | 12:04:11 |
| 6 | one of the ones that fixed it.  We repaired any damage | |
| 7 | to the track.  Replace ties.  Replace rail.  Basically, | |
| 8 | hard, grueling work. | |
| 9 | Q.    Heavy lifting? | |
| 10 | A.    Exactly. | 12:04:30 |
| 11 | Q.    Did you use machinery as well? | |
| 12 | A.    Yes. | |
| 13 | Q.    What type of machinery did you use? | |
| 14 | A.    Backhoe.  Tamper.  End loaders.  Dump truck. | |
| 15 | Tie handlers.  Scaffolder.  Spike -- spike -- there's | 12:04:40 |
| 16 | numerous.  I could -- I can't think of nothing else, but | |
| 17 | it's numerous machines. | |
| 18 | Q.    Okay.  How long did you work at Southern | |
| 19 | Pacific? | |
| 20 | A.    Eight years. | 12:05:03 |
| 21 | Q.    While you were there, sir, had you ever been | |
| 22 | subjected to discipline? | |
| 23 | A.    No. | |
| 24 | Q.    Okay. | |
| 25 | MS. MAYLIN:  What I'd like to do is mark as | 12:05:16 |

DEPOSITION OF JOHN EARL CAMPBELL

1    Q.   What position did you apply for?                    12:09:06

2    A.   Assistant conductor.

3    Q.   Okay.  And did you eventually interview for

4    the position?

5    A.   Yes.                                                12:09:22

6    Q.   Okay.  Who did you interview with?

7    A.   Denise Sargeant, Tom Oughton, and Dan Johnson.

8    Q.   And I understand you were hired?

9    A.   Yes.

10   Q.   Okay.  What was your starting salary, sir?         12:09:43

11   A.   Nine thirty an hour.

12   Q.   And did you join the union at that time?

13   A.   After 90 days, yes.

14   Q.   Which union did you join?

15   A.   The UTU.                                            12:09:59

16   Q.   And what was your -- I'm sorry.  What were

17   your job duties as an assistant conductor?

18   A.   Basically, I help passengers on and off the

19   train, take tickets, make sure of the safe operation of

20   the train I was assigned to.                            12:10:21

21   Q.   No hand labor I take it?

22   A.   No.

23   Q.   And, sir, you mentioned safe operation of the

24   trains.  Did you have a -- a handbook or a guideline     

25   that you had to follow as far as safety regulations?    12:10:41

DEPOSITION OF JOHN EARL CAMPBELL

41



1    A.    Yes.                                                    12:10:44

2    Q.    Okay.  How many booklets or handbooks did you

3    have, do you recall?

4    A.    Five.

5    Q.    Do you recall the names of those books?           12:10:53

6    A.    I -- ATM (sic) -- AMT, Amtrak Safety Book,

7    Union Pacific Special Instruction, Union Pacific

8    Timetable, BNSF Special Instruction, BNSF Timetable.

9    Q.    Okay.  And it was your job to understand the

10   safety rules in those five books?                       12:11:20

11   A.    Correct.

12   Q.    Okay.  All right.  Let's see, here.  So when

13   was it that you were initially hired, sir?

14   A.    September of '98.

15   Q.    Okay.  How long did you remain in the position    12:11:36

16   of assistant conductor?

17   A.    One year.

18   Q.    So to September '99?

19   A.    Yes.

20   Q.    Who was your supervisor at that time?             12:11:46

21   A.    Tom Oughton and Mark Schulthies.

22   Q.    I'm sorry?

23   A.    Mark Schulthies.

24   Q.    What were their positions, if you know?

25   A.    One was road foreman of engines.  I don't know    12:12:07

DEPOSITION OF JOHN EARL CAMPBELL

| | | |
|---|---|---|
| 1 | at that site? | 12:16:30 |
| 2 | A.    The boss of the crew, not of the yard. | |
| 3 | Q.    Got it.  Got it.  Okay.  All right.  And did | |
| 4 | you get that position, Mr. Campbell? | |
| 5 | A.    The first time, no. | 12:16:39 |
| 6 | Q.    Did you have an understanding as to why you | |
| 7 | didn't get that position? | |
| 8 | A.    Someone with more seniority bidded on it. | |
| 9 | Q.    Okay.  So you didn't have a problem with that, | |
| 10 | did you? | 12:16:54 |
| 11 | A.    No.  Seniority based, no problem. | |
| 12 | Q.    Okay.  All right.  And when -- did you | |
| 13 | continue after that, then, working the extra boards? | |
| 14 | A.    No.  I became the assistant yard conductor | |
| 15 | after that. | 12:17:09 |
| 16 | Q.    How did you acquire that job? | |
| 17 | A.    I bidded on it. | |
| 18 | Q.    Okay.  Can you give me a month and year? | |
| 19 | A.    No -- I can't narrow it down to exact -- but | |
| 20 | it was 1990, thereabouts. | 12:17:30 |
| 21 | Q.    Okay.  Who was your supervisor then? | |
| 22 | A.    I think it's still Oughton, Schulthies. | |
| 23 | Q.    Okay.  What was your shift? | |
| 24 | A.    First part it was the swing shift, which is | |
| 25 | 4 p.m. to 2 a.m. | 12:17:53 |

DEPOSITION OF JOHN EARL CAMPBELL

```
 1        Q.    Okay.                                          12:17:58

 2        A.    And several months later I got the 10 p.m. to

 3   6 a.m. midnight yard.

 4        Q.    Okay.  Did your pay change when you got that

 5   position?                                                 12:18:11

 6        A.    No.

 7        Q.    Okay.  So you were still making nine thirty an

 8   hour?

 9        A.    No.  Nine thirty an hour is for class when

10   they're training us.  After 90 days it went up to like    12:18:22

11   17 bucks.

12        Q.    Oh.  Okay.  All right.  So the same pay,

13   though, for an assistant yard conductor as an assistant

14   conductor?

15        A.    An assistant conductor on the road make a       12:18:35

16   little more than a yard conductor.  The -- the hourly

17   rate is the same, but we get other things, like being

18   away from home for more than three or four hours.  Stuff

19   like that.  Little things that makes it more.  The yard

20   conductor is just a flat hourly rate.                      12:18:56

21        Q.    Okay.  All right.  Okay.  So in 199 you're

22   the assistant yard conductor.  You have the same

23   supervisors.  Did your job change after that time?

24        A.    I became a yard conductor maybe a year later

25   2000.                                                      12:19:23
```

DEPOSITION OF JOHN EARL CAMPBELL

| | | |
|---|---|---|
| 1 | Q. Okay. Prior to -- so you put a bid on a yard | 12:19:31 |
| 2 | conductor job? | |
| 3 | A. Exactly. | |
| 4 | Q. Okay. Prior to that time in 2000 -- by the -- | |
| 5 | oh, before I ask that, do you recall the month in 2000? | 12:19:40 |
| 6 | A. No. I do not. | |
| 7 | Q. Okay. Prior to putting a bid on a yard | |
| 8 | conductor job, though, in 2000, had you bid on any other | |
| 9 | jobs, or applied for any other jobs, other than what | |
| 10 | you've testified to? | 12:19:55 |
| 11 | A. I applied for the train engineer's job. | |
| 12 | Q. Okay. And when did you do that? | |
| 13 | A. October of '98. | |
| 14 | Q. How are you sure about the date, sir? | |
| 15 | A. Because I only been there a month, and my | 12:20:11 |
| 16 | supervisor, Mark Schulthies, saw me moving the | |
| 17 | locomotive around the yard, and he was just surprised I | |
| 18 | was -- I just got hired, and he didn't know I knew how | |
| 19 | to do that, so he gave me an application for a train | |
| 20 | engineer. | 12:20:29 |
| 21 | Q. And that was in October '98? | |
| 22 | A. Uh-huh. | |
| 23 | Q. That's a yes? | |
| 24 | A. Yes. | |
| 25 | Q. And, sir, was it within proper Amtrak protocol | 12:20:35 |

DEPOSITION OF JOHN EARL CAMPBELL

```
 1   AFTERNOON SESSION                                1:27 P.M.      12:30:56

 2

 3              EXAMINATION BY MS. MAYLIN (Resumed)

 4

 5        THE VIDEOGRAPHER:  We are back on the record.             01:27:18

 6   It is 1:27.

 7        MS. MAYLIN:  Okay.  What I marked here as

 8   Exhibit 2 is a -- let's see, one, two -- four-page

 9   document.  Bates-stamped D10282 through 285.

10              (Whereupon, Defendants' Exhibit No.                  01:27:43

11              2 was marked for identification.)

12        MS. MAYLIN:  Q.  There you go, Mr. Campbell.

13   Mr. Campbell, this appears to be your application for

14   employment with Amtrak; is that correct?

15        A.  Yes.                                                   01:27:52

16        Q.  Okay.  And that is your signature at the

17   bottom of the first page?

18        A.  Yes.

19        MS. PRICE:  Counsel, before we go on,

20   Mr. Campbell has two items of information he needs to            01:28:01

21   clarify.

22        Go ahead.

23        THE WITNESS:  My job insurance only lasted a

24   year, not two years.  And the second year I cashed in my

25   401K and my savings, so that's -- so that's -- that --          01:28:16
```

DEPOSITION OF JOHN EARL CAMPBELL

Pt. 2

1  KATHLEEN MAYLIN (SBN (SBN 155371)
   CARA CHING-SENAHA (SBN  298467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California  94105
   Telephone: (415) 394-9400
4  Facsimile: (415) 394-9401

5  Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
6  CORPORATION dba AMTRAK and JOE DEELY

7

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11
   JOHN EARL CAMPBELL,                    Case No. C05-05434 MJJ
12
                Plaintiff,                **DECLARATION OF CARA CHING-
13                                        SENAHA IN SUPPORT OF
          v.                              DEFENDANTS' NATIONAL
14                                        RAILROAD PASSENGER
   NATIONAL RAILROAD PASSENGER            CORPORATION'S AND JOE DEELY'S
15 CORPORATION dba AMTRAK, JOE DEELY,     MOTION FOR SUMMARY
   and DOES 1-15, inclusive,              JUDGMENT, OR IN THE
16                                        ALTERNATIVE, SUMMARY
                Defendants.               ADJUDICATION**
17
                                          [Notice of Motion, Memorandum of Points
18                                        and Authorities, and Declarations in
                                          Support of Motion concurrently filed]
19
                                          Date:        May 8, 2007
20                                        Time:        9:30 a.m.
                                          Courtroom:   11
21                                        Floor:       19
                                          Judge:       The Hon. Martin J. Jenkins
22
                                          Complaint Filed:   12/30/05
23                                        FAC Filed:         2/23/06
                                          Trial Date:        7/23/2007
24
                                          **[Fed.R.Civ.Proc. 56]**
25

26 I, Cara Ching-Senaha, declare on the basis of personal knowledge:

27      1.    I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

28 Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

                                        1

1   DEELY.  I am licensed to practice law in the above-referenced district court.  I make the

2   following statements based on personal knowledge.

3       2.      I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,

4   taken February 26, 2007.  Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages

5   from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'

6   Memorandum of Points and Authorities.

7       3.      I have reviewed in its entirety the transcript for Susan Venturelli's deposition,

8   taken March 23, 2007.  Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages

9   from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and

10  Authorities.

11      4.      I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken

12  February 15, 2007.  Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from

13  Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14      Executed this 3rd day of April, 2007 in San Francisco, California.  I declare under penalty

15  of perjury under the laws of California and the United States of America that the foregoing is true

16  and correct.

17

18                                                  _Cara Chang_____

19                                                  CARA CHING-SENAHA

20

21

22

23

24

25

26

27

28



```
 1   one was filed?                                          01:42:07

 2        A.   Actually, this is the second one, I think.

 3        Q.   Are you sure about that?

 4        A.   Yeah.

 5        Q.   Hum.  Well, let's see here.  That was January  01:42:16

 6   '04.

 7        A.   Uh-huh.

 8        Q.   All right.  You think there was one filed

 9   before that?

10        A.   Yes.                                           01:42:33

11                       (Whereupon, Defendants' Exhibit No.

12                       5 was marked for identification.)

13             MS. MAYLIN:  Q.  Okay.  What I'm marking now

14   as Exhibit 5 -- this is going to be a test.  Let's

15   see -- is a one-page document, with a little rip at the  01:42:54

16   top left.  There you go, Mr. Campbell.  It's

17   Bates-stamped 0000001 (sic).  Mr. Campbell, is that your

18   signature at the bottom?

19        A.   Yes.

20        Q.   Okay.  And did you sign that around August 16,  01:43:23

21   2005?

22        A.   It is dated that, yes.

23        Q.   Okay.  Well, do you believe that you signed it

24   the -- on the day that you dated it?

25        A.   Yes.                                            01:43:34
```

DEPOSITION OF JOHN EARL CAMPBELL

1        Q.    All right.  And, sir, you signed it also under    01:43:34

2    penalty of perjury, correct?

3        A.    Yes.

4        Q.    All right.  And, sir, is this the second    01:43:44

5    administrative charge that you filed?

6        A.    Apparently this is the second.

7        Q.    Okay.  And it looks like that's August '05, as

8    opposed to 2004.  So let me ask you a question here.

9    Does that refresh your recollection that the one we just

10   looked at, Exhibit (sic) 3 and 4, that that was the    01:44:01

11   first one you filed?

12       A.    Yes.

13       Q.    Okay.  And what we're looking at now, Exhibit

14   5, that was the second one that you filed?

15       A.    Yes.    01:44:14

16       Q.    All right.  And, sir, it looks to me like this

17   administrative charge was filed with the Department of

18   Fair Employment and Housing.  Is that your recollection

19   as well?

20       A.    Yes.    01:44:27

21       Q.    Okay.  Did you have counsel at the time you

22   filed this?

23       A.    '05.  Yes.

24       Q.    Okay.  And was -- is that your current

25   counsel, Price and Associates?    01:44:37

DEPOSITION OF JOHN EARL CAMPBELL

1     MS. PRICE:  Same objection.  Calls for a legal      01:31:39

2  conclusion, and I'm -- it's also argumentative and

3  misstates the witness's testimony.

4          THE WITNESS:  No.

5          MS. MAYLIN:  Q.  Mr. Campbell, you filed a      01:32:01

6  couple of administrative charges with the EEOC and DFEH.

7  Do you recall that?

8     A.   Yes.

9     Q.   Let's see what I did with them.  Here we go.

10 Okay.  How many charges did you file, that you can       01:32:20

11 recall?

12    A.   Two.

13    Q.   Two?

14    A.   Yes.

15    Q.   All right.  Were they both with the EEOC or     01:32:28

16 with the DFEH, or one each, or do you recall?

17    A.   I think they were both with the EEOC.

18    Q.   All right.  Well, I'll give you the one that I

19 have as being the first one, and I'll see if that's

20 true.  What I'm marking as Exhibit 3 is a one-page       01:32:49

21 document, Bates stamped D00919.  Here you go.

22              (Whereupon, Defendants' Exhibit No.

23              3 was marked for identification.)

24          MS. MAYLIN:  Q.  Mr. Campbell, this appears to

25 me to be a charge of discrimination filed with the EEOC.  01:33:11

DEPOSITION OF JOHN EARL CAMPBELL

1   It looks like it was signed on January 28, 2004 and     01:33:15
2   marked received by the EEOC on February 9, 2004. Sir,
3   is that your signature at the bottom?
4        A.   Yes.
5        Q.   Okay.  Do you recall submitting this form to     01:33:27
6   the EEOC, Mr. Campbell?
7        A.   Yes.
8        Q.   And, sir, was this the first of the charges
9   that you filed with either the EEOC or DFEH?
10       A.   Yes.                                             01:33:38
11       Q.   Okay.  And, sir, were you represented by
12  counsel at the time that you signed this and submitted
13  it?
14       A.   No.
15       Q.   Okay.  Did anyone help you fill this out?        01:33:49
16       A.   No.
17       Q.   You did it all on your own?
18       A.   Yes.
19       Q.   Okay.  So the typed part of the document,
20  where there's some fill-in-the-blanks, or there's Xs and  01:34:00
21  some blanks, and then there's some typed-in information,
22  did you type that in yourself?
23       A.   No.
24       Q.   Who typed that, as far as you know?
25       A.   I suppose somebody at the EEOC.                  01:34:15

DEPOSITION OF JOHN EARL CAMPBELL

```
 1          you sent in an old resume?                    01:52:14

 2          "Isn't that true?

 3          "Answer:  I also sent in an Amtrak

 4          application with this resume, so...")

 5          MS. PRICE:  Thank you.                         01:53:09

 6          MS. MAYLIN:  Q.  I guess you're taking a break,

 7   Mr. Campbell.

 8          THE VIDEOGRAPHER:  It is 1:53.  We're going

 9   off the record.

10          (Recess taken:  1:53 p.m. until 2:02 p.m.)     01:53:18

11          THE VIDEOGRAPHER:  We are back on the record.

12   It is 2:02.

13          MS. MAYLIN:  Q.  Actually, I'm sorry, we've

14   got to go off the record just for a sec.

15          THE VIDEOGRAPHER:  We're going off the record.  02:03:30

16   It is 2:03.

17          (Recess taken:  2:03 p.m. until 2:04 p.m.)

18          THE VIDEOGRAPHER:  We are back on the record,

19   and it is 2:04.

20          MS. MAYLIN:  Q.  Okay, Mr. Campbell, you were   02:04:14

21   initially hired, as you said, as an assistant conductor.

22   What I'm marking here as Exhibit 7 is a multiple-page

23   document, D01276 (sic) and 77.  Here you go.  This is

24   the letter you received from Amtrak, correct?

25          A   Correct.                                   02:04:39
```

DEPOSITION OF JOHN EARL CAMPBELL

1        (Whereupon, Defendants' Exhibit No.          02:04:41

2        7 was marked for identification.)

3        MS. MAYLIN:  Q.  And that was sent to you by

4    Denise Sargeant, who you testified was the

5    African-American member of the panel who you interviewed    02:04:49

6    with, correct?

7        A.   Correct.

8        Q.   Okay.  And when you started with Amtrak, you

9    got quite a few booklets and documents to look at,

10   didn't you?                                                 02:05:04

11       A.   Yes.

12       Q.   Okay.  And what I'm marking here as Exhibit 8

13   is a "New-Hire Checklist - Agreement..."  There you go,

14   Mr. Campbell.  D10275.

15       (Whereupon, Defendants' Exhibit No.                     02:05:17

16       8 was marked for identification.)

