1  KATHLEEN MAYLIN (SBN 155371)
   CARA CHING-SENAHA (SBN 298467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California  94105
   Telephone:  (415) 394-9400
4  Facsimile:  (415) 394-9401

5  Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
6  CORPORATION dba AMTRAK and JOE DEELY

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 JOHN EARL CAMPBELL                  Case No. C05-05434 MJJ

12          Plaintiff,                 **DECLARATION OF STEVE
                                       SHELTON IN SUPPORT OF
13      v.                             DEFENDANTS' NATIONAL
                                       RAILROAD PASSENGER
14 NATIONAL RAILROAD PASSENGER         CORPORATION'S AND JOE DEELY'S
   CORPORATION dba AMTRAK, JOE DEELY   MOTION FOR SUMMARY
15 and DOES 1-15, inclusive,           JUDGMENT, OR IN THE
                                       ALTERNATIVE, SUMMARY
16          Defendants.                ADJUDICATION

17                                     Date:      May 8, 2007
                                       Time:      9:30 a.m.
18                                     Ctrm.:     11
                                       Judge:     The Hon. Martin K. Jenkins
19
                                       Complaint Filed:  12/30/05
20                                     FAC Filed:        2/23/06
                                       Trial:            7/23/2007
21

22

23

24 I, Steve Shelton, hereby declare:

25      1.      I am an employee of NATIONAL RAILROAD PASSENGER CORPORATION

26 dba AMTRAK.  I am employed as District Superintendent in Amtrak's Pacific Division, and have

27 held that position since March 2004.  I have been employed by Amtrak since 1988.  If called to

28 testify, I could and would competently testify to the matters set forth below, which are within my

                                        1

1    personal knowledge.

2       2.     As District Superintendent of the Pacific Division, I am ultimately responsible for

3 supervising all engineers, conductors, station personnel, and on board service employees in the

4 District (approximately 450 employees) and also responsible for the safe and efficient operation

5 of 2,000 miles of railroad. My responsibilities include evaluating and assessing discipline, up to

6 and including termination, on Amtrak employees who violate Amtrak rules and policies.   My

7 duties also include ensuring Amtrak employees observe and comply with railroad safety and

8 operations rules and policies. Adherence to these rules and policies is critical to further Amtrak's

9 ongoing commitment and responsibility to provide a safe work environment for employees who

10 work with large and inherently dangerous equipment and machinery. The rules and policies also

11 further Amtrak's commitment to assure the utmost safety of its passengers and customers.

12       3.     Amtrak employs conductors, such as Mr. Campbell was employed, pursuant to a

13 collective bargaining agreement with the United Transportation Union. That agreement provides

14 that a conductor will not be disciplined without the benefit of a hearing, and includes a right of

15 appeal. Attached hereto as Exhibit A is a true and correct copy of excerpts of the collective

16 bargaining agreement pertaining to discipline and investigation that governed Mr. Campbell's

17 employment and in effect from October 27, 1999.

18       4.     A Yard Conductor is primarily responsible for switching equipment for train make

19 up to stage trains for departure and arrival. Adherence to safety and operation rules and policies

20 is a critical job function for every member of a crew, but given the high frequency that a Yard

21 Conductor switches equipment, it is especially critical for a Yard Conductor to follow all

22 applicable rules and policies.

23       5.     After being charged with a disciplinary violation, a formal investigatory hearing is

24 convened in which the employee, the employee's union representative, and a company

25 representative (referred to as the Charging Officer) attend the hearing and present evidence to a

26 Hearing Officer. The Hearing Officer is a full-time management employee. At the hearing, the

27 employee has the ability to call any witness desired. The hearing is recorded and transcribed.

28 The decision of the Hearing Officer may be appealed to the Labor Relations officer, and that

1   decision may be appealed to the Public Law Board where the claim is finally decided by a panel

2   of three: an Organization Member (union), a Carrier Member (company), and a Neutral Member

3   (non-railroad affiliated) who is the Chairman of the Board.

4        6.    A waiver under the disciplinary process is a plea bargain that is negotiated

5   between the union and management, where the employee admits guilt to a rule or rules violation

6   and waives his right to a hearing in exchange for a negotiated specified discipline.

7        7.    Amtrak's Progressive Discipline Procedures are guidelines for dealing with

8   offenses by employees. Under the guidelines, a third formal discipline is grounds for dismissal.

9   Further, suspension of ten days is considered a very serious penalty and dismissal is the likely

10  result of any future infraction after an employee receives a ten (or more) day's suspension.

11  Attached hereto as Exhibit B is a true and correct copy of Amtrak's Counseling and Discipline

12  Guidelines Summary.

13       8.    Amtrak's safety and operating rules are included in extensive materials and

14  instructions provided to Amtrak conductors and engineers, including: the General Code of

15  Operating Rules; Service Standards for Train Service Employees; AMT – 3, Amtrak Air Brake

16  and Train Handling Rules and Instructions; and, AMT – 5, Safety Instruction for Transportation

17  Employees. All Amtrak conductors and engineers are charged with knowing and following the

18  rules as a condition of employment. True and correct portions of these policies, pertinent to Mr.

19  Campbell's job performance, are attached hereto as Exhibit C.

20       9.    Engineers and conductors are in different crafts, belong to different unions, and

21  hold no bid or seniority rights to the other's positions.

22       10.    Mr. Campbell was involved in a serious incident on July 24, 2004 where he later

23  was charged with cutting (disabling) the brakes on a locomotive and failing to properly secure it

24  prior to coupling it with other cars, which resulted in the locomotive moving down the tracks on

25  its own volition and another employee having to run along the moving locomotive to engage the

26  brakes. The incident resulted in Mr. Campbell being charged with five violations of portions of

27  Amtrak's Service Standards for Train Service Employees, Amtrak's General Code of Operating

28  Rules, and Amtrak Air Brake and Train Handling Rules and Instructions.

1     11.    A formal hearing was conducted on September 9, 2004. The hearing officer

2     issued a Decision on September 17, 2004 whereby Mr. Campbell was found guilty on four of the

3     charges. Given the seriousness of the charges and my review of Mr. Campbell's prior safety

4     record which showed he had two prior disciplinary actions in his file based on either admitted or

5     adjudicated violations (and the last one that involved a derailment resulted in a twenty-day

6     suspension of ten actual days and ten days held in abeyance), I concluded that the necessary,

7     appropriate, and just discipline, and consistent with Amtrak policy and practice, was to terminate

8     Mr. Campbell's employment. Attached hereto as Exhibit D is a true and correct copy of my

9     September 17, 2004 letter attached to the Decision of the Hearing Officer, notifying Mr.

10    Campbell of his termination.

11    12.    On September 28, 2004, the union appealed Mr. Campbell's termination to

12    Amtrak's Director of Labor Relations. On November 9, 2004, the Director denied the appeal, and

13    noted that "Claimant's approach to operating rule compliance is the proverbial 'accident waiting

14    to happen'" and continued that Amtrak "should not be required to retain Claimant until there is a

15    serious incident where injuries, damage or delays occur because of Claimant's misguided

16    decision to short cut operating rules." Attached hereto as Exhibit E is a true and correct copy of

17    the November 9, 2004 letter, received by me in the normal course of my employment.

18    13.    The union appealed the Director of Labor Relations' decision to the Public Law

19    Board on November 10, 2004. The Public Law Board dismissed the claim (denied the appeal) on

20    February 24, 2006 and upheld Mr. Campbell's termination. The Board noted that Mr. Campbell's

21    prior Operating Rule violations in both prior instances were violations involved safely switching,

22    coupling and securing equipment, and that the current instance he failed to properly secure brakes

23    prior to coupling. The Board concluded they could not find error with Amtrak's conclusion that

24    Mr. Campbell "has been afforded sufficient opportunity to correct his behavior to comply with

25    the Carrier's operating rules and failed to do so." Attached hereto as Exhibit F is a true and

26    correct copy of the February 24, 2006 Public Law Board decision, which I received in the normal

27    course of my employment at Amtrak.

28    14.    Mr. Campbell's race played no part in my decision to recommend termination of

4

1 | his employment.

2      15.    At the time Mr. Campbell was separated, I had no information that he had filed a

3 | DFEH charge previously or that he had filed an EEOC charge some eight months before (on

4 | January 28, 2004) charging that he was passed by for a promotion to Engineer because of his

5 | race. Indeed, I did not learn of any EEOC or DFEH charge until after Mr. Campbell filed this

6 | lawsuit on December 30, 2005.

