PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
PRICE AND ASSOCIATES
The Latham Square Building
1611 Telegraph Avenue, Suite 1450
Oakland, CA 94612
Telephone: (510) 452-0292
Facsimile: (510) 452-5625

Attorneys for Plaintiff
JOHN CAMPBELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL, | NO. C05-5434 MJJ (EDL) |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY** |
| v. | DATE: May 8, 2007 |
| NATIONAL PASSENGER RAILROAD CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive, | TIME: 9:00 a.m. |
| | DEPT.: Courtroom E, 15th Floor |
| | HON. JUDGE ELIZABETH D. LAPORTE |
| Defendants. | DISCOVERY CUT-OFF: March 23, 2007 |
| | TRIAL DATE: July 23, 2007 |

**DISCOVERY MATTER**

NOTICE OF MOTION AND MOTION (C05-5434 MJJ (MEJ))

1143P214PYP

TO: DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that at a date and time to be determined, Plaintiff JOHN EARL CAMPBELL (hereinafter "MR. CAMPBELL") will move the Court for an order compelling Defendant NATIONAL PASSENGER RAILROAD CORPORATION ("AMTRAK") to provide further discovery responses to Plaintiff's Request for Production of Documents, Set Three and Defendant Deely's testimony regarding his financial condition, forthwith pursuant to the Federal Rules of Civil Procedure, Rules 26, 38 and 37 on the grounds that Defendant AMTRAK's failure to serve a timely and complete response to MR. CAMPBELL's written discovery was unreasonable within the meaning and spirit of the Federal Rules and good cause exists for requiring further responses to this discovery because the information is relevant to the subject matter of this dispute and reasonably calculated to lead to the discovery of admissible evidence.

This Motion shall be based upon this Notice, the Memorandum of Points and Authorities and the Declaration of Pamela Y. Price, all filed concurrently herewith, the pleadings, records and files herein, and upon such other and further matters as may be presented at the time of the hearing.

Dated: April 3, 2007                             PRICE AND ASSOCIATES


                                                 /s/
                                                 ―――――――――――――――――
                                                 PAMELA Y. PRICE, Attorneys for Plaintiff
                                                 JOHN EARL CAMPBELL

**MEMORANDUM OF POINTS AND AUTHORITIES**

**<u>INTRODUCTION</u>**

MR. CAMPBELL is a veteran trainman who worked on the railroad for fourteen (14) years. At the time of his termination, MR. CAMPBELL had worked as a Conductor for Defendant AMTRAK for six years. MR. CAMPBELL thought he was a valued employee. His life dream was to become an Engineer, but he was repeatedly passed over for promotion.

MR. CAMPBELL brings this Motion to Compel further discovery responses to Plaintiff's Third Request for Production of Documents in order to obtain the necessary documents

that he needs to prepare for trial.  The documents that MR. CAMPBELL seeks are directly relevant to the issues in dispute and reasonably calculated to lead to the discovery of admissible evidence at trial.  Finally, MR. CAMPBELL has no other way of obtaining this evidence.

## SUMMARY OF FACTS

MR. CAMPBELL began his work on the railroad at Southern Pacific Railroad in May 1984.  He worked for Southern Pacific for eight (8) years as a Machine Operator.  This job involved maintenance and repair of the tracks, including those caused by derailments.  As a Machine Operator, he also maintained and repaired railroad right of ways and operated heavy track machinery.  MR. CAMPBELL became very knowledgeable of railroad operations, learning virtually all of the rules of the railroad trade.  He was well prepared for his work with Defendant AMTRAK.

MR. CAMPBELL was employed by Defendant AMTRAK from November 1998 to September 17, 2004.  During his employment with AMTRAK, he applied for promotion to the position of Engineer six (6) times.  Each time his application was rejected and lesser qualified, less senior Caucasian applicants were promoted to the position.

In June 1999, MR. CAMPBELL applied for the Engineer position for the first time.  His application was rejected on the grounds that he was not eligible to apply based on the length of his employment with AMTRAK.  In 2000 and 2001, MR. CAMPBELL applied again, and was interviewed for the Engineer position, but other applicants with less seniority than he were selected.  In 2002, his scheduled interview was cancelled.  MR. CAMPBELL was never given a reason why.

