1  Kathleen Maylin (SBN 155371)
   Cara Ching-Senaha (SBN 209467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California 94105
   Telephone: (415) 394-9400
4  Facsimile: (415) 394-9401

5  Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
6  CORPORATION dba AMTRAK and JOE DEELY

7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11 | JOHN EARL CAMPBELL,                          | Case No. C05-05434 MJJ (EDL)
12 |                    Plaintiff,                | **DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S OPPOSITION TO PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER ANSWERS TO INTERROGATORIES**
13 |          v.                                  |
14 | NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive, |
15 |                                              |
16 |                    Defendants.               | Complaint Filed: 12/30/05
   |                                              | FAC Filed:       2/23/06
   |                                              | Trial:           7/23/2007
17 |                                              |
   |                                              | Hearing Date: May 1, 2007
18 |                                              | Hearing Time: 9:00 a.m.
   |                                              | Dept.: Courtroom E, 15th Floor
19 |                                              |
   |                                              | Magistrate Judge Elizabeth D. Laporte
20

21

22

23                      **DISCOVERY MATTER**

24

---

1

DEF. AMTRAK'S OPP TO PL'S MTN TO COMPEL ANSWERS TO IOGS  Case No. C05-05434 MJJ (EDL)

## I. INTRODUCTION

Plaintiff bases his motion to compel further answers to interrogatories on a distortion of the record. The simple truth is that Plaintiff's motion should be denied because he seeks information that is confidential and rightfully protected against disclosure, information that is irrelevant to any claim or defense in this case, and information already in his possession. In addition, Plaintiff has exceeded the number of interrogatories permitted by this Court and has failed to meet and confer in good faith prior to filing this motion.

## II. SUMMARY OF PERTINENT FACTS

Plaintiff worked as a Conductor at Amtrak from 1998 until 2004. Amtrak terminated his employment for excessive rules and safety violations in late 2004.

In the First Amended Complaint ("FAC"), Plaintiff alleges that he submitted an application for promotion to Engineer in 1999, which Amtrak denied because of Plaintiff's race, and for which a lesser qualified Caucasian applicant with less seniority was selected.[1] FAC at ¶ 8. In addition, Plaintiff alleges that he applied again in 2000 and 2001, for which "applicants with less seniority were selected." FAC at 2:17-19.

It is undisputed that seniority is irrelevant to any application for hire or promotion to Engineer. (Deposition of John Campbell ("Pl. Depo."), 202:11—203:10, attached to the Declaration of Cara Ching-Senaha as Exhibit A)

In addition, AMTRAK has had, and continues to have, a policy that employees applying for promotion to Engineer must have worked for the company for at least one year (aka "one-year policy") within their craft. (Pl. Depo., 55:8-10) Plaintiff admits he knew about AMTRAK's one-year policy because he was informed of it when he was first hired. (Pl. Depo., 54:23—55:10, 53:22—54:8, 187:17-21.) Pursuant to AMTRAK's one-year policy, AMTRAK did not promote Plaintiff in 1999 to Engineer because he had worked less than a year. (Pl. Depo., 53:22—54:8)

Moreover, Plaintiff had a documented history of discipline that others who were selected for hire or promotion to Engineer did not. (Declaration of Larry Follis, ¶ 4; Declaration of Susan

---

[1] Plaintiff brazenly repeats the same allegation in his moving papers, despite his admission that seniority has nothing to do with engineer selection. *See* Notice of Motion and Motion to Compel at 2:18.

Venturelli, ¶ 16. Follis and Ventrelli's declarations are attached to the Ching-Senaha Decl. as Exhs. B and C, respectively.) By early 2000, Plaintiff had been charged with seven violations of Amtrak's General Code of Operating Rules, Safety Rules, and AMT-3 Rule stemming from damage because trucks (railroad cars) were moved improperly, a boxcar derailed, and Plaintiff failed to report the incident. (Pl. Depo., 113:10—115:4, 116:14—118:4, 122:2—123:6 and Pl. Depo. Exh. 13) Plaintiff admitted his misconduct in writing and agreed to the punishment assessed by Amtrak. (Pl. Depo., 113:10—115:4, 116:14—118:4, 122:2—123:6 and Pl. Depo. Exh. 13)

