Kathleen Maylin (SBN 155371)
Cara Ching-Senaha (SBN 209467)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile: (415) 394-9401

Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK and JOE DEELY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL,<br><br>        Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive,<br><br>        Defendants. | Case No. C05-05434 MJJ (EDL)<br><br>**DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S OPPOSITION TO PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Complaint Filed:  12/30/05<br>FAC Filed:  2/23/06<br>Trial:  7/23/2007<br><br>Original<br>Hearing Date: May 8, 2007<br><br>Rescheduled<br>Hearing Date: May 1, 2007<br>Hearing Time: 9:00 a.m.<br>Dept.: Courtroom E, 15th Floor<br><br>Magistrate Judge Elizabeth D. Laporte |

**DISCOVERY MATTER**

---

1

DEF. AMTRAK'S OPP TO PL'S MTN TO COMPEL PRODUCTION OF DOCS. Case No. C05-05434 MJJ (EDL)

I. **INTRODUCTION**

Plaintiff bases his motion to compel Amtrak's further production of documents in response to Plaintiff's Third Request for Production of Documents on stale information, faulty premises, and unreasoned argument. In addition, Plaintiff's counsel failed to meet and confer in good faith.

Document Requests 18-21 and 29 are no longer before this Court because Amtrak has agreed to produce these documents, subject to the parties' protective order. (Supplemental Declaration of Cara Ching-Senaha ("Ching-Senaha Suppl. Decl."), filed concurrently herewith) For that reason, Amtrak does not address the factually and legally flawed points pertaining to Request Nos. 18-21 and 29, contained in pages 5:28—6:28 and 7:1-12 of Plaintiff's motion[1].

As for the remainder of Plaintiff's motion to compel, Plaintiff's Request No. 17 asks for a copy of Defendant Joe Deely's personnel file, ostensibly because, Plaintiff assumes, Deely discriminated and retaliated against him. Amtrak objected to the production of Deely's personnel file because Plaintiff has no admissible evidence that Deely had anything to do with his termination and therefore, Plaintiff cannot meet the heightened burden he bears to justify the production of Deely's file. Nevertheless, Amtrak has agreed to produce select portions of Deely's personnel file, to the extent such documentation, if any, exists, consistent with Judge LaPorte's ruling at the court hearing on April 17th, subject to the parties' protective order, With this agreement, Plaintiff's Request No. 17 is no longer at issue. (Supplemental Declaration of Cara Ching-Senaha ("Ching-Senaha Suppl. Decl."), filed concurrently herewith.)

The documents still at issue include requests for statistical information relevant to a disparate impact theory of discrimination, which is not alleged in Plaintiff's First Amended

---

[1] The documents are projected to be produced to Plaintiff well before the hearing on May 1st.

1  Complaint.[2]

2  Moreover, Amtrak previously provided most of the requested information via
3  interrogatory answers provided on March 7th and in documents produced in August of last year.
4  Now, Plaintiff seeks to obtain documents on these same issues which can only be relevant to
5  expert witnesses. However, the date for expert designations has long past and Plaintiff has
6  identified no expert witnesses. (Ching-Senaha Suppl. Decl.)

7  In addition, it would be unduly burdensome to require Amtrak to compile information
8  over the last nine years about hirings, firings and promotions within the entire Pacific Division
9  when it is undisputed that Plaintiff did not apply for promotion to any location other than
10 Oakland, Plaintiff did not work in any location other than Oakland and San Francisco (the latter
11 about which he admitted he had no complaints), and Deely, the General Superintendent, had no
12 involvement in hiring and promotions. (Ching-Senaha Decl.; Declaration of Joe Deely;
13 Declaration of Larry Follis; Shelton Decl., all concurrently filed herewith)

14 **II.   POINTS AND AUTHORITIES**

15   A.   **Plaintiff Failed to Meet and Confer In Good Faith**

16 Before any motion to compel as a result of an alleged failure to provide or participate in
17 discovery can be filed, the parties must make good faith attempts to resolve the matter informally.
18 Fed.R.Civ.Proc. 37(B); Local Rule 37-1(a). As part of the good faith requirement, a party must
19 meet and confer and allow sufficient time for the parties to discuss and explore informal
20 resolution of their differences <u>before any motion to compel is filed.</u> *Obregon v. Superior Court*,
21 67 Cal.App.4th 424, 428 (1998); Local Rule 37-1(a).

---

23 [2] For example, Plaintiff seeks to compel: documents that identify those African-American conductors who applied for promotion to Engineer within the Pacific Division from 1998 to the
24 present (RFP No. 22); documents that list the races of Conductors who quit or were fired within the Pacific Division from 1998 to the present (RFP No. 23); documents that show the total
25 number of African-American Engineers hired within the Pacific Division from 1998 to the present (RFP No. 24); documents that list the total number of Engineers hired within the Pacific
26 Division from 1998 to the present (RFP No. 25); documents that list the total number of Conductors employed within the Pacific Division from 1998 to the present (RFP No. 26);
27 documents that state the total number of African-American Conductors employed within the Pacific Division from 1998 to the present (RFP No. 27); and documents that identify the total
28 number of African-American Conductors who applied for promotion to Engineer within the Pacific Division from 1998 to the present (RFP No. 28).

3

1    In this case, Plaintiff's counsel waited more than three weeks after Amtrak served its responses to contact defense counsel in a so-called effort to "meet and confer." (Ching-Senaha Suppl. Decl. and Exh. A thereto) In her March 30th letter, Plaintiff's counsel demanded that defense counsel respond and supplement Amtrak's responses within three business days. (Id.) Plaintiff's demand was per se unreasonable because Amtrak had so little time to consider Plaintiff's positions, few of which were explained in any detail. *Obregon v. Superior Court*, 67 Cal.App.4th 424, 428 (1998).

Meeting and conferring in good faith is a mandatory prerequisite to bringing any motion to compel. The unreasonableness of Plaintiff's counsel's position was compounded by the fact that Plaintiff's counsel *knew* that defense counsel was working on Defendants' motions for summary judgment and was fully dedicated to completing the motions by April 3rd. (Ching-Senaha Suppl. Decl.)

### B. Plaintiff's Representations Are In Fact Misrepresentations

Plaintiff omits the fact that over the course of litigation, Amtrak has produced over 12,000 bate-stamped pages of documents, nearly 10,000 pages of which included <u>all of the applications Amtrak received for every Engineer position for which Plaintiff contends he applied,</u> including positions for which Amtrak's records show, and Plaintiff's admissions prove, Plaintiff never applied. Included in Amtrak's production were applications submitted by: Jason Garmon, Michael Poirier, K. Marty, and F.J. Caron, and associated documents relating to their applications. (*Supplemental* Declaration of Cara Ching-Senaha ("Ching-Senaha Suppl. Decl.")) It is unknown why Plaintiff's counsel cannot locate these documents, all of which Amtrak produced in August of last year. However, counsel's statement that these records were missing from Amtrak's production is mistaken. (Id.)

These records also contain other documentation that Amtrak considered for every applicant who applied. (Id.)

In addition, defense counsel noted the fact that these documents were produced in Amtrak's responses, which state in relevant part: "Notwithstanding Amtrak's objections above, Amtrak previously produced applications and related records that it received in response to the

jobs/vacancies to which Plaintiff contends he applied. <u>To the extent Jason Garmon applied for any such position, his application and supporting documentation were produced</u>." Corresponding responses were made for Poirier, Mary and Caron. Cara Ching-Senaha Suppl. Decl.

Plaintiff alleges at pg. 3:17-18 of his motion that applicants with less seniority were chosen over him. However, it is undisputed that seniority is irrelevant to any application for hire or promotion to Engineer. (Deposition of John Campbell ("Pl. Depo.), 202:11—203:10; attached to the Declaration of Cara Ching-Senaha, filed on April 10th in support of Amtrak's opposition to Plaintiff's second motion to compel, scheduled to be heard at the same as this motion)

Equally flawed is Plaintiff's counsel's uninformed statement that derailments are "far less serious offense[s]" than that for which Plaintiff was fired. *See Pltf's MPA at 7:25-28.* Plaintiff pled guilty or was convicted of causing two derailments (in 2000 and again, in 2002). The third safety violation that led to Plaintiff's discharge took place on July 24, 2004 when he improperly disabled the brakes on a locomotive, which subsequently began rolling away on its own volition after a hard coupling. As a result, Amtrak charged Plaintiff with five rules violations of the General Code of Operating Rules, Service Standards for Train Service Employees, and AMT-3, Amtrak Air Brake and Train Handling Rules and Instructions. (Declaration of Steve Shelton ("Shelton Decl."), ¶¶ 8 and 10, Ex. C, included with the Ching-Senaha Decl. filed 4/10/2007) Thereafter, hearing officer Patrick Gallagher issued a Decision which stated in pertinent part that it was "evident on the record by the testimony of the Corporation's witnesses and your own testimony that you clearly violated the rules and instructions regarding the movement and coupling of cars and engines." Gallagher found Plaintiff guilty of four charges and, as a result, Steve Shelton, Amtrak's District Superintendent in the Pacific Division, rightly concluded that in light of the current violations and Plaintiff's prior discipline record, the just and necessary action was to terminate Plaintiff's employment. (Shelton Dec., ¶¶ 1 and 11 and Ex. D thereto; Pl. Depo., 154:17—155:4 and Pl. Depo. Exh. 19, attached to the Ching-Senaha Decl. filed 4/10/2007.)

C.  **Even if Plaintiff Had Met and Conferred in Good Faith, the Requests Should Be Denied.**

    1.  **Plaintiff Does Not Allege Disparate Impact Discrimination; Therefore, Disparate Impact Discovery Is Not Appropriate**

There are two basic theories to proving intentional discrimination in employment. The first (and most common) is a disparate treatment theory, whereby a plaintiff alleges that his or her employer intentionally discriminated against him or her because of a protected characteristic. In doing so, the plaintiff bears the burden of proving discriminatory intent.

The second theory of proving discrimination is known as "disparate impact," which does not require proof of an intent to discriminate, but is based on a showing that an employer's neutral employment practice has a statistically-significant adverse impact on particular members of a protected class (without similarly adversely affecting other protected groups) for which no legitimate business reason can be articulated or for which there exists no overriding legitimate business purpose for the necessary and safe or efficient operation of the business. Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 645-646, 109 S.Ct. 2115, 2118-19 (1989).

In his First Amended Complaint, Plaintiff refers only to his own failed promotion attempts and his discharge. (He falsely alleges that Amtrak has hired nor promoted not one African-American to Engineer since 1998, an allegation that is demonstrably and undisputedly false. Ching-Senaha Suppl. Decl.) Plaintiff does not allege a disparate impact theory of discrimination which must be specifically pled in the operative complaint. Therefore, disparate impact discovery is neither appropriate nor relevant in this case.

    2.  **All of The Documents That Plaintiff Seeks Are Relevant to Expert Witness Discovery Only, Which Plaintiff Has Elected Not to Pursue**

Under a disparate impact theory of proof, the plaintiff has the burden of proving that a specific employment policy or practice disparately impacts a protected group, in this case, African Americans. In offering such evidence, the Court focuses on the "racial composition of the [at-issue jobs] and the racial composition of the qualified ... population in the relevant labor market," or "the otherwise-qualified applicants for at-issue jobs." Wards Cove Packing Co., Inc.

1  v. Atonio, 490 U.S. 642, 650-51, 109 S.Ct. 2115, 2121 (1989); Dothard v. Rawlinson, 433 U.S.
2  321 (1977).

3      In Wards Cove Packing Co., Inc. v. Atonio (1989) 490 U.S. 642, 650-51, 109 S.Ct. 2115,
4  2121, the United States Supreme Court rejected a plaintiff's attempt to establish a prima facie
5  case of disparate impact through statistics merely showing a low percentage of African American
6  employees versus Caucasian employees in the at-issue job:

> The Court of Appeals' theory, at the very least, would mean that any employer who had a segment of his work force that was— for some reason— racially imbalanced, could be haled into court and forced to engage in the expensive and time-consuming task of defending the 'business necessity' of the methods used to select the other members of his work force. The only practicable option for many employers would be to adopt racial quotas, insuring that no portion of their work forces deviated in a racial composition from the other portions thereof; this is a result that Congress expressly rejected in drafting Title VII.

Id., 409 U.S. at 652, 109 S.Ct. at 2115.

    The Court further stated that even a statistically significant showing of under representation is still insufficient to establish a prima facie case, absent a showing of causation:

> [E]ven if . . . respondents can show that nonwhites are underrepresented in the at-issue jobs in a manner that is acceptable under the standards set forth in Part II, supra , this alone will not sufficient to make out a prima facie case of disparate impact . Respondents will also have to demonstrate that the disparity they complain of is the result of one or more of the employment practices that they are attacking here, specifically showing that each challenged practice has a <u>significantly disparate impact</u> on employment opportunities for whites and nonwhites.

Id., 409 U.S. at 657, 109 S.Ct. at 2125 (emphasis added).

    Statistical evidence to support a disparate impact claim can only be introduced through competent, admissible expert testimony.

    Therefore, *assuming arguendo*, Plaintiff had alleged a disparate impact theory of discrimination in his First Amended Complaint, the time to designate any statistical experts has passed. (The parties continued until no later than March 30th the date by which the parties must designate expert witnesses. Plaintiff has not designated any expert witnesses. (Ching-Senaha Suppl. Decl.)

### 3. Moreover, Amtrak Already Provided The Information In Interrogatory Responses and Prior Document Productions

In August 2006, Amtrak produced all applications and related records that it received in response to each of the jobs/vacancies for which Plaintiff contends he applied. Therefore, Plaintiff already has every application that Amtrak received for every Engineer positions at issue, including applicant names, job history and experience, and other identifying information.

As for applications that Plaintiff never made, Amtrak produced on March 7th interrogatory responses that detail virtually all of information that Plaintiff now seeks through this motion to compel. For example, in response to Plaintiff's INTERROGATORY NO. 7 (not at issue in this motion), Plaintiff asked Amtrak to state the total number of engineers hired in the Pacific Division by year between January 1998 to the present, to which Amtrak responded: "1999 (first year for which the requested information is available): 16; 2000: 22; 2001: 10; 2002: 7; 2003: 6; 2004 (last year for which the requested information is available): 16." Ching-Senaha Suppl. Decl.

### 4. The Requests Are Overbroad in Time and Scope, And Involve Fundamental Rights to Privacy

Plaintiff's motion essentially boils down to documents requests on every hire of every Conductor and Engineer over a nine-year for Amtrak's entire Pacific Division (which includes San Jose, Sacramento, and numerous other locations through the Pacific Northwest, extending as far South as San Luis Obispo, as far West as Grand Junction, Colorado and as far Northeast as Minot, North Dakota) -- locations at which Plaintiff never worked and he admits he never wanted to work), including but not limited to applications, resumes, and offer letters – all of which have absolutely nothing to do with the allegations in the First Amended Complaint and are confidential records protected by the California and United States constitutional rights of privacy. Thus, these requests are not only unduly burdensome and oppressive, they are also overbroad in scope and constitutionally protected.[3]

---

[3] California state and federal courts have recognized that employment records and personnel files fall within the constitutionally protected right to privacy. *Board of Trustees of Leland Stanford Junior University v. Superior Court*, 119 Cal.App.3d 516 (1981) (personnel records subject to Constitutional right of privacy); *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 657 (1975) (A party to an action may assert the privacy rights of third parties such as

8

Moreover, Plaintiff inappropriately attempts to discover this information for the last nine years even though Joe Deely, the Superintendent of the Pacific Division, had no say in hiring and promotions at any time and did not oversee the Pacific Division prior to November 2002. *See e.g.* Follis Decl., Shelton Decl. and Deely Decl. Plaintiff contends that Deely influenced everg hire and promotion; however, Deely did not arrive to the Pacific Division until late 2002. (Ching-Senaha Suppl. Decl.) Therefore, Plaintiff's attempt to discover information prior to November 2002 is improper.

### 5. Discovery Relating to Conductors Of Any Race Is Irrelevant

The rate at which Amtrak hired, promoted and fired *Conductors* and African-American *Conductors* within the Pacific Division is irrelevant because Plaintiff does not allege that Amtrak failed to hire and promote *Conductors*. The issue in this litigation is whether Amtrak singled Plaintiff out because of his race when it failed to promote him to *Engineer* and when it terminated his employment. (Amtrak promoted Plaintiff at least twice during his employment.) Therefore, Plaintiff's motion to compel Requests 22, 23, 26, 27 and 28 (relating to Conductors) should be denied.

For all of these reasons, Plaintiff's document requests should be denied, or at the very least, narrowly tailored to the issues and evidence in this case.

//
//
//
//
//
//
//
//

---

its employees); *Harding Lawson Assoc. v. Superior Court*, 10 Cal.App.4th 7, 10 (1992); *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 517 (7th Cir. D. Minn. 1997) (recognizing the privacy rights of third-parties to avoid the disclosure of their personal information). In this case, these privacy rights apply to non-parties who are not involved in the litigation.

9

## III. CONCLUSION

For all of the foregoing responses, Defendant respectfully requests this Court to deny Plaintiff's motion to compel further responses to his Third Request for Production of Documents.

Respectfully submitted,

Date: April 17, 2007

JACKSON LEWIS LLP

By: /s/ Cara Ching-Senaha
Kathleen Maylin
Cara Ching-Senaha
Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION and JOE DEELY

H:\N\National Railroad Passenger Corp (40707)\Campbell (89560)\Pleadings\Pltf 3d motion to compel (re Amtrak resp to 3rd RFP)\Op to MTC docs to be heard 050807 CMC041107.doc