PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
PRICE AND ASSOCIATES
The Latham Square Building
1611 Telegraph Avenue, Suite 1450
Oakland, CA 94612
Telephone: (510) 452-0292
Facsimile: (510) 452-5625

Attorneys for Plaintiff
JOHN E. CAMPBELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL PASSENGER RAILROAD CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive, <br><br> Defendants. | NO. C05-5434 MJJ (EDL) <br><br> **DECLARATION OF RICHARD BARNES IN OPPOSITION TO DEFENDANTS' JOSEPH DEELY AND NATIONAL RAILROAD PASSENGER CORPORATION'S MOTIONS FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> DATE: May 22, 2007 <br> TIME: 9:30 a.m. <br> DEPT: CTRM. 11, 19th Floor <br><br> HONORABLE MARTIN J. JENKINS <br><br> DISCOVERY CUT-OFF: March 23, 2007 <br><br> TRIAL DATE: July 23, 2007 |

I, RICHARD BARNES, declare:

1. I am an employee of the National Passenger Railroad Corporation dba Amtrak. I have been employed by Amtrak since July 1992. My current job title and classification is Engineer. I make this declaration on personal knowledge in opposition to Defendants' Motion for Summary Judgment.

1  2.  Since 1993, I have also served as the Local Chairman for the BLET ("Brotherhood of Locomotive Engineers and Trainmen"), Division 144. My jurisdiction runs from San Luis Obispo in the South to Klamath Falls, Oregon in the North and east to Reno, Nevada. I represent members who operate trains throughout the Capital Corridor, San Joaquin Valley trains between Oakland, Sacramento and Bakersfield, California Zephyr between Oakland and Reno, and the Coast Starlight between San Jose and Klamath Falls. My duties include representation of approximately 115 members of the BLET in a variety of matters, including primarily but not only disciplinary matters.

3.  In September 2004, I was very familiar with Mr. Shelton at that time. We first met and worked together in approximately 1992 or 1993. I worked with him as a second engineer for almost two (2) years on the railway lines running between Oakland and Klamath Falls, Oregon. We worked together very well during that time and became close friends. Following that, he served as one of my local vice chairmen for approximately three (3) years.

4.  When Mr. Shelton became an Amtrak manager in November 2000, we began a different relationship whereby we were both assigned to process engineer decertifications. I represented the union in those matters while Mr. Shelton represented management. Subsequently, when Mr. Shelton was promoted to the position of Assistant Superintendent, we interacted regularly regarding the discipline of our union members for various rule violations.

5.  On September 28, 2004, I met with Steve Shelton to discuss several railroad-related issues. During the course of that conversation, we had a discussion about the recent termination of John Earl Campbell, the Plaintiff herein. Chad Skinner, my local vice chairman, was also present during this discussion.

6.  During our discussion, Steve Shelton told me that if he had known that Mr. Campbell was a member of our union, he would not have terminated him. Mr. Shelton told Mr. Skinner and I that it was not his decision to fire Mr. Campbell. He said that "it came from back east and Joe Deely." Steve Shelton told us that he told them that what Mr. Campbell had done was not a terminating offense and that he knew that Mr. Campbell would be reinstated with back pay. Mr. Shelton told us that Joe Deely told him "just to do as he is told."

7. During our conversation, Mr. Shelton was able to recall that John Campbell had applied for engine service before. Mr. Skinner and I described to Mr. Shelton what a great worker Mr. Campbell had been, both in the Oakland Yard and in the San Francisco Yard. I pointed out that Mr. Campbell had done such an exemplary job in San Francisco working on the PCS that he was made a quasi-official. Based on my experience, in my opinion, John Campbell was one of the best people working in the coach yard at that time. During our conversation after hearing our opinions, Mr. Shelton said to us that he was sure that Mr. Campbell would be reinstated to his position.

8. I have reviewed the e-mail sent by Chad Skinner to John Campbell on Wednesday, September 29, 2004. It accurately reflects our conversation with Steve Shelton and the statements he made to us on Tuesday, September 28, 2004.

9. In my experience as an Engineer, splitting switches in the yard happens every day. It is normally considered a minor violation, especially when it happens in the Yard because Yard work involves constant switching and more than one person handles the switches. I am aware of numerous occasions where employees have split switches without being disciplined. In my experience, discipline is imposed arbitrarily according to how the management officials feel about an individual.

10. Cutting out trucks is also a common occurrence in the Yard. Often, when an engine is sitting over the pit, there is no way to safely couple the hoses without cutting the trucks. I used to work in the Yard and my crew and other crews would cut the trucks out every day. It was not unusual to cut the trucks out on the engine to expedite the move.

11. Since 1993, in my capacity as union representative, I regularly met with Joe Deely or Steve Shelton informally, during one-on-one meetings to discuss, among other issues, disciplinary matters. In the course of my dealings with Amtrak's managers, I have been told that every and any disciplinary decision or personnel issue must be approved by Joe Deely or Steve Shelton. It is my impression that Defendant Deely micro-manages all of his subordinates.

12. Since 1993, I have observed that people of color and women are frequently treated more harshly and/or in a derogatory manner in disciplinary proceedings. Currently, my division only includes three (3) African-American engineers. Our union has supported Mr.

Campbell's application for engine service every time that he applied for the position. We felt that Mr. Campbell's excellent service record with Amtrak had earned him an opportunity to train for the engineer position.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. If called as a witness, I could and would testify to the foregoing based upon my personal knowledge. Executed on April 30, 2007, at Sacramento, California.

*/s/ Richard E. Barnes*
RICHARD BARNES

---

1143P207PYP

-4-
DECLARATION OF RICHARD BARNES (C05-5434 MJJ (EDL)