17       MS. MAYLIN:  Q.  And that's your signature on

18   that page, correct?

19       A.   Correct.

20       Q.   Okay.  And on September 30, 1998, you signed       02:05:23

21   that you received all of the information that are marked

22   as "yes" checks, correct?

23       A.   Correct.

24       Q.   Okay.  And, sir, you do see that you've

25   checked "yes" that you received the company's Equal         02:05:50

DEPOSITION OF JOHN EARL CAMPBELL

```
 1   Employment Opportunity Policy; do you see that?        02:05:54

 2        A.   Yes.

 3        Q.   Okay.   And you did receive that, didn't you?

 4        A.   Yes.

 5        Q.   Okay.   And you also received harassment      02:06:00

 6   information as well?

 7        A.   Yes.

 8        Q.   Okay.   And you understood, didn't you

 9   Mr. Campbell, that Amtrak had a pretty detailed

10   harassment and -- non-harassment, non-discrimination    02:06:15

11   policy and complaint procedure, correct?

12             MS. PRICE:   Objection.   Vague and ambiguous as

13   to "pretty detailed."

14             THE WITNESS:   Correct.

15             MS. MAYLIN:   Q.   Okay.   And indeed, you      02:06:28

16   understood, over the years of your employment at Amtrak,

17   that Amtrak has an EEOC -- I'm sorry, an EEO officer who

18   is responsible for taking any complaints and

19   investigating complaints, correct?

20             MS. PRICE:   Objection.   Lacks foundation;     02:06:47

21   assumes facts; calls for speculation.

22             THE WITNESS:   Correct.

23             MS. MAYLIN:   Q.   Okay.   And you had two times

24   during your employment where you had contact with the

25   EEOC officer, didn't you?                                02:07:02
```

DEPOSITION OF JOHN EARL CAMPBELL

85

```
 1      Q.   And I don't recall if I asked you, who were        02:25:58
 2   your supervisors when you were a yard conductor?
 3      A.   At the time, Mark Schulthies and Tom Oughton.
 4      Q.   Okay.  And how did your duties change as a
 5   yard director from being an assistant conductor?          02:26:11
 6      A.   Just the bid process.
 7      Q.   But what was -- what was the change in your
 8   actual day-to-day duties?
 9           MS. PRICE:  Objection.  Lacks foundation,
10   assumes facts.                                            02:26:22
11           THE WITNESS:  I just went from being number
12   two to number one in charge of -- you know,
13   authority-wise.
14           MS. MAYLIN:  Q.  So it didn't change your
15   duties at all?                                            02:26:33
16      A.   It just gave me more responsibilities.
17      Q.   What more responsibility did it give you?
18      A.   I was in charge of all of the moves in the
19   yard involving the trains, make-up, break-up.
20   Everything was basically on me.                           02:26:45
21      Q.   Okay.  When you say you're in charge of all
22   the moves in the yard, what does that mean?
23      A.   The mechanical foreman would give us a switch
24   list, and I would have to perform, you know, and I had
25   like ten hours to do it, so...                            02:27:05
```

DEPOSITION OF JOHN EARL CAMPBELL

97

Ꝑ.3

1   KATHLEEN MAYLIN (SBN (SBN 155371)
    CARA CHING-SENAHA (SBN 298467)
2   JACKSON LEWIS LLP
    199 Fremont Street, 10th Floor
3   San Francisco, California 94105
    Telephone: (415) 394-9400
4   Facsimile: (415) 394-9401

5   Attorneys for Defendants
    NATIONAL RAILROAD PASSENGER
6   CORPORATION dba AMTRAK and JOE DEELY

7

8                        UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  JOHN EARL CAMPBELL,                    Case No. C05-05434 MJJ

12              Plaintiff,                 **DECLARATION OF CARA CHING-
                                           SENAHA IN SUPPORT OF
13        v.                               DEFENDANTS' NATIONAL
                                           RAILROAD PASSENGER
14  NATIONAL RAILROAD PASSENGER            CORPORATION'S AND JOE DEELY'S
    CORPORATION dba AMTRAK, JOE DEELY,     MOTION FOR SUMMARY
15  and DOES 1-15, inclusive,              JUDGMENT, OR IN THE
                                           ALTERNATIVE, SUMMARY
16                                         ADJUDICATION
17              Defendants.
                                           [Notice of Motion, Memorandum of Points
18                                         and Authorities, and Declarations in
                                           Support of Motion concurrently filed]
19
                                           Date:       May 8, 2007
20                                         Time:       9:30 a.m.
                                           Courtroom:  11
21                                         Floor:      19
                                           Judge:      The Hon. Martin J. Jenkins
22
                                           Complaint Filed:   12/30/05
23                                         FAC Filed:         2/23/06
                                           Trial Date:        7/23/2007
24
                                           **[Fed.R.Civ.Proc. 56]**
25

26  I, Cara Ching-Senaha, declare on the basis of personal knowledge:

27        1.      I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

28  Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

                                        1

1  DEELY.  I am licensed to practice law in the above-referenc          rt.  I make the

2  following statements based on personal knowledge.

3          2.      I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,

4  taken February 26, 2007.  Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages

5  from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'

6  Memorandum of Points and Authorities.

7          3.      I have reviewed in its entirety the transcript for Susan Venturelli's deposition,

8  taken March 23, 2007.  Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages

9  from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and

10  Authorities.

11          4.      I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken

12  February 15, 2007.  Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from

13  Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14          Executed this 3rd day of April, 2007 in San Francisco, California.  I declare under penalty

15  of perjury under the laws of California and the United States of America that the foregoing is true

16  and correct.

17

18                                                    _Cara Ching_

19                                                    CARA CHING-SENAHA

20

21

22

23

24

25

26

27

28

DECL. OF CARA CHING-SENAHA ISO DEF. NAT'L RAILROAD'S NOTICE OF MOT. & MOT. FOR SUMM. J. AND PARTIAL SUMM J.

```
1    several incidents of misconduct during your employment.    02:44:32
2    Can you tell me the first time there was an incident
3    where you were charged with a rules infraction?
4         MS. PRICE:  Objection.  Lacks foundation;
5    assumes facts.  It's also argumentative.  Also, object    02:44:46
6    to the preface.
7         Do you need to have the question read back?
8    Do you know what the question is?
9         THE WITNESS:  Yeah.
10        MS. MAYLIN:  Q.  When is the first time you    02:45:05
11   were charged with a rules infraction when you were
12   employed by Amtrak?
13        A.  I don't know the date, but it involved the
14   boxcar derailing.
15        MS. PRICE:  Okay.  She's asking you for the    02:45:16
16   date.
17        THE WITNESS:  I don't have the dates.
18        MS. MAYLIN:  Q.  Okay.  Was it in 2000,
19   Mr. Campbell, March 24, 2000, does that sound right?
20        A.  Yeah.    02:45:27
21        Q.  Okay.  And there was a boxcar derailment?
22        A.  Yes.
23        Q.  Okay.  And I understand that the recommended
24   discipline for that misconduct was termination, is that
25   correct?    02:45:41
```

DEPOSITION OF JOHN EARL CAMPBELL

| | | |
|---|---|---|
| 1 | A.    No. | 02:45:41 |
| 2 | MS. PRICE:  Objection.  Lacks foundation; | |
| 3 | calls for speculation. | |
| 4 | MS. MAYLIN:  Q.  Okay.  Well, do you recall, | |
| 5 | Mr. Campbell, that that was the recommended discipline, | 02:45:47 |
| 6 | but that you acknowledged your misconduct, and you | |
| 7 | waived your right to an formal investigation, and as a | |
| 8 | result, you were issued instead a letter of reprimand? | |
| 9 | MS. PRICE:  Objection.  Or, I'm sorry.  Are | |
| 10 | you finished with the question? | 02:46:02 |
| 11 | MS. MAYLIN:  Yes. | |
| 12 | MS. PRICE:  Okay.  Objection.  The question is | |
| 13 | compound; lacks foundation; assumes facts. | |
| 14 | THE WITNESS:  Ask me the first part first. | |
| 15 | Like she said, you asked me four different questions | 02:46:15 |
| 16 | there. | |
| 17 | MS. MAYLIN:  Q.  Okay.  Let's try it -- I'll | |
| 18 | try to ask you fewer than four.  I'll try to ask you | |
| 19 | one. | |
| 20 | Mr. Campbell, it is true in March 24, 2000 -- | 02:46:28 |
| 21 | on March 24, 2000, that that incident resulted in a | |
| 22 | charge of misconduct, but you admitted the misconduct; | |
| 23 | is that correct? | |
| 24 | MS. PRICE:  Objection.  It's still compound; | |
| 25 | assumes facts, lacks foundation. | 02:46:50 |

DEPOSITION OF JOHN EARL CAMPBELL

| | | |
|---|---|---|
| 1 | ~~just try to answer -- if you can, answer the~~ | 02:46:53 |
| 2 | ~~question. If you need to have it rephrased, let her~~ | |
| 3 | ~~know.~~ | |
| 4 | ~~THE WITNESS: I'm going to just say yes.~~ | |
| 5 | MS. PRICE: Don't just say yes. You need to | 02:47:04 |
| 6 | make sure your answer is accurate. | |
| 7 | MS. MAYLIN: Q. Well, if you'd like to see | |
| 8 | that language written on a piece of paper that you | |
| 9 | signed, Mr. Campbell, I can certainly provide that. | |
| 10 | Here's what I've marked as Exhibit 13. | 02:47:18 |
| 11 | A.   Okay. | |
| 12 | Q.   There you go.  Maybe you'll find that amusing | |
| 13 | as well. | |
| 14 | (Whereupon, Defendants' Exhibit No. | |
| 15 | 13 was marked for identification.) | 04:48:10 |
| 16 | MS. PRICE:  Okay.  And the language that | |
| 17 | you're suggesting to him where he says, "I acknowledge | |
| 18 | my misconduct," is in what paragraph, Counsel? | |
| 19 | MS. MAYLIN:  Q.  Is that your signature on the | |
| 20 | page, sir? | 02:47:28 |
| 21 | A.   No. | |
| 22 | MS. PRICE:  Can you -- you asked (sic) a | |
| 23 | question pending when you made a statement that this | |
| 24 | document reflected him acknowledging his misconduct. | |
| 25 | Can you -- | 02:47:37 |

DEPOSITION OF JOHN EARL CAMPBELL

1      MS. MAYLIN:  I'm going to take him through it,     02:47:38

2   Counsel, if you'll stop talking.  I'd like to ask a

3   question.

4      MS. PRICE:  Well, I object.  The question you

5   asked earlier lacks foundation.  It was misleading.  It     02:47:44

6   was argumentative.  And I don't know if you're doing

7   that intentionally, but the record will reflect the

8   language that you just represented to the witness would

9   be in this document.  I don't see it here.  And you're

10  obviously declining to make that representation on the     02:47:58

11  record now that the document has been marked, but that's

12  contrary to what you represented to the witness before

13  you showed him the document.

14      MS. MAYLIN    Q.  Mr. Campbell, is this your

15  signature on this page that I just marked as Exhibit 132     02:48:11

16      A.  That is my signature.

17      Q.  Okay.  And see under "Charges" it states your

18  alleged failure to follow the general code of operating

19  rules, third edition, and it has a lot of numbers there,

20  but Safety Rule 3316F, and AMT3, Rule 16.2.  You     02:48:27

21  understood that that's what you were charged with,

22  correct?

23      A.  Correct.

24      Q.  And, specifically, under "Specification," it

25  states that there was damage to equipment during the     02:48:45

DEPOSITION OF JOHN EARL CAMPBELL

1    11 p.m. yard assignment of March 24, 2000, damage to the    02:48:45

2    cables occurred when 8804 was cut from 8030 on two

3    tracks, and further damage was done when 8804 was moved

4    to A track, and damages were unreported.  Did you

5    understand that those were the specifications of the    02:49:04

6    charges, Mr. Campbell?

7        A.    Yes.

8        Q.    Okay.  And did you agree to accept the

9    following discipline assessed by Amtrak, that a letter

10   of reprimand will be issued to you and placed in your    02:49:18

11   file?

12       A.    Yes.

13       Q.    Okay.  And you signed that you accepted that

14   discipline for those infractions on April 13, 2000,

15   correct?    02:49:31

16       A.    Correct.

17       Q.    Okay.  And you waived your right to a formal

18   investigation that had been scheduled for April 12,

19   2000, correct?

20       A.    Correct.    02:49:43

21       Q.    Okay.  And when you -- you understood that

22   when you waived your right to a formal investigation,

23   and you accept the discipline, that that means that you

24   did not contest the charges or the specifications,

25   correct?    02:49:58

DEPOSITION OF JOHN EARL CAMPBELL



```
 1        MS. PRICE:  Objection.  Lacks foundation,       02:49:59

 2   calls for a legal conclusion.

 3        MS. MAYLIN:  Q.  Correct, Mr. Campbell?

 4        A.   Correct.

 5        MS. PRICE:  Same objections.                      02:50:06

 6        MS. MAYLIN:  Q.  Did you ever learn,

 7   Mr. Campbell, that had you not agreed to the discipline,

 8   that that charge, those actually charges, three charges,

 9   would be grounds for termination?

10        A.   First I'm hearing of it.                     02:50:41

11        Q.   So the answer is no?

12        A.   No.

13        Q.   And as far as you know, a formal letter of

14   reprimand was put in your personnel file, correct?

15        A.   Correct.                                      02:51:04

16        Q.   Okay.  Do you recall having any -- being

17   charged with any rule infraction prior to 2000?

18        A.   No, I don't recall.

19        Q.   All right.  When is the next time you were     02:51:19

20   charged with a rule infraction?

21        A.   2002, maybe.

22        Q.   Okay.  What occurred then?

23        A.   That was the incident with the boxcar being

24   pushed off the track.

25        Q.   Oh, that was the derailment?                  02:51:33
```

DEPOSITION OF JOHN EARL CAMPBELL

```
 1       A.   Yes.                                           02:51:35

 2       Q.   Okay.  So that was where a boxcar actually

 3  came off altogether, right?

 4       A.   One wheel came off.  Not the whole bus.  Just

 5  one wheel.                                               02:51:45

 6       Q.   Okay.  Is that not serious when just one wheel

 7  comes off, as opposed to all four?

 8            MS. PRICE:  Objection.  Vague and ambiguous.

 9            THE WITNESS:  Depends on who the boss is.

10            MS. MAYLIN:  Q.  Is that right, Mr. Campbell?  02:51:59

11  So a one-wheel derailment is not considered significant,

12  as far as you know?

13            MS. PRICE:  Objection.  Lacks foundation;

14  calls for speculation.  Also, vague and ambiguous.

15            THE WITNESS:  Any derailment is serious.       02:52:16

16            MS. MAYLIN:  Q.  All right.  How many rules

17  infractions were you charged with for that incident?

18       A.   I have no idea.

19       Q.   Okay.  Well, isn't it true, Mr. Campbell, that

20  you were charged with four infractions?  And I'll list   02:52:33

21  them and see if that refreshes your recollection.

22  Failing to work safely and to avoid damage to equipment

23  is one.  Failing to verify cars were properly secured

24  before coupling or moving.  That's two.  Failing to

25  control train movement while moving cars onto a spur     02:52:52
```

DEPOSITION OF JOHN EARL CAMPBELL

```
 1   track.  That's three.  And moving a train at an unsafe      02:52:56
 2   speed.  Four.  Does that refresh your recollection, sir?
 3        A.  Yes.
 4        Q.  Okay.  And it's true, isn't it, that Amtrak
 5   conducted a formal investigation in March 2002?           02:53:09
 6        A.  Yes.
 7        Q.  Okay.  And there was a hearing where you
 8   testified, correct?
 9        A.  Correct.
10        Q.  Okay.  And based largely on your own            02:53:17
11   admissions, you were assessed a 20-day suspension,
12   correct?
13           MS. PRICE:  Objection.  Lacks foundation;
14   calls for speculation.
15           THE WITNESS:  I thought it was ten.              02:53:32
16           MS. MAYLIN:  Q.  Yeah.  And actually what I
17   have here, sir, and maybe this will refresh you
18   recollection, it was a 20-day suspension, but ten days
19   were held in abeyance.  Does that sound right?
20        A.  Yes.                                            02:53:42
21        Q.  Okay.  And you completed your suspension in
22   April 2002?
23        A.  Yes.
24        Q.  All right.  And your union appealed the
25   suspension to the Public Law Board; is that true?       02:53:53
```

DEPOSITION OF JOHN EARL CAMPBELL

```
 1   I got blamed for it.  Simple as that.                   02:55:37
 2         Q.   Okay.  Well -- and then you didn't report the
 3   damage, right?
 4         A.   I didn't know it was damaged until somebody
 5   came and told me.                                        02:55:47
 6         Q.   Okay.  Well, how did you know that the crew
 7   hadn't done -- the electrical crew hadn't done their job
 8   with the flag, though?
 9         A.   At the end of the shift they told me the car
10   was damaged, after I had pulled it out and re-spotted,   02:55:58
11   getting ready to go home.  They said, oh, those cables
12   were pulled out.
13              I said, "What?"
14              They said, "Yeah."  They were still hooked up,
15   so that's how I knew.  It was like three hours later.    02:56:12
16         Q.   Okay.  So it was the delay in the three hours
17   of non-reporting?
18         A.   Yeah.
19              MS. PRICE:  Objection.  Vague.
20              MS. MAYLIN:  Q.  When was it -- when was it    02:56:20
21   reported, as far as you can recall?
22         A.   They reported it to their supervisor, and then
23   they -- their supervisor told me, and I wrote up a
24   report.
25         Q.   Okay.  As part of the yard conductor protocol, 02:56:35
```

DEPOSITION OF JOHN EARL CAMPBELL

P4.4

1  KATHLEEN MAYLIN (SBN (SBN 155371)
   CARA CHING-SENAHA (SBN  298467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California  94105
   Telephone: (415) 394-9400
4  Facsimile: (415) 394-9401

5  Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
6  CORPORATION dba AMTRAK and JOE DEELY

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11 JOHN EARL CAMPBELL,                    Case No. C05-05434 MJJ

12              Plaintiff,                **DECLARATION OF CARA CHING-
                                          SENAHA IN SUPPORT OF
13      v.                                DEFENDANTS' NATIONAL
                                          RAILROAD PASSENGER
14 NATIONAL RAILROAD PASSENGER            CORPORATION'S AND JOE DEELY'S
   CORPORATION dba AMTRAK, JOE DEELY,     MOTION FOR SUMMARY
15 and DOES 1-15, inclusive,              JUDGMENT, OR IN THE
                                          ALTERNATIVE, SUMMARY
16              Defendants.               ADJUDICATION**

17                                        [Notice of Motion, Memorandum of Points
                                          and Authorities, and Declarations in
18                                        Support of Motion concurrently filed]

19                                        Date:        May 8, 2007
20                                        Time:        9:30 a.m.
                                          Courtroom:   11
21                                        Floor:       19
                                          Judge:       The Hon. Martin J. Jenkins
22
                                          Complaint Filed:   12/30/05
23                                        FAC Filed:         2/23/06
                                          Trial Date:        7/23/2007
24
                                          **[Fed.R.Civ.Proc. 56]**
25

26 I, Cara Ching-Senaha, declare on the basis of personal knowledge:

27      1.      I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

28 Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

                                          1

1    DEELY.  I am licensed to practice law in the above-referenc             rt.   I make the

2    following statements based on personal knowledge.

3          2.      I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,

4    taken February 26, 2007.  Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages

5    from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'

6    Memorandum of Points and Authorities.

7          3.      I have reviewed in its entirety the transcript for Susan Venturelli's deposition,

8    taken March 23, 2007.  Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages

9    from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and

10   Authorities.

11         4.      I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken

12   February 15, 2007.  Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from

13   Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14         Executed this 3rd day of April, 2007 in San Francisco, California.  I declare under penalty

15   of perjury under the laws of California and the United States of America that the foregoing is true

16   and correct.

17

18                                              _Cara Ching_____

19                                              CARA CHING-SENAHA

20

21

22

23

24

25

26

27

28

2                              Case No. C05-05434 MJJ

DECL. OF CARA CHING-SENAHA ISO DEF. NAT'L RAILROAD'S  NOTICE OF MOT. & MOT. FOR SUMM. J. AND PARTIAL SUMM. J.

1  though, sir, shouldn't you have gone back and checked                02:56:43

2  yourself, regardless of the flag?

3          MS. PRICE:  Objection.  Vague and ambiguous as

4  to the "yard conductor protocol," something;

5  unintelligible.                                                       02:56:54

6          THE WITNESS:  That's true.

7          MS. MAYLIN:  Q.  Okay.  And after that, I bet

8  you double-checked to make sure, right?

9      A.   For the record, my A/C did the move.  I was

10 standing at the switch so -- but like earlier, I'm in           02:57:08

11 charge, so I get the blame, but I chewed him out.

12                  (Whereupon, Defendants' Exhibit No.

13                  14 was marked for identification.)

14         MS. MAYLIN:  Q.  All right.  What I've marked

15 now is -- I think we're back to the '02 incident.  I've         02:57:18

16 marked as Exhibit 14 -- well, it is -- here we go.

17 March 28, 2002.  There you go -- a letter addressed to

18 you, Mr. Campbell, where it details the charges that

19 we've already talked about on the record here.  And the

20 bottom line is that a boxcar became derailed.  You              02:58:00

21 received this letter, sir?

22     A.   Yes.

23     Q.   Okay.  And the hearing officer of the Western

24 Region, Roger Butler, found you guilty of the charges,

25 correct?                                                        02:58:18

DEPOSITION OF JOHN EARL CAMPBELL

1    A.    Correct.                                              02:58:19

2    Q.    Okay.  And -- well, let's go on.  Sir, was

3    there another time when you were charged with a rules

4    infraction?

5    A.    The one that got me terminated.                      02:58:54

6    Q.    Okay.  Well, before we talk about that, sir,

7    we talked a little bit about the Province, Terry

8    Province, situation.  Were you counseled about that

9    incident, Mr. Campbell?

10   A.    Not counseled.  Not charged.                         02:59:13

11   Q.    Okay.  Well, do you know whether or not

12   Mr. Province filed a complaint about that?

13   A.    Yes.

14   Q.    Okay.  And you submitted a response, correct?

15   A.    Probably.  I don't remember.                         02:59:31

16   Q.    All right.  Do you recall what Mr. Province

17   said you did?

18   A.    No.

19   Q.    Do you recall that Mr. Province alleged that

20   you threw a lantern at his head?                           02:59:41

21   A.    Yes, I recall that.

22   Q.    Okay.  Mr. Campbell, did you throw a lantern

23   at Mr. Province?

24   A.    No.

25   Q.    Did you toss a lantern in his direction?            02:59:52

DEPOSITION OF JOHN EARL CAMPBELL

124

| | |
|---|---|
| 1 | A.   No. | 02:59:56 |
| 2 | Q.   Okay.  Did your hand come into contact with a |
| 3 | lantern at all during the time you and Mr. Province were |
| 4 | having this altercation? |
| 5 | MS. PRICE:  Objection.  Lacks foundation; | 03:00:07 |
| 6 | assumes facts.  It's also vague and ambiguous as to, |
| 7 | quote, alterca- -- "this altercation." |
| 8 | THE WITNESS:  Three questions. |
| 9 | MS. MAYLIN:  Q.  Sir, did you have any contact |
| 10 | with a lantern? | 03:00:17 |
| 11 | A.   It was night.  I had my lantern in my hand. |
| 12 | Q.   Okay.  Did the lantern leave your hand during |
| 13 | the time you and Mr. Province were having this |
| 14 | discussion? |
| 15 | A.   No. | 03:00:28 |
| 16 | Q.   All right.  Sir, it is true, though, that you |
| 17 | screamed at him? |
| 18 | MS. PRICE:  Objection.  Argumentative. |
| 19 | THE WITNESS:  Yes. |
| 20 | MS. MAYLIN:  Q.  Okay.  And it is true -- | 03:00:39 |
| 21 | MS. PRICE:  It's also vague and ambiguous. |
| 22 | MS. MAYLIN:  Q.  It is true that you berated |
| 23 | him? |
| 24 | MS. PRICE:  Objection.  Lacks foundation; |
| 25 | calls for speculation.  It's also vague and ambiguous. | 03:00:48 |

DEPOSITION OF JOHN EARL CAMPBELL

| | |
|---|---|
| 1 | just make your objections as to form -- you have this | 03:09:54 |
| 2 | running stream of consciousness going on that is really |
| 3 | improper, and you're the one who's confusing the |
| 4 | interrogation.  I asked Mr. Campbell, because it says |
| 5 | right here in his statement, "Did I scream?  Yes.  Did I | 03:10:09 |
| 6 | berate him?  Probably." |

1   just make your objections as to form -- you have this          03:09:54
2   running stream of consciousness going on that is really
3   improper, and you're the one who's confusing the
4   interrogation.  I asked Mr. Campbell, because it says
5   right here in his statement, "Did I scream?  Yes.  Did I      03:10:09
6   berate him?  Probably."
7        Q.   My question is:  What do you remember saying
8   during this communication with Mr. Province?
9        A.   This was three years ago.  I don't know what
10  I said.  All I know is the screaming and yelling.           03:10:22
11  That's --
12       Q.   Okay.  So you don't remember what you said,
13  but just you were screaming and yelling?
14       A.   We both were.
15            MS. PRICE:  Okay.  That's it.  We need to         03:10:32
16  take --
17            MS. MAYLIN:  Okay.  We'll go ahead and take a
18  five-minute break.
19            MS. PRICE:  Oh, ten minutes, please.
20            THE VIDEOGRAPHER:  It is 3:10.  We are going      03:10:42
21  off the record.
22            (Recess taken:  3:10 p.m. until 3:31 p.m.)
23            THE VIDEOGRAPHER:  We are back on the record.
24  It is 3:31.
25            MS. MAYLIN:  Q.  Okay.  Mr. Campbell, you        03:31:01

DEPOSITION OF JOHN EARL CAMPBELL

134

```
 1   recall earlier we looked at that DFEH charge and the      03:31:03

 2   EEOC charge, and you've still got it in front of you

 3   there.  Sir, it is true, isn't it, that you never filed

 4   either a DFEH or an EEOC charge against Joe Deely,

 5   correct?                                                  03:31:23

 6        A.    Correct.

 7        Q.    Okay.

 8        MS. PRICE:  I'm sorry.  I meant to object.  It

 9   calls for a legal conclusion, and I'm sorry are we --

10   Counsel, sorry.  You just misstated the document so --    03:31:31

11   are you referring the witness to Exhibit 5 or --

12        MS. MAYLIN:  I wasn't referring him to either

13   one.  I just asked a question, Counsel.

14        MS. PRICE:  I'm sorry, then I misunderstood.

15   Maybe the witness did, too.                               03:31:51

16        Could I have the question read back, please?

17        MS. MAYLIN:  You know, Counsel, why on earth

18   are you having every question read back?  If you could

19   just listen.  He's already answered.  I'm going to move

20   on to another question.                                   03:32:01

21        MS. PRICE:  Well, I object.  Your question,

22   once again, was misleading.  As I -- and I'm having it

23   read back because you refuse to acknowledge the record.

24        MS. MAYLIN:  Oh, boy.

25        MS. PRICE:  You changed the record, and I           03:32:11
```

DEPOSITION OF JOHN EARL CAMPBELL

135

1          MS. MAYLIN:  Q.  Mr. Campbell, take a look,          03:33:25

2  please, I've just marked a document as Exhibit 17.

3  Sir, is this the fax that you sent to Paul Ho in regard

4  to your November 2003 application for an engineer

5  position?                                                    03:33:44

6      A.   Yes.

7      Q.   And at the bottom of Bates-stamped D09960 and

8  D09961, at the bottom there, that's your fax

9  transmission line, is it, Mr. Campbell?

10     A.   Correct.                                            03:34:03

11     Q.   Okay.  And it shows that it was faxed from

12  your phone or your fax machine to Mr. Ho, correct?

13     A.   Correct.

14     Q.   Okay.  And you did indeed then send Mr. Ho an

15  old resume, correct, Mr. Campbell?                          03:34:19

16     A.   Correct.

17     Q.   Okay.  Did you ever send Mr. Ho an updated

18  resume for that November 2003 position?

19     A.   I don't recall.

20     Q.   Well, I understand that you don't recall doing      03:34:48

21  it or not, sir, but do you have any recollection that

22  you did?

23          MS. PRICE:  The question is argumentative.  I

24  object.

25          THE WITNESS:  No.                                   03:35:00

DEPOSITION OF JOHN EARL CAMPBELL

```
 1              (Whereupon, Defendants' Exhibit No.        04:48:10
 2              16 was marked for identification.)
 3         MS. MAYLIN:   Q.   Okay.  And what I've marked
 4    now as Exhibit 18 is a -- did I do it again?  I sure
 5    did.  I take that back.  What I have marked as Exhibit    03:35:25
 6    16 is a multiple-page document dated January 27, 2003,
 7    three pages long, signed by Rickie Donofrio.  There you
 8    go, Mr. Campbell.  Did you receive this letter from
 9    Ms. Donofrio?
10         A.   (Reviewing document.)  Okay.                03:37:11
11         Q.   Did you receive that from Ms. Donofrio?
12         A.   I received it.
13         Q.   Okay.  And did you ever respond to that
14    letter, Mr. Campbell?
15         A.   No.                                         03:37:19
16              (Whereupon, Defendants' Exhibit No.
17              18 was marked for identification.)
18         MS. MAYLIN:   Q.   Okay.  And what I've marked
19    now as Exhibit 18 is a one-page document.  There you go.
20    A letter dated February 7, 2003, addressed to you,       03:37:26
21    signed from Ms. -- signed by Ms. Donofrio again.  Did
22    you receive this letter, Mr. Campbell?
23         A.   Yes.
24         Q.   Okay.  And did you ever respond to this
25    letter, Mr. Campbell?                                 03:37:41
```

DEPOSITION OF JOHN EARL CAMPBELL

138

```
 1      A.   No.                                          03:37:43
 2      Q.   Okay.  All right.  Mr. Campbell, do you have
 3  any reason to think that your supervisors, during
 4  December 2002, that's the Province altercation time
 5  frame -- do you have any reason to think that your    03:37:56
 6  supervisors did not know about that altercation?
 7      A.   No.
 8           MS. PRICE:  Objection.  Vague as to "that
 9  altercation"; assumes facts.
10           MS. MAYLIN:  Q.  Okay.  And is there any      03:38:09
11  reason, sir, that -- that you think that your
12  supervisors didn't know about the January 2002 car
13  derailment?
14      A.   No.
15      Q.   Is there any reason that you think that your  03:38:33
16  supervisors wouldn't know about the 2000 equipment
17  damage and failure to report equipment damage?
18      A.   No.
19      Q.   Okay.  All right.  When is the next time you
20  were charged with a rules infraction?                 03:38:50
21      A.   I think the July 2004 incident.
22      Q.   Okay.  What incident was that?
23      A.   I was accused of cutting the brakes out of a
24  locomotive.
25      Q.   What does that mean, "cutting the brakes out"? 03:39:08
```

DEPOSITION OF JOHN EARL CAMPBELL

P4.5

1  KATHLEEN MAYLIN (SBN  (SBN 155371)
   CARA CHING-SENAHA (SBN  298467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California  94105
   Telephone:  (415) 394-9400
4  Facsimile:  (415) 394-9401

5  Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
6  CORPORATION dba AMTRAK and JOE DEELY

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12 JOHN EARL CAMPBELL,                    Case No. C05-05434 MJJ

13                Plaintiff,              **DECLARATION OF CARA CHING-
                                          SENAHA IN SUPPORT OF
14      v.                                DEFENDANTS' NATIONAL
                                          RAILROAD PASSENGER
15 NATIONAL RAILROAD PASSENGER            CORPORATION'S AND JOE DEELY'S
   CORPORATION dba AMTRAK, JOE DEELY,     MOTION FOR SUMMARY
16 and DOES 1-15, inclusive,              JUDGMENT, OR IN THE
                                          ALTERNATIVE, SUMMARY
17                Defendants.             ADJUDICATION**

18                                        [Notice of Motion, Memorandum of Points
                                          and Authorities, and Declarations in
19                                        Support of Motion concurrently filed]

20                                        Date:      May 8, 2007
                                          Time:      9:30 a.m.
21                                        Courtroom: 11
                                          Floor:     19
22                                        Judge:     The Hon. Martin J. Jenkins

23                                        Complaint Filed:    12/30/05
                                          FAC Filed:          2/23/06
24                                        Trial Date:         7/23/2007

25                                        **[Fed.R.Civ.Proc. 56]**

26 I, Cara Ching-Senaha, declare on the basis of personal knowledge:

27      1.      I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

28 Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

                                          1

1   DEELY.  I am licensed to practice law in the above-referenc            rt.  I make the

2   following statements based on personal knowledge.

3         2.      I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,

4   taken February 26, 2007.  Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages

5   from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'

6   Memorandum of Points and Authorities.

7         3.      I have reviewed in its entirety the transcript for Susan Venturelli's deposition,

8   taken March 23, 2007.  Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages

9   from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and

10  Authorities.

11        4.      I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken

12  February 15, 2007.  Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from

13  Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14        Executed this 3rd day of April, 2007 in San Francisco, California.  I declare under penalty

15  of perjury under the laws of California and the United States of America that the foregoing is true

16  and correct.

17

18                                                        _Cara Ching_

19                                              CARA CHING-SENAHA

20

21

22

23

24

25

26

27

28

```
 1        A.   They've got these little valves on the bottom      03:39:11
 2   of the locomotive near the wheels.  If the wheels lock
 3   up, you turn the valves, and it releases the brakes so
 4   you can pull the locomotive, you know, without brakes.
 5        Q.   Okay.  And is that true, Mr. Campbell?             03:39:25
 6             MS. PRICE:  Objection.  Is what true?
 7             THE WITNESS:  Yeah.  Is what true?
 8             MS. MAYLIN:  Q.  Sure.  The -- the charge that
 9   you violated that rule?
10             MS. PRICE:  Objection.  Lacks foundation;         03:39:43
11   calls for speculation; vague as to "that rule."
12             MS. MAYLIN:  Q.  Do you understand what I'm
13   asking, Mr. Campbell?
14        A.   I understand it, but you're wording it wrong.
15        Q.   Okay.  Well, why don't you correct me.  I'm       03:39:57
16   not in the business like you are.
17        A.   It's true I was charged with that violation.
18        Q.   Okay.
19        A.   That's the answer.  It's true I was charged
20   with that violation.                                        03:40:08
21        Q.   Okay.  Is it true that you committed that
22   violation?
23        A.   No.
24        Q.   Okay.  All right.  Okay.  I understand that
25   there was a formal hearing in response to that charge;      03:40:23
```

DEPOSITION OF JOHN EARL CAMPBELL

```
 1   is that correct?                                    03:40:27

 2        A.   Yes.

 3        Q.   Do you recall when the hearing took place?

 4        A.   I don't have the exact dates.

 5        Q.   All right.  A couple of months after the    03:40:35

 6   incident?

 7        A.   Yes.

 8        Q.   Okay.  And do you recall who the hearing

 9   officer was?

10        A.   I know the charging officer was Tim Sheridan.  03:40:46

11   The hearing officer I can't recall.

12        Q.   Okay.  How about Patrick Gallagher; does that

13   refresh your recollection?

14        A.   Yes.

15        Q.   And do you recall what decision Patrick        03:40:58

16   Gallagher came to?

17        A.   Termination.

18        Q.   Okay.  All right.  How many charges were you

19   charged with from that incident, do you recall?

20        A.   I don't recall.                               03:41:14

21        Q.   Okay.  All right.  And did your union appeal

22   that decision?

23        A.   Yes.

24        Q.   Okay.  And what was the finding of the appeal,

25   if you recall?                                          03:41:35
```

DEPOSITION OF JOHN EARL CAMPBELL

1    A.    They upheld the company's position of        03:41:37

2  termination.

3    Q.    Okay.    Did you receive -- and was that by the

4  Public Law Board?

5    A.    Say that again.                                03:41:50

6    Q.    Sure.    Was that decision by the Public Law

7  Board?

8    A.    I believe so.

9    Q.    All right.    And did you receive a copy of the

10 decision?                                              03:42:01

11   A.    Yes.

12   Q.    And I think I asked you, there was a hearing

13 where you testified; is that correct?

14   A.    Correct.

15   Q.    All right.    And others testified as well?     03:42:17

16   A.    One other person testified.    Two people

17 testified.

18   Q.    Okay.    Who else testified?

19   A.    I believe Dave West and Earl Friend.

20   Q.    Okay.    Did you hear Dave and Earl's testimony?  03:42:36

21   A.    I read it later.

22   Q.    When you read the testimony, did you form the

23 opinion that they had testified truthfully?

24        MS. PRICE:    Objection.    Lacks foundation;

25 calls for speculation; assumes facts.                  03:42:49

DEPOSITION OF JOHN EARL CAMPBELL

142

| | | |
|---|---|---|
| 1 | of rules infractions? | 03:54:33 |
| 2 | A.    No. | |
| 3 | Q.    Okay.  Now that we've been talking about it | |
| 4 | for a little bit, can you think of any other employees | |
| 5 | who had more than two formal rules infractions and were | 03:54:48 |
| 6 | not fired? | |
| 7 | A.    At this time, I can't recollect.  There are | |
| 8 | some, but I can't recollect. | |
| 9 | Q.    What I'm marking -- oh, you know what, I | |
| 10 | marked some other documents a while ago and didn't use | 03:55:22 |
| 11 | them. | |
| 12 | (Whereupon, Defendants' Exhibit No. | |
| 13 | 12 was marked for identification.) | |
| 14 | MS. MAYLIN:  Q.  Here's Exhibit 12, | |
| 15 | Mr. Campbell, Bates-stamped D10292, Acknowledgement of | 03:55:28 |
| 16 | Receipt of Amtrak's Standards of Excellence.  Sir, did | |
| 17 | you sign that on September 30, '98? | |
| 18 | A.    Yes. | |
| 19 | Q.    Okay.  And at that time, you received a copy | |
| 20 | of the booklet, correct? | 03:55:45 |
| 21 | A.    Correct. | |
| 22 | (Whereupon, Defendants' Exhibit No. | |
| 23 | 11 was marked for identification.) | |
| 24 | MS. MAYLIN:  Q.  Okay.  And here's Exhibit | |
| 25 | 11, a one-page document, D10498.  Mr. Campbell, is that | 03:55:51 |

DEPOSITION OF JOHN EARL CAMPBELL

153

1  your signature there?                                    03:56:00

2      A.   Yes.

3      Q.   It's a receipt, and you received on -- it

4  looks like -- May 14, 2004, a copy of the "Service

5  Standards Reference Manual for Train Service and         03:56:10

6  On-Board Service Employees," correct?

7      A.   Correct.

8      Q.   Okay.  And you understood that you were

9  responsible for reading and updating the manual, and you

10 had to follow the procedures, correct?                   03:56:23

11     A.   Correct.

12     Q.   And that's true of all the booklets and

13 policies and procedures you received, you were

14 responsible for reading, understanding and following,

15 correct?                                                 03:56:37

16     A.   Correct.

17              (Whereupon, Defendants' Exhibit No.

18              19 was marked for identification.)

19         MS. MAYLIN:  Q.  All right.  What I am marking

20 now as Exhibit 19 is a two-page document.  It's a        03:56:43

21 September 17, 2004 letter to you signed by Patrick

22 Gallagher.  There you go.  And this is Mr. Gallagher

23 informing you that he finds that you were guilty of the

24 charges, correct?

25     A.   Correct.                                        03:57:11

DEPOSITION OF JOHN EARL CAMPBELL



1   Q. Okay. And on page two, it details the charge     03:57:11

2   and the rule violation and the decision is to terminate

3   you from service effective immediately, correct?

4   A. Correct.

5                    (Whereupon, Defendants' Exhibit No.     03:37:38

6              20 was marked for identification.)

7        MS. MAYLIN:  Q.  Okay.  All right.  And then

8   on your behalf, the UTU requested that the discipline be

9   expunged, correct?  And here I've got a September 28,

10  2004 letter -- there you go, Mr. Campbell -- addressed     03:57:55

11  to the Director-Labor Relations, at Amtrak.  It's from

12  a Mr. A.L. -- oh, I'm going to mispronounce it --

13  Suozzo, S-u-o-z-z-o.  You received a copy of that,

14  Mr. Campbell?

15       A.  Yes.                                             03:58:17

16       Q.  All right.

17                   (Whereupon, Defendants' Exhibit No.

18             21 was marked for identification.)

19       MS. MAYLIN:  Q.  And here what I've marked as

20  Exhibit 21 is a three-page letter, November 9, 2004.      03:58:40

21  It's directed to Mr. Suozzo, and it is from Larry

22  Hriczak, Director-Labor Relations, where the appeal on

23  your behalf is denied.  You received that, Mr. Campbell?

24       A.  Yes.

25       Q.  Sir, during the hearing where you testified,     03:59:10

DEPOSITION OF JOHN EARL CAMPBELL

155



```
 1   other applicants, correct?                          05:13:41

 2            MS. PRICE:  Objection.  Incomplete

 3   hypothetical; assumes facts.

 4            THE WITNESS:  Yes.

 5            (Whereupon, Defendants' Exhibit No.        04:48:10

 6            23 was marked for identification.)

 7            MS. MAYLIN:  Q.  I'm marking as Exhibit 23, a

 8   two page document.  Here you go, Mr. Campbell.  It's a

 9   job reference 50173583.  Have you seen this job posting

10   before Mr. Campbell?                                 05:14:07

11       A.  Yes.

12       Q.  Okay.  And this is the November 21, '03

13   posting, right?

14       A.  Yes.

15       Q.  Okay.  And this is the one where you faxed    05:14:16

16   your resume over to Mr. Ho, right?

17       A.  Yes.

18       Q.  Okay.  And, sir, do you have any reason to

19   dispute the -- well, that's going to be phrased badly.

20   Sir, you understood that the summary of duties here are  05:14:32

21   the duties that Amtrak requires their engineers to

22   perform, correct?

23       A.  Yes.

24       Q.  Okay.  And you understood that the "Education"

25   criteria, which is the next paragraph, is the required  05:14:48
```

DEPOSITION OF JOHN EARL CAMPBELL

190

```
 1   education for Amtrak engineers, correct?                    05:14:54
 2       A.    Correct.
 3       Q.    And you understood that the "Work Experience,"
 4   the next section is the work experience that's required
 5   for Amtrak engineers or applicants to an Amtrak engineer    05:15:07
 6   position, that they must have that, correct?
 7       A.    Correct.
 8       Q.    Okay.  And under "Other Requirements," you
 9   understood that those other requirements are also
10   necessary for an applicant to have who was trying for an    05:15:17
11   engineer position, correct?
12       A.    Correct.
13       Q.    Okay.  And then on the second page, it says,
14   "Other."  Then you understood that the applicant, or
15   successful applicant would undergo engineering training,    05:15:41
16   correct?
17       A.    Correct.
18       Q.    And then at the end, under "Job Notes" it
19   has a last day to apply category, years experience,
20   et cetera, you understood that those were additional        05:15:54
21   criteria for applicants, correct?
22       A.    Correct.
23       Q.    Okay.  Under "Work Experience," sir, and also
24   it's listed in "Summary of Duties," you understood that
25   a successful applicant for an engineer position with        05:16:24
```

DEPOSITION OF JOHN EARL CAMPBELL

Pt. 6

1  KATHLEEN MAYLIN (SBN (SBN 155371)
   CARA CHING-SENAHA (SBN 298467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California 94105
   Telephone: (415) 394-9400
4  Facsimile: (415) 394-9401

5  Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
6  CORPORATION dba AMTRAK and JOE DEELY

7

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11 | JOHN EARL CAMPBELL,                    | Case No. C05-05434 MJJ

12 |                Plaintiff,              | **DECLARATION OF CARA CHING-SENAHA IN SUPPORT OF DEFENDANTS' NATIONAL RAILROAD PASSENGER CORPORATION'S AND JOE DEELY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

13 |        v.

14 | NATIONAL RAILROAD PASSENGER
15 | CORPORATION dba AMTRAK, JOE DEELY,
   | and DOES 1-15, inclusive,
16 |
17 |                Defendants.            | [Notice of Motion, Memorandum of Points and Authorities, and Declarations in Support of Motion concurrently filed]
18 |
19 |
20 |                                        | Date:       May 8, 2007
   |                                        | Time:       9:30 a.m.
21 |                                        | Courtroom:  11
   |                                        | Floor:      19
22 |                                        | Judge:      The Hon. Martin J. Jenkins
23 |                                        | Complaint Filed:   12/30/05
   |                                        | FAC Filed:         2/23/06
24 |                                        | Trial Date:        7/23/2007
25 |                                        | **[Fed.R.Civ.Proc. 56]**

26 I, Cara Ching-Senaha, declare on the basis of personal knowledge:

27     1.     I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

28 Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

                                            1
                                                              Case No. C05-05434 MJJ
DECL. OF CARA CHING-SENAHA ISO DEF. NAT'L RAILROAD'S NOTICE OF MOT. & MOT. FOR SUMM. J. AND PARTIAL SUMM. J.

1    DEELY.  I am licensed to practice law in the above-referenc            rt.  I make the

2    following statements based on personal knowledge.

3        2.    I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,

4    taken February 26, 2007.  Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages

5    from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'

6    Memorandum of Points and Authorities.

7        3.    I have reviewed in its entirety the transcript for Susan Venturelli's deposition,

8    taken March 23, 2007.  Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages

9    from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and

10    Authorities.

11        4.    I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken

12    February 15, 2007.  Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from

13    Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14        Executed this 3rd day of April, 2007 in San Francisco, California.  I declare under penalty

15    of perjury under the laws of California and the United States of America that the foregoing is true

16    and correct.

17

18                                    Cara Ching..s

19                                    CARA CHING-SENAHA

20

21

22

23

24

25

26

27

28

```
 1    Amtrak would have to have a safe work record, correct?    05:16:25

 2         A.    Correct.

 3         Q.    Okay.  After June 1999, sir, did you again

 4    ever apply for an engineer position at Amtrak?

 5         A.    Yes.                                            05:16:49

 6         Q.    When was that?

 7         A.    Every six months, twice a year.

 8         Q.    Okay.  And how did you submit those

 9    applications?

10         A.    Fax and mail.                                  05:16:58

11         Q.    To the L.A. HR?

12         A.    (Nods head.)

13         Q.    Got to say the word.

14         A.    Oh.  Yes.

15         Q.    Okay.  And, sir, when you did that, did you    05:17:06

16    keep a copy of your application?

17              MS. PRICE:  Objection.  Vague; overbroad.

18              THE WITNESS:  No.

19              MS. MAYLIN:  Q.  Okay.  Well, did you do it

20    every six months just as a matter of routine regardless  05:17:20

21    of what was posted, or did you do it in response to

22    seeing a posting?

23         A.    I did it in response to seeing a posting.

24         Q.    Okay.  So, let's see, you saw a posting in

25    June '99, and you sent in your fax, right?               05:17:33
```

DEPOSITION OF JOHN EARL CAMPBELL

```
 1              MS. MAYLIN:  Just a moment.                    05:28:59
 2                      (Discussion off the record.)
 3              MS. MAYLIN:  Q.  Okay.  So Mr. -- or Jason was
 4    lackadaisical in your opinion --
 5         A.   Yeah.                                          05:29:31
 6         Q.   -- and Mr. Poitier was just not smart?
 7         A.   Yeah.
 8         Q.   Okay.  And, sir, what makes you think that
 9    they had less seniority than you?
10         A.   Well, the seniority roster told me.           05:29:43
11         Q.   Okay.  But we have agreed, haven't we, that
12    seniority has nothing to do with whether or not an
13    individual is hired into an engineer position, correct?
14              MS. PRICE:  Objection.  Misstates the
15    witness's testimony.                                    05:29:56
16              THE WITNESS:  Yeah.
17              MS. MAYLIN:  Q.  I think we talked about that
18    there's no bid rights, right?
19         A.   We talked about it, yes.
20         Q.   Okay.  Is that true?                          05:30:05
21         A.   Is what true?
22         Q.   There's no bid rights, yes.
23         A.   Oh, there is no bid rights, yes.
24         Q.   Okay.  So seniority really doesn't matter
25    then, does it?                                          05:30:14
```

DEPOSITION OF JOHN EARL CAMPBELL

1      MS. PRICE:  Objection.  Misstates the      05:30:15

2    witness's testimony.

3          THE WITNESS:  Yeah.  Seniority and bid rights

4    are two different things.

5          MS. MAYLIN:  Q.  Oh, all right.  Well, let me      05:30:21

6    ask you, as far as you understand, is there any

7    requirement that Amtrak only hire, or first hire

8    employees into an engineer position from a conductor

9    position based on length of service?

10         A.    No.      05:30:40

11         Q.    Okay.  All right.  Did you -- so we're up to

12   November '03.  Thus far, sir, have you had any

13   interviews for an engineer position?

14         A.    I had one.

15         Q.    When was that?      05:31:00

16         A.    I think either December '02 or January '03.

17         Q.    Okay.  Who did you interview with?

18         A.    I know one was Rich Barnes.  And I cannot

19   remember the other two.  But Rich Barnes was definitely

20   one of them.      05:31:24

21         Q.    Okay.  Can you describe the other two?

22         A.    They was Caucasian, and they were engineers.

23   One was a union rep.  That was Rich.  And the other two

24   were engineers.

25         Q.    Okay.  All right.  And you think that was in      05:31:36

DEPOSITION OF JOHN EARL CAMPBELL

| | | |
|---|---|---|
| 1 | A.    I spoke to him. | 05:41:31 |
| 2 | Q.    Meaning, hello, how you doing or -- | |
| 3 | A.    Lou Bellotti introduced the crew one morning, | |
| 4 | and he said, "That's my night crew:  Ray Clarke, John | |
| 5 | Campbell, Lars Michelson." | 05:41:42 |
| 6 | And I had said, "Hi, Joe."  I don't think he | |
| 7 | liked that.  I think I was supposed to say, "Hi, | |
| 8 | Mr. Deely." | |
| 9 | Q.    Okay.  Did you have any other communications | |
| 10 | with him? | 05:42:03 |
| 11 | A.    I left him a message on his phone a couple of | |
| 12 | times, when I had a problem with -- a mechanical | |
| 13 | problem.  I called him directly. | |
| 14 | Q.    Did he call you back? | |
| 15 | A.    No. | 05:42:10 |
| 16 | Q.    Okay.  All right.  What information do you | |
| 17 | have, Mr. Campbell, that Mr. Deely had any influence on | |
| 18 | your termination? | |
| 19 | A.    All I have is word of mouth, you know. | |
| 20 | Q.    Okay.  And who told you that Mr. Deely had | 05:42:26 |
| 21 | anything to do with your termination? | |
| 22 | MS. PRICE:  I'm going to have to instruct -- | |
| 23 | I'm compelled to instruct the witness, do not disclose | |
| 24 | any conversations with counsel.  She's asking you about | |
| 25 | conversations you've had with people outside of | 05:42:41 |

DEPOSITION OF JOHN EARL CAMPBELL

212

| | | |
|---|---|---|
| 1 | You know how you hear things, you know, so... | 05:43:57 |
| 2 |     Q.   So just little bits and pieces of -- | |
| 3 |     A.   Yes. | |
| 4 |     Q.   -- small talk out there? | |
| 5 |     A.   Yes. | 05:44:05 |

1    You know how you hear things, you know, so...            05:43:57

2         Q.    So just little bits and pieces of --

3         A.    Yes.

4         Q.    -- small talk out there?

5         A.    Yes.                                          05:44:05

6         Q.    Okay.  All right.  Okay.  How about this now,

7    again with Mr. Deely, do you have any information, sir,

8    that Mr. Deely had any influence on whether or not you

9    were promoted to engineer during the times you applied

10   for an engineer position?                               05:44:22

11        A.    No.  No.  Nothing like on paper, or concrete

12   evidence as you called it, no.

13        Q.    Well, did anybody tell you that or --

14        A.    I just told you the Chad Skinner story.

15             MS. PRICE:  And other than what he's already   05:44:39

16   testified to?

17             MS. MAYLIN:  Right.

18        Q.    Chad Skinner told you after you applied the

19   last time.  Was there any other time that you heard that

20   Mr. Deely had anything to do with the decision making as 05:44:49

21   far as your application for an engineer position?

22        A.    No.

23        Q.    Now, from the June 2004 application that you

24   made, sir, do you know who -- which employees were given

25   an engineer position in '04, after that time?           05:45:21

DEPOSITION OF JOHN EARL CAMPBELL

214

1    A.    Again, the seniority list would tell you that,    05:45:27

2    but I know it was five people this time.

3    Q.    Okay.  How about their races, do you know

4    their races?

5    A.    Four were Caucasian and one was Vietnamese.    05:45:53

6    Q.    Okay.  So the first time you filed a DFEH

7    charge or EEOC charge was January '04; I think we talked

8    about.  Did you have any communication with anybody

9    within Amtrak about the fact that you had filed a DFEH

10   charge, or I'm sorry.  I think at that time it was an    05:46:31

11   EEOC charge.  Did you have any communication with

12   anybody about that?

13   A.    No supervisors.

14   Q.    Okay.  Well, how about co-workers?

15   A.    Probably.    05:46:44

16   Q.    What makes you say "probably"?

17   A.    You know, frustration.  Vent.  You talk to

18   people.

19   Q.    So you mentioned it to some co-workers?

20   A.    Yes.    05:46:56

21   Q.    All right.  Other than that, did you have any

22   communication with anybody within Amtrak about the fact

23   that you filed that EEOC charge in 2004, January 2004?

24   A.    Supervisor-wise, I don't think so.

25   Q.    Yeah.  How about anybody from HR?    05:47:12

DEPOSITION OF JOHN EARL CAMPBELL

| | |
|---|---|
| 1 | A. No. | 05:47:15 |
| 2 | Q. All right. Anybody from administration? |
| 3 | A. I don't believe so. |
| 4 | Q.   Okay.  Do you have any information that | |
| 5 | anybody at Amtrak even knew that you had filed a -- an | 05:47:26 |
| 6 | EEOC charge in January '04? | |
| 7 |      MS. PRICE:  I'm going to object and instruct | |
| 8 | the witness again. | |
| 9 |      You have to filter out any questions when she | |
| 10 | says any information. | 05:47:42 |
| 11 |      I object.  The question is overbroad.  It | |
| 12 | seeks to invade the attorney-client privilege. | |
| 13 |      I will allow you to answer the question, but | |
| 14 | you cannot -- you cannot disclose any communications | |
| 15 | between you -- | 05:47:54 |
| 16 |      THE WITNESS:  Between you and me. | |
| 17 |      MS. PRICE:  Right.  Any conversation with me | |
| 18 | or anybody in my office. | |
| 19 |      THE WITNESS:  Okay.  Repeat the question. | |
| 20 |      MS. MAYLIN:  Could you reread it?  Thank you, | 05:48:05 |
| 21 | Sharon. | |
| 22 |      (Whereupon, the record was read as follows: | |
| 23 |      "Question:  Do you have any information | |
| 24 |      that anybody at Amtrak even knew that you | |
| 25 |      had filed a -- an EEOC charge in January | 05:48:07 |

DEPOSITION OF JOHN EARL CAMPBELL

```
 1              '04?")                                    05:48:07

 2              THE WITNESS:  I would assume EEOC sent them a

 3  copy of my complaint.

 4              MS. MAYLIN:  Q.  Okay.  I'm not asking for

 5  your assumption, Mr. Campbell.  Do you have any        05:48:35

 6  information that anybody at Amtrak knew that you filed

 7  it?

 8              MS. PRICE:  Well, I'm going to object.  The

 9  question is argumentative.  He's given you his response,

10  so you want to answer --                              05:48:48

11              Do you have some other information you can

12  give her?

13              THE WITNESS:  No.

14              MS. MAYLIN:  Q.  Okay.  All right.  Is there

15  any other time, Mr. Campbell, that you can recall      05:49:03

16  applying for an engineer position at Amtrak?

17       A.   I think we've covered all of it.

18       Q.   Okay.  Let me ask you this, Mr. Campbell.  Do

19  you have any information that you -- your filing an EEOC

20  charge in January '04 had any bearing on Amtrak's      05:49:35

21  decision to terminate you in September of '04?

22              MS. PRICE:  I'm going to object.  The question

23  is overbroad.  It calls for a legal conclusion.  It

24  lacks foundation, calls for speculation.  Also, to the

25  extent it's overbroad, I'm going to ask -- have to     05:50:00
```

DEPOSITION OF JOHN EARL CAMPBELL

217

P4.7

1  KATHLEEN MAYLIN (SBN (SBN 155371)
   CARA CHING-SENAHA (SBN  298467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California  94105
   Telephone:  (415) 394-9400
4  Facsimile:  (415) 394-9401

5  Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
6  CORPORATION dba AMTRAK and JOE DEELY

7

8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12  JOHN EARL CAMPBELL,                    Case No. C05-05434 MJJ

13            Plaintiff,                   **DECLARATION OF CARA CHING-SENAHA IN SUPPORT OF DEFENDANTS' NATIONAL RAILROAD PASSENGER CORPORATION'S AND JOE DEELY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

14        v.

15  NATIONAL RAILROAD PASSENGER
    CORPORATION dba AMTRAK, JOE DEELY,
16  and DOES 1-15, inclusive,

17            Defendants.                  [Notice of Motion, Memorandum of Points and Authorities, and Declarations in Support of Motion concurrently filed]

18

19

20  Date:          May 8, 2007
    Time:          9:30 a.m.
21  Courtroom:     11
    Floor:         19
22  Judge:         The Hon. Martin J. Jenkins

23  Complaint Filed:    12/30/05
    FAC Filed:          2/23/06
24  Trial Date:         7/23/2007

25  **[Fed.R.Civ.Proc. 56]**

26  I, Cara Ching-Senaha, declare on the basis of personal knowledge:

27        1.    I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

28  Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

                                            1

DEELY.   I am licensed to practice law in the above-referenced district court.   I make the following statements based on personal knowledge.

2.    I have reviewed in its entirety the transcript for Mr. John Campbell's deposition, taken February 26, 2007.  Attached hereto as <u>Exhibit A</u> are true and correct copies of select pages from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants' Memorandum of Points and Authorities.

3.    I have reviewed in its entirety the transcript for Susan Venturelli's deposition, taken March 23, 2007.  Attached hereto as <u>Exhibit B</u> are true and correct copies of select pages from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

4.    I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken February 15, 2007.  Attached hereto as <u>Exhibit C</u> are true and correct copies of select pages from Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

Executed this 3rd day of April, 2007 in San Francisco, California.  I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.


_____
CARA CHING-SENAHA

DECL. OF CARA CHING-SENAHA ISO DEF. NAT'L RAILROAD'S  NOTICE OF MOT. & MOT. FOR SUMM. J. AND PARTIAL SUMM. J.

1    instruct the witness again.                              05:50:04

2          You have to filter it.  Do not answer --

3    disclose any conversations or information that you've

4    learned from talking to anyone in my office.

5          THE WITNESS:  Okay.  The question again?          05:50:18

6          MS. MAYLIN:  Q.  Sure.  Do you have any reason

7    to believe, Mr. Campbell, that the fact that you filed

8    an EEOC charge in January '04 had any bearing on

9    Amtrak's decision to terminate you in September '04?

10          MS. PRICE:  Same objections.                      05:50:38

11          THE WITNESS:  Coincident, maybe.

12          MS. MAYLIN:  Q.  Okay.  Other than your

13    feeling that it's coincidence, any other reason?

14      A.   Nothing I can prove.

15      Q.   Well, is there anything you can talk about       05:50:53

16    other than just your feeling that there might be some

17    connection?

18      A.   I can say, word through the grapevine is

19    Mr. Deely did not like me because I was outspoken, and

20    within months -- two months after I heard that, I was  05:51:15

21    fired.

22      Q.   Okay.

23      A.   So...

24      Q.   All right.  But now let's get back to my

25    question.  I appreciate the information, but back to my 05:51:20

DEPOSITION OF JOHN EARL CAMPBELL

1  question. Do you have any information that there was    05:51:22
2  any connection between a January '04 PROC change and a
3  September '04 decision to terminate you?
4  MS. PRICE: Same objection.
5  MS. MAYLIN: Q. Other than what you've told    05:51:34
6  me.
7  MS. PRICE: Other than what you've already
8  testified to, and subject to the same objection.
9  MS. MAYLIN: Right.
10 THE WITNESS: I have no information.    05:51:41
11 MS. MAYLIN: Q. Okay. Same question now, a
12 little different, do you have any information, sir, that
13 your race had any bearing on Amtrak's decision to
14 terminate you in September '04?
15 MS. PRICE: Same objection. Same instruction.    05:52:00
16 THE WITNESS: I compared my record against the
17 other gentlemen that we talked about earlier, and they
18 did stuff that caused more and more damage than I got
19 accused of, and they're still working, so that's my gut
20 feeling.    05:52:20
21 MS. MAYLIN: Q. Okay. And we're talking
22 about Ray, Bill, and John?
23 A. Yes.
24 Q. Okay. Other than your belief that Ray, Bill,
25 and John had more rules infractions than you did, or    05:52:29

DEPOSITION OF JOHN EARL CAMPBELL

219

1    MS. MAYLIN:  Q.  Do you know --                          06:23:38

2    MS. PRICE:  He is available in ten minutes, so

3    we'll have to take a break then.

4    MS. MAYLIN:  Q.  Do you know if Dan Roberts

5    had ever been issued a 20-day suspension for a rules     06:23:45

6    infraction?

7    A.    Again, I don't know.

8    Q.    Do you know if Dan Roberts had a formal

9    reprimand in his file?

10    A.    I do not know.                                     06:23:56

11    Q.    And do you know any of those things about

12    Alfonso Bell?

13    A.    No, I do not.

14    Q.    Okay.  Okay.  If you could go down to page

15    000013.  This August 10, 2004 letter, Mr. Campbell.     06:24:20

16    A.    Uh-huh.

17    Q.    Did you receive that from the Local Committee

18    of Adjustment?

19    A.    Let me read it.

20    Q.    Okay.                                              06:24:37

21    A.    (Reviewing document.)  Yes, I remember

22    receiving this.

23    Q.    Okay.  Sir, do you have any information that

24    Amtrak considers additional information above and beyond

25    the ranking after the panel interview?                  06:25:34

DEPOSITION OF JOHN EARL CAMPBELL

1    Q.  All right.  Okay.  All right.  Sir, you --        08:03:37

2  well, in 2000 -- well, we've been talking a little bit

3  here, sir.  Earlier you'd listed three people for me who

4  you think had equal to or greater than numbers of rules

5  infractions -- can you -- and yet they were promoted.    08:04:14

6  Can you recall anyone else, now that we've been talking

7  for a bit, quite a long bit?

8    A.  No.

9               (Whereupon, Defendants' Exhibit No.

10           31 was marked for identification.)    04:48:10

11      MS. MAXLIN:  Q.  Okay.  What I'm attaching now

12  as Exhibit 31 -- I'm going to bunch these together.

13  Exhibit 31, Bates-stamped D01794, 95, 96, 97, and 98.

14  Now, I can't remember if we put this in as '01 or not,

15  are these all the exhibits?  Oh, you've got some here,    08:05:28

16  too?

17    A.  Yes.

18    Q.  Let me take a quick look.  We may have done

19  this, and then we can move on.  Here we go.  8/6/01.

20  Yeah.  Okay.  I think we got that.    08:05:46

21      All right.  What I have marked, though, as

22  Exhibit 31 then -- I'm going to make it a shorter

23  version -- and that is D01794.

24      Sir, we talked earlier about an '01

25  application.  Was this the posting that you applied for?  08:06:27

DEPOSITION OF JOHN EARL CAMPBELL

```
 1        A.   Yes.                                          08:06:49
 2        Q.   Okay.  If you take a look back at Exhibit 24,
 3   sir, you'll take a look on -- right above your signature
 4   on Bates-stamped D01798, under "Applicant's
 5   Qualifications," it says, "17 years of railroad          08:07:06
 6   experience started in the S.P. track department, coupled
 7   with three years of T&E experience with Amtrak West."
 8   Sir, did you have 17 years of railroad experience in
 9   August '01?
10        A.   It was combined with -- not 17, no.           08:07:26
11        Q.   Okay.  How many years railroad experience did
12   you have in August '01?  I think you had eight years at
13   the prior job, right?
14        A.   Uh-huh.  And three years at Amtrak.
15        Q.   Okay.  So that's 11 years, right?             08:07:50
16        A.   Yeah.
17        Q.   So you were off by six years; is that true?
18        A.   Yeah.  Where does it say "17" at?
19        Q.   Where does it say that, sir?
20        A.   The 17, yes.                                  08:08:02
21        Q.   Here.  If you -- here.  D01798.  You see where
22   you signed here?  Do you see it now?
23        A.   Yeah.  I think that's more than seven.
24        Q.   Okay.  Well, in any event, 17 years is not
25   true, correct?                                          08:08:28
```

DEPOSITION OF JOHN EARL CAMPBELL

1   San Francisco, California 94105.  415/624-1300.  The          08:31:57

2   time is 8:32, and we are off the record.

3            (Whereupon, the deposition was concluded at

4   8:32 p.m.)

5                           --oOo--                              08:32:09

6        I declare under penalty of perjury that the

7   foregoing is true and correct.  Subscribed at

8   _____, California, this ____ day of

9   _____ 2007.                                            08:32:09

10

11

12                      _____

13                      JOHN EARL CAMPBELL

14

15

16

17

18

19

20

21

22

23

24

25

DEPOSITION OF JOHN EARL CAMPBELL

304

```
 1                    CERTIFICATE OF REPORTER

 2

 3         I, SHARON TRUJILLO, a Certified Shorthand

 4   Reporter, hereby certify that the witness in the

 5   foregoing deposition was by me duly sworn to tell the

 6   truth, the whole truth, and nothing but the truth in the

 7   within-entitled cause;

 8         That said deposition was taken in shorthand by

 9   me, a disinterested person, at the time and place

10   therein stated, and that the testimony of the said

11   witness was thereafter reduced to typewriting, by

12   computer, under my direction and supervision;

13         I further certify that I am not of counsel or

14   attorney for either or any of the parties to the said

15   deposition, nor in any way interested in the event of

16   this cause, and that I am not related to any of the

17   parties thereto.

18                    Dated:   March 7, 2007

19

20

21

22         SHARON TRUJILLO, CSR No. 6120

23

24
```

DEPOSITION OF JOHN EARL CAMPBELL

Amtrak

# APPLICATION FOR EMPLOYMENT

IT IS THE POLICY OF THE **NATIONAL RAILROAD PASSENGER CORPORATION** TO PROVIDE EMPLOYMENT, TRAINING, COMPENSATION, PROMOTION AND OTHER CONDITIONS OF EMPLOYMENT IN A MANNER WHICH IS IN ACCORDANCE WITH ALL LEGAL REQUIREMENTS REGARDING RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, AGE, DISABILITY, OR VETERAN STATUS.



**Please read carefully. Pre-Employment Statement**

I certify that the information contained in this application is correct to the best of my knowledge. I understand that falsification of this information or failure to provide complete and accurate information are grounds for dismissal. I authorize the Employment/Professional/Personal references listed to give you any and all information concerning my previous employment and any pertinent information they may have. I voluntarily give Amtrak the right to make a thorough investigation of my past employment and activities, and I agree to cooperate in such investigation. I release from all liability or responsibility all persons, companies or corporations supplying any information to Amtrak. NOTE: **In accordance with the FAIR CREDIT REPORTING ACT (Pre-Notification),** I understand that as part of Amtrak's procedure for processing my application, an investigative report may be made whereby information is obtained through personal interviews with third parties, such as family members, business associates, financial sources, friends, neighbors, or others with whom I am acquainted. I understand that my employment with Amtrak is conditioned on successfully passing a physical examination, which will include a test to detect the presence of drugs and/or alcohol, and any future physical examinations as may be required by the Company. In consideration of my employment, I agree, if employed in a non-agreement position, that my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or myself. I understand that no representative of Amtrak, other than the President or Assistant Vice President of Personnel, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to terms of this Pre-Employment Statement, or any Amtrak Policy.

| APPLICANT'S SIGNATURE | | DATE |
|---|---|---|
| _John Campbell_ | EXHIBIT | 9-1-98 |

LAST NAME CAMPBELL, John

FIRST F M.I.

JOB APPLYING FOR ASST. Conductor

DATE OF APPLICATION 8-6-98

EXHIBIT **PLT DEFT** 2
WITNESS: J. Campbell for identification
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

D10282

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 376-2004-00295 |

| California Department Of Fair Employment & Housing | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (Indicate Mr., Ms., Mrs.) **Mr. John E. Campbell** | Home Phone No. (Incl Area Code) **(510) 632-4260** | Date of Birth **11-20-1961** |
|---|---|---|
| Street Address **2210-109th Avenue, Oakland, CA 94603** | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name **AMTRAK** | No. Employees, Members **Under 15** | Phone No. (Include Area Code) **(415) 591-7839** |
|---|---|---|
| Street Address ~~5th and Townsend, San Francisco, CA 94111~~  1351 4th St. Bldg A. OAK-94160 | City, State and ZIP Code | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address | City, State and ZIP Code | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[ ] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **01-08-2004**    Latest **01-08-2004**
[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

"HIRED OAKLAND"

I was hired in 1998 and am a Conductor in the ~~San Francisco~~, California crew base. In November 2003 I faxed my application for Engineer to Respondent's Human Resources office in Los Angeles. Interviews were held in December 2003, but I was not called. I learned on or about January 8, 2004 that the selectees were Jason Garmon and Michael Poirier, both Caucasian.

I am senior to both selectees and believe I am better qualified for promotion. To the best of my knowledge and belief, Respondent has not promoted any Black employee to Engineer since 1998.

I believe I have been discriminated against because of my race, Black, in violation of the statute.

**RECEIVED**

FEB 09 2004

EEOC - OLO

EXHIBIT (DEFT) 3 for identification
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| x 1-28-04  x John E. Campbell  Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

D09919

Please list all employment starting with your present or most recent employer. Include relevant voluntary and /or part-time work experience.　Use additional sheet(s) if necessary.

**PRESENT COMPANY** DEW TRANSPORTATION

**STREET ADDRESS** 1338 S Rowan Ave **CITY** Los Angeles **STATE** CA **ZIP CODE** 90023

**DATES EMPLOYED FROM** 5-98 **TO** PRESENT **SUPERVISOR'S NAME** Cornell Thompson

**TELEPHONE NO** (800) 444-0471 **YOUR JOB TITLE** Truck driver **PRESENT SALARY** 10.00 p. H.

**MAJOR DUTIES:** driving & delivering around the Bay Area

**WHY DO YOU WISH TO CHANGE?** Benefits & A bump in pay.

**MAY WE CONTACT THE ABOVE NOW?　YES ☐　NO ☐　IF NOT, WHEN?**

**PRIOR COMPANY** County of Alameda

**STREET ADDRESS** 8000 Edgewater Drive **CITY** Oakland, CA **STATE** **ZIP CODE** 94621

**DATES EMPLOYED FROM** 4-97 **TO** PRESENT **SUPERVISOR'S NAME** Marcella Vasquez

**TELEPHONE NO.** (510) 639-1321 **YOUR JOB TITLE** Care-giver **SALARY** 5.75 p. hour

**MAJOR DUTIES:** Care for the disable

**REASON FOR LEAVING** Still with there

**PRIOR COMPANY** VIA MESSENGER SERVICE

**STREET ADDRESS** 1226 6th St. **CITY** San Francisco **STATE** CA **ZIP CODE** 94111

**DATES EMPLOYED FROM** 3-92 **TO** 4-97 **SUPERVISOR'S NAME** Mike Goodman

**TELEPHONE NO.** ( ) **YOUR JOB TITLE** Courier **SALARY** 6.75 p. H.

**MAJOR DUTIES:** delivered inter-office mail through-out Nor-Cal.

**REASON FOR LEAVING:** Company went Bankrupt.

**PRIOR COMPANY** Southern Pacific Trans.

**STREET ADDRESS** 1357 5th Ave **CITY** Oakland **STATE** Ca **ZIP CODE** 94607

**DATES EMPLOYED FROM** 5-84 **TO** 2-92 **SUPERVISOR'S NAME** Jim Smith

**TELEPHONE NO.** (510) 891-7759 **YOUR JOB TITLE** Machine Operator **SALARY** 14.95 p. H.

**MAJOR DUTIES:** Maintain & Repair Railroad Right-of-Way

**REASON FOR LEAVING:** Furlough

D10284

DO YOU HAVE ANY RELATIVES EMPLOYED ~ AMTRAK?    YES ☐    NO ☑

A RELATIVE IS A:

MOTHER, FATHER, MOTHER-IN-LAW, FATHER-IN-LAW, HUSBAND, WIFE, SON, DAUGHTER, SON-IN-LAW, DAUGHTER-IN-LAW, GRANDPARENT, GRANDCHILD, BROTHER, SISTER, BROTHER-IN-LAW, SISTER-IN-LAW, AUNT, UNCLE, NIECE, NEPHEW, STEPPARENT, STEPCHILD OF AN EMPLOYEE OR AN EMPLOYEE'S SPOUSE

IF YES, PLEASE LIST:

| NAME | RELATIONSHIP | POSITION | LOCATION |
|------|--------------|----------|----------|
|      |              |          |          |
|      |              |          |          |
|      |              |          |          |

PROFESSIONAL/PERSONAL REFERENCES

| NAME | ADDRESS | TELEPHONE NO. | OCCUPATION |
|------|---------|---------------|------------|
| Zelma Lollie | 305 N. Alvin BASTROP, LA 71220 | (318) 281-0677 | MOTEL MANAGER |
| Cornell Thompson DEW TRANS | 1338 S. Rowan Ave Los Angeles, CA 90023 | (800) 444-0471 | DISPATCHER |
| Wade Henderson | 8823 D St. Oakland, CA | (510) 636-6844 | CITY WORKER |

HAVE YOU EVER:

BEEN CONVICTED OF A CRIME WHICH HAS NOT BEEN EXPUNGED OR REMOVE FROM YOUR RECORD?    ☐ YES    ☑ NO

BEEN DISCIPLINED OR DISCHARGED FOR ABSENTEEISM, TARDINESS, FAILURE TO NOTIFY YOUR COMPANY WHEN ABSENT, OR ANY OTHER ATTENDANCE-RELATED REASON?    ☐ YES    ☑ NO

BEEN DISCIPLINED OR DISCHARGED FOR THEFT, UNAUTHORIZED REMOVAL OF COMPANY PROPERTY, OR RELATED OFFENSES?    ☐ YES    ☑ NO

BEEN DISCIPLINED OR DISCHARGED FOR FIGHTING, ASSAULT, OR RELATED OFFENSES?    ☐ YES    ☑ NO

BEEN DISCIPLINED OR DISCHARGED FOR INSUBORDINATION?    ☐ YES    ☑ NO

BEEN DISCIPLINED OR DISCHARGED FOR POSSESSION OR USE OF ALCOHOL OR DRUGS AT WORK?    ☐ YES    ☑ NO

BEEN TERMINATED OR ASKED TO RESIGN FROM EMPLOYMENT FOR ANY REASON?    ☐ YES    ☑ NO

IF YOU ANSWERED YES TO ANY OF THE ABOVE QUESTIONS, PLEASE EXPLAIN.

D10285

PLEASE DESCRIBE ANY OTHER EXPERIENCES, SKILLS, LANGUAGES OR QUALIFICATIONS WHICH YOU CONSIDER RELEVANT TO YOUR ABILITY TO PERFORM THE JOB FOR WHICH YOU ARE APPLYING

PRIOR RAILROAD EXP. KNOW ABOUT D.T.C. TRACK WARRANTS. WHEN A SWITCH IS PROPERLY LINED. HOW TO COUPLE- UNCOUPLE CAR; CAN OPERATE A LOCOMOTIVE.

NRPC 2187 (7/94)

WE APPRECIATE YOUR INTEREST IN AMTRAK AND THE TIME YOU HAVE TAKEN TO PREPARE THIS APPLICATION.

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 376-2004-00295 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Mr. John E. Campbell | (510) 632-4260 | 11-20-1961 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2210-109th Avenue, Oakland, CA 94603 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| AMTRAK | Under 15 | (415) 591-7839 |

| Street Address | City, State and ZIP Code |
|---|---|
| ~~5th and Townsend, San Francisco, CA 94111~~  1351 ~~4th~~ STH ST. Bldg A. OKN-94lo60 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN | Earliest  01-08-2004  Latest  01-08-2004 |
| ☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (Specify below.) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

"Ameda OAKLAND"

I was hired in 1998 and am a Conductor in the ~~San Francisco~~, California crew base. In November 2003 I faxed my application for Engineer to Respondent's Human Resources office in Los Angeles. Interviews were held in December 2003, but I was not called. I learned on or about January 8, 2004 that the selectees were Jason Garmon and Michael Poirier, both Caucasian.

I am senior to both selectees and believe I am better qualified for promotion. To the best of my knowledge and belief, Respondent has not promoted any Black employee to Engineer since 1998.

I believe I have been discriminated against because of my race, Black, in violation of the statute.

RECEIVED

FEB 09 2004

EEOC - OLO

EXHIBIT (DEFT) 3 for identification
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

| I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| x 1-28-04    x John E. Campbell  Date           Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year ) |

D09919

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  John E. Campbell<br>2210 109th Avenue<br>Oakland, CA 94603 | From:  Oakland Local Office<br>1301 Clay Street<br>Suite 1170-N<br>Oakland, CA 94612 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 376-2004-00295 | Julian F. Melendres,<br>Investigator Support Asst | (510) 637-3242 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court __WITHIN 90 DAYS__ of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court __WITHIN 90 DAYS__ of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred __more than 2 years (3 years)__ before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Joyce Hendy*                              10/15/04
_____                _____
Joyce A. Hendy,                              *(Date Mailed)*
Director

Enclosure(s)

cc:  Elias Munoz
     EEO Compliance Manager
     NATIONAL RR PASSENGER COR

EXHIBIT DEFT 4 for identification
WITNESS: *J. Campbell*
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

000008

**\* \* \* EMPLOYMENT \* \* \***

OMPLAINT OF DISCRIMINATION UNDER    DFEH #    E-200506-M-0250-00-c
HE PROVISIONS OF THE CALIFORNIA
AIR EMPLOYMENT AND HOUSING ACT                    DFEH USE ONLY

**CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**

UR NAME (Indicate Mr. or Ms.)  John Earl Campbell     TELEPHONE NUMBER (INCLUDE AREA CODE)  510-652-4266
DRESS  2210 109TH AVE.
TY/STATE/ZIP  Oakland  CA  94603              COUNTY  Alameda    COUNTY CODE

AMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP
OMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:
ME  Amtrak
DRESS  5040 Water St.  5th Floor     DFEH USE ONLY
TY/STATE/ZIP  Oakland  CA  94607              COUNTY  94607    COUNTY CODE
). OF EMPLOYEES/MEMBERS (if known)    DATE MOST RECENT OR CONTINUING DISCRIMINATION
                                     TOOK PLACE (month, day, and year)              RESPONDENT CODE

E PARTICULARS ARE:

n ___Sept. 17, 2004___ I was  ☑ fired
                                    ___ laid off          ___ denied employment          ___ denied family or medical leave
                                    ___ demoted           ___ denied promotion            ___ denied pregnancy leave
                                    ___ harassed          ___ denied transfer             ___ denied equal pay
                                    ___ genetic characteristics testing  ___ denied accommodation   ___ denied right to wear pants
                                    ___ forced to quit    ___ impermissible non-job-related inquiry  ___ denied pregnancy accommodation
                                                          ___ other (specify)

r  Joe Deely                      Division Supt.
   Name of Person                 Job Title (supervisor/manager/personnel director/etc.)

ecause of my: ___ sex              ___ national origin/ancestry    ___ physical disability    ___ cancer          (Circle one) filing;
              ___ age              ___ marital status              ___ mental disability      ___ genetic characteristic   Protesting; participating in
              ___ religion         ___ sexual orientation                                                          investigation (retaliation for)
              ☑ race/color         ___ association                 ___ other (specify)

e reason given by  Joe Deely - Division Supt.
                   Name of Person and Job Title

Vas           Retaliation For Filing an EEOC Discrimination
ecause of     Complain Against Amtrak For Not Promoting
lease state
hat you
elieve to be  Blacks To The Engineer position in Oakland
ason(s)]

h to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I
t a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the
H "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

e not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair
loyment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

lare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to
ers stated on my information and belief, and as to those matters I believe it to be true.

d  8-16-05

OAKLAND                          John Earl Campbell
   City                          COMPLAINANT'S SIGNATURE

EXHIBIT  DEF  5  for identification
WITNESS: Jo Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

-3GG-63 (01/05)                  DATE FILED:  08/17/0  AUG 17 2005              000015
OMPLAINT OF FAIR EMPLOYMENT AND HOUSING                                        STATE OF CALIFORNIA

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612-2512
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



August 29, 2005

JOHN EARL CAMPBELL
2210 109th Avenue
Oakland, CA 94603

RE:  E200506M0250-00-c
     CAMPBELL/AMTRAK

Dear JOHN EARL CAMPBELL:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective August 17, 2005 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

EXHIBIT    PLT
           (DEFT)     6
                          for identification
WITNESS: _J. Campbell_
DATE: _2-26-07_
SHARON TRUJILLO, CSR 6120

EXHIBIT A

Notice of Case Closure
Page Two

The Department of Fair Employment and Housing does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Dorothy Padilla
District Administrator

cc:    Case File

EEO Representative
Human Resource Department
AMTRAK
5041 Water Street 5th Fl
Oakland, CA  94607

DFEH-200-43 (04/03)

# NEW- HIRE CHECKLIST - AGREEMENT COVERED POSITION

| YES | NO | N/A | |
|-----|-----|-----|---|
| ( ✓ ) | ( ) | ( ) | NRPC 2525 STANDARDS OF EXCELLENCE |
| ( ) | ( ✓ ) | ( ) | HEALTH & WELFARE BENEFITS - AMPLAN |
| ( ✓ ) | ( ) | ( ) | NATIONAL DENTAL PLAN - AETNA GP12000 |
| ( ✓ ) | ( ) | ( ) | BUSINESS TRAVEL ACCIDENT INSURANCE (CG0386430-06) |
| ( ) | ( ✓ ) | ( ) | APPLICABLE LABOR AGREEMENT |
| ( ✓ ) | ( ) | ( ) | EEO INTERNAL COMPLAINT PROCEDURES HANDOUT |
| ( ✗ ) | ( ✓ ) | ( ) | AFFIRMATIVE ACTION PROGRAM |
| ( ✓ ) | ( ) | ( ) | EQUAL EMPLOYMENT OPPORTUNITY POLICY |
| ( ✓ ) | ( ) | ( ) | ATTENDANCE POLICY |
| ( ✓ ) | ( ) | ( ) | FEDERAL/STATE W4 FORMS |
| ( ✓ ) | ( ) | ( ) | EMPLOYEE INFORMATION FORM - NRPC 2001 |
| ( ) | ( ) | ( ) | AUTHORIZATION FOR DIRECT DEPOSIT - NRPC 2032 |
| ( ✓ ) | ( ) | ( ) | SAVINGS BOND APPLICATION FORM |
| ( ✓ ) | ( ) | ( ) | EMPLOYEE ASSISTANCE PROGRAM BOOKLET |
| ( ✓ ) | ( ) | ( ) | EDUCATIONAL ASSISTANCE POLICY |
| ( ✓ ) | ( ) | ( ) | RAILROAD RETIREMENT & SURVIVOR BENEFITS BOOKLET |
| ( ✓ ) | ( ) | ( ) | EMPLOYEE ELIGIBILITY VERIFICATION (INS FORM - I-9) |
| ( ✓ ) | ( ) | ( ) | SEXUAL HARASSMENT INFORMATION |
| ( ✓ ) | ( ) | ( ) | FLASH PASS |

DATE: _9-30-98_    SIGNATURE: ~~John Earl Campbell~~ John Ed Campbell

SS #: _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_    NAME: _John Earl Campbell_
(PLEASE PRINT)

POSITION. _ASST. Conductor_    D10275

PERSONNEL DEPARTMENT REPRESENTATIVE: _Denise H. Sargeant_

EXHIBIT for identification
J. J. Campbell
WITNESS:
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

# Receipt

My signature indicates that I have received a copy
of the *Service Standards Reference Manual for
Train Service and On-Board Service Employees.*
I understand that I am responsible for reading and
updating my manual and that I must follow the
procedures outlined. I also understand that this
receipt will be placed in my personnel file.

Name: _John Campbell_
            (please print)

Signature: _John Campbell_

Date: _5-14-04_

Issuing Location: _Oakland_

Service Standards Manual No 2

EXHIBIT  PLT.
DEF.  11  for identification
WITNESS: _J. Campbell_
DATE: _2-26-07_
SHARON TRUJILLO, CSR 6120

D10498

# ACKNOWLEDGEMENT OF RECEIPT OF ⬤TRAK
# STANDARDS OF EXCELLENCE

I have received a copy of the booklet entitled "Amtrak Standards of Excellence." I understand that I should read the booklet carefully and that I will be expected to follow the standards of excellence outlined in it. I understand that failure to follow these standards will result in appropriate corrective or disciplinary action.

Employee Signature: _John Earl Campbell_

Print Name: _JoHn EARL Campbell_

Date: _9-30-98_

Signature of Company Representative: _Denise H Sargeant_

Print name: _DENISE H. SARGEANT_

Date: _9/30/98_

*Please detach this form and give to company representative for your employee file.*

ii

EXHIBIT  PLT.
DEPT.  _12_  for identification
WITNESS: _J. Campbell_
DATE: _2-26-07_
SHARON TRUJILLO, CSR 6120

D10292

 

 National Railroad Passenger Corporation, California Corridor, 1851-A 5th Street, Oakland, CA 94607

# WAIVER OF RIGHT TO FORMAL INVESTIGATION

Date: April 12, 2000

I hereby waive my right to the Formal Investigation originally scheduled for April 12, 2000, 2:00 p.m., at Mechanical Facility, 250 Wood St., Oakland, California in connection with the following:

**Charges**: "Your alleged failure to follow the General Code of Operating Rules, Third Edition, 1.1.3, 6.28, 7.1, 7.3, & 7.5; Safety rule: 5316(e); and AMT-3 rule 16.2.2.

**Specifications**: Damage to equipment during the 11PM yard assignment of March 24, 2000. Damage to the cables occurred when 8804 was cut from car 8030 on 2 track. And further damage was done when 8804 was moved to 8 track. The 8027 and 8020 were in the 8 track. The 8020 was shoved into the 8027 by the move of the 8804. Damages were unreported.

I further hereby agree to accept the following discipline assessed by the National Railroad Passenger Corporation:

A letter of reprimand will be issued to you and placed in your file.

<u>John Campbell</u>
Employee Name (Print)

_Joh C  by Hell_
Employee Signature

4-13-00
Date

_signature_

Witness Signature

4-13-00

Witness Signature

Cc: B. Barnes
    R. A. Wood
    Roger Butler - File # 0161.00
    R. Belloumini-UTU Local Chairman

EXHIBIT PLT. DEPT. 13 for identification
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 8120

AN EQUAL OPPORTUNITY EMPLOYER

EXHIBIT B



National Railroad Passenger Corporation, Law Department, 344 Mira Loma Avenue, Glendale, California 91204

### DECISION



**March 28, 2002**
**File #LAX-UTU-02/DISC**
**Case #019.02**

FedEx Tracking #8313 2752 9178

| EXHIBIT | 14 |
| --- | --- |
| WITNESS: | J. Campbell |
| DATE: | 2-26-07 |
| SHARON TRUJILLO, CSR 6120 | |

Mr. John Campbell
2210 109th Avenue
Oakland, CA 94603

Dear Mr. Campbell:

By letter, dated January 17, 2002, you were charged with the following misconduct:

**Charge 1**: Your alleged violation of the *General Code of Operating - Fourth Edition - April 2, 2000 - Rule 6.28 - Movement on Other than Main Track*, which reads, "Except when moving on a track where a block system is in effect, trains or engines must move at a speed that allows them to stop within half the range of vision short of:

- ◆    Train.
- ◆    Engine.
- ◆    Railroad car.
- ◆    Men or equipment fouling the track.
- ◆    Stop Signal or Derail or switch lined improperly."

**Charge 2**: Your alleged violation of the *General Code of Operating Rules - Fourth Edition - April 2, 2000 - Rule 7.1, Switching Safely and Efficiently*, which reads in part... "While switching, employees must work safely and efficiently and avoid damage to contents of cars, equipment, structures, or other property."

**Charge 3**: Your alleged violation of the *General Code of Operation Rules - Fourth Edition - April 2, 2000 - Rule 7.4 Precautions for Coupling or Moving Cars or Engines*, which reads "Before coupling to or moving cars or engines, verify that the cars or engines are properly secured and can be coupled and moved safely.

Make couplings at a speed of not more than 4 MPH. Stretch the slack to ensure that all couplings are made."

**Charge 4**: Your alleged violation of the *General Code of Operation Rules - Fourth Edition - April 2, 2000 - Rule 7.12 Movements into Spur Tracks*, which reads in part... "When shoving into a spur track, control movement to prevent damage at the end of track..."

EXHIBIT D

Decision Letter
Mr. John Campbell
Case #019.02
Page Two

**Specifications**: It is alleged that while working as the Conductor on Yard Job CYO-4 on January 10, 2002, while shoving into Fume track in the Oakland yard with 17 cars and 3 units, you were directing the movement when an alleged hard coupling resulted in equipment damage and the derailment of a boxcar.

After one postponement, the Hearing Officer conducted a disciplinary investigation into the above-quoted charges. The investigation was conducted on March 15, 2002, in which your representative were in attendance. The following findings are based on the evidence and testimony presented at the investigation:

> The rule cited was in effect and applicable to you at the time of the alleged wrongdoing, as it is applicable to all Amtrak employees in your job category.

> The charges were sustained primarily, although not exclusively, by your own testimony and omission, and the testimony of Mr. Sid Birckett.

Based on the foregoing findings and the hearing record as a whole, I find that you are guilty of the above-quoted charges. The transcript of the aforementioned investigation will be forthcoming per the agreement with the union.

Sincerely,

*Roger R Butler*

Roger R. Butler
Hearing Officer
Western Region

P4·8

KATHLEEN MAYLIN (SBN (SBN 155371)
CARA CHING-SENAHA (SBN 298467)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile: (415) 394-9401

Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK and JOE DEELY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive,<br><br>Defendants. | Case No. C05-05434 MJJ<br><br>**DECLARATION OF CARA CHING-SENAHA IN SUPPORT OF DEFENDANTS' NATIONAL RAILROAD PASSENGER CORPORATION'S AND JOE DEELY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>[Notice of Motion, Memorandum of Points and Authorities, and Declarations in Support of Motion concurrently filed]<br><br>Date:         May 8, 2007<br>Time:         9:30 a.m.<br>Courtroom:  11<br>Floor:         19<br>Judge:        The Hon. Martin J. Jenkins<br><br>Complaint Filed:    12/30/05<br>FAC Filed:    2/23/06<br>Trial Date:    7/23/2007<br><br>[Fed.R.Civ.Proc. 56] |

I, Cara Ching-Senaha, declare on the basis of personal knowledge:

    1.    I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

1

1    DEELY.  I am licensed to practice law in the above-referenced district court.  I make the

2    following statements based on personal knowledge.

3        2.    I have reviewed in its entirety the transcript for Mr. John Campbell's deposition,

4    taken February 26, 2007.  Attached hereto as Exhibit A are true and correct copies of select pages

5    from Mr. Campbell's deposition and select deposition exhibits, as referenced in Defendants'

6    Memorandum of Points and Authorities.

7        3.    I have reviewed in its entirety the transcript for Susan Venturelli's deposition,

8    taken March 23, 2007.  Attached hereto as Exhibit B are true and correct copies of select pages

9    from Ms. Venturelli's deposition, as referenced in Defendants' Memorandum of Points and

10   Authorities.

11       4.    I have reviewed in its entirety the transcript for Joseph Deely's deposition, taken

12   February 15, 2007.  Attached hereto as Exhibit C are true and correct copies of select pages from

13   Mr. Deely's deposition, as referenced in Defendants' Memorandum of Points and Authorities.

14       Executed this 3rd day of April, 2007 in San Francisco, California.  I declare under penalty

15   of perjury under the laws of California and the United States of America that the foregoing is true

16   and correct.

17

18                                         Cara Chings

19                                    CARA CHING-SENAHA

20

21

22

23

24

25

26

27

28

**Decision Letter**
**Mr. John Campbell**
**Case #019.02**
**Page Three**

Based on the decision of Hearing Officer Butler, you are hereby assessed discipline of:

* TEN DAYS SUSPENSION TO INCLUDE THE FOLLOWING:

* 4 Days Time Served from January 12, 2002 – January 15, 2002
  and 6 Days Suspension to be served between April 3, 2002 and to
  include April 8, 2002, and Ten Days to be held in abeyance.

Sincerely,

Jay Commer
General Manager
California Corridor


cc:    G. Baxter
       R. Belluomini-FedEx Tracking #8313 2752 1989
       Personnel
       Labor Relations



AMTRAK JOB

SO1735 83

Engine SERVICE

C/o

EXTERNAL PAUL HO

FAXED
Northern
to Paul

11-19-03

EXHIBIT 17
for identification.
WITNESS: S. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

D09960

JOHN CAMPBELL
2210 109th. AVE.
(510) 632-5081
OAKLAND, CALIFORNIA
94603-4032


JOB HISTORY

5-84/2-92    SOUTHERN PACIFIC TRANS.
             MACHINE OPERATOR
             REPAIR RAILROAD RIGHT-OF-WAY; OPERATED SEVERAL TRACK MACHINES
             TAMPERS, BALLAST REGULATOR, HI-RAILER, ETC.


2-92/4-97    VIA MESSENGER SERVICE
             COURIER
             DELIVERED INTER-OFFICE IN DOWNTOWN SAN FRANCISCO


4-97/PRESENT  COUNTY OF ALAMEDA
              IN-HOME CARE GIVER
              PROVIDE IN-HOME SERVICE TO THE AGING & DISABLE.


EDUCATION

9-80/6-81
          MERRITT COLLEGE  1 SEMESTER-LITERATURE            OAKLAND.CA

10-77/6-80
          OAKLAND HIGH SCHOOL    CLASS OF 80        3.26  G.P.A.


ACTIVITIES   FISHING, HIKING, FOOTBALL, BASEBALL & BOWLING.
AWARDS       PERFECT ATTENDENCE SR.YEAR OF HIGH SCHOOL.
             SAFETY AWARD 1987 SOUTHERN PACIFIC.


REFERENCES        AVAILABLE UPON REQUEST


D09961

09/17/2004   14:31     5104378815                              AMTRAK                     PAGE   01
; 09/16/2004   10:15     1217837092                      LAW. DEPARTMENT                           PAGE   01

NATIONAL RAILROAD PASSENGER CORPORATION
810 North Alameda Street, Los Angeles, CA 90012

## *DECISION*



**September 17, 2004**
**File #LAX-UTU-04/DISC**
**Case #386.04**

Federal Express #7919 3003 8200

Mr. John Campbell
2210 109th Avenue
Oakland, CA 94603

Dear Mr. Campbell:

By letter, dated August 6, 2004, Case #386.04, you were directed to appear for a formal investigation.

A formal disciplinary investigation was conducted on September 9, 2004, in which you and your union representative were in attendance. The following findings are based on the evidence and testimony presented at the investigation:

1.   The rules cited were in effect and applicable to you at the time of the alleged wrongdoing, as it is applicable to all Amtrak employees in your job category.

2.   Charge 2 was not sustained.

3.   Charges 1, 3, 4 and 5 were proven.  It is evident on the record by the testimony of the Corporation's witnesses and your own testimony that you clearly violated the rules and instructions regarding the movement and coupling of cars and engines.

Based on the foregoing findings and the hearing record as a whole, I find that you are guilty of the charges.  The transcript of the aforementioned investigation is enclosed.

Sincerely,

Patrick Gallagher
Hearing Officer
Western Region

EXHIBIT PLT.  19
        DEF.          for Identification
WITNESS: J. Campbell
DATE: 2-26-07

SHARON TRUJILLO, CSR 6120

EXHIBIT J

09/17/2004   14:31   51043   915                AMTRAK              ●                    PAGE   02

**Decision Letter**
**Mr. John Campbell**
**Case No. 386.04**
**Page Two**



Based on the decision of Hearing Officer, Gallagher, you are hereby assessed discipline of:

    Termination from service, effective immediately.  This decision is based on the current charges and your previous Discipline Record listed below:

| Date | Charge/Rule Violation | Discipline Assessed |
|------|----------------------|---------------------|
| 4/4/00 | GCOR Rules - 1.1.3 Accidents, Injuries, and defects, 6.28 Other than Main Track Movements, 7.1 Switching safely, 7.3 Switching precautions, 7.5 Testing Hand Brakes, 7.6 Securing cars and engines | Waived |
| 1/14/02 | GCOR Rules – 7.1 Switching Safely and Efficiently, 7.4 Precautions for Coupling and Moving Cars or Engines, 7.12 Movements into Spur Tracks | S10 |

Sincerely,

*S E Shelton*

S. E. Shelton
District Superintendent
Pacific Division – Bay District

SES/lr

cc:    E. Adams – UTU Chairman – Fed Ex Tracking 7902 6820 6654
       L. C. Hriczak – Director – Labor Relations
       T. Duffy – Director – Human Resources

November 9, 2004

Mr. A. L. Suozzo, General Chairperson
United Transportation Union
1515 Market Street, Suite 708
Philadelphia, PA 19102

Re:    <u>OC-UTU-SD-1678D</u>
       J. Campbell

Dear Mr. Suozzo:

We discussed this case during our conference on October 27, 2004, with Mr. R. M. Lenfest, of
your staff. The case involves the dismissal of Conductor John Campbell, Oakland, California, in
connection with the following charges:

> "Charge 1: Your alleged violation of Amtrak's Service Standards for Train Service
> Employees - Manual No. 2 (effective 5/3/2004) - Chapter 3B - Safety Rules for Train
> Service Employees - Rule 5800 - Coupling or Uncoupling Engine or Cars, which reads
>
> > 'Prior to going on, under or between standing equipment for the purpose
> > of coupling or uncoupling engines or cars, crewmembers must:
> >
> > - Discuss safety matters and work to be performed.
> > - Communicate before action is taken.
> > - Protect against moving equipment.
> > - Secure equipment before action is taken.
> > - Mentor less experienced employees to perform service safely.'

Charge 2: Your alleged violation of General Code of Operating Rules - Fourth Edition -
April 2, 2000 - Rule 7.1 - Switching Safely and Efficiently, which reads in part... 'While
switching, employees must work safely and efficiently and avoid damage to contents of
cars, equipment, structures, or other property.'

Charge 3: Your alleged violation of General Code of Operating Rules - Fourth Edition -
April 2, 2000 - Rule 1.47 - Duties of Trainmen and Enginemen, Item D Other Crew
Members' Responsibilities, Part 1. 'To ensure the train is operated safely and rules are
observed, other crew members must assume as much responsibility as possible to prevent
accidents or rules violations.'

EXHIBIT PLT. 2/
DEFT.         for identification
J. Campbell
WITNESS:
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

EXHIBIT M

Mr. A. L. Suozzo        Re:    <u>OC-UTU-SD-1678D</u>
November 9, 2004                J. Campbell
Page 2

> Charge 4: Your alleged violation of General Code of Operating Rules - Fourth Edition - April 2, 2000 - Rule 7.4 - Precautions for Coupling or Moving Cars or Engines, which reads in part... 'Before coupling to or moving cars or engines, verify that the cars or engines are properly secured and can be coupled and moved safely.'
>
> Charge 5: Your alleged violation of Amtrak Air Brake and Train Handling Rules and Instructions, AMT-3 - Revised and Reissued August 19, 2002 - Rule 2.14.16: which reads... 'Multiple lite locomotives may be moved within the confines of a yard or terminal without connecting the M.U. hoses, as long as the brake pipe and main reservoir hoses are connected with associated angle and main reservoir cocks open.'
>
> Specification: It is alleged that on July 24, 2004 while assigned to position CYO103 working as the Conductor in the Oakland Diesel Shop you cut out the brakes on a locomotive and failed to properly secure it prior to coupling."

During conference, the Organization contended that the Carrier failed to call the assistant conductor to testify; that the Claimant's inability to connect air hoses on the pit mitigated his guilt; and that Claimant's actions did not result in damage or delay to a train. The union contended further, that in any event, the discipline assessed was excessive. For these reasons, the Organization requested that the discipline be expunged from the Claimant's record and that he be restored to service with pay for time lost and all rights and benefits unimpaired.

The record indicates that the Claimant was properly notified, in writing, of the charge against him and was given proper notice to appear for the investigation on August 10, 2004. At the investigation, which had been postponed–by mutual agreement–until September 9, 2004, the Claimant was present and represented by a duly authorized representative of the Organization, who was permitted to cross-examine witnesses and present evidence on his behalf.

There is no evidence in the record in this case that any action of the carrier was an abuse of the discretion vested in it. The record clearly shows that the Claimant's rights to a fair and impartial investigation were not violated and that there is substantial evidence to support the Hearing Officer's finding that he was guilty of charges 1, 3, 4 and 5. Charge 2 was not sustained.

The Carrier was not required to call the assistant conductor to testify inasmuch as the charges were proven through the testimony of Mr. Dave West, Foreman, as well as Claimant's admission that he disabled the brakes on the locomotive and left it on the pit. Their testimony disclosed that the locomotive rolled away during a hard coupling on the service track because the Claimant had disabled its brakes. The record reveals that Foreman West ran after the locomotive, boarded it, cut the trucks back in, and was able to stop it from rolling further.

Mr. A. L. Suozzo          Re:    <u>OC-UTU-SD-1678D</u>
November 9, 2004                 J. Campbell
Page 3

The Claimant has offered no evidence in support of his unsubstantiated assertion that it was unsafe to cut in the locomotive's trucks while it was on the pit. Such contention is nothing more than a self-serving attempt to mitigate his admitted violation of the rules with which charged.

Finally, in view of the Claimant's admission and in consideration of his service record, which includes progressive discipline, both a reprimand and a twenty-day suspension (ten days actual and ten held in abeyance), for operating rule violations involving switching, securing, and coupling equipment, the discipline assessed was commensurate and was not arbitrary, capricious or excessive. The Claimant has been afforded sufficient opportunity to correct his behavior to comply with the Carrier's operating rules and failed to do so. The Carrier need not retain employees in its service who are unable to work safely and are either unable or unwilling to comply with the Carrier's operating rules.

For these reasons, your appeal is denied in its entirety.

Very truly yours,

*Larry C. Hriczak 11/9/04*

Larry C. Hriczak
Director-Labor Relations

bc:    Joe Deely
       Steve Shelton
       Bob Schmitt
       Milton Lundy
       Betty Blair
       Jim Ryan
       Lou De Phillips
       Jennifer Rieker
       Val Giulian
       Lisa Caridine
       Dick Wood
       Rick Sandler
       Library



Job Reference # 50173583

**Amtrak - California-Oakland/East Bay - Passenger Enigneer (2) eff 11/14/2003**

The closing date for this position is November 21, 2003. The salary for this position is $16.11 per hour.

Internal applicants only.

Summary of Duties:
Consistently and safely operates locomotives and trains in compliance with federal regulations and corporate policies. Operates equipment during varying work hours within a 24/7 transportation environment maintaining alertness, situational awareness and vigilance. Thinks and functions independently and utilizes clear and effective verbal communication skills in interaction with fellow crew members and other personnel responsible for safe and efficient train movement.

Education:
High School diploma or GED required. Some college or vocational training preferred.

Work Experience:
Some work experience demonstrating the ability to maintain alertness, awareness and vigilance, as well as clear, effective verbal communication skills in the performance of work. Satisfactory attendance and safe work record. Prior railroad operating experience and work history that demonstrates ability to adapt to variable and often changing work hours preferred. Preference given to individuals who were trained by a Class 1 carrier or equivalent passenger railroad and are currently certified as Class 1 Train Service Engineers.

Other Requirements:
1. Must provide a certified copy of motor vehicle driving record from the chief of the state driver's licensing agency in which the applicant was last issued a license and any license(s) issued or reissued from other state(s) within the preceding 60 months. Motor vehicle records must be void of any drug and alcohol violations within the previous 36 months.
2. Must have a motor vehicle driving record void of any convictions or state action canceling, revoking, suspending or denying a driver's license for operating a motor vehicle while under the influence of or impaired by alcohol or a controlled substance within the last 36 months or a record of refusal to undergo such testing as required by state law within the last 36 months.
3. Must sign a release of records authorizing all previous railroad employers to provide Amtrak with background information, if applicable. In accordance with FRA regulations, previous



      11/14/2003



railroad service records must be void of any drug and alcohol violations within the previous 60 months.

Other:
If selected, incumbent will be required to successfully complete Engineer Training as follows:
Individuals not previously certified as Class 1 Train Service Engineers:
7-10 weeks classroom and field work while headquartered at Amtrak's Training Center in Wilmington, DE; followed by extensive qualifying and on-the-job training associated with the Crew Base for which hired; paid at the student training rate until incumbent achieves certification as a Class 1 Train Service Engineer (currently $16.11/hour straight time).

Individuals currently certified as Class 1 Train Service Engineers:
2-4 weeks classroom and field work while headquartered at Amtrak's Training Center in Wilmington, DE, followed by additional qualifying associated with the Crew Base for which hired; paid at the rate determined by the agreement schedule.

Incumbents are subject to periodic medical examinations including random drug and alcohol screenings.

Travel:
100 percent
Job Notes

**Last Day to Apply:** 11/21/2003
**Job Category:** Transportation
**Years of Experience:** 1- 5
**Travel Requirements:** High
**Relocation Benefits may Apply:** No
**Referral Bonus:** 0 points

AMTRAK is an equal opportunity employer committed to employing a diverse workforce. Internal AMTRAK employees must complete a job opportunities application to apply for positions.
© Copyright 2001 TeamRewards.com. All Rights Reserved.

http://www.teamrewards.net/task/job_posting.jsp?ts_am3q25ml2k13=2704          11/14/2003

# Notice of Formal Investigation
## Fed Ex Tracking # 7917 5568 9868

January 17, 2002

*EXH #1*

Mr. John E. Campbell
2210 109th Avenue
Oakland, CA 94603

**Case No. 019.02**

Dear Mr. Campbell:

You are hereby directed to appear for a Formal Investigation to be conducted as follows:

| | |
|---|---|
| **Date:** | January 25, 2002 |
| **Time:** | 3:00 PM |
| **Location:** | Amtrak's Jack London Station |
| | 245 2nd Street, 2nd Floor |
| | Oakland, CA 94607 |

The purpose of this investigation is to develop the facts and determine your responsibility, if any, in connection with the following:

**Charge 1:** Your alleged violation of the **General Code of Operating – Fourth Edition – April 2, 2000 – Rule 6.28 – Movement on Other than Main Track,** which reads, "Except when moving on a track where a block system is in effect, trains or engines must move at a speed that allows them to stop within half the range of vision short of:

- ❖ Train.
- ❖ Engine.
- ❖ Railroad car.
- ❖ Men or equipment fouling the track.
- ❖ Stop Signal or Derail or switch lined improperly."

**Charge 2:** Your alleged violation of the **General Code of Operating Rules – Fourth Edition – April 2, 2000 – Rule 7.1, Switching Safely and Efficiently,** which reads in part… "While switching, employees must work safely and efficiently and avoid damage to contents of cars, equipment, structures, or other property."

EXHIBIT 27
for Identification
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

Mr. John Campbell
Case No. 019.02
Page 2

**Charge 3:** Your alleged violation of the **General Code of Operating Rules – Fourth Edition – April 2, 2000 – Rule 7.4 Precautions for Coupling or Moving Cars or Engines**, which reads, "Before coupling to or moving cars or engines, verify that the cars or engines are properly secured and can be coupled and moved safely.

Make couplings at a speed of not more than 4 MPH. Stretch the slack to ensure that all couplings are made."

**Charge 4:** Your alleged violation of the **General Code of Operating Rules – Fourth Edition – April 2, 2000 – Rule 7.12 Movements into Spur Tracks**, which reads in part… "When shoving into a spur track, control movement to prevent damage at the end of track…."

**Specifications:** It is alleged that while working as the Conductor on Yard Job CYO-4 on January 10, 2002, while shoving into Fume track in the Oakland Yard with 17 cars and 3 units, you were directing the movement when an alleged hard coupling resulted in equipment damage and the derailment of a box car.

You may produce any witnesses you desire and may be accompanied by a representative as provided in your current and governing agreement, without expense to the National Railroad Passenger Corporation.

All requests for postponements of this investigation must be handled through the Hearing Office at (818) 547-2519.

Sincerely,

Gregg Baxter
Assistant General Manager
California Corridor

cc:     L. J. Commer - GM
        S. Birckett – AGM
        R. Wood – Labor Relations
        R. Butler – Hearing Office
        R. Belluomini – UTU Local Chairman
        L. Bellotti – Facility Manager
        D. Roberts – General Foreman
        M. McBride – Manager Operating Rules
        R. Robusto – Senior Director OPS

**PUBLIC LAW BOARD NO. 6478**

Case No. 37
Award No. 37

(United Transportation Union

**PARTIES TO DISPUTE: (**

(National Railroad Passenger Corporation (Amtrak)

**STATEMENT OF CLAIM:**

"Request the discipline of a ten days suspension to include the following:
4 days time served from January 12, 2002 - January 15, 2002 and 6 days
suspension to be served between April 3, 2002 and to include April 8, 2002,
and ten days to be held in abeyance, imposed upon John Campbell be
rescinded and expunged from this record, and that he be compensated for
all time lost in connection with the following charges:

Charge 1: Your alleged violation of the <u>General Code of Operating -
Fourth Editions - April 2, 2000 - Rule 6.28 - Movement on Other Than
Main Track</u>, which reads, 'Except when moving on a track where a block
system is in effect, trains or engines must move at a speed that allows them
to stop within half the range of vision short of:

- •       Train
- •       Engine
- •       Railroad Car.
- •       Men or equipment fouling the track.
- •       Stop Signal or Derail or switch lined improperly.'

Charge 2: Your alleged violation of the <u>General Code of Operating -
Fourth Editions - April 2, 2000 - Rule 7.1 Switching Safely and Efficiently</u>,
which reads in part... 'While switching, employees must work safely and
efficiently and avoid damage to contents of cars, equipment, structures, or
other property.'

Charge 3: Your alleged violation of <u>General Code of Operating - Fourth
Editions - April 2, 2000 - Rule 7.4 Precautions for Coupling or Moving
Cars or Engines</u>, which reads, 'Before coupling to or moving cars or
engines, verify that the cars or engines are properly secured and can be
coupled and moved safely.

EXHIBIT PLT 29
DEFT                    for identification
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

D09554

'Make couplings at a speed of not more than 4 MPH.  Stretch the slack to
ensure that all couplings are made.'

Charge 4: Your alleged violation of <u>General Code of Operating - Fourth
Editions - April 2, 2000 - Rule 7.12 Movements into Spur Tracks</u>, which
reads in part... 'When shoving into a spur track, control movement to
prevent damage at the end of the track...'

<u>Specifications</u>: It is alleged that while working as the Conductor on Yard
Job CYO-4 on January 10, 2002, while shoving into the Fume track in the
Oakland yard with 17 cars and 3 units, you were directing the movement
when an alleged hard coupling resulted in equipment damage and the
derailment of a boxcar."        [System Docket OC-UTU-SD-829D]

## FINDINGS:

This Board, after hearing upon the whole record and all the evidence finds that
the Carrier and the Employee involved in this dispute are respectively Carrier and
Employee within the meaning of the Railway Labor Act, as amended; this Board has
jurisdiction over the dispute involved herein; and, the parties were given due notice of
hearing thereon.

This Board will forego a full discussion of the instant case due to its careful
examination of the record on the property.  The Agreement provision specifically sets
forth in Rule 25 (Discipline) the procedures for appeal.  Once the discipline is imposed,
the appeal must be made within fifteen (15) days "to the Labor Relations officer having
jurisdiction" in the process.  There is no dispute in this record, that the Claimant was
notified by date of March 28, 2002 of the Carrier's findings of guilt.  There is no dispute
in this record that the Organization filed claim with the Carrier's highest officer by
letter of April 12, 2002.  There is no record of any proper handling at the second level
of appeal before it went to the highest officer.

The Board is compelled by Section 3, First (I) of the Railway Labor Act, which
precludes consideration of claims that are not "handled in the usual manner up to and
including the chief operating officer of the carrier designated to handle such disputes",
*to dismiss such claims*.  When, as here, the appeal process has clearly not been followed
in the usual manner on the property, the Board has no recourse, but to dismiss the

Public Law Board No. 6478
Case No. 37: Award No. 37
Page 3 of 3

dispute without reaching the merits. The Carrier's position on property with regards to this issue is deemed proper. The claim must be dismissed.

**AWARD:**

The claim is dismissed.


Marty E. Zusman, Chairman
Neutral Member


C. A. Iannone
Organization Member

Wm. H. Robinson, Jr.
Carrier Member

Date: 8/2/04

D09556

# *united transportation union*

A.L. Suozzo
General Chairperson

GENERAL COMMITTEE OF ADJUSTMENT GO-769

NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK)
MASSACHUSETTS BAY COMMUTER RAILROAD (MBCR)
HERZOG TRANSIT SERVICES, INC.
CONRAIL SAA

**CERTIFIED MAIL
RETURNED RECEIPT REQUESTED
& REGULAR MAIL
7004 1350 0005 2727 1918**

R. M. Lenfest, Jr.
Vice Chairperson

G. R. Galvin
Secretary

July 18, 2005

Mr. John E. Campbell
2210 109th Ave.
Oakland, CA 94603

Dear Sir and Brother:

This is to advise you that the following claim in connection with which you are the Claimant, will be heard by Public Law Board No. 6478, on Monday, August 8, 2005, at 9:00 AM in the Carrier's office, Labor Relations Conference Room, 30th Street Station, 2nd Floor South Tower, Philadelphia, PA.

**System Docket No. OC-UTU-SD- SD-1678D-** Request the discipline of dismissal imposed upon J. Campbell be expunged from his record and that he be restored to service with seniority and vacation rights unimpaired and compensated for all time and expenses incurred inclusive of Health and Welfare premiums, Reduced Train Crew Allowance and Productivity Savings Sharing Allowance and credit for Railroad Retirement payments for each month for all time lost in connection therewith:

**"Charge 1:** Your alleged violation of Amtrak's Service Standards for Train Service Employees - Manual No. 2, (effective 5/3/2004-Chapter 3B - Safety Rules for Train Service Employees - Rule 5800 – Coupling or Uncoupling Engine or Cars, which reads:

'Prior to going on, under or between standing equipment for the purpose of coupling or uncoupling engines or cars, crewmembers must:

- Discuss safety matters and work to be performed.
- Communicate before action is taken.
- Protect against moving equipment.
- Secure equipment before action is taken.
- Mentor less experienced employees to perform service safely.'



000109

Mr. John E. Campbell
July 18, 2005
Page 2

**Charge 2:** Your alleged violation of **General Code of Operating Rules-Fourth Edition - April 2, 2000-Rule 7.1 - Switching Safely and Efficiently,** which reads in part . . . 'While switching, employees must work safely and efficiently and avoid damage to contents of cars, equipment, structures, or other property.'

**Charge 3:** Your alleged violation of **General Code of Operating Rules - Fourth Edition - April 2, 2000--Rule 1.47 - Duties of Trainmen and Enginemen, Item D Other Crew Members' Responsibilities, Part 1.** 'To ensure the train is operated safely and rules are observed, other crew members must assume as much responsibility as possible to prevent accidents or rule violations."

**Charge 4:** Your alleged violation of **General Code of Operating Rules-Fourth Edition - April 2, 2000--Rule 7.4- Precautions for Coupling or Moving Cars or Engines,** which reads in part . .. 'Before coupling to or moving cars or engines, verify that the cars or engines are properly secured and can be coupled and moved safely.

**Charge 5:** your alleged violation of **Amtrak Air Brake and Train Handling Rules And Instructions, AMT-3-Revised and Reissued August 19, 2002-Rule 2.14.16:** which reads: 'Multiple lite locomotives may be moved within the confines of a yard or terminal without connecting the M.U. hoses, as long as the brake pipe and main reservoir hoses are connected with associated angle and main reservoir cocks open.

**Specification:** It is alleged that on July 24, 2004 while assigned to position CYO103 working as the Conductor in the Oakland Diesel Shop you cut out the brakes on a locomotive and failed to properly secure it prior to coupling."

If you desire to attend, you may do so, without expense to the United Transportation Union. Please advise this office if your intention is to attend the hearing.

Fraternally yours,

*A. L. Suozzo*

A. L. Suozzo
General Chairperson

ALS/rmb

G: Amtrak Discipline 2004/am Campbell

000110

S0131788

## AMTRAK JOB REQUISITION AND QUALIFICATION PROFILE

POSTING NO. _____     DATE: _____

| | |
|---|---|
| **DEPARTMENT:** CUSTOMER SERVICE | **REPORTS TO:** M. COLLINS |
| **JOB TITLE:** LOCOMOTIVE ENGINEER (12) TRAINEE | **CONTACT:** C. T. Miller |
| | **PHONE #:** ATS: 767-4993 |

| JOB CODE: | GRADE: | | DATE REQUIRED: | 11/1/01 | MINIMUM SALARY: | BLE Agmt. |
|---|---|---|---|---|---|---|
| **RES CEN:** 7270 | **FIS LOC:** 6184 | **FUNC:** 1642 | **MSA LOC:** SJC01 | | | |

| PARTIALLY EXCEPTED: | | NON-AGREEMENT: | |
|---|---|---|---|
| FULLY EXCEPTED: | | AGREEMENT: | X |
| DEPARTMENT UNDERUTILIZED: | | NEW POSITION: YES | |
| FEMALE: | MINORITY: | NONE: | REPLACEMENT FOR: RETIREES & TRANSFERS |

| OUTSIDE CANDIDATES CONSIDERED: | NO | RELOCATION BENEFITS APPLY: | NO |
|---|---|---|---|
| POSITION SUBJECT TO REASSIGNMENT: | NO | | |

**SUMMARY OF DUTIES:**

Locomotive engineers are responsible for the safe operation of diesel electric locomotive, complying with train orders, bulletin orders, wayside signals, railroad regulations, railroad operating rules, special instructions and federal, state, and local regulations to transport passengers and equipment safely and efficiently. Locomotive engineers perform required tests and make inspections of equipment and air brakes, as required. The position involves working alone and apart in physical isolation while integrating activities with others. Locomotive engineers must have the ability to multitask and retain large amounts of material to memory and must make timely and critical decisions under stressful situations to safeguard lives and property.

**EDUCATION:**
    MUST HAVE. High school diploma or equivalent.
    PREFERRED: .

**WORK EXPERIENCE:**     (include specific areas, length time, type of work, etc.)
    MUST HAVE: Valid drivers license and meet FRA regulation requirements for drivers license check.
    PREFERRED: GCOR qualifications. Must have satisfactory prior work record. Preference may be given to locally
        qualified candidates.

**COMMUNICATION AND INTERPERSONAL SKILLS:**
Strong written and verbal communication skills are needed. Must be able to read and write English.

**OTHER REQUIREMENTS:**
Must be able to accept work assigned, willing to work and travel away from home. Work rotating shifts and holidays, weekends and irregular hours. Must be able to report to work within two hours from time of call.

**SUPERVISORY RESPONSIBILITIES:**     (number of people, scope, etc.)
        NONE

| TRAVEL: | Yes | PERCENTAGE: | 100% |
|---|---|---|---|

**COMMENTS:**
REPLACEMENTS FOR RETIREES AND TRANSFERS - 100% COMMUTER

| | (print name below) | | | DATED: |
|---|---|---|---|---|
| **DEPARTMENTAL APPROVAL:** David Nogar | | **SIGNATURE:** | | 7/23/01 |
| **PERSONNEL APPROVAL:** | | **SIGNATURE:** | | |

*PERSONNEL OFFICE USE ONLY:*                    CONTROL NUMBER: _____
*DATE FILLED:_____     PERSON HIRED:_____     SOURCE OF HIRE:_____*
*DATE OFFER LETTER SENT:_____     DATE ACCEPTANCE RECEIVED:_____     REPORTING DATE:_____*
*PERSONNEL*
*REPRESENTATIVE:* PAUL Ho          *TOTAL DAYS REQUIRED TO FILL POSITION:_____*
*COMMENTS:*
IRPC 2002        adapted by rls/engineering/lax = 1/99        date filled out:        typist:

EXHIBIT **PLT DEPX** 31 *for identification*
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

Post for 2weeks

D01794

# EXHIBIT B

1

UNTIED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


JOHN EARL CAMPBELL,

                Plaintiff,

      vs.                   No. C-05-05434 MJJ

NATIONAL RAILROAD PASSENGER
CORPORATION, et al.,



                Defendants.

_____/


DEPOSITION OF SUSAN VENTURELLI

March 23, 2007


PATRICIA CALLAHAN & ASSOCIATES, INC.
Certified Shorthand Reporters
Oakland, California   510-835-3993
San Francisco, California   415-788-3993
Castro Valley, California   510-885-2371

Facsimile 510-247-9775
WeReport@aol.com

Reported by:
DEBORAH A. PIERSON
CSR NO. 7988

38

1    Mr. Pruesser?

2        MS. MAYLIN:              Vague and ambiguous.  I

3    assume you are talking about Mr. Campbell.

4        MS. PRICE:               Yes, about Mr. Campbell.  We

5    don't have to assume.

6    Q.    The question is, do you recall what you asked

7    Mr. Pruesser about Mr. Campbell?

8    A.    I asked Mr. Preusser to provide information on the

9    background checks for a number of candidates, all the

10   candidates that he would have been directly supervising

11   or indirectly supervising.  Specifically, I asked about

12   attendance, safety, operating rules, discipline.

13   Q.    Do you have a memory of what Mr. Pruesser said to

14   you on those subjects, as it related to John Campbell?

15   A.    Not specifically.

16   Q.    Do you have any kind of general recollection of

17   what Mr. Pruesser told you?

18   A.    That he had rule violations on his record.

19   Q.    Did he tell you what type of rule violations?

20   A.    A rule violation would be considered a serious

21   rule violation, operating --

22   Q.    Yes.  My question is what type.

23   A.    Oh, no, no.

24   Q.    They have all kinds of rule violations.

25   A.    I apologize.  My familiarity with all the rules is

39

1    not such that I'd be an expert in understanding exactly

2    what rule it was.

3        MS. MAYLIN:          She's just asking what you

4    you can recall.  Can you recall?

5        THE WITNESS:          No.  I don't, other than what

6    I have told you.

7        MS. PRICE:          Q.  So you don't remember if

8    Mr. Preusser told you what type of rule violations or

9    what particular rule violation?

10   A.    No.  I don't remember that.

11   Q.    Did you ask him to fill out the background check

12   form for Mr. Campbell?

13   A.    I remember having sent out the background check

14   forms.  I don't remember whether I got that specific

15   form back or not.

16       When we began the recruitment process, the first

17   step was testing, which was actually a personality

18   index, because I hadn't gotten the background checks

19   back, and the time to recruit was limited.

20       I went ahead and invited all the applicants to

21   take the test.  I still hadn't gotten the background

22   checks back by the time I needed to schedule

23   interviews.  So again, I invited all the candidates who

24   were recommended based on the personality survey to

25   come for the interview.

40

```
1         I believe I received the background checks after

2    that, or information, at least, after that.

3    Q.   Do you believe you received the information in

4    writing after the interviews?

5    A.   Yes.

6    Q.   Do you believe you had your conversation with

7    Mr. Pruesser about the candidates after the interviews?

8    A.   Yes.

9    Q.   In the interviews, do you recall that there were

10   persons other than yourself who participated in the

11   interviews?

12   A.   Yes.

13   Q.   Who else participated in the interviews?

14   A.   Managers from San Jose, managers, I believe, from

15   Sacramento, and managers from Oakland representing each

16   crew base for where the vacancy was posted.

17   Q.   Do you recall who those persons were?

18   A.   I don't have a visual memory of who was actually

19   there.  Again, to the best of my knowledge,

20   Billy Rogers from San Jose was there.  A union rep was

21   there; I believe it was Chad Skinner, and I'm not sure

22   who the management representatives from Oakland and

23   Sacramento were.

24   Q.   How was it determined who would be on the

25   interview panel?
```

# EXHIBIT C

1

1              IN THE UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3

4

5    JOHN EARL CAMPBELL,

6              Plaintiff,

7       vs.                          No. C05-05434 MJJ

8    NATIONAL RAILROAD PASSENGER
     CORPORATION dba AMTRAK, JOE
9    DEELY and DOES 1 through 15,
     inclusive,
10
              Defendants.
11    _____/

12

13

14

15              DEPOSITION OF JOE DEELY

16                 February 15, 2007

17

18

19
            PATRICIA CALLAHAN & ASSOCIATES, INC.
20             Certified Shorthand Reporters
             Oakland, California  510-835-3993
21        San Francisco, California  415-788-3993
          Castro Valley, California  510-885-2371
22
                Facsimile 510-247-9775
23                 WeReport@aol.com

24   Reported by:
     LaRelle M. Fagundes
25   CSR No. 9762

85

1    A.    No.

2    Q.    Okay.

3          Are there any changes you wish to make to

4    your testimony from this morning?

5    A.    No.

6    Q.    Okay.

7          Do you receive any reports on any regular

8    basis, whether annually, quarterly, monthly, of

9    identifying the people hired in the Pacific

10   division?

11   A.    No.

12   Q.    All right.  Same question with respect to

13   promotions within the Pacific division.

14   A.    Not a specific report, no.

15   Q.    Okay.  All right.

16         Is it your testimony that you did not --

17   you don't recall any involvement that you had in

18   Mr. Campbell's termination?

19         MR. OBORNE:  Objection.  Vague and

20   ambiguous.

21         THE WITNESS:  I don't recall any

22   involvement.

23  •       MS. PRICE:  Q.  Do you recall any

24   involvement in Mr. -- in the decision not to

25   promote Mr. Campbell in either 2003 or 2004?

PATRICIA CALLAHAN & ASSOCIATES