7      I declare under penalty of perjury under the laws of the United States of America that the

8 | foregoing is true and correct. Executed this 30th day of March 2007 in Oakland, California.

9

10                           _S. E. Shelton_____

11                           STEVE SHELTON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEVE SHELTON IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT
MOTION, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT    CASE NO. C05-05434 MJJ

# EXHIBIT A

# AGREEMENT

## BETWEEN

## THE NATIONAL RAILROAD PASSENGER CORPORATION

## (AMTRAK)

## AND

## CONDUCTORS AND ASSISTANT CONDUCTORS (OC)

## REPRESENTED BY THE

## UNITED TRANSPORTATION UNION (OC)

## JANUARY 29, 1986

**REPRINTED:**     **APRIL 1, 1994**
**REVISED:**     **OCTOBER 27, 1999**

The following represents a synthesis of the current collective bargaining agreement between the parties, reflecting updates to the agreement since its effective date of January 29, 1986. The parties have attempted to make this update as comprehensive as possible; however, there may be letter agreements which have been inadvertently omitted from this revision. Any such letters are not superceded by this synthesis and remain in effect according to their own terms.

*Labor Relations Printout: As of November 1, 2000*

**Section 2 - Adopted from Agreement dated May 23, 1983**

a.  Passenger Conductors and Assistant Passenger Conductors will furnish all information required on time slips so that proper identification of payments can be made.

b.  An itemized statement of the employee's daily earnings for each pay period will be furnished with the employee's pay draft. A brochure type pamphlet containing applicable codes will be provided each employee to enable him to determine what payments were made for each date.

c.  The requirement set forth in paragraph (e) of Rule 24 for initial denial of monetary claims for compensation alleged to be due will be satisfied when a monetary claim is identified and disallowed on an itemized statement of earnings form issued within the time limit specified in Rule 24. If an employee feels he has been improperly paid on the itemized statement of daily earnings form, he will submit his claim or grievance to the Local Chairman for appeal handling in accordance with paragraph (f) of Rule 24.

d.  The itemized statement of daily earnings form will serve as notification of payment of claims and no further notification will be required.

e.  Employees should use the itemized statement of daily earnings as the basis of reporting any overpayments.

## RULE 25 - DISCIPLINE

a.  Except as provided in paragraph (e), employees will not have a reprimand noted their discipline records nor be suspended or dismissed from the service without a fair and impartial trial.

b.  When a major offense has been committed, an employee considered by management to be guilty thereof may be held out of service pending a trial and decision. A major offense is generally recognized as:

   1.  Dishonesty, including falsification of reports or other documents;

   2.  Extreme negligence;

   3.  Use of possession of alcoholic beverages, intoxicants, narcotics; or

   4.  Insubordination, disorderly or immoral conduct, or any offense bringing discredit upon the Corporation.

c.  1.  An employee who is required to make a statement prior to the trial in connection with any matter, which may eventuate in the application of discipline to any employee, may if he/she desires to be represented, be accompanied by a duly accredited representative. A copy of his/her statement, if reduced to writing and signed by him/her, will be furnished to him by the Corporation upon his request and to the duly accredited representative when requested. Only one such statement may be required.

   2.  Employees who are required to attend investigation immediately after having finished work, or just prior to reporting for work and who do not thereby lost time on their assignments or

extra boards, will be allowed continuous time at their regular hourly rate for the time spent in attending the trial, unless they are found guilty of the offense involved.

3. If an employee is required to lose time in order to make such statement and is not assessed discipline in connection with the incident involved, he/she will be paid the greater of the amount actually earned on the date(s) of such statement and the amount he/she would have earned had he/she not been required to make the statement.

4. If required to attend investigation at other than the times mentioned in paragraph "2" hereof, and without losing time thereby on their assignments or extra boards, they will be compensated a minimum of eight (8) hours at a rate of the last service performed for the time spent attending investigation, unless they are found guilty of the offense involved.

5. No payment except such as may be required under paragraph "1." "2." or "3" of this Rule will made to employees for any traveling necessary for attendance at a trial.

6. Except when held off duty because of a major offense, extra employees required to attend investigation will retain their relative standing on the extra board.

7. This Rule will apply to employees required to attend trial and also to employees required to attend investigation or trial as witnesses.

d. 1. An employee who is accused of an offense and who is directed to report for a trial therefore, will be given reasonable advance notice in writing of the specific charge on which he/she is to be tried and the time and place of the trial.

2. When a letter of complaint against an employee is the basis for requiring him/her to attend the trial, the employee will be furnished a copy of the written complaint together with the written notice for him/her to attend the trial.

3. Unless mutually agreeable between the Local Chairman and the Charging Officer, trials will be held at the employees home crew base.

e. Formal trials, except those involving a major offense, may be dispensed with should the employee involved and/or the Local Chairman and an authorized officer of the Corporation, through informal handling, be able to resolve the matter to their mutual interest. Requests for informal handling must be made at least twenty-four (24) hours before a formal trial is scheduled to begin. No formal transcript statement recording will be taken at the informal handling. When a case is handled informally and the matter of responsibility and discipline to be assessed, if any, is resolved, no formal trial will be required. A written notice of the discipline assessed and the reason therefor will be issued to the employee responsible, with a copy to the Local Chairman, if he/she participated in the informal handling, at the conclusion of the informal handling. Discipline matters resolved in accordance with this paragraph are final and binding.

f. Trials on matters which involve employees held out of service will be scheduled to begin within ten (10) days following date the accused is first held out of service. If not so scheduled, the charge will become null and void, and the employee will be paid the amount he/she would have earned had he/she not been held out of service.

29

This time limit is subject to the availability of the accused and witnesses to attend trial and will be extended by the equivalent amount of time the accused employee and necessary witnesses are off duty account of sickness, temporary disability, discipline, leave of absence or vacation.

The ten (10) day time limit may be extended by mutual agreement, in writing between the Corporation and the accused employee or his/her duly accredited representative.

g.  Trials on matters which do not involve employees being held out of service will scheduled to begin within twenty (20) days from the date of management's first knowledge of such matters. If not so scheduled, the charge will become null and void. This time limit is subject to the availability of the accused and witnesses to attend the trial and will be extended by the equivalent amount of time the accused employee and necessary witnesses are off duty account of sickness, temporary disability, disciplines, leave of absence or vacation.

The twenty (20) day time limit may be extended by mutual agreement, in writing, between the Corporation and the accused employee or his/her duly accredited representative.

h.  If an employee desires to be represented at a trial, he/she may be accompanied by a duly accredited representative. The accused employee or his/her duly accredited representative will be permitted to question witnesses and those conducting the trial insofar as the interests of the employee are concerned. Such employee will make he/her own arrangement for the presence of the said representative, and no expense incident thereto will be borne by the Corporation.

An employee who may be subject to discipline and his/her duly accredited representative will have the right to be present during the entire trial. Witnesses appearing at the request of the Corporation at a trial will be called upon prior to the employee subject to discipline and those witnesses testifying on his/her behalf. Witnesses will be examined separately.

i.  When an employee is assessed discipline, a true copy of the trial record will be given to the employee and to his/her duly accredited representative with the notice of discipline.

j.  If discipline is to be imposed following trial and decision, the employee to be disciplined will be given a written notice thereof within fifteen (15) days of the date the trial is completed, and at least fifteen (15) days prior to the date on which the discipline is to become effective, except that in cases involving major offenses discipline may be made effective at any time after decision without advance notice.

The fifteen (15) day time limit to give written notice of discipline may be extended by mutual agreement, in writing, between the Corporation and the accused employee, or his/her duly accredited representative.

If no discipline is imposed following the trial and the employee was required to lose time as a result of such trial, he/she will be paid the greater of the amount actually earned on the date/dates of the trial and the amount he/she would have earned had he/she not attended the trial.

k.  1.  Except where a major offense has been committed, if the discipline to be imposed is suspension, its application will be deferred unless within the succeeding six (6) month period; the accused employee commits another offense for which discipline by suspension is subsequently imposed.

2. The six (6) month period in paragraph "k.1." will hereinafter be referred to as the probationary period.

3. Probationary periods will commence as of the date the employee is notified, in writing, of the discipline imposed.

4. If the disciplined employee maintains a record clear of offenses during the probationary period, he/she will not be required to serve the suspension. In all cases the suspended discipline will remain on the employee's record with the notation, "Suspension deferred."

5. If within the probationary period, the employee commits another offense, for which discipline by suspension is subsequently imposed, the suspension that was held in abeyance in paragraph "k1" will be applied when discipline is imposed for such other offense and a new period of probation will be started in connection with the subsequent offense.

6. Discipline by dismissal and suspension where a major offense has been committed will not be subject to the probationary period.

7. If the discipline to be applied is suspension, the time an employee is held out of service, and time lost making a statement and attending trial, will be:

   (A) Applied against the period of suspension for which the offense when the suspension is actually served.

   (B) Considered time lost without compensation if the employee does not serve the suspension due to compliance with paragraph "k4".

1. Except as provided in paragraph (o), when an employee or his/her duly accredited representative considers the discipline imposed unjust and has appealed the case in writing to the Labor Relations officer having jurisdiction within fifteen (15) days of the date the employee is notified of the discipline, the employee will be given an appeal hearing.

2. The hearing on an appeal, if requested, will be granted within fifteen (15) days of the Labor Relations offices receipt of the request for an appeal hearing.

3. This appeal, where the discipline imposed is suspension, will act as a stay (except in the case of a major offense) in imposing the suspension until after the employee has been given a hearing.

m. At hearings on appeals, an employee may, if he desires to be represented at such hearing, be accompanied, without expense to the Corporation, by a duly accredited representative.

n. The designated officer of the Corporation will advise the employee of the decision, in writing, within fifteen (15) days of the date the appeal is heard. If an employee is not so advised, the appeal will be considered as having been sustained. This time limit may be extended by mutual agreement, in writing, between the designated officer of the Corporation and the accused employee or his/her duly accredited representative. If the decision, in cases of suspension, is to the effect that suspension will be imposed, either in whole or for a reduced period, the stay

31

referred to in paragraph "l" will be lifted and suspension imposed subject to the provisions of Rule 25, paragraph "k".

Further appeal will be subject to the procedural provisions of paragraphs "g," "h," "i," "j," and "k" of Rule 24.

o. In appealing cases involving the discipline of dismissal, the General Chairman must, within 60 days after the date the decision is rendered, make an appeal in writing to the highest appeals officer of the Corporation requesting that he/she be given a written response or that the case be held in abeyance pending discussion in conference with the highest appeals officer of the Corporation. When a written response is requested, the highest appeals officer of the Corporation will given written notification of his/her decision to the General Chairman within 60 days after the date of his receipt of the appeal. When a request is made for the case to be held in abeyance pending discussion in conference, the conference will be arranged within 60 days after the highest officer of the Corporation receives the request for a conference. The highest appeals officer of the Corporation will give written notification of his/her decision to the General Chairman within 60 days after the date of the conference.

p. Decision by the Director, Labor Relations will be final and binding unless, within sixty (60) days after written notice of the decision, said officer is notified in writing that the decision is not acceptable.

All appeals from the decision of the Director, Labor Relations will be barred unless, within one hundred twenty (120) days from the date of said officer's decision, proceedings are instituted by the employee before a tribunal having jurisdiction pursuant to law or agreement over the matter involved.

q. If at any point in this appeals procedure or in proceedings before a tribunal having jurisdiction it is determined that the employee should not have been disciplined, any charges related thereto in the employee's personal service record will be voided and, if held out of service (suspended or dismissed), the employee will be reinstated with pay for all time lost and with seniority and other rights unimpaired.

r. If at any point in this appeals procedure or in proceedings before a tribunal having jurisdiction it is determined that the discipline imposed should be modified, the employee will be paid for all time lost in excess of such modified discipline.

s. The time limit provisions in this Rule may be extended at any level of handling in any particular case by mutual consent in writing by the duly authorized officer of the Corporation and the duly accredited representative of the Organization.

## RULE 26 - LEAVE OF ABSENCE

a. Employees will be allowed up to 30 days off duty upon receipt of permission from the proper official of the Corporation. Employees must request written leave of absence when they are to be off duty for more than 30 consecutive days.

b. A written leave of absence without impairment of seniority will be granted upon request to an employee for the following reasons:

# EXHIBIT B

**Amtrak's Counseling and Discipline Guidelines Summary**

Progressive discipline is an educational tool, not to be used if more effective ways of communicating and changing unacceptable behavior are available. Except for serious infractions where discipline may be necessary, counseling should first be used to change behavior. When it is apparent that counseling is not working, discipline may be utilized to change behavior.

Amtrak's guidelines for dealing with offenses generally provide for the following progression, depending on the circumstances:

Counseling:

1. Verbal

2. Written (warning letter)

Discipline:

3. Reprimand or suspension of three (3) days or less

4. Suspension of ten (10) days or less (more serious violations of operating rules involving hazards or accidents or major inconvenience to passengers may result in up to 30 days suspension)

5. Dismissal

Employees should understand that a ten-day (or 30-day) suspension is a very serious penalty and dismissal will be the likely result of any future infraction.

These are guidelines only. For more serious offenses, this progression may start at Discipline steps 4 or 5, depending on circumstances. Further, the length of time between offenses, nature of offense, as well as an employee's overall service record, may impact what discipline is appropriate.

1

# EXHIBIT C



# GCOR 2000

# General Code of Operating Rules

Fourth Edition

Effective April 2, 2000

These rules herein govern the operation of the railroads listed and must be complied with by all employees regardless of gender whose duties are in any way affected thereby.

They supersede all previous rules and instructions inconsistent therewith.

© 2000 General Code of Operating Rules Committee, All rights reserved.

## Adopted by:

AT&L Railroad Company
Amtrak Western Division Peninsula Commute
  Service
Amtrak—Chicago Terminal
Amtrak—NOUPT
Acadiana Railway Company
Alabama & Gulf Railway
Alaska Railroad Corporation
Altamont Commuter Express Rail Authority
Apache Railway Company
Arizona and California Railway Company
Arizona Central Railroad
Arizona Eastern Railway Company
Arkansas Midland Railroad Company Inc.
Arkansas & Missouri Railroad Company
Ashtabula, Carson & Jefferson Railroad
Belt Railway Company of Chicago
BHP Nevada Railway Company
Burlington Northern Santa Fe Railway
California Western Railroad
Camas Prairie RailNet, Inc.
Canadian Pacific Railway
Cascade and Columbia River Railroad
Cedar Rapids & Iowa City Railway Company
Central California Traction Company
Central Kansas Railway
Central Montana Rail
Central Oregon & Pacific Railroad, Inc.
Chesapeake & Albemarle Railroad Company, Inc.
Council Bluffs Railway
Chicago Rail Link
Columbia Basin Railroad Co.
Columbia and Cowlitz Railway
Columbia Terminal
Dakota, Minnesota & Eastern Railroad
Dakota , Missouri Valley & Western Railroad, Inc.
Dakota Rail, Inc.
Dallas, Garland & Northeastern Railroad, Inc.
Daranelle & Russellville Railroad
DeQueen & Eastern Railroad Company
Duluth, Missabe & Iron Range Railway Company
Eastern Alabama Railway
Eastern Idaho Railroad
Escanaba & Lake Superior Railroad
Farmrail Corporation
Fort Worth & Western Railroad
Fox Valley & Western

Gateway Western Railway
Georgia Southwestern Railroad, Inc.
Georgia Woodlands Railroad
Grain Belt Corp
Grand Canyon Railway
Grand Rapids Eastern Railroad
Great Western Railway of Colorado
Great Western Railway of Iowa
Hutchinson and Northern Railway Company
Huron and Eastern Railway Company, Inc.
I&M Rail Link, LLC
Idaho Northern & Pacific Railroad Company
Illinois & Midland Railroad, Inc.
Illinois Railnet, Inc.
Indiana Rail Road Company
Indiana Southern Railroad, Inc.
Iowa Interstate Railroad Ltd.
Iowa Northern Railway Company
Jaxport Terminal Railway
Kansas City Southern Railway
Kansas City Terminal Railway Company
Lahaina Kaanapali & Pacific Railroad
Lewis and Clark Railway Company
Little Rock and Western Railway, LP
Louisiana and Delta Railroad Company
Manufacturers Junction Railway
McCloud Railway Company
Meridian and Bigbee Railroad
Mid-Michigan Railroad, Inc.
Minnesota, Dakota & Western Railway Company
Minnesota Northern Railroad, Inc.
Minnesota Commercial Railway Company
Minnesota Valley Transportation Company
Mississippi & Tennessee RailNet, Inc.
Missouri & Northern Arkansas Railroad Company,
  Inc.
Montana Rail Link
Montana Western Railway Company
Mount Vernon Terminal Railway, Inc.
Napa Valley Railroad Company
Nebkota Railway, Inc.
Nebraska, Kansas & Colorado RailNet
Nebraska Northeastern Railway Company
New England Central Railroad, Inc.
Newburgh & South Shore Railroad Company
New Orleans Lower Coast Railroad
New Orleans Public Belt Railroad
North Carolina & Virginia Railroad Company, Inc.

Northeast Illinois Regional Commuter Railroad Corp.
Northern Ohio & Western Railway
Northern Plains Railroad
Otter Tail Valley Railroad Company, Inc.
Osceola and St. Croix Valley Railroad Company
Pacific Harbor Line
Palouse River and Coulee City Railroad
Pecos Valley Southern Railway Company
Pend Oreille Valley Railroad
Pittsburgh Industrial Railroad
Point Comfort & Northern Railway Company
Port Bienville Railroad
Port of Tillamook Bay Railroad
Progressive Rail Inc.
Puget Sound & Pacific Railroad
Rarus Railway, Inc.
Red River Valley & Western Railroad Co.
Rio Valley Switching Company
Saginaw Valley Railroad Company
Sand Springs Railway Company
San Diego & Imperial Valley Railroad Company, Inc.
San Diego Northern Railway
San Joaquin Valley Railroad Co., Inc.
San Pedro and Southwestern Railway Compnay
Santa Cruz, Big Trees & Pacific Railway Company
Santa Fe Southern Railway, Inc.
Sault Ste. Marie Bridge Company
SEMO Port Railroad
Sierra Railroad Company
South Carolina Central Railroad Company, Inc.
South Central Tennessee Railroad
South East Kansas Railroad
South Plains Lamesa Railroad Ltd.
Southern Switching Company
Southwestern Railroad Company, Inc.
Southern California Regional Rail Authority
St. Croix Valley Railroad Company
St. Maries River Railroad Company
Tacoma Municipal Belt Line Railway
Texas, Gonzales & Northern Railway Company
Texas - New Mexico Division
Texas North Western Railway Company
Texas Rock Crusher Railway Co.
Toledo, Peoria & Western Railway
Transportación Ferroviaria Mexicana
Trinity Railway Express
Trona Railway Company
Tulsa-Sapulpa Union Railway Company

Twin Cities & Western Railroad Company
Union Pacific Railroad
Utah Central Railway
Utah Railway Company
Ventura County Railway Company
Virginia Southern Division
West Texas and Lubbock Railroad
Wichita, Tillman & Jackson Railway
Willamette & Pacific Railroad, Inc.
Willamette Valley Railroad
Willamina and Grand Ronde Railway
Wisconsin Central Ltd.
Wisconsin & Southern Railroad Company
Wyoming/Colorado Railroad Company
Yreka Western Railroad

# 1.0  General Responsibilities

## 1.1  Safety

Safety is the most important element in performing duties. Obeying the rules is essential to job safety and continued employment.

### 1.1.1  Maintaining a Safe Course

In case of doubt or uncertainty, take the safe course.

### 1.1.2  Alert and Attentive

Employees must be careful to prevent injuring themselves or others. They must be alert and attentive when performing their duties and plan their work to avoid injury.

### 1.1.3  Accidents, Injuries, and Defects

Report by the first means of communication any accidents; personal injuries; defects in tracks, bridges, or signals; or any unusual condition that may affect the safe and efficient operation of the railroad. Where required, furnish a written report promptly after reporting the incident.

### 1.1.4  Condition of Equipment and Tools

Employees must check the condition of equipment and tools they use to perform their duties. Employees must not use defective equipment or tools until they are safe to use. Employees must report any defects to the proper authority.

## 1.2  Personal Injuries and Accidents

### 1.2.1  Care for Injured

When passengers or employees are injured, do everything possible to care for them.

### 1.2.2  Witnesses

If equipment is involved in personal injury, loss of life, or damage to property, the employee in charge must immediately secure the names, addresses, and occupations of all persons involved, including all persons at the scene when the accident occurred and those that arrived soon after. The employee in charge must secure the names regardless of whether these persons admit knowing anything about the accident.

The employee in charge must also obtain the license numbers of nearby automobiles. When necessary, other employees can assist in obtaining this information, which must be included in reports covering the incident.

Where signaling devices are provided or a flagman is on duty, the employee in charge and assisting employees must try to determine who, among the witnesses, can testify whether the signaling devices were functioning properly or if the flagman was performing his duties properly.

When possible, obtain the names of witnesses who can testify about the bell and whistle signals.

### 1.2.3  Equipment Inspection

If an accident results in personal injury or death, all tools, machinery, and other equipment involved, including the accident site, must be inspected promptly by the foreman, another person in charge of the work, or other competent inspectors. The inspector must promptly forward to his manager a report of the inspection. The report must include the condition of the equipment and the names of those making the inspection.

If requested by the claims department, the equipment inspected must be marked for identification and placed in custody of the responsible manager or employee.

### 1.2.4 Mechanical Inspection

When engines, cars, or other equipment are involved in an accident that results in personal injury or death, the equipment must be inspected before it leaves the accident site.

A mechanical department employee must further inspect the equipment at the first terminal. This employee must promptly report inspection results to the proper manager.

### 1.2.5 Reporting

All cases of personal injury, while on duty or on company property, must be immediately reported to the proper manager and the prescribed form completed.

A personal injury that occurs while off duty that will in any way affect employee performance of duties must be reported to the proper manager as soon as possible. The injured employee must also complete the prescribed written form before returning to service.

If an employee receives a medical diagnosis of occupational illness, the employee must report it immediately to the proper manager.

### 1.2.6 Statements

Except when authorized by the proper manager:

- Information concerning accidents or personal injuries that occur to persons other than employees may be given only to an authorized representative of the railroad or an officer of the law.

- Information about the facts concerning the injury or death of an employee may be given only to a person in interest such as the injured employee, an immediate relative of the injured or deceased employee, an authorized representative of the railroad, or an officer of the law.

- Information in the files or in other privileged or confidential reports of the railroad concerning accidents or personal injuries may be given only to an authorized representative of the railroad.

### 1.2.7 Furnishing Information

Employees must not withhold information, or fail to give all the facts to those authorized to receive information regarding unusual events, accidents, personal injuries, or rule violations.

## 1.3 Rules

### 1.3.1 Rules, Regulations, and Instructions

**Safety Rules.** Employees must have a copy of, be familiar with, and comply with all safety rules issued in a separate book or in another form.

**General Code of Operating Rules.** Employees governed by these rules must have a current copy they can refer to while on duty.

**Hazardous Materials.** Employees who in any way handle hazardous materials must have a copy of the instructions or regulations for handling these materials. Employees must be familiar with and comply with these instructions or regulations.

**Air Brakes.** Employees whose duties are affected by air brake operation must have a copy of the rules and instructions for operating air brakes and train handling. Employees must know and obey these rules and instructions.

**Timetable/Special Instructions.** Employees whose duties are affected by the timetable/special instructions must have a current copy they can refer to while on duty.

**Train Dispatchers and Control Operators.** The train dispatchers and control operators must have a copy of the rules and instructions for train dispatchers and control operators. They must be familiar with and obey those rules and instructions.

**Classes.** Employees must be familiar with and obey all rules, regulations, and instructions and must attend required classes. They must pass the required examinations.

## 1.47    Duties of Trainmen and Enginemen

The conductor and the engineer are responsible for the safety and protection of their train and observance of the rules. If any conditions are not covered by the rules, they must take every precaution for protection.

### A.    Conductor Responsibilities

1.    The conductor supervises the operation and administration of the train (if trains are combined with more than one conductor on board, the conductor with the most seniority takes charge). All persons employed on the train must obey the conductor's instructions, unless the instructions endanger the train's safety or violate rules. If any doubts arise concerning the authority for proceeding or safety, the conductor must consult with the engineer who will be equally responsible for the safety and proper handling of the train.

2.    The conductor must advise the engineer and train dispatcher of any restriction placed on equipment being handled.

3.    When the conductor is not present, other crew members must obey the instructions of the engineer concerning rules, safety, and protection of the train.

4.    Freight conductors are responsible for the freight carried by their train. They are also responsible for ensuring that the freight is delivered with any accompanying documents to its destination or terminals. Freight conductors must maintain any required records.

### B.    Engineer Responsibilities

1.    The engineer is responsible for safely and efficiently operating the engine. Crew members must obey the engineer's instructions that concern operating the engine. A student engineer or other qualified employee may operate the engine under close supervision of the engineer. Any employee that operates an engine must have a current certificate in his possession.

2.    The engineer must check with the conductor to determine if any cars or units in the train require special handling.

### C.    Conductor and Engineer Responsibilities

1.    Conductors and engineers must ensure that their subordinates are familiar with their duties, determine the extent of their experience and knowledge of the rules, and instruct them, when necessary, how to perform their work properly and safely.

### D.    Other Crew Members' Responsibilities

1.    To ensure the train is operated safely and rules are observed, other crew members must assume as much responsibility as possible to prevent accidents or rule violations.

2.    When the conductor or engineer fails to stop the train, or emergency requires, other crew members must stop the train immediately.

This page left blank intentionally.

- Men or equipment fouling the track.
- Stop signal.

  or

- Derail or switch lined improperly.

The crew must keep a lookout for broken rail and not exceed 20 MPH.

Comply with these requirements until the leading wheels reach a point where movement at restricted speed is no longer required.

## 6.28    Movement on Other than Main Track

Except when moving on a main track or on a track where a block system is in effect, trains or engines must move at a speed that allows them to stop within half the range of vision short of:

- Train.
- Engine.
- Railroad car.
- Men or equipment fouling the track.
- Stop signal.

  or

- Derail or switch lined improperly.

### 6.28.1    Sidings of Assigned Direction

Do not use sidings of an assigned direction in the opposite direction unless authorized by the train dispatcher.

### 6.28.2    Stopping Clear in Siding

When possible, a train entering a siding must not stop until the entire train is clear of the main track.

### 6.28.3    Cars or Equipment Left on Siding

Avoid leaving cars or equipment on sidings unless authorized by the train dispatcher, except in an emergency. In this case, notify the train dispatcher immediately.

## 6.29    Inspecting Trains

### 6.29.1    Inspecting Passing Trains

Employees must inspect passing trains. If they detect any of the following conditions, they must notify crew members on the passing train by any available means:

- Overheated journals.
- Sticking brakes.
- Sliding wheels.
- Wheels not properly positioned on the rail.
- Dragging equipment.
- Insecure contents.
- Signs of smoke or fire.
- Headlight or marker improperly displayed.
- Any other dangerous condition.

When possible, employees inspecting the passing train must advise crew members of the condition of their train.

When possible, a crew member on the engine of the train being inspected must notify a crew member on the rear of the train when the train is being inspected by other employees.

**Ground Inspections**

When a train is stopped and is met or passed by another train, crew members must inspect the passing train. The trainman's inspection must be made from the ground if there is a safe location. If safe to do so, a trainman must cross the track and inspect the side of the passing train opposite the stopped train.

**Trackside Warning Detectors and Inspections**

Crew members must be aware of trackside warning detectors and signals from persons inspecting their train. Stop the train immediately for an inspection when any of the following conditions exist:

- A crew member receives a stop signal.

- A trackside warning detector indicates a train defect.

  or

- A crew member is notified of a dangerous condition.

Movement must not proceed until it is safe.

### 6.29.2    Train Inspections by Crew Members

When a walking inspection of the train is required, and physical characteristics prevent a complete train inspection, inspect as much of the train as possible. The train may then be moved, but may not exceed 5 MPH for the distance necessary to complete the inspection.

While their train is moving, crew members must inspect it frequently and look for indications of defects in the train, especially when rounding curves.

When inspecting their train, crew members must observe the train closely for any of the following:

- Overheated journals.

- Sticking brakes.

- Sliding wheels.

- Wheels not properly positioned on the rail.

- Dragging equipment.

- Insecure contents.

- Signs of smoke or fire.

- Any other dangerous condition.

Crew members who discover defects while the train is moving must stop the train promptly and correct any defects, if possible. If the defective car must be set out, they must not attempt to move the car to the setout point unless it is safe to do so.

When a car is set out because of an overheated journal, any fire must be completely extinguished and precautions taken to prevent further ignition.

## 6.30    Receiving or Discharging Passengers

When a passenger train is receiving or discharging traffic, a train, engine, or piece of equipment must not pass between it and the station platform being used unless safeguards are provided.

## 7.0    Switching

### 7.1    Switching Safely and Efficiently

While switching, employees must work safely and efficiently and avoid damage to contents of cars, equipment, structures, or other property.

Do not leave cars or engines where they will foul equipment on adjacent tracks or cause injury to employees riding on the side of a car or engine.

### 7.2    Communication Between Crews Switching

To avoid injury or damage where engines may be working at both ends of a track or tracks, crews switching must have a clear understanding of movements to be made.

### 7.3    Additional Switching Precautions

The following equipment must not be unnecessarily switched or couplings made so as to damage the equipment or load:

- Passenger or outfit cars
- Intermodal or TOFC cars
- Cabooses
- Multi-level loads
- Cars containing livestock
- Open top loads subject to shifting

The following equipment must not be cut off in motion or struck by any car moving under its own momentum:

- Passenger cars
- Outfit cars
- High-value loads
- Engines
- Loaded-depressed-center flat cars
- Cars loaded with modular housing units
- Loaded articulated and solid drawbar-connected cars

### 7.4    Precautions for Coupling or Moving Cars or Engines

Before coupling to or moving cars or engines, verify that the cars or engines are properly secured and can be coupled and moved safely.

Make couplings at a speed of not more than 4 MPH. Stretch the slack to ensure that all couplings are made.

### 7.5    Testing Hand Brakes

Employees must know how to operate the type of brakes they are using. When hand brakes must control or prevent car movement, test the brakes to ensure that they are operating properly before using them.

## 7.6    Securing Cars or Engines

Do not depend on air brakes to hold a train, engine, or cars in place when left unattended. Apply a sufficient number of hand brakes to prevent movement. If hand brakes are not adequate, block the wheels.

When the engine is coupled to a train or cars standing on a grade, do not release the hand brakes until the air brake system is fully charged.

When cars are moved from any track, apply enough hand brakes to prevent any remaining cars from moving.

## 7.7    Kicking or Dropping Cars

Kicking or dropping cars is permitted only when it will not endanger employees, equipment, or contents of cars.

Before dropping cars, crew members must fully understand the intended movement. They must verify that the track is sufficiently clear and that switches and hand brakes are in working order. If possible, the engine must run on a straight track. Cars must not be dropped over spring switches or dual control switches.

## 7.8    Coupling or Moving Cars on Tracks Where Cars are Being Loaded or Unloaded

Before coupling to or moving cars on tracks where cars are being loaded or unloaded, crew members must be sure that all of the following have been removed or cleared:

- Persons in, on, or about cars
- Platforms
- Boards
- Tank car couplings and connections
- Conveyors
- Loading or unloading spouts and similar appliances or connections
- Vehicles
- Other obstructions

In addition:

- Be careful to avoid damage to freight of partly loaded cars.
- Do not handle cars that are improperly or unevenly loaded if load could shift or fall from the car, or if the car could derail or overturn.
- Return any car placed for loading or unloading to the location it was found if it has not been released for movement.
- Do not pull empty cars from an unloading facility until any major accumulation of debris is removed.
- Ensure that plug-type and swinging doors on cars are properly closed or secured.

## 7.9    Switching Passenger or Occupied Outfit Cars

Before switching passenger equipment or occupied outfit cars:

- Couple the air hoses.
- Fully charge the brake system.
- Use the automatic brake valve when switching.

When coupling passenger or outfit cars:

- Stop the movement approximately 50 feet before the coupling is made.
- Have an employee on the ground direct the coupling.

- Ensure couplers are fully compressed and stretched to ensure that knuckles are locked before making:
  - Air connections
  - Steam connections
  - Electrical connections

## 7.10  Movement Through Gates or Doorways

Before moving engines or cars through gates, doorways, or similar openings, stop to ensure that the gates, doorways, or openings are completely open and secure. When overhead or side clearances are close, make sure movement is safe.

## 7.11  Charging Necessary Air Brakes

Do not handle cars without charging the air brake system, unless the cars can be handled safely and stopped within the required distance. If necessary, couple the air hoses and charge the brake systems on a sufficient number of cars to control movement.

## 7.12  Movements Into Spur Tracks

When shoving cars into a spur track, control movement to prevent damage at the end of the track, and do the following:

- Stop movement 150 feet from the end of the track.
- Apply hand brakes, when necessary, to control slack.
- Have a crew member precede any further movement when it can be done safely.
- Move only on the crew member's signal.

## 7.13  Protection of Employees in Bowl Tracks

During humping operations, before a train or yard crew member goes between engines or cars on a bowl track to couple air hoses or adjust coupling devices, or before an employee performs maintenance on a bowl track, protection must be provided against cars released from the hump into the track as follows:

- The employee requesting protection must notify the employee controlling the switches that provide access from the hump to the track where the work will occur.
- After being notified, the switch controller must line any remote control switch against movement to the affected bowl track and apply a locking or blocking device to the control for that switch.
- The switch controller must then notify the employee that protection is provided. Protection will be maintained until the switch controller is advised that work is complete and protection is no longer required.

This page left blank intentionally.

AMT - 3

# NATIONAL RAILROAD
# PASSENGER CORPORATION



# AIR BRAKE AND TRAIN
# HANDLING RULES AND INSTRUCTIONS

These instructions apply to all Train and Engine service employees, Yardmasters, QP's, QMP's and certain Mechanical Department employees.

These instructions govern the testing and operation of air brake equipment on Amtrak trains and must be observed by all employees whose duties are in any way affected by them.

Employees whose duties require that they understand and comply with these instructions must attend the required classes.

Employees who are governed by these instructions will be provided with a copy, must maintain same and have it with them while on duty.

All rules and instructions apply to BOTH Passenger and Non-Passenger operations and equipment unless specifically indicated by section heading.


*George Binns*

G. P. Binns
Senior Director Compliance and Standards

*D. C. Scott*

D. C. Scott
System General Road Foreman

Effective August 3, 1980
Revised & Reissued August 19, 2002

**2.14.8**   A separate air brake slip must be filled out upon completion of the multiple lite locomotive departure test by mechanical forces and placed in the locomotive cab from which the consist will be operated.

**2.14.9**   Upon taking charge of lite and multiple lite locomotives, the locomotive engineer must ascertain that the required pre-departure inspections and tests have been performed, as evidenced by reviewing the required documentation as prescribed above.

**2.14.10**  The locomotive engineer, in addition to reviewing the prescribed MAP forms and separate air brake slip denoting that the pre-departure test was performed by the mechanical forces, must personally ascertain that the air brakes will properly respond to both the automatic and IBVs. This will require making two (2) Road / Class II tests of the brakes on the lite or multiple locomotive consist as follows:

    A.   Make the Road / Class II tests as prescribed.

    B.   Upon signal to apply the brakes, fully apply the independent brake, inspect brake application on the rear unit, signal to release the brakes, release the independent brake, and inspect brake release on the rear unit.

    C.   Main reservoir gauge on rear unit must be observed to determine that air is being restored prior to departure.

    **NOTE:** Assistance will be required by the locomotive engineer during the two Road / Class II Tests.

**2.14.11**  On lite and multiple lite consists which the pre-departure air brake test has been completed prior to the operating crew's arrival and for which no separate air brake slip is available, the crew will be required to perform the locomotive departure air brake test as prescribed in the Instruction 2.3 using the control station from which the movement will be operated. Main Reservoir gauge on the rear unit must be observed to determine that air pressure is being restored prior to being dispatched.

**2.14.12**  Lite and multiple lite locomotive movements require a locomotive Running Brake Test as per 2.4

**2.14.13**  When main reservoir supply is not available between multiple lite locomotives or on trailing units being towed dead, Instruction 2.8 must be complied with.

**2.14.14**  When M.U. hose connections cannot be coupled between multiple lite locomotives or on trailing units being towed dead, once such units have had their dead engine feature OPENED, the consist must be tested as prescribed in Instruction 4.2.1. Main Reservoir gauge on rear unit must be observed to determine that air pressure is being restored prior to being dispatched.

**2.14.15**  All other Air Brake and Train Handling Rules and Instructions remain in effect for lite and multiple lite locomotive movements.

**2.14.16**  Multiple lite locomotives may be moved within the confines of a yard or terminal without connecting the M.U. hoses, as long as the brake pipe and main reservoir hoses are connected with associated angle and main reservoir cocks open.

# Service Standards

## for
## Train Service &
## On-Board Service
## Employees

Effective 12:01am, May 3, 2004

## Manual No. 2

### Service Delivery Department

 AMTRAK®

November 1, 2002

To all Co-Workers:

This book of Service Standards that has been provided to you is designed to assist you in ensuring the delivery of consistent, high quality service to our customers by the frontline employees under your supervision. It ties together, in a single reference document, many diverse company policies, procedures and standards that apply to the services our Train Service and On-Board Service employees perform. Read through this book carefully. Have it in your possession while on-duty for reference, if needed.

It is my expectation that you will enforce compliance with the Service Standards contained herein in the supervision and coaching of your employees, everyday.

This will be a dynamic document subject to frequent revision, simply because the business environment and customer expectations continually change. The most successful companies are those that can read that change and make corresponding adjustments in their business practices and standards. Changes will be made to this Manual through the issuance of Operations Standards Updates, and actual revision pages that will be published semi-annually, concurrent with the spring and fall timetable changes.

The primary goal of this Service Standards Manual is to ensure that Amtrak service is delivered consistently from train-to-train and station-to-station throughout our system. To that end, this Manual provides you with the most current Service Standards for the delivery of our service based on the new Amtrak organization.

We're all in this together, and your hard work and dedication are the keys to our success. Remember to stay focused on safety, on-time trains, revenue optimization, and customer services that exceed what our passengers expect.

Sincerely,

Edward V. Walker, III
Vice President – Transportation

**Service Standards Manual No.2**

# Chapter 3B

## Safety Rules for Train Service Employees

The instructions in this manual apply to train and engine employees, who must keep them available for reference while on duty. Employees must review and understand the Safety Instruction for each day, as indicated by the Safety Calendar.

Questions regarding the day's instruction should be referred to your Supervisor for clarification.

This manual is dedicated to your ongoing personal safety. Amtrak cares about providing you with a safe and healthy workplace.

These Safety Instructions are grouped for convenience and contain the basic safety and work practices that apply to your job. However, not all safety hazards that you may encounter in your daily work can be specifically covered. If you do not understand the safety instruction(s) or are not sure of the safe course of action for a particular circumstance, ask your supervisor for an interpretation and/or a clarification on the safest course of action. It is your responsibility to have a complete understanding of your job and to know of its possible hazards. Your commitment to the spirit of the Safety Instructions, in each work situation, affects your safety and that of your co-workers and our passengers.

We believe that almost all personal injuries are caused by the unsafe acts of people *and by reducing unsafe acts, injuries can and will be prevented.* Officers and supervisory personnel should make regular observations and checks to assure compliance with these instructions, and immediately report and/or correct unsafe acts as they occur.

## Chapter Contents

| Subject | Instruction Numbers | Page(s) |
|---|---|---|
| Safety Calendar | None | 3B-iii – 3B-v |
| General | 5000 – 5010 | 3B-1 – 3B-3 |
| Clothing and Personal Protective Equipment | 5100 – 5106 | 3B-4 – 3B-5 |
| Walking, Standing or Sitting | 5200 – 5207 | 3B-5 – 3B-7 |
| Working On or about Locomotives, Cars or Equipment | 5300 – 5330 | 3B-7 – 3B-14 |
| Working On or About 480 Volt Head End Power, or Power Supply | 5400 – 5405 | 3B-14 – 3B-15 |
| Operating Hand Brakes | 5500 – 5508 | 3B-15 – 3B-16 |
| Operating Switches | 5600 – 5606 | 3B-17 – 3B-18 |
| Miscellaneous | 5700 – 5702 | 3B-19 |
| Switching Operations Fatality Analysis (S.O.F.A.) | 5800 – 5801 | 3B-19 |

### 5701 Hoisting Equipment

Keep clear of hoisting equipment boom or suspended load on hoisting equipment. Stand in the clear while a pull or hoist is made with cable, chain or other tackle.

### 5702 Maintain a Braced Condition

When using any tool, tackle, device, appliance or other item, place feet firmly, maintain braced position, and keep hands and other parts of the body in the clear.

## Switching Operations Fatality Analysis (S.O.F.A.)

### 5800 Coupling or Uncoupling Engine or Cars

Prior to going on, under or between standing equipment for the purpose of coupling or uncoupling engines or cars, crew members must:

- Discuss safety matters and work to be performed.
- Communicate before action is taken.
- Protect against moving equipment.
- Secure equipment before action is taken.
- Mentor less experienced employees to perform service safely.

### 5801 Less than a Year of Service

Train and Engine service employees with less than one (1) year service and performing duties referred to in instruction 5800 must wear an orange arm band while performing such service.

# EXHIBIT D

NATIONAL RAILROAD PASSENGER CORPORATION
810 North Alameda Street, Los Angeles, CA 90012

## *DECISION*



September 17, 2004
File #LAX-UTU-04/DISC
Case #386.04

RECEIVED
SEP 27 2004
GENERAL COMMITTEE OF ADJUSTMENT
CR-SAA/AMTRAK

Federal Express #7919 3003 8200

Mr. John Campbell
2210 109th Avenue
Oakland, CA 94603

Dear Mr. Campbell:

By letter, dated August 6, 2004, Case #386.04, you were directed to appear for a formal investigation.

A formal disciplinary investigation was conducted on September 9, 2004, in which you and your union representative were in attendance. The following findings are based on the evidence and testimony presented at the investigation:

1.  The rules cited were in effect and applicable to you at the time of the alleged wrongdoing, as it is applicable to all Amtrak employees in your job category.

2.  Charge 2 was not sustained.

3.  Charges 1, 3, 4 and 5 were proven.  It is evident on the record by the testimony of the Corporation's witnesses and your own testimony that you clearly violated the rules and instructions regarding the movement and coupling of cars and engines.

Based on the foregoing findings and the hearing record as a whole, I find that you are guilty of the charges.  The transcript of the aforementioned investigation is enclosed.

Sincerely,

Patrick Gallagher
Hearing Officer
Western Region

EXHIBIT "C"

Decision Letter
Mr. John Campbell
Case No. 386.04
Page Two



Based on the decision of Hearing Officer, Gallagher, you are hereby assessed discipline of:

Termination from service, effective immediately. This decision is based on the current charges and your previous Discipline Record listed below:

| Date | Charge/Rule Violation | Discipline Assessed |
|------|----------------------|---------------------|
| • 4/4/00 | GCOR Rules - 1.1.3 Accidents, Injuries, and defects, 6.28 Other than Main Track Movements, 7.1 Switching safely, 7.3 Switching precautions, 7.5 Testing Hand Brakes, 7.6 Securing cars and engines | Waived |
| • 1/14/02 | GCOR Rules – 7.1 Switching Safely and Efficiently, 7.4 Precautions for Coupling and Moving Cars or Engines, 7.12 Movements into Spur Tracks | S10 |

Sincerely,

*S E Shelton*

S. E. Shelton
District Superintendent
Pacific Division – Bay District

SES/lr

cc:    E. Adams – UTU Chairman – Fed Ex Tracking 7902 6820 6654
       L. C. Hriczak – Director – Labor Relations
       T. Duffy – Director – Human Resources

# EXHIBIT E

November 9, 2004

Mr. A. L. Suozzo, General Chairperson
United Transportation Union
1515 Market Street, Suite 708
Philadelphia, PA 19102

Re:   <u>OC-UTU-SD-1678D</u>
      J. Campbell

Dear Mr. Suozzo:

We discussed this case during our conference on October 27, 2004, with Mr. R. M. Lenfest, of your staff. The case involves the dismissal of Conductor John Campbell, Oakland, California, in connection with the following charges:

> "Charge 1: Your alleged violation of Amtrak's Service Standards for Train Service Employees - Manual No. 2 (effective 5/3/2004) - Chapter 3B - Safety Rules for Train Service Employees - Rule 5800 - Coupling or Uncoupling Engine or Cars, which reads
>
>> 'Prior to going on, under or between standing equipment for the purpose of coupling or uncoupling engines or cars, crewmembers must:
>>
>> - Discuss safety matters and work to be performed.
>> - Communicate before action is taken.
>> - Protect against moving equipment.
>> - Secure equipment before action is taken.
>> - Mentor less experienced employees to perform service safely.'

Charge 2: Your alleged violation of General Code of Operating Rules - Fourth Edition - April 2, 2000 - Rule 7.1 - Switching Safely and Efficiently, which reads in part... 'While switching, employees must work safely and efficiently and avoid damage to contents of cars, equipment, structures, or other property.'

Charge 3: Your alleged violation of General Code of Operating Rules - Fourth Edition - April 2, 2000 - Rule 1.47 - Duties of Trainmen and Enginemen, Item D Other Crew Members' Responsibilities, Part 1. 'To ensure the train is operated safely and rules are observed, other crew members must assume as much responsibility as possible to prevent accidents or rules violations.'

Mr. A. L. Suozzo            Re:    <u>OC-UTU-SD-1678D</u>
November 9, 2004                    J. Campbell
Page 2

> Charge 4: Your alleged violation of General Code of Operating Rules - Fourth Edition -
> April 2, 2000 - Rule 7.4 - Precautions for Coupling or Moving Cars or Engines, which
> reads in part... 'Before coupling to or moving cars or engines, verify that the cars or
> engines are properly secured and can be coupled and moved safely.'
>
> Charge 5: Your alleged violation of Amtrak Air Brake and Train Handling Rules and
> Instructions, AMT-3 - Revised and Reissued August 19, 2002 - Rule 2.14.16: which
> reads... 'Multiple lite locomotives may be moved within the confines of a yard or terminal
> without connecting the M.U. hoses, as long as the brake pipe and main reservoir hoses are
> connected with associated angle and main reservoir cocks open.'
>
> Specification: It is alleged that on July 24, 2004 while assigned to position CYO103
> working as the Conductor in the Oakland Diesel Shop you cut out the brakes on a
> locomotive and failed to properly secure it prior to coupling."

During conference, the Organization contended that the Carrier failed to call the assistant
conductor to testify; that the Claimant's inability to connect air hoses on the pit mitigated his
guilt; and that Claimant's actions did not result in damage or delay to a train. The union
contended further, that in any event, the discipline assessed was excessive. For these reasons, the
Organization requested that the discipline be expunged from the Claimant's record and that he be
restored to service with pay for time lost and all rights and benefits unimpaired.

The record indicates that the Claimant was properly notified, in writing, of the charge against him
and was given proper notice to appear for the investigation on August 10, 2004. At the
investigation, which had been postponed–by mutual agreement–until September 9, 2004, the
Claimant was present and represented by a duly authorized representative of the Organization,
who was permitted to cross-examine witnesses and present evidence on his behalf.

There is no evidence in the record in this case that any action of the carrier was an abuse of the
discretion vested in it. The record clearly shows that the Claimant's rights to a fair and impartial
investigation were not violated and that there is substantial evidence to support the Hearing
Officer's finding that he was guilty of charges 1, 3, 4 and 5. Charge 2 was not sustained.

The Carrier was not required to call the assistant conductor to testify inasmuch as the charges
were proven through the testimony of Mr. Dave West, Foreman, as well as Claimant's admission
that he disabled the brakes on the locomotive and left it on the pit. Their testimony disclosed that
the locomotive rolled away during a hard coupling on the service track because the Claimant had
disabled its brakes. The record reveals that Foreman West ran after the locomotive, boarded it,
cut the trucks back in, and was able to stop it from rolling further.

Mr. A. L. Suozzo                      Re:    OC-UTU-SD-1678D
November 9, 2004                             J. Campbell
Page 3

The Claimant has offered no evidence in support of his unsubstantiated assertion that it was
unsafe to cut in the locomotive's trucks while it was on the pit. Such contention is nothing more
than a self-serving attempt to mitigate his admitted violation of the rules with which charged.

Finally, in view of the Claimant's admission and in consideration of his service record, which
includes progressive discipline, both a reprimand and a twenty-day suspension (ten days actual
and ten held in abeyance), for operating rule violations involving switching, securing, and
coupling equipment, the discipline assessed was commensurate and was not arbitrary, capricious
or excessive. The Claimant has been afforded sufficient opportunity to correct his behavior to
comply with the Carrier's operating rules and failed to do so. The Carrier need not retain
employees in its service who are unable to work safely and are either unable or unwilling to
comply with the Carrier's operating rules.

For these reasons, your appeal is denied in its entirety.

Very truly yours,

*Larry C. Hriczak 11/9/04*

Larry C. Hriczak
Director-Labor Relations

bc:      Joe Deely
         Steve Shelton
         Bob Schmitt
         Milton Lundy
         Betty Blair
         Jim Ryan
         Lou De Phillips
         Jennifer Rieker
         Val Giulian
         Lisa Caridine
         Dick Wood
         Rick Sandler
         Library

# EXHIBIT F

## PUBLIC LAW BOARD NO. 6478

Case No. 120
Award No. 120

(United Transportation Union

**PARTIES TO DISPUTE:** (

(National Railroad Passenger Corporation (Amtrak)
( [System Docket OC-UTU-SD-1678D]

## STATEMENT OF CLAIM:

"Request the discipline of dismissal imposed upon J. Campbell be expunged from his record and that he be restored to service with seniority and vacation rights unimpaired and compensated for all time and expenses incurred inclusive of Health and Welfare premiums, Reduced Train Crew Allowance and Productivity Savings Sharing Allowance and credit for Railroad Retirement payments for each month for all time lost in connection therewith:

Charge 1: Your alleged violation of Amtrak's Service Standards for Train Service Employees – Manual No. 2, (effective 5/3/2004) – Chapter 3B – Safety Rules for Train Service Employees – Rule 5800 – Coupling or Uncoupling Engine or Cars, which reads:

'Prior to going on, under or between standing equipment for the purpose of coupling or uncoupling engines or cars, crewmembers must:

- Discuss safety matters and work to be performed.
- Communicate before action is taken.
- Protect against moving equipment.
- Secure equipment before action is taken.
- Mentor less experienced employees to perform service safely.'

Charge 2: Your alleged violation of General Code of Operating Rules-Fourth Edition – April 2, 2000-Rule 7.1 – Switching Safely and Efficiently, which reads in part . . . 'While switching, employees must work safely and efficiently and avoid damage to contents of cars, equipment, structures, or other property.'

**Charge 3:** Your alleged violation of General Code of Operating Rules - Fourth Edition – April 2, 2000-Rule 1.47 – Duties of Trainmen and Enginemen, Item D Other Crew Members' Responsibilities, Part 1. 'To ensure the train is operated safely and rules are observed other crew members must assume as much responsibility as possible to prevent accidents or rule violations.'

**Charge 4:** Your alleged violation of General Code of Operating Rules - Fourth Edition – April 2, 2000-Rule 7.4 – Precautions for Coupling or Moving Cars or Engines, which reads in part . . . 'Before coupling to or moving cars or engines, verify that the cars or engines are properly secured and can be coupled and moved safely.'

**Charge 5:** Your alleged violation of Amtrak Air Brake and Train Handling Rules And Instructions, AMT-3-Revised and Reissued August 19, 2002-Rule 2.14.16: which reads: 'Multiple lite locomotives may be moved within the confines of a yard or terminal without connecting the M.U. hoses, as long as the brake pipe and main reservoir hoses are connected with associated angle and main reservoir cocks open.'

**Specification:** It is alleged that on July 24, 2004 while assigned to position CYO103 working as the Conductor in the Oakland Diesel Shop you cut out the brakes on a locomotive and failed to properly secure it prior to coupling."

## FINDINGS:

This Board, after hearing upon the whole record and all the evidence finds that the Carrier and the Employee involved in this dispute are respectively Carrier and Employee within the meaning of the Railway Labor Act, as amended; this Board has jurisdiction over the dispute involved herein; and, the parties were given due notice of hearing thereon.

A hearing was held on September 9, 2004, subsequent to a mutually agreed postponement. The hearing involved an investigation into charges

Public Law Board No. 6478
Case No. 120; Award No. 120
Page 3 of 5

and specification over Claimant's alleged failure on July 24, 2004 to secure the brakes on a locomotive prior to coupling. Claimant had received proper notification on August 6, 2004 and the investigation permitted him all the rights and benefits of the Agreement.

The Organization argues that one error made by the Carrier is the failure to have present at the hearing the Assistant Conductor. In addition to the procedural error, the merits of the case were not proven. The Organization argues that the Claimant was unable to connect the air hoses over the pit; followed procedures that had been common practice; and that there was no damage or delay as a result of the Claimant's actions. Importantly, as he was not found guilty of Charge 2, the Claimant's behavior did not justify the excessive discipline of dismissal.

With regard to the procedural issue, the Carrier maintains that it proved its case. It argues that it need not call witnesses beyond those that will meet its burden. It proved the Claimant violated operating rules with the testimony of those present at the hearing. Further, with regard to merits, the Claimant admitted that he had disabled the brakes. This allowed the locomotive to roll away when it was hard coupled on the service track. The admission of the Claimant and the further testimony of the Mechanical Foreman proved the Claimant guilty of Charges 1, 3, 4 and 5. The Claimant was not found guilty of Charge 2. However, due to the Claimant's past record, the discipline was fully justified.

The Board's first obligation is to consider the Organization's procedural issue. There was no showing in this record that the Assistant Conductor had any material knowledge or relevant facts directly bearing on the Charges. Once the Carrier made a *prima facie* case against the Claimant, the burden shifted to the Organization to call whatever witness would shift that burden. The Organization made no showing that the Assistant Conductor was important, or that his testimony was directly on point to develop the Claimant's defense. There was no argument that the Carrier refused a recess for the Organization to present the witness, or that the Carrier prevented the Claimant from calling him. As such, and finding no procedural error, the Board turns to the merits.

The evidence of record from the Mechanical Supervisor is that the

Public Law Board No. 6478
Case No. 120; Award No. 120
Page 4 of 5

Claimant allowed the locomotive to remain on the pit with disabled brakes that did not prevent it from rolling. On July 24, 2004, Mechanical Supervisor West testified, "they hit the locomotive hard and the locomotive took off on its own." In fact, he had to run after it and set the brakes to stop the equipment. When asked, if, "when you made the moves, you . . . you did leave one loco on the service track unsecured. Is that correct?" the Claimant said, "Yes." The Operating Rules require that the brakes be secured. Clearly, the Carrier has met its burden of proof.

A study of the Claimant's position does not find persuasive support. The fact that the train was on flat ground; the argument that it was common procedure over the pit to disable the brakes; the lack of damage and injury, or the fact that the train was not delayed, do not go to the heart of the issue. Operating Rules are extremely important and, if not for the quick action of Supervisor West, the outcome of this event could have been far more serious. The Carrier has met its burden of proof and the only issue remaining is the quantum of discipline.

Discipline is meant to be instructive, corrective and progressive in such behaviors as herein before this Board. The Claimant has two prior instances of Operating Rule violations. His first was four years earlier and he was reprimanded. His second was approximately two years earlier and he was given a twenty (20) day suspension (ten days actual, ten held in abeyance). In both instances, this six year employee was found guilty of violating GCOR Rule 7.1. In both prior cases, the Claimant violated Operating Rules which involved safely switching, coupling and securing equipment. In this instance, the Claimant failed to properly secure the brakes prior to coupling. The Carrier argues that, "The Claimant has been afforded sufficient opportunity to correct his behavior to comply with the Carrier's operating rules and failed to do so." In this record, we are unable to find error with the Carrier's judgment. As such, we are constrained to deny the claim.

Public Law Board No. 6478
Case No. 120; Award No. 120
Page 5 of 5

**AWARD:**

The claim is denied.

*Marty E. Zusman*

**Marty E. Zusman, Chairman**
**Neutral Member**

*C. A. Iannone*

**C. A. Iannone**
**Organization Member**

*William H. Robinson, Jr.*

**Wm. H. Robinson, Jr.**
**Carrier Member**

Date: 2/24/06

*Assent is attached*

## ORGANIZATION MEMBER'S DISSENT
## TO AWARD NO. 120
## OF PUBLIC LAW BOARD NO. 6478

It is obvious that the Majority maintains an unrealistic view regarding the application of operating rules in connection with moving railroad equipment. It is also apparent that the Majority was unable to give the Claimant the benefit of the doubt.  The Neutral member was duped into believing that "if it was not for the quick action of the Supervisor, the outcome of this event could have been far more serious."  The Organization's Member of the Board views this statement by the Carrier's Member to be an exaggeration intended to create the illusion of danger where none existed. Unfortunately, for the Claimant, the Neutral Member was not able to clear the unrealistic image of suggestive danger from his mind.

The Claimant emphatically stated that for the past 5 years, he switched in the same manner, employing the same safety practices as every other crew that switched in that territory. The record reveals that the physical characteristic of the territory is flat. The record supports the fact that there was no accident, no derailment, no damage and no train delay. The Claimant was in control of the move and made the "joint" about 2 miles an hour. The engine in questioned rolled approximately a "half engine length". The record reveals that the engine was coming to a stop even before the brakes were cut in. These facts were ignored and dismissed by the Majority.

In light of the Claimant's record, the discipline is harsh, excessive and not consistent with discipline assessed in similar cases, not just on Amtrak, but in the entire industry.

_____
Organization's Member