In November 2003, MR. CAMPBELL applied for the Engineer position for the fifth time.[1]  Interviews were held in December 2003, but he was not scheduled for an interview, even though he was qualified for the position.  In January 2004, MR. CAMPBELL learned that two less qualified Caucasian applicants with less seniority were selected for the position.

On January 28, 2004, MR. CAMPBELL filed a Charge of Discrimination with the

---

[1] This is the first discriminatory promotion that fall within the statute of limitations.

1  California Department of Fair Employment & Housing (DFEH) and the United States Equal
2  Employment Opportunity Commission (EEOC), challenging his non-selection for the Engineer
3  position and asserting that Defendant AMTRAK discriminated against African-Americans on the
4  basis of race in promoting applicants to the Engineer position.

5          In June 2004, while his charge of discrimination was pending, MR. CAMPBELL
6  applied for the Engineer position for the sixth time.[2]  There were seven (7) positions available in
7  Oakland and Sacramento.  MR. CAMPBELL was willing and able to take any one of these
8  positions.  He was interviewed on July 7, 2004 by a panel which included the Vice Local
9  Chairman of the BLET Division 144-Amtrak for Oakland Sacramento, Chad M. Skinner.  Mr.
10 Skinner reported to MR. CAMPBELL that:

> "Your interview was very enlightening and in my opinion ranked among the best. Your overall score ranked among the highest of all the applicants we interviewed over the three-day period.  It is unknown to the Organization why you were not selected however, it was later discovered the Mr. Patrick Preusser had a meeting with Susan Venturelli (HR) on Monday, July 11, 2004 to discuss the potential candidates that were to be selected.  The Organization was never informed of this meeting nor asked to participate in any capacity despite our contractual right to partake."
> (Exhibit A to the Declaration of Pamela Y. Price (hereinafter "Price DEN").)

        In August 2004, seven (7) Caucasian applicants with less seniority were selected
for the positions.  MR. CAMPBELL was not promoted or given any reason for his non-selection.

        On or about August 6, 2004, MR. CAMPBELL was accused of violating
Defendant AMTRAK's Operating Rules.  He was accused of failing to properly secure the brakes
on a locomotive inside the Oakland Yard prior to coupling it on July 24, 2004.  An internal
hearing was held on September 9, 2004, and Defendant AMTRAK's Hearing Officer sustained
four (4) of the five (5) charges against MR. CAMPBELL.  On September 17, 2004, Defendant
AMTRAK's District Superintendent for the Pacific Division-Bay District, Steve Shelton,

---

[2] This is the second discriminatory promotion that falls within the statute of limitations.

1  terminated MR. CAMPBELL's employment, ostensibly for these rules violations.[3/]

2  MR. CAMPBELL's union vehemently objected to this termination, stating that: "the discipline was harsh, excessive and not consistent with discipline assessed in similar cases, not just on Amtrak, but in the entire industry."[4/] MR. CAMPBELL contends that a violation of these work rules did not usually result in termination, and that his termination is excessive and inconsistent with discipline assessed in similar cases. He intends to prove that he was fired in September 2004 in retaliation for his complaints to DFEH and EEOC in February 2004.

### I.  MR. CAMPBELL IS ENTITLED TO FURTHER RESPONSES TO HIS REQUEST FOR PRODUCTION OF DOCUMENTS

Non-expert discovery cut-off was initially set by this Court for **February 16, 2007**. On February 9, 2007, the parties submitted a stipulation and proposed order to enlarge the time for non-expert discovery up to and including March 23, 2007. The Court filed an order approving the stipulation on February 14, 2007. MR. CAMPBELL served his Third Request for Production of Documents on February 21, 2007.

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is customary for responses to include the identity of the responding party; the identity of the propounding party and the set number to which the response pertains. (The Rutter Group, *California Practice Guide*, *Federal Civil Procedure Before Trial*, § 11-229.)

Rule 34(a) allows parties to request documents and things within the scope of Rule 26(b) and within the possession, custody or control of the party upon whom the request is

---

[3] For the past five (5) years, MR. CAMPBELL switched in the same manner and employed the same safety practices as every other crew that switched in that territory. The record reveals that the physical characteristic of the territory is flat and supports the fact that there was no accident, no derailment, no damage and no train delay.

[4] See Organization Member's Dissent To Award No.120 Of Public Law Board No. 6478. (Exhibit B to Price DEN.)

1  served. The rule mandates that the response will state, with respect to each item or category, that
2  inspection and related activities will be permitted as requested, unless the request is objected to, in
3  which event the reasons for the objection will be stated. If objection is made to part of an item or
4  category, the part shall be specified and inspection permitted of the remaining parts. The party
5  submitting the request may move for an order under Rule 37(a) with respect to any objection to or
6  other failure to respond to the request or any part thereof, or any failure to permit inspection as
7  requested. (*See E.& J. Gallo Winery v. Cantine Rallo, S. P. A.*, 2006 WL 2583672 (E.D.Cal.
8  2006).)

### A. Defendant Amtrak's Boilerplate Objections Lack Merit

Defendant AMTRAK provided a litany of general objections. Such objections will not alone constitute a successful objection, nor will a general objection fulfill the objecting party's burden to explain its objections. (*Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D.Cal. 2005).) General objections are not sufficient to raise any substantial, meaningful or enforceable objections to any particular discovery request. (*In re Air Crash at Taipei, Taiwan,* 211 F.R.D. 374, 376 (C.D.Cal. 2002); *Walker v. Lakewood Condominium Owners Association*, 186 F.R.D. 584, 587 (C.D.Cal. 1999); *Taylor v. Los Angeles Police Department,* 1999 WL 33101661 (C.D.Cal. 1999).) In addition to its general objections, Defendant AMTRAK asserted the following five objections, in various combinations, to each of MR. CAMPBELL's requests:

(1)  overbroad, compound and unduly burdensome

(2)  seeking information neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence

(3)  seeks materials protected from disclosure the California Constitutional right of privacy and/or the federally recognized right to privacy

(4)  seeks information protected from disclosure by either the attorney-client privilege or the attorney work product doctrine

### B. Defendant Amtrak's Privacy Objections Are Outweighed by Mr. Campbell's Right to Discovery

Defendant AMTRAK makes a laundry list of objections to Requests Nos. 17-29,

including relevancy, overbroad, that the requests are unduly burdensome and privacy. Since one of MR. CAMPBELL's claims against Defendant AMTRAK is failure to promote based on racial discrimination, his requests are clear and directly relevant and narrowly tailored to lead to further discoverable information. Additionally, Defendant AMTRAK presumably keeps employment records and records pertaining to applications and promotions because in its response to several of the Requests, Defendant AMTRAK agreed to produce these documents on a limited basis.

"In recent years, the courts have **routinely ordered** the production of personnel files of third parties in employment discrimination and police brutality cases." (*Ceramic Corp. of America v. Inka Maritime Corp.,* 163 F.R.D. 584, 589 (C.D.Cal 1995) (emphasis added)*; see also*, *Garrett v. City and County of San Francisco*, 818 F.2d 515, 1519 n. 6 (9th Cir. 1987) (privilege claims grounded in state law will be disregarded when the discovery sought includes personnel files in federal question cases, including Title VII actions); *Jones v. Commander*, 147 F.R.D. 248 (1993) (court ordered production of evaluation reports of a nonparty supervisor both during and outside the period that the plaintiff was supervised); *E.E.O.C. v. University of New Mexico,* 504 F.2d 1296 (10th Cir. 1974) (personnel files for all faculty members were deemed discoverable in a failure to promote case); *Orbovich v. Macalester College,* 119 F.R.D. 411 (D.Minn. 1988) (tenure and personnel files of third parties were ordered to be produced in a denial of tenure case); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570 (3rd Cir. 1980) (medical information contained within nonparty employees' personnel files was discoverable in an action brought under OSHA); and *Weahkee v. Norton,* 621 F.2d 1080 (10th Cir. 1980) (Nonparty employees' files were discoverable in a discrimination case).)

MR. CAMPBELL's right to civil discovery outweighs these employees' rights to privacy. (*Narayan v. EGL, Inc., et al.* (N.D.Cal. 2006) 2206 WL 3507918 citing *Harris v. Superior Court* (1992) 3 Cal.App.4th 661, 664, 4 Cal.Rptr.2d 564, "one's constitutional right of privacy is not absolute and, upon a showing of some compelling public interest, the right of privacy must give way".) Access to confidential personnel information is widely recognized as necessary in order to adequately protect rights of individuals through litigation. (*See e.g.*, *University of Penn. v. EEOC* (1990) 493 U.S. 182, 110 S.Ct. 577.)

        **C.    Defendant Amtrak Should Not Be Allowed to Hide Evidence of Its Discriminatory Hiring Practices**

It has long been held that a defendant's hiring and termination practices may be used to prove intentional discrimination. Indeed, in this District, discovery of this nature is routinely allowed. (*See Stender v. Lucky's Stores*, 803 F.Supp. 259, 331-332 (N.D.Cal. 1992); *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097 (8th Cir. 1988).) Request Nos. 22 through 28 sought certain documents reflecting the racial composition of Defendant AMTRAK's workforce in the Pacific Division. This information can be used to demonstrate the context and the environment in which MR. CAMPBELL was employed, and AMTRAK's hiring and termination practices. Indeed, in his EEO complaint, MR. CAMPBELL asserted that Defendant AMTRAK had a history and pattern of refusing to promote African-Americans to the position of Engineer. This evidence is critical to prove the truthfulness of this assertion.

        **D.    Evidence of Similarly-Situated Employees Who Committed Similar or More Serious Offenses Without Being Terminated Is Relevant to Mr. Campbell's Discrimination and Retaliation Claims**

As noted earlier, access to confidential personnel information is widely recognized as necessary in order to adequately protect rights of individuals through litigation. (*See e.g., University of Penn. v. EEOC* (1990) 493 U.S. 182, 110 S.Ct. 577.) MR. CAMPBELL can establish a *prima facie* case of racial discrimination by showing (1) that he is a member of a protected class (African-American); (2) he was qualified for his position; (3) Amtrak disciplined and terminated him; and (4) Amtrak did not discipline or terminate similarly-situated non-African-American employees who violated the same or similar work rules. (*McDonald v. Santa Fe Trail Transportation*, 427 U.S. 273, 96 S.Ct. 2574 (1976); *Green v. Armstrong Rubber*, 612 F.2d 967 (5th Cir. 1980); *Turner v. Texas Instruments*, 555 F.2d 1251 (5th Cir. 1977); *Garrett v. City & County of San Francisco*, 818 F.2d 1515 (9th Cir. 1987).)

In this discrimination case, it is critical that MR. CAMPBELL be granted access to information regarding Amtrak's treatment of other similarly-situated employees who were involved in derailments, a far more serious offense than the event for which Mr. Campbell was terminated. Evidence regarding the treatment of similarly-situated employees is clearly relevant and admissible

to establish disparity in treatment. Amtrak's refusal to provide basic information relating to its treatment of incidents of derailments was clearly done to needlessly increase the cost of discovery to MR. CAMPBELL.

Defendant AMTRAK's blanket, boilerplate objections to each of MR. CAMPBELL's requests lack merit. As a result, the Court should compel Defendant AMTRAK to provide a further response to the Request for Production and produce documents responsive to each of the requests.

## II.   MR. CAMPBELL IS ENTITLED TO EVIDENCE OF DEFENDANT DEELY'S FINANCIAL CONDITION

MR. CAMPBELL also seeks evidence regarding the financial condition of Defendant JOE DEELY.[5] Defendant AMTRAK argues that the California Constitution, Article I, Section 1, provides a privacy right that protects it from producing financial information. The standard, however, for the disclosure of financial information in Federal Court does not include the privacy safeguards set forth under the California Constitution. Instead, claims of privilege arising in the course of the adjudication of federal rights are governed by principles of federal common law and not state law. (*United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2719, 2625, 105 L.Ed.2d 469 (1969), citing Rule 501 of the Federal Rules of Evidence; *see also Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D.Cal. 1987).)

Further, State privacy statutes do not control discovery in federal court: "[w]hile this Court may give some weight to privacy rights protected by state statutes, the 'ultimate responsibility for deciding how much weight to ascribe such interests, and how that weight compares with the significance of competing interests must reside with the federal courts.'" (*See Welsh v. City and County of San Francisco,* 887 F.Supp. 1293, 1301 (N.D.Cal. 1995), citing *Kelly v. City of San Jose,* 114 F.R.D. *supra* at 656.)

---

[5]   As set forth in the Declaration of Pamela Y. Price in Support of the instant Motion, Defendant Deely's financial information has already been ordered to be disclosed to Plaintiff's counsel in another unrelated action where Defendant Deely is represented by the same counsel. (See Attachment 4 to the Price Declaration.) Defense counsel in this action refused to stipulate to the protective order negotiated by her firm in the other case.

1  Further, the Federal Rules require specific claims as to privilege and do not allow for
2  generalized privacy concerns offered without legal basis. Federal Rule 26(b)(5) requires:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

MR. CAMPBELL bears the burden of proving Defendant DEELY's net worth as a prerequisite to a punitive damages award. Financial information is relevant to punitive damages claims and is discoverable under the Federal Rules of Civil Procedure, whether or not such evidence would be admissible at trial. (See *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 286 (C.D.Cal. 1998).) The Federal Rules of Civil Procedure encourage courts to compel production of financial information during the discovery period because "one of the purposes behind the broad federal discovery rules is to facilitate settlement, and such financial information is valuable in assisting both sides in making a realistic appraisal of the case, and may lead to settlement and avoid protracted litigation." (*See Oakes*, supra at 286, citing *CEH, Inc. v. FV "Seafarer,"* 153 F.R.D. 491, 498-99 (D.R.I. 1994).)

MR. CAMPBELL needs the requested information to meet his burden of demonstrating Defendant Deely's net worth for purposes of assessing punitive damages. (*See, e.g.,* Ninth Circuit Model Civil Jury Instruction No. 7.5 *Punitive Damages* (plaintiff bears burden of establishing amount of punitive damages that should be assessed; instruction notes contemplate evidence of defendant's net worth being offered by plaintiff); *see also Adams v. Murakami*, 54 Cal.3d 105, 284 Cal. Rptr. 318 (1991) (under California law Plaintiff bears the burden of proving financial worth).) Moreover, evidence of net worth "is crucial to the issue of punitive damages. ." (*See Oakes,* 179 F.R.D. supra at 284; *see also U.S. v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988) ("the party resisting disclosure should bear the burden of establishing alternative sources for the information").)

## CONCLUSION

Defendant AMTRAK should be compelled to supplement its responses to Request

1  Nos. 17 through 29, and produce the requested documents within ten (10) days from the date of the
2  Order. Moreover, Defendant AMTRAK should be compelled to produce Defendant Deely for
3  deposition to respond to questions regarding his financial condition forthwith.[6/] If Defendant
4  AMTRAK is not compelled to provide the requested information, MR. CAMPBELL will face
5  prejudice and be at a disadvantage in preparing for trial.

6  Dated: April 3, 2007                                   PRICE AND ASSOCIATES

8                                                         /s/   *Pamela Y. Price*
                                                          PAMELA Y. PRICE Attorneys for Plaintiff
9                                                         JOHN CAMPBELL

---

[6/]     If a deponent, (party or non-party) refuses to answer a question at a deposition, the deposing party's remedy is to bring a motion to compel answers. (*Estrada v. Rowland*, 69 F.3d 405, 406 (9th Cir. 1995).

1143P214PYP                             -10-
                        NOTICE OF MOTION AND MOTION (C05-5434 MJJ (MEJ))