In January 2002, Plaintiff was charged with four serious rules infractions relating to a boxcar derailment on January 10, 2002. (Declaration of Gregg Baxter ("Baxter Decl."), ¶ 2; Pl. Depo., 118:22—119:1 and Pl. Depo. Exh. 27. Baxter's declaration is attached as Exh. D to Ching-Senaha Decl.) The charges included moving a train at an unsafe speed (Charge 1), failing to work safely and to avoid damage to equipment (Charge 2), failing to verify cars were properly secured before coupling or moving cars (Charge 3), and failing to control train movement while moving cars into a spur track (Charge 4). (Baxter Dec., ¶ 2 and Ex. A thereto) Based in large part on admissions he made during a formal hearing, Plaintiff was assessed a 20-day suspension, with 10 days held in abeyance. (Baxter Dec., ¶ 3, Ex. B; Pl. Depo., 120:4—121:7, 123:12—124:1 and Pl. Depo. Ex. 14.)

The third safety violation that led to Plaintiff's discharge took place on July 24, 2004 when he improperly disabled the brakes on a locomotive, which subsequently began rolling away on its own volition after a hard coupling. The yard foreman had to run along the moving locomotive to engage the brakes. (Declaration of Steve Shelton ("Shelton Decl."), ¶ 10. Shelton's declaration is Exh. E to Ching-Senaha Decl.) As a result, Amtrak charged Plaintiff with five rules violations of the General Code of Operating Rules, Service Standards for Train Service Employees, and AMT-3, Amtrak Air Brake and Train Handling Rules and Instructions. (Shelton Decl., ¶¶ 8 and 10, Ex. C) Thereafter, hearing officer Patrick Gallagher issued a Decision which stated in pertinent part that it was "evident on the record by the testimony of the Corporation's witnesses and your own testimony that you clearly violated the rules and

1. instructions regarding the movement and coupling of cars and engines." Gallagher found Plaintiff guilty of four charges and, as a result, Steve Shelton, Amtrak's District Superintendent in the Pacific Division, rightly concluded that in light of the current violations and Plaintiff's prior discipline record, the just and necessary action was to terminate Plaintiff's employment. (Shelton Dec., ¶¶ 1 and 11 and Ex. D thereto; Pl. Depo., 154:17—155:4 and Pl. Depo. Exh. 19.)

On March 7, 2007, in accordance with the parties' agreed-upon schedule, Amtrak served responses to Plaintiff's First Set of Interrogatories. On March 20, 2007, Plaintiff's counsel first contacted the undersigned in a so-called effort to "meet and confer." (Ching-Senaha Decl. and Exh. F thereto) Plaintiff filed this motion to compel on March 21st. (Id.)

Amtrak respectfully requests that the Court deny Plaintiff's motion in its entirety on the grounds it is untimely, made in bad faith, not legally supported, and causes undue prejudice and hardship to Defendants.

### III.  POINTS AND AUTHORITIES

#### A.  Plaintiff Failed to Meet and Confer In Good Faith

Before any motion to compel as a result of an alleged failure to provide or participate in discovery can be filed, the parties must make good faith attempts to resolve the matter informally. Fed.R.Civ.Proc. 37(B); Local Rule 37-1(a). As part of the good faith requirement, a party must meet and confer and allow sufficient time for the parties to discuss and explore informal resolution of their differences before any motion to compel is filed. *Obregon v. Superior Court*, 67 Cal.App.4th 424, 428 (1998); Local Rule 37-1(a).

In this case, Plaintiff's counsel waited two weeks after Amtrak served its responses to contact defense counsel in a so-called effort to "meet and confer." (Ching-Senaha Decl. and Exh. F thereto) In her March 20th letter, Plaintiff's counsel demanded that defense counsel respond and supplement Amtrak's responses by the following day. (Id.) Plaintiff's demand was per se unreasonable. *Obregon v. Superior Court*, 67 Cal.App.4th 424, 428 (1998).

The unreasonableness of Plaintiff's counsel's position was compounded by the fact that Plaintiff's counsel *knew* that defense counsel was out of the office all day on March 20th and scheduled to vacation out-of-state starting on March 21st. (Ching-Senaha Decl.) Therefore, no

conference among counsel was held before Plaintiff filed his motion. Local Rule 37-1(a). Even after Plaintiff's counsel became aware of these facts, she filed on March 21st this motion to compel. (Id.)

B. **Interrogatory No. 1**

1. **Plaintiff's Attempt to Discover Confidential Information Should Be Denied**

Plaintiff's Interrogatory No. 1 asks that Amtrak list the total number of race discrimination complaints made by African-American employee(s) within the last seven (7) years within the Pacific Division. Amtrak's answer listed the number of publicly-filed lawsuits in which race discrimination has been alleged.

Amtrak rightfully objected to list the number of *internal* complaints in which race discrimination was alleged because such information necessarily involves private, state and federally-protected information that Amtrak has an obligation to protect. *Board of Trustees of Leland Stanford Junior University v. Superior Court*, 119 Cal.App.3d 516 (1981) (personnel records subject to Constitutional right of privacy); *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 657 (1975) (A party to an action may assert the privacy rights of third parties such as its employees); *Harding Lawson Assoc. v. Superior Court*, 10 Cal.App.4th 7, 10 (1992); *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 517 (7th Cir. D. Minn. 1997) (recognizing the privacy rights of third-parties to avoid the disclosure of their personal information).

California state and federal courts have recognized that employment records and personnel files fall within the constitutionally protected right to privacy. *See Board of Trustees v. Superior Court* (1981) 119 Cal.App.3d 516 (personnel records subject to Constitutional right of privacy). In this case, these privacy rights apply to non-parties who are not involved in the litigation. *See Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656.

In balancing the right of privacy against the interest in discovery, the party seeking disclosure must meet a high standard: even when discovery of private information is deemed directly relevant to the litigation, it will not be automatically allowed. The court must carefully balance the plaintiff's compelling public need for discovery against the fundamental right of

privacy. *Board of Trustees*, 119 Cal.App.3d at 525. Indeed, "the initiation of a lawsuit does not, by itself, grant [a plaintiff] the right to rummage unnecessarily and unchecked through the private affairs of anyone he chooses." *Cook v. Yellow Freight Systems, Inc.* 132 F.R.D. 548, 551 (E.D. Cal. 1990).

As the party seeking the constitutionally protected information, Plaintiff has the burden of establishing that the information sought cannot be obtained through less intrusive means. *See Tylo v. Superior Court* (1997) 55 Cal.App.4th 1379, 1387; *Miller v. Federal Express Corp.*, 186 FRD 376, 384 (W.D. TN 1999); *Matter of Hawaii Corp.*, 88 FRD 518, 524 (D. Haw. 1980). Plaintiff has failed to demonstrate that the information he seeks cannot obtained through non-confidential sources or less obtrusive means. Tellingly, Plaintiff has attended at least seven depositions so far, including that of Amtrak's Human Resources Officer Susan Venturelli, and not once did Plaintiff's attorney ask about other race discrimination complaints – a less intrusive way to obtain the information that Plaintiff claims he so desperately needs.

### 2. Moreover, Interrogatory No. 1 Is Overbroad and Irrelevant

Even if Plaintiff could meet the heightened burden that applies to constitutionally-protected information, Interrogatory No. 1 is overbroad. First, the interrogatory is not limited to the persons against whom complaints of race discrimination were made. Discovery of past complaints must be limited to those made against the specific persons who alleged harassed or discriminated against the plaintiff. Here, Mr. Campbell does not limit his interrogatory to internal complaints against Steve Shelton (the person who decided to terminate his employment) nor against the individuals who decided against his promotion to Engineer (e.g., Venturelli, Follis, Ho).

Courts have long ordered that such discovery should be limited and narrowly tailored to suit the facts in the particular case:

> [D]iscovery in Title VII cases involving highly individualized claims of discriminatory treatment should be restricted to the practices at issue in the case, applied to employees in similar circumstances to determine if the employer treats all of its employees under those circumstances in the same manner, or whether it treats employees similarly circumstanced differently and there is some basis for concluding that the difference in treatment is predicated on race, sex or some other grounds of unlawful discrimination.

*Suggs v. Capital Cities/ABC, Inc.*, 122 F.R.D. 430, 431 (S.D. N.Y. 1988) (quoting *Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 619 (D.D.C. 1983)).

In addition, Interrogatory No. 1 is overbroad because it asks for information about *all* internal complaints for the last seven years (including three years after Plaintiff's discharge) regardless of whether the complaint concerned a failed promotion to Engineer or discipline resulting from a serious safety violation of the same type and severity as those committed by Plaintiff.

The interrogatory is also overbroad as to location. All of the issues that Plaintiff raises concern his work and nonpromotion at Amtrak's Oakland location, not other locations (Sacramento, San Francisco, San Jose, etc.) within Amtrak's Pacific Division. The FAC focuses on *Plaintiff's* unsuccessful applications for promotion and discharge. He does not allege a claim for disparate impact allegedly as a result of Amtrak's hiring policies and practices.[2]

Furthermore, the interrogatory is overbroad as to time. Plaintiff should not be permitted to discover complaints, if any, that were made after his termination in September 2004. Nor should he be permitted to discovery complaints, if any, that may have been made before the applicable statute of limitations (4 years or no earlier than December 30, 2001, *Jones v. R.R. Donnelly & Sons, Co.*, 124 S.Ct. 1836, 1845 (2004), 2004 U.S. LEXIS 3236 at *20). *Onwuka*, supra, 178 F.R.D. at 118 (narrowing scope of discovery to three years preceding plaintiff's discharge and to the location at which plaintiff worked).

---

[2] Even in disparate treatment cases, discovery should be limited to employees within certain work units and who have suffered similar treatment as the plaintiff. *Robbins v. Camden City Bd. of Education*, 105 F.R.D. 49 (D.N.J. 1985); *United States v. Concemi*, 957 F.2d 942, 949 (1st Cir. 1992).

---

7

DEF. AMTRAK'S OPP TO PL'S MTC AND ENLARGE DISCOVERY        Case No. C05-05434 MJJ (EDL)

B. **Interrogatories 5, 6, 9-11**

1. **The Interrogatories Are Irrelevant**

Plaintiff's Interrogatories 5, 6, and 9 through 11 concern certain information relating to Amtrak's hiring of conductors and assistant conductors. In his motion to compel, Plaintiff contends that evidence of Amtrak's hiring and termination practices of conductors and assistant conductors are necessary to prove intentional discrimination against. Plaintiff callously omits the fact that the entire FAC concerns Amtrak's alleged hiring or promoting of African-American Engineers – *not* African-American Conductors. *See* FAC at ¶¶ 8-10. Therefore, the hiring and discharging of African-American conductors is patently irrelevant.[3]

2. **Plaintiff Exceeded The Permissible Number of Interrogatories**

Fed.R.Civ.Proc. 33 limits written interrogatories to 25 in number "including all discrete subparts." (emphasis added) As such, interrogatories containing discrete subparts are counted as separate interrogatories towards the 25 interrogatory limit. In addition, the Court at the start of the litigation limited the number of interrogatories that a party may propound, absent a separate court order. (Order, attached to Ching-Senaha Decl. as Exh. F) Starting at Plaintiff's Interrogatory No. 9, Amtrak rightfully declined to provide a substantive response because Plaintiff had exceeded the limit on interrogatories set by the Court.

For example, in Interrogatory No. 7 (not at issue in this motion), Plaintiff asked Amtrak to list for each year starting from 1998 the number of Engineers that Amtrak hired to work in its Pacific Division. As such, Plaintiff's interrogatory counted as six separate interrogatories. Had Plaintiff asked for the number of Engineers hired in the Pacific Division between 1998 through the present, the interrogatory would have counted as one instead of seven. Plaintiff committed the same offense in Interrogatory No. 8 (also not at issue), in which Plaintiff asked Amtrak to list for each starting from 1998 the number of African-American Engineers hired to work in its Pacific Division. Defense counsel noted this fact in Amtrak's response. As explained above, rather than meet and confer in good faith about Plaintiff's excessive interrogatories, Plaintiff filed this motion to compel.

---

[3] Amtrak responded to Plaintiff's interrogatories as they relate to Engineers.

1  The court's order can only be modified upon a showing of good cause. Fed. R. Civ. P. 16(f). Rule 16(b)'s 'good cause' standard focuses on the diligence of the party seeking the amendment. Carelessness by Plaintiff to discretely select which interrogatories she would propound in light of the Court's limitation does not justify a grant of relief. *Engleson v. Burlington Northern R.R. Co.*, 972 F.2d 1038 (9th Cir. 1992) (carelessness not a ground for relief under Rule 60(b)); *Martella v. Marine Cooks & Stewards Union* 448 F.2d 729, 730 (9th Cir. 1971) (same), cert. denied, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed. 2d 248 (1972); *Smith v. Stone*, 308 F.2d 15, 18 (9th Cir. 1962) (same). *Johnson v. Mammoth Recreations Inc.* (9th Cir. 1992) 975 F.2d 604, 609. If the party seeking the modification is not diligent, the inquiry regarding good cause "should end." *Id.*

C.  **Interrogatories 9 - 12**

Interrogatories 9 through 11 concern the hiring of assistant conductors and as previously described above, are irrelevant to any claim or defense in this case.

Plaintiff's Interrogatory 12 asks Amtrak to identify by name all Engineers whose employment has been involuntarily terminated. Amtrak reiterates as though fully set forth herein the vast authority cited above that protects against the unauthorized disclosure of personnel information. Again, Plaintiff does not limit his discovery to seek relevant information. He does not limit the interrogatory to engineers who have been terminated for the same offenses with which Plaintiff was charged and found guilty. Nor does Plaintiff limit his interrogatory to employees whose terminations were decided by the same Steve Shelton that decided Plaintiff's discharge. For these reasons, Plaintiff's Interrogatory No. 12 is overbroad, irrelevant, and violative of third party privacy rights, and must be denied.

D.  **Interrogatories 13-18 (aka Decision-Maker Information)**

Plaintiff's Interrogatories 13 – 17 ask Amtrak to identify the persons who decided the hire or promotion of 24 individuals to Engineer. Amtrak objected to the interrogatories on a variety of grounds. Assuming <u>arguendo</u> the Court finds that Plaintiff has not exceeded the permissible number of interrogatories, it would be unduly burdensome and oppressive to require Amtrak to provide specific responses. Amtrak has no computerized records to identify which person or

persons made the decisions to hire or promote. (Ching-Senaha Decl.) Accordingly, Amtrak produced more than six months ago documents on every applicant for every Engineer position for which Plaintiff contends he applied, even when Amtrak's records show and Plaintiff's admissions prove that Plaintiff never applied for any position outside of Oakland. (Venturelli Decl., ¶¶ 11, 12; Pl. Depo., 45:5-13) These same records include applications, interview notes prepared by the persons who conducted the interviews, other supporting documentation, and papers signed by those who approved the final hire/promotion decision. (Ching-Senaha Decl.) The information that Plaintiff requests in Interrogatories 13 – 17 is contained in the paper records that Amtrak produced to Plaintiff in August of 2006 and is equally available to Plaintiff as to Amtrak. (Ching-Senaha Decl.)

As for Plaintiff's Interrogatory No. 18, Amtrak rightfully objected because Plaintiff has exceeded the number of interrogatories permitted by the Court. If, however, the Court sustains that part of Plaintiff's motion, Amtrak agrees to amend its response to list Steve Shelton as the person who decided on the discipline given to Plaintiff as a result of the July 2004 incident, information that Plaintiff already has.

## IV. CONCLUSION

For all of the foregoing responses, Defendant respectfully requests this Court to deny Plaintiff's motion to compel further responses to his First Set of Interrogatories.

Respectfully submitted,

Date: April 10, 2007                             JACKSON LEWIS LLP


By: /s/ Kathy Maylin
Kathleen Maylin
Cara Ching-Senaha
Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK and
JOE DEELY

H:\N\National Railroad Passenger Corp (40707)\Campbell (89560)\Pleadings\Pltf 2d mtn to compel (re Amtrak IOG response)\Op to MTC docs and enlarge discovery to be heard 050107 CMC040907.doc

10

DEF. AMTRAK'S OPP TO PL'S MTC AND ENLARGE DISCOVERY        Case No. C05-05434 MJJ (EDL)