PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
PRICE AND ASSOCIATES
The Latham Square Building
1611 Telegraph Avenue, Suite 1450
Oakland, CA 94612
Telephone: (510) 452-0292
Facsimile: (510) 452-5625

Attorneys for Plaintiff
JOHN E. CAMPBELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL,<br><br>        Plaintiff,<br><br>v.<br><br>NATIONAL PASSENGER RAILROAD CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive,<br><br>        Defendants. | NO. C05-5434 MJJ (EDL)<br><br>**DECLARATION OF JOHN EARL CAMPBELL IN OPPOSITION TO DEFENDANTS JOSEPH DEELY AND NATIONAL RAILROAD PASSENGER CORPORATION'S MOTIONS FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>DATE:        May 22, 2007<br>TIME:        9:30 a.m.<br>DEPT:        CTRM. 11, 19th Floor<br><br>HONORABLE MARTIN J. JENKINS<br><br>DISCOVERY CUT-OFF:        March 23, 2007<br><br>TRIAL DATE:        July 23, 2007 |

I, JOHN EARL CAMPBELL, declare:

1.      I am a resident of the state of California, and the Plaintiff in the above-entitled action.   I graduated from Oakland High School in 1980.   I attended Merritt College from September 1980 to June 1981.   I make this declaration on personal knowledge in opposition to Defendants' Motion for Summary Judgment.

2.    On May 10, 1984, I was hired as a Track Laborer by Southern Pacific Railroad. In late 1985, I became a Machine Operator. Prior to my promotion to Machine Operator, I passed the necessary qualification tests and received the appropriate certifications to operate Back hoes, inloaders and tampers. I held that position until February 1992 when I left Southern Pacific.

3.    I began my career with AMTRAK on September 29, 1998. From my date of hire to September 1999, I worked as an Assistant Conductor at the Oakland Crew Base. As Assistant Conductor, I was responsible for the safe operations of my assigned train, helping passengers on and off the train, and taking tickets.

4.    For approximately a year, I worked as an Assistant Yard Conductor at the Oakland Crew Base. I bid into that position based on my seniority in the union - this was not a promotion. I did not submit any type of application and I was not interviewed for this position. More importantly, I did not receive a pay raise. I took a pay cut to work in the Oakland Yard as an Assistant Conductor. I loved my job and during a period of time when Amtrak was extremely short-staffed, I worked twenty-eight (28) days straight.

5.    From 2000 up until my termination in August 2004, except for a one year stint in San Francisco, I worked as the Yard Conductor for the Oakland Yard. Again, I bid into that position based on my seniority in the union - this was not a promotion. I did not submit any type of application and I was not interviewed for this position. I obtained the position based solely on my union seniority.

6.    In late 2002, I bid on and received the position of Work Train Conductor to work on a nine-month project called the Baby Bullet Project at the San Francisco Crew Base. This project was intended to bring high speed passenger train service to the Bay Area. It was a $200,000,000 project which involved upgrading the tracks with new ties and new rails. I was in charge of delivering equipment to the various locations in the Yard. The project was successfully completed in early 2004. At that time, I returned to the Oakland Crew Base in my capacity as Yard Conductor.

7.    During my tenure in San Francisco working on the Baby Bullet Project, I received numerous accolades, encouragement and appreciation from the front line supervisors. In

1 late 2003, sometime between October and December, I was "bumped" by another conductor with

2 more seniority. My supervisors placed me in a "quasi-official" or unofficial supervisor's position in

3 order to keep me working on the project until it was completed.

4         8.     As the Yard Conductor, I acted as the foreman for the crew on duty during my

5 shift. During any given shift, I supervised a crew of two, including an Assistant Conductor and an

6 Engineer. The physical area that was subject to my authority included all tracks in the Oakland

7 Crew Base, which was made up of nine (9) tracks. I was in charge of all of the moves involving a

8 train's make-up or break-up that occurred inside the Oakland Crew Base's yard. It was my

9 responsibility to oversee the crew to make sure they performed all of the duties on the Mechanical

10 Foreman's switch list. These duties included turning and switching out trains—taking out bad cars

11 and putting in good ones—and all preventative maintenance, which includes fumigating cars and

12 taking engines to the diesel shops.

13         9.     During my employment with Amtrak as a Conductor, I did not receive written

14 performance evaluations or reviews. I am aware that I was subjected to numerous proficiency tests

15 to see if I was in compliance with the rules, knew the rules or was operating safely. A proficiency

16 test is conducted when supervisors secretly observe your performance. I am aware of at least two

17 (2) proficiency tests in Oakland, and eleven (11) which were conducted in the San Francisco Yard.

18 To the best of my knowledge, I never failed a proficiency test.

19         10.     On March 24, 2000, I was involved in an incident on the Yard where we

20 accidentally pulled some cables apart. The description of this incident on pp. 116-117 of my

21 deposition is different from the incident described on pp. 113-114 of my deposition. The incident in

22 March 2000 did not involve the derailment of a box car as suggested by Ms. Maylin. In her

23 questions, Ms. Maylin actually mixed the details from three (3) different incidents into one incident.

24 I was not involved in any derailment in March 2000. I correctly described this incident in my

25 deposition at pp. 121:8-123:11. (True and correct copies of pp. 121-123 of my deposition transcript

26 are attached hereto as Exhibit A.)

27         11.     The March 2000 incident involved five (5) passenger cars; Liz Ohlman was the

28 Engineer. I was never told that the recommended decision for this incident was my termination. I

-3-
DECLARATION OF JOHN EARL CAMPBELL (C05-5434 MJJ (EDL))

1  also do not recall ever actually receiving a Letter of Reprimand.  Other than the statement at the end

2  of Exhibit 13, I have no reason to believe that a Letter of Reprimand was in my personnel file when

3  I applied for promotion to Engineer eighteen (18) months later in August 2001.

4         12.     Almost two years later in January 2002, I was involved in an incident where a

5  boxcar derailed.  In that incident, Bill Birkett was the Engineer.  He ignored my instructions and

6  pushed the boxcar off the tracks.  Mr. Birkett was not charged with any type of disciplinary action

7  as a result of the incident.  Two months later, Mr. Birkett derailed two (2) passenger cars with a

8  hard joint   Following that incident, he was banned from the Yard and disqualified as an Engineer

9  Instructor.

10         13.     Shortly after this derail, I had a conversation with Rich Barnes, a union

11  representative acting on my behalf, and my two supervisors, Gregg Baxter and Sid Birkett, about the

12  boxcar derailment incident.  After I described the events leading up to the derailment, Messrs.

13  Baxter and Birkett agreed that it was the engineer's fault for not stopping the train in time.  During

14  the conversation, Mr. Baxter said that he noticed I had applied for engine service.  He suggested that

15  he would get me in the next engineer's class coming up if I took responsibility for the incident.  Mr.

16  Baxter said, "We'll try to see what we can do in the next class."  Because I believed Mr. Baxter was

17  going to get me into the next engineer's class, I agreed to take blame for the incident.

18         14.     I did not receive a twenty (20) days suspension as a result of the boxcar

19  derailment in January 2002.  The suspension imposed was supposed to be for ten (10) days.  I

20  served four days, including two days of my regular days off, and was called back to work because

21  they were short-handed.  I did not ever actually serve the remaining six (6) days of the suspension.  I

22  also did not have another rules violation charge until July 2004.

23         15.     In 2002, I switched my union membership from the United Transportation Union

24  (UTU) to the BLET (Brotherhood of Locomotive Engineers & Trainmen).

25         16.     On July 24, 2004, I was involved in an incident where my assistant conductor

26  and engineer had a mis-communication resulting in a hard coupling.  AMTRAK claims that my

27  actions in cutting out the air brakes were grounds for my termination.  Up to that time, however,

28  cutting out the air brakes are a common practice on the Yard.  Other Yard conductors who cut the

1    trucks out on a daily basis included Ray Clarke, Kevin Mayberry, Tim Sheridan, Cynthia Hubbard,

2    and Don Majers.

3        17.    In the July 2004 incident, there was no damage to any equipment and no injury to

4    any personnel.  The engine which rolled moved about twenty (20) feet at the speed of approximately

5    1 mile an hour on a dead end track.  That part of the yard was completely flat and the engine did not

6    present a physical danger to anyone on the Yard.  There were no crews or persons anywhere in the

7    vicinity at that time.  Aside from the disruption in the relationship between the engineer and the

8    Assistant Conductor, our work that night was not impacted.

9        18.    On the night of the incident, I was not questioned or made aware in any way that

10   evening that I would be charged with a rule violation for this incident.  In fact, the Assistant

11   Conductor, Anthony Gillard, admitted to everyone present that the incident was caused by his error

12   and apologized to me and the engineer, Richard Barrow.  Mr. Gillard totally accepted responsibility

13   for the incident.  Mr. Gillard is Caucasian.

14       19.    I have reviewed the Declaration of Paul Ho and his notes attached thereto.  I was

15   never charged with the rule violation listed in Paul Ho's notes.  I was never counseled or warned not

16   to move trains on the Yard by anyone.

17       20.    During my employment, I interacted with Defendant Deely in a variety of

18   circumstances.  At a safety meeting, Lou Bellotti, then the Assistant Superintendent, introduced me

19   and my crew members by name to Defendant Deely.  I spoke to Defendant Deely on that occasion

20   and I don't recall if he spoke back to me.  I was standing in front of him facing him within 5 feet.

21   After that introduction, while serving as the Yard Conductor, I called Defendant Deely on the

22   telephone and left messages for him on multiple occasions.

23       21.    Since 1998, I have repeatedly been passed over for promotion to Engineer.

24   During my tenure with AMTRAK, I watched as people I trained when they were Assistant

25   Conductors under me were selected and promoted to Engineer service.  They include Josh Kyles,

26   Brian Willson, Ken Powell, Jason Garman, Mike Poirier, Brice Carroll, Mike Yacovetti, Heidi

27   Snyder, and Frank Caron.

28       22.    Since October 1998, based upon my review of the seniority roster, I counted

-5-

1    thirty-four (34) individuals whom AMTRAK has hired internally for engineer positions in the Bay

2    Area.  Of those individuals, all of them are Caucasian except for Mr. Brice, who is multi-racial, and

3    Mr. Ly, who is Vietnamese.  (A true and correct copy of the seniority roster for engineers as of

4    January 2006 is attached hereto as Exhibit B.)

5         23.    I have a burning desire to be a Locomotive Engineer.  In the early years of my

6    quest to become a Locomotive Engineer, I was only interested in local positions in Oakland because

7    my mother was sick and I was her primary caretaker.  My Mom passed away in November 2002.

8    After that time, whenever I applied to engineer positions, my application was for any position in or

9    around the Bay Area, including San Jose and Sacramento.

10        24.    In October 1998, I applied for a train engineer position based on the

11   recommendations of my supervisor, Mark Carl Schulties.  I filled-out the application and returned it

12   to Mr. Schulties.  Mr. Schulties later informed me that his boss, Mr. Oughton, tore up the

13   application.  The reason Mr. Schulties gave me for Mr. Oughton tearing up my application was

14   because Mr. Oughton wanted me to work for AMTRAK for one full year prior to becoming an

15   engineer.  Nonetheless, I applied again in 1999 because Mr. Shulties told me that the one-year rule

16   was not uniformly applied.  My application was rejected again.

17        25.    In 2000, I applied for a departmental transfer in response to an AMTRAK job

18   posting in engine service.  According to AMTRAK procedure, I mailed and faxed a Transfer of

19   Departments Application to AMTRAK's Human Resources Department in Los Angeles.  I received

20   a standard rejection letter in response. In 2000, five (5) white guys got promoted in the Oakland

21   crew base.  All of them had less seniority than me.

22        26.    On August 14, 2001, I applied for four (4) engineer positions that became

23   available in Oakland, including the Locomotive Engineer Trainee position.  According to

24   AMTRAK procedure, I mailed and faxed my application to AMTRAK's human resources

25   department in Los Angeles.  On August 23, 2001, Amtrak sent me a letter confirming receipt of my

26   applications.  Sometime thereafter, I interviewed for the Locomotive Engineer Trainee position.  I

27   interviewed with Richard Barnes, a Caucasian union representative and two Caucasian AMTRAK

28   engineers, Steve Shelton and Richard Edson. On January 25, 2002, I was informed that I had been

1  passed over for the position.  The positions were all filled with five (5) Caucasian males.  Of those

2  who were promoted, I trained Chad Skinner, Ken Powell and Robert Ward.

3           27.     Sometime in 2002, I applied and was interviewed for an Engineer position.  I

4  interviewed for that position the same week as Frank Caron.  I was with Frank Caron the night that

5  he was notified that he had been promoted to engineer.  At the time, he was working for me as my

6  Assistant Conductor on the Baby Bullet Project.  Mr. Caron was hired shortly after I was hired.

7           28.     In April 2003, I again applied for a train engineer position.  According to

8  AMTRAK procedure, I faxed and mailed an AMTRAK  Job Opportunity Application and  my

9  résumé to AMTRAK's Human Resources department in Los Angeles.  Each time I applied for

10  engine service, I used the same AMTRAK Job Opportunity Application form and followed the

11  same procedure, i.e., faxing and mailing.  A sample of my annual submissions is attached as Exhibit

12  D to the Declaration of Paul Ho.  My 2003 AMTRAK Job Opportunity Application clearly stated

13  that I was a current Amtrak employee.  Only my résumé did not clearly indicate that I was an

14  Amtrak employee.  I was never notified that I had been disqualified from the interview process

15  because of my resume.  I believe that I was simply not scheduled for an interview.

16           29.     Sometime during my assignment on the Baby Bullet project in 2003, I was

17  interviewed for an engineer position by Mark Collins, a supervisor, in San Jose.  At that time, I

18  made it clear to management that I was interested in working outside of the Oakland Crew Base.

19           30.     In May 2004, I again applied for an engineer position.  According to AMTRAK

20  procedure, I faxed and mailed an AMTRAK Job Opportunity Application along with my résumé to

21  AMTRAK's Human Resources department in Los Angeles.  Subsequently, AMTRAK's Human

22  Resources department contacted me to schedule an interview.

23           31.     On July 7, 2004, I interviewed with Chad Skinner, Larry Follis, and Susan

24  Venturelli.  During the interview, I described my experience as a Machine Operator with Southern

25  Pacific.  I recall telling Mr. Follis that I had taken and passed the required tests to operate the

26  various machines.  He did not ask if I had the certifications (which I do) and did not mention any

27  concerns to me about my duties at Southern Pacific.

28           32.     Within days after the interview, Mr. Skinner called me on the radio while I was

1   working in the Yard and said, "You finally made it," in reference to the engineer position.

2   Approximately two weeks later, I received a rejection letter from AMTRAK in the mail informing

3   me that I did not get the position.

4           33.     It is my understanding that in 2004, Amtrak promoted Brice Carroll, John

5   Hanson and Patrick Duncan for Engineer training for Oakland. I worked with both Messrs. Carroll

6   and Duncan. I trained Brice Carroll for two (2) months to be an Assistant Work Train Conductor.

7   In my deposition at pp. 55:24-56:3, I identified Brice Carroll as "Brice Howard" which is a name

8   that I have known him by when I worked with him.

9           34.     I worked with Patrick Duncan for two years, during which time he was a

10  mechanical foreman. He would make common mistakes in repairing cars such as putting wrong

11  parts on passenger cars. I didn't know Mr. Hanson. I also do not believe that Moyse Howard

12  worked less time than me and was promoted to Engineer and I did not testify to any such fact.

13          35.     On April 1, 2004, I sent an e-mail to Susan Venturelli in AMTRAK's human

14  resources department. In the e-mail, I complained about AMTRAK's racially discriminatory hiring

15  practices and AMTRAK's disparate treatment of African-Americans. I complained that AMTRAK

16  had passed me over five (5) times for promotion to an AMTRAK engineer position despite my

17  excellent service record because I was African-American. I also complained that AMTRAK had

18  not promoted a single African-American to engine service from 1998 to April 2004, the date that I

19  wrote and sent the e-mail. (A true and correct copy of my e-mail sent to Susan Venturelli on

20  April 1, 2004, is attached hereto as Exhibit 10.)

21          36.     Sometime in April 2004, I received a phone call from Rickie Donofrio,

22  AMTRAK's Dispute Resolution Case Intake Coordinator, concerning the e-mail complaint. In that

23  phone conversation, I verbally restated my complaint concerning AMTRAK's racially

24  discriminatory employment practices.

25          37.     On April 10, 2004, I left a voice mail message for Ms. Donofrio to inform her

26  that I had filed a complaint about AMTRAK's racially discriminatory employment practices with

27  the California Department of Fair Employment & Housing ("DFEH") and the U.S. Equal

28  Employment Opportunity Commission ("EEOC"). In the message, I also expressed to Ms.

-8-

1    Donofrio that I had filed the complaint because I was dissatisfied with AMTRAK's lack of response

2    to my internal complaints.

3          38.    On April 21, 2004, AMTRAK sent me a letter informing me that the Dispute

4    Resolution Office (DRO) of AMTRAK's Business Delivery Department had received a copy of my

5    e-mail complaint about AMTRAK's racially discriminatory employment practices but that it would

6    not be investigating my complaint.  The letter stated that the "DRO will not be looking into your

7    concerns" because I took my "concerns to the EEOC."  The letter further stated that AMTRAK was

8    taking this position despite the fact that "the DRO is responsible for addressing and resolving

9    internal complaints of discrimination, harassment . . . , and unfair treatment on the basis of race,

10   color . . . or other protected group status."   Instead of a response to my complaint, Ms. Donofrio

11   sent me a letter of counseling.  (A true and correct copy of Ms. Donofrio's response is attached

12   hereto as Exhibit 9.)

13         39.    On August 6, 2004, I was formally charged with a variety of rules violations

14   arising out of the incident on July 24, 2004.  (A true and correct copy of the Notice of Investigation

15   is attached hereto as Exhibit 25A.)  On September 17, 2004, AMTRAK terminated my

16   employment.

17         40.    Within a year of my termination, on August 17, 2005, I filed a Charge of

18   Discrimination with the Department of Fair Employment and Housing for race discrimination and

19   retaliation.  In my Charge, I identified Defendant Deely as the discriminating official.  (A true and

20   correct copy of my August 2005 charge is attached hereto as Exhibit 5.)

21         41.    On November 23, 2005, I requested a copy of my personnel file from AMTRAK.

22   The documents provided to me by Barbara Hanna of AMTRAK's Human Resources office on

23   December 7, 2005 do not include any Letter of Reprimand referred to in the document marked as

24   Exhibit 13 to my deposition.  I do not actually recall ever seeing a Letter of Reprimand in

25   connection with that incident.

26         I declare under penalty of perjury under the laws of the United States that the foregoing

27   is true and correct.  If called as a witness, I could and would testify to the foregoing based upon my

28   personal knowledge.

1    Executed on May 1, 2007, at Oakland, California.

2

3

4                                    JOHN EARL CAMPBELL

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

203PYP

-10-
**DECLARATION OF JOHN EARL CAMPBELL (C05-5434 MJJ (EDL))**

*Campbell v. Amtrak*
## U. S. District Court Case No. C05-5434 MJJ (EDL)

### INDEX TO EXHIBITS TO JOHN EARL CAMPBELL DECLARATION OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| No. | Date: | Description: |
|-----|-------|--------------|
| A   | 2/26/07 | John Campbell Deposition - pp. 121-123 |
| B   | 1/06    | Seniority roster for Engineers |
| 5   | 8/17/05 | Charge of Discrimination (DFEH) |
| 9   | 4/21/04 | Ms. Donofrio's letter of counseling & response to John E. Campbell's Internal Discrimination Complaint |
| 10  | 4/1/04  | E-mail from John Campbell to Susan Venturelli |
| 25B | 8/6/04  | Notice of Formal Investigation - Case No. 386.04 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---

JOHN EARL CAMPBELL,                )
                                   )
          Plaintiff,               )
                                   )
vs.                                )     No. C05-05434 MJJ
                                   )
NATIONAL RAILROAD PASSENGER        )
CORPORATION dba AMTRAK, JOE        )
DEELY and DOES 1 through 15        )
inclusive,                         )
                                   )
          Defendants.              )
_____    )

**CERTIFIED COPY**

J|G  Jane GROSSMAN
R|S  REPORTING Services

DEPOSITION OF JOHN EARL CAMPBELL

February 26, 2007

Taken by SHARON TRUJILLO

CSR No. 6120

JANE GROSSMAN REPORTING SERVICES
1939 Harrison Street, Suite 460
Oakland, California 94612
510.444.4500

**EXHIBIT A**

DEPOSITION OF JOHN EARL CAMPBELL

1        A.    Yes.

2        Q.    Okay.  Well, sir, don't guess.  Do you

3    remember that the union appealed for you?

4        A.    Yes.                                      02:54:06

5        Q.    All right.  And do you recall that in January

6    2003, the law board upheld the suspension?

7        A.    Yes.

8        Q.    Okay.  By the way, sir, could you explain that

9    first incident that we talked about in 2000, where there   02:54:39

10    was damage, equipment was damaged, and that it wasn't

11    reported?  What actually occurred then?

12        A.    Oh, this one (indicating)?

13        Q.    Yeah.

14        A.    Okay.  The cars have electrical cables on        02:54:54

15    them, the passenger cars, and when we moved the car, the

16    electrical cable was still hooked to the ground power,

17    which is the power coming from the -- the house, you

18    know, the PG&E power, basically.  The mechanical

19    problem -- the mechanical department is supposed to       02:55:14

20    unhook that for us and then put a blue man-at-work flag

21    off.  They took the men-at-work flag off, but they

22    didn't unhook it.  So when I saw that -- the men-at-work

23    flag off, that tells me it's okay to pull, so I pulled

24    it out and the cables was still pulled (sic) and pulled    02:55:30

25    them all out.  So the mechanical half did their job, and

DEPOSITION OF JOHN EARL CAMPBELL

121

1   I got blamed for it.  Simple as that.

2        Q.   Okay.  Well -- and then you didn't report the

3   damage, right?

4        A.   I didn't know it was damaged until somebody          02:55:47

5   came and told me.

6        Q.   Okay.  Well, how did you know that the crew

7   hadn't done -- the electrical crew hadn't done their job

8   with the flag, though?

9        A.   At the end of the shift they told me the car          02:55:58

10  was damaged, after I had pulled it out and re-spotted,

11  getting ready to go home.  They said, oh, those cables

12  were pulled out.

13            I said, "What?"

14            They said, "Yeah."  They were still hooked up,        02:56:12

15  so that's how I knew.  It was like three hours later.

16       Q.   Okay.  So it was the delay in the three hours

17  of non-reporting?

18       A.   Yeah.

19            MS. PRICE:  Objection.  Vague.                        02:56:20

20            MS. MAYLIN:  Q.  When was it -- when was it

21  reported, as far as you can recall?

22       A.   They reported it to their supervisor, and then

23  they -- their supervisor told me, and I wrote up a

24  report.                                                        02:56:35

25       Q.   Okay.  As part of the yard conductor protocol,

DEPOSITION OF JOHN EARL CAMPBELL

1    though, sir, shouldn't you have gone back and checked

2    yourself, regardless of the flag?

3            MS. PRICE:  Objection.  Vague and ambiguous as

4    to the "yard conductor protocol," something;          02:56:54

5    unintelligible.

6            THE WITNESS:  That's true.

7            MS. MAYLIN:  Q.  Okay.  And after that, I bet

8    you double-checked to make sure, right?

9        A.   For the record, my A/C did the move.  I was    02:57:08

10    standing at the switch so -- but like earlier, I'm in

11    charge, so I get the blame, but I chewed him out.

12                        (Whereupon, Defendants' Exhibit No.

13                        14 was marked for identification.)

14            MS. MAYLIN:  Q.  All right.  What I've marked    02:57:18

15    now is -- I think we're back to the '02 incident.  I've

16    marked as Exhibit 14 -- well, it is -- here we go.

17    March 28, 2002.  There you go -- a letter addressed to

18    you, Mr. Campbell, where it details the charges that

19    we've already talked about on the record here.  And the  02:58:00

20    bottom line is that a boxcar became derailed.  You

21    received this letter, sir?

22        A.   Yes.

23        Q.   Okay.  And the hearing officer of the Western

24    Region, Roger Butler, found you guilty of the charges,   02:58:18

25    correct?

DEPOSITION OF JOHN EARL CAMPBELL

1                    CERTIFICATE OF REPORTER

2

3        I, SHARON TRUJILLO, a Certified Shorthand

4    Reporter, hereby certify that the witness in the

5    foregoing deposition was by me duly sworn to tell the

6    truth, the whole truth, and nothing but the truth in the

7    within-entitled cause;

8            That said deposition was taken in shorthand by

9    me, a disinterested person, at the time and place

10   therein stated, and that the testimony of the said

11   witness was thereafter reduced to typewriting, by

12   computer, under my direction and supervision;

13           I further certify that I am not of counsel or

14   attorney for either or any of the parties to the said

15   deposition, nor in any way interested in the event of

16   this cause, and that I am not related to any of the

17   parties thereto.

18                   Dated:   March 7, 2007

19

20

21

22           SHARON TRUJILLO, CSR No. 6120

23

24

DEPOSITION OF JOHN EARL CAMPBELL

305

## 2006 Engin**rs National Roster Issue** 1-21-06

| Number | Name | Entered Service | Zone | Prior RR | Prior Rights | Original Zone | Status |
|--------|------|----------------|------|----------|--------------|---------------|--------|
| 1051 | HICKS, F. | 11/5/1999 | 9 | | | | |
| 1052 | BROWN, L. V. | 12/3/1999 | 2 | | | | |
| 1053 | FERRARO, D. | 12/3/1999 | 2 | | | | |
| 1054 | BOSAK, T. A. | 12/3/1999 | 1 | | | | |
| 1055 | TAFT, C. | 12/3/1999 | 1 | | | | |
| 1056 | COVINGTON, J. | 12/3/1999 | 1 | | | | |
| 1057 | MALONEY, M. J. | 12/3/1999 | 1 | | | | |
| 1058 | GESEK, L. | 12/3/1999 | 2 | | | | |
| 1059 | GUYTON, M. | 12/3/1999 | 2 | | | | |
| 1060 | ROHLFING, M. P. | 12/3/1999 | 2 | | | | |
| 1061 | HAIKIN, G. | 12/3/1999 | 1 | | | | |
| 1062 | SERFESS, J. T. | 12/3/1999 | 2 | | | | |
| 1063 | WESTER, D. | 12/30/1999 | CS2 | | | | |
| 1064 | SKELTON, R. | 1/31/2000 | 6 | | | | |
| 1065 | WALTERS, L. S. | 2/14/2000 | 4 | | | | |
| 1066 | LAMPRINAKOS, W. | 2/18/2000 | 5 | | | | |
| 1067 | BIEK, M. T. | 2/18/2000 | 2 | | | | |
| 1068 | CHILDROSE, D. | 2/18/2000 | 3 | | | | |
| 1069 | ROSS, M. E. | 2/18/2000 | 3 | | | | |
| 1070 | BOLK, G. L. | 2/18/2000 | 3 | | | | |
| 1071 | VITEK, L. | 2/22/2000 | 8 | | | | |
| 1072 | ROSS, P. R. | 2/22/2000 | 8 | | | MGM | |
| 1073 | DOTE, D. | 2/22/2000 | 8 | | | | |
| 1074 | PREUSSER, P. D. | 2/28/2000 | 12 | | | | |
| 1075 | BRAUCHLE, K. | 3/8/2000 | 10 | | | MGM | |
| 1076 | STANDIFER, J. | 3/10/2000 | 12 | | | | |
| 1077 | JAEGER, M. | 3/10/2000 | CS2 | | | | |
| 1078 | STRUBE, J. R. | 3/10/2000 | 7 | | | | |
| 1079 | SUTTON, W. L. | 3/10/2000 | 4 | | | | |
| 1080 | NAGRA, J. | 3/10/2000 | 9 | | | | |
| 1081 | GOOSTREE, T. F. | 3/10/2000 | CS2 | | | | |
| 1082 | MILLER, C. T. | 3/10/2000 | CS2 | | | MGM | |
| 1083 | KERN, B. | 3/10/2000 | 8 | | | | |

**EXHIBIT B**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1085 | SELTZER, B. | 4/1/2000 | 3 | CRRR | F | 2 |
| 1086 | WEISEL, C. | 4/1/2000 | 2 | CRRR | F | 2 |
| 1087 | DATHORY, R. A. | 4/1/2000 | 2 | CRRR | F | 2 |
| 1088 | DURBOROW, J. P. | 4/1/2000 | 2 | CRRR | F | 2 |
| 1089 | FREY, B. | 4/1/2000 | 2 | CRRR | F | 2 |
| 1090 | PENN, M. W. | 4/1/2000 | 2 | CRRR | F | 2 |
| 1091 | GERHARDT, O. | 4/5/2000 | 4 | | | LOA |
| 1092 | OHMAN, E. A. | 5/19/2000 | 12 | | | |
| 1093 | JOHNSON, T. P. | 5/22/2000 | 10 | | | MGM |
| 1094 | KRYNICKI, P. | 5/26/2000 | 1 | | | MGM |
| 1095 | HINKSON, B. | 5/26/2000 | 2 | | | |
| 1096 | SINGLETON, C. | 5/26/2000 | 2 | | | |
| 1097 | CONYERS, D. | 5/26/2000 | 2 | | | |
| 1098 | TROMBLAY, D. E. | 5/26/2000 | 2 | | | |
| 1099 | DABNEY, A. C. | 5/26/2000 | 3 | | | |
| 1100 | SIEGMUND, K. | 5/26/2000 | 1 | | | |

JOHN CAMPBELL VS. AMTRAN

THE NAMES WHH A CHECK BYR THEN

ARE THE PEOPLE WHH LESS SENDRHY AN/OR

EXPERIENCE THAT HAVE BEEN PROMOTED TO

ENGINE SERVICE. AND ORKLAND ONLY.

5-2-06

# 2006 Engin ers National Roster Issue ' 1-21-06

| Number | Name | Entered Service | Zone | Prior RR | Prior Rights | Original Zone | Status |
|--------|------|-----------------|------|----------|--------------|---------------|--------|
| 1151 | SLOAN, D. L. | 10/2/2000 | 2 | | | | |
| 1152 | CALLOW, W. T. | 10/27/2000 | 1 | | | | |
| 1153 | GLIBA, T. G. | 10/27/2000 | 2 | | | | |
| 1154 | CALDAS, M. V. | 10/27/2000 – | 2 | | | | |
| 1155 | ELLIS, K. M. | 10/27/2000 | 1 | | | | |
| 1156 | MAROWELLI, L. K. | 11/3/2000 | 2 | | | | |
| 1157 | WOOD, A. C. | 11/3/2000 | 5 | | | | |
| 1158 | CERVANTES, F. | 11/3/2000 | 11 | | | | MGM |
| 1159 | MCLAUCHLIN, S. L. | 11/3/2000 | 12 | | | | |
| 1160 | MILBURN, D. A. | 11/3/2000 | 9A | | | | |
| 1161 | KYLES, J. R. | 11/3/2000 | 12 | | | | |
| 1162 | SANTOS, G. B. | 11/3/2000 | 12 | | | | |
| 1163 | WILSON, B. | 11/3/2000 | 12 | | | | |
| 1164 | WATERHOUSE, J. | 1/8/2001 | 12 | | | | LOA |
| 1165 | TUNGETT, R. E. | 1/17/2001 | 9 | | | | |
| 1166 | WATTS, R. K. | 1/22/2001 | 5 | | | | |
| 1167 | LUPO, G. | 2/23/2001 | 2 | | | | |
| 1168 | DREWES, K. A. | 2/23/2001 | 1 | | | | |
| 1169 | ZEPPENFELD, R. | 2/23/2001 | 1 | | | | |
| 1170 | WELLS, T. A. | 2/23/2001 | 1 | | | | |
| 1171 | PHILLIPS, R. | 2/23/2001 | 3 | | | | |
| 1172 | SARNO, S. | 2/23/2001 | 1 | | | | |
| 1173 | MARTINEZ, N. | 2/23/2001 | 2 | | | | |
| 1174 | SIZER, B. K. | 2/23/2001 | 1 | | | | |
| 1175 | STUPKA, G. M. | 3/2/2001 | 4 | | | | |
| 1176 | HALL, S. | 3/2/2001 | 12 | | | | |
| 1177 | LECONA, S. | 3/2/2001 | 4 | | | | |
| 1178 | FERRER, M. | 3/2/2001 | 8 | | | | TRN |
| 1179 | WARD, R. | 3/2/2001 | CS2 | | | | |
| 1180 | SKINNER, C. M. | 3/2/2001 | 12 | | | | |
| 1181 | POWELL, K. | 3/2/2001 | 12 | | | | |
| 1182 | EVANS, T. | 3/2/2001 | 10 | | | | |
| 1183 | GIDDINGS, W. | 3/19/2001 | 12 | | | | |
| 1184 | LIND, B. C. | 4/1/2001 | 2 | CRRR | F | 2 | |
| 1185 | PEARSON, J. L. | 4/5/2001 | 9A | | | | |
| 1186 | LANGE, A. M. | 4/5/2001 | 9 | | | | |
| 1187 | BROWN, W. E. | 9/27/2001 | 5 | CSXR | Y | 5 | |
| 1188 | PACK, E. S. | 9/27/2001 | 5 | CSXR | Y | 5 | |
| 1189 | BABER, S. C. | 9/27/2001 | 5 | CSXR | Y | 5 | |
| 1190 | HENSLEY, T. R. | 9/27/2001 | 5 | CSXR | Y | 5 | |
| 1191 | JOHNSON, D. L. | 9/27/2001 | 5 | CSXR | Y | 5 | MGM |
| 1192 | MAWYER, J. W. | 9/27/2001 | 5 | CSXR | Y | 5 | |
| 1193 | TOLBER, T. S. | 9/27/2001 | 4 | CSXR | Y | 5 | |
| 1194 | BILL, L. G. | 10/1/2001 | 2 | CRRR | F | 2 | |
| 1195 | BABIN, W. F. | 10/15/2001 | 1 | | | CS1 | |
| 1196 | MCDOWELL, K. | 10/22/2001 | 1 | | | CS1 | |
| 1197 | WORKMAN, H. | 2/12/2002 | 5 | CSXR | Y | 5 | |
| 1198 | ONISKO, A. J. | 2/28/2002 | 12 | | | | |
| 1199 | GREGORY, W. | 4/1/2002 | 1 | CRRR | F | 1 | MGM |
| 1200 | MORECRAFT, W. T. | 4/1/2002 | 2 | | | | |

## 2006 Engin  rs National Roster Issue  1-21-06

| Number | Name | Entered Service | Zone | Prior RR | Prior Rights | Original Zone | Status |
|--------|------|-----------------|------|----------|--------------|---------------|--------|
| 1201 | CANO, C. A. | 4/12/2002 | CS2 | | | | |
| 1202 | KLITZING, D. W. | 4/12/2002 | 12 | | | | |
| 1203 | HOLLEY, D. | 4/12/2002 | CS2 | | | | |
| 1204 | HOBART, V. E. | 4/12/2002 | CS2 | | | | |
| 1205 | SINGER, M. D. | 5/31/2002 | 2 | | | | |
| 1206 | O'BRIEN, D. J. | 5/31/2002 | 1 | | | | |
| 1207 | DANNER, D. | 5/31/2002 | 2 | | | | |
| 1208 | GILLIS, D. R. | 5/31/2002 | 1 | | | | |
| 1209 | STRONG, S. | 5/31/2002 | 2 | | | | |
| 1210 | KALTENSTEIN, B. | 5/31/2002 | 2 | | | | MGM |
| 1211 | WISTUBA, V. E. | 5/31/2002 | 2 | | | | MLA |
| 1212 | DARCY, P. W. | 5/31/2002 | 1 | | | | |
| 1213 | HOWELL, B. W. | 5/31/2002 | 2 | | | | |
| 1214 | NORTHINGTON, E. B. | 7/22/2002 | 12 | | | | |
| 1215 | HANSON, K. | 7/24/2002 | 3 | | | 12 | MGM |
| 1216 | TANSEY, G. M. | 10/1/2002 | 2 | CRRR | F | 2 | |
| 1217 | LOWE, D. B. | 10/1/2002 | 1 | CRRR | F | 1 | |
| 1218 | ARTIS, W. W. | 11/4/2002 | 5 | | | | |
| 1219 | HASENBECK, C. E. | 11/18/2002 | 10 | | | | |
| 1220 | PUGH, J. D. | 11/25/2002 | 11 | | | | |
| 1221 | FRAZIER, D. | 11/25/2002 | 11 | | | | |
| 1222 | BAYLEY, M. A. | 11/26/2002 | 3 | | | | |
| 1223 | SELL, D. G. | 11/26/2002 | 12 | | | | |
| 1224 | PAGE, K. | 11/27/2002 | 1 | | | | |
| 1225 | BONCAL, K. A. | 11/27/2002 | 3 | | | | |
| 1226 | TAYLOR, R. | 11/27/2002 | 6 | | | | |
| 1227 | CUTMORE, D. B. | 12/26/2002 | 6 | | | | |
| 1228 | BOOKER, D. L. | 2/21/2003 | CS2 | | | | MLA |
| 1229 | CARON, F. J. | 2/21/2003 | CS2 | | | | |
| 1230 | ARIAS, P. H. | 2/21/2003 | CS2 | | | | |
| 1231 | JENECKE, M. C. | 2/21/2003 | CS2 | | | | |
| 1232 | HILLYGUS, P. A. | 2/21/2003 | 11 | | | | |
| 1233 | WILBUR, D. | 2/21/2003 | 11 | | | | |
| 1234 | WARD, J. W. | 2/21/2003 | CS2 | | | | |
| 1235 | HAGGERTY, P. M. | 2/21/2003 | 12 | | | | |
| 1236 | BUCHANAN, M. E. | 2/21/2003 | CS2 | | | | |
| 1237 | LACY, J. B. | 2/21/2003 | 9 | | | | |
| 1238 | GRAS, C. J. | 2/21/2003 | 9 | | | | |
| 1239 | JETER, A. | 3/17/2003 | 8 | | | 5 | |
| 1240 | SOUTHWELL, E. | 3/17/2003 | 2 | | | 5 | |
| 1241 | ANDREWS, W. R. | 5/12/2003 | 9 | | | | |
| 1242 | CLARK, T. T. | 6/27/2003 | 9 | | | | |
| 1243 | HOLLINGSWORTH, T. F | 6/27/2003 | 9 | | | | |
| 1244 | RICCIARDI, G. J. | 9/5/2003 | 3 | | | | |
| 1245 | BARRY, J. W. | 9/5/2003 | 3 | | | | |
| 1246 | BUTLER, D. E. | 9/5/2003 | 3 | | | | |
| 1247 | CATALDO, S. | 9/5/2003 | 3 | | | | |
| 1248 | FUNK, J. W. | 10/1/2003 | 2 | CRRR | F | 2 | |
| 1249 | GALLAGHER, B. P. | 10/2/2003 | 3 | | | | |
| 1250 | MARTIN, K. C. | 10/9/2003 | 2 | | | | |

## 2006 Engin ~rs National Roster Issue ~ 1-21-06

| Number | Name | Entered Service | Zone | Prior RR | Prior Rights | Original Zone | Status |
|--------|------|-----------------|------|----------|--------------|---------------|--------|
| 1251 | FOSTER, M. E. | 10/10/2003 | 2 | | | | |
| 1252 | SZENTPETERY, L. | 10/10/2003 | 2 | | | | |
| 1253 | BAXTER, J. | 10/20/2003 | 2 | | | | |
| 1254 | OSTROWSKI, S. K. | 11/18/2003 | 3 | | | | |
| 1255 | CARUSO, F. | 12/5/2003 | 2 | | | | |
| 1256 | CRUZ, C. | 12/5/2003 | 2 | | | | |
| 1257 | GORZELL, A. | 12/5/2003 | 9A | | | | |
| 1258 | HENSON, A. | 12/5/2003 | 2 | | | | |
| 1259 | PEMBERTON, K. | 12/5/2003 | 1 | | | | |
| 1260 | FROMMER, M. J. | 12/5/2003 | 2 | | | | |
| 1261 | HARTIG, D. R. | 12/5/2003 | 2 | | | | |
| 1262 | MORAN, S. | 12/5/2003 | 2 | | | | |
| 1263 | NEIL, R. | 12/5/2003 | 2 | | | | |
| 1264 | COLLIERE, P. | 12/5/2003 | 2 | | | | |
| 1265 | DAWSON, W. | 12/5/2003 | 2 | | | | |
| 1266 | BURMEISTER, P. | 12/5/2003 | 12 | | | | |
| 1267 | GREER, B. | 12/8/2003 | 12 | | | | |
| 1268 | MARTY, K. | 12/8/2003 | CS2 | | | | |
| 1269 | MEYST, S. | 12/8/2003 | 12 | | | | |
| 1270 | WILSON, C. A. | 12/10/2003 | 2 | | | | |
| 1271 | HALL, D. L. | 12/19/2003 | 5 | | | | |
| 1272 | SHOEMAKER, J. B. | 12/31/2003 | 5 | | | | |
| 1273 | HAWK, W. | 1/7/2004 | 3 | | | | |
| 1274 | HENNE, B. A. | 1/12/2004 | 2 | | | | |
| 1275 | AMARU, C. S. | 1/12/2004 | 1 | | | | |
| 1276 | GARMAN, J. | 1/12/2004 | 12 | | | | |
| 1277 | POIRIER, M. J. | 1/12/2004 | 12 | | | | |
| 1278 | EIERMAN, J. D. | 1/12/2004 | 2 | | | | |
| 1279 | MININNI, M. A. | 1/12/2004 | 3 | | | | |
| 1280 | REIDY, M. P. | 1/12/2004 | 11 | | | | |
| 1281 | RICHARDSON, C. R. | 1/12/2004 | 1 | | | | |
| 1282 | HURST, R. | 1/22/2004 | 6 | | | | |
| 1283 | PADILLA, M. | 1/26/2004 | 6 | | | | |
| 1284 | PIERGOSSI, R. | 2/9/2004 | 1 | | | | |
| 1285 | COLEMAN, R. | 2/10/2004 | 5 | | | | |
| 1286 | GRIMES, R. | 2/11/2004 | 6 | | | | |
| 1287 | ROY, A. | 2/16/2004 | 11 | | | | |
| 1288 | DENNY, B. | 2/17/2004 | 8 | | | | |
| 1289 | WILSON, F. | 2/18/2004 | 11 | | | | |
| 1290 | CHENEY, D. | 2/23/2004 | 10 | | | | |
| 1291 | LONG, J. C. | 3/20/2004 | 2 | | | | |
| 1292 | SPEARMAN, C. A. | 3/20/2004 | 2 | | | | |
| 1293 | JOHNSON, S. L. | 3/29/2004 | 9A | | | | |
| 1294 | MCENTIRE, J. P. | 5/6/2004 | 12 | | | | |
| 1295 | GOBEL, A. B. | 5/10/2004 | 12 | | | | |
| 1296 | NASSER, R. G. | 5/11/2004 | 5 | | | | |
| 1297 | SMITH, A. | 5/14/2004 | 12 | | | | |
| 1298 | TYLER, B. C. | 5/14/2004 | 4 | | | | |
| 1299 | GRAY, T. A. | 5/14/2004 | 4 | | | | |
| 1300 | WHITE, J. P. | 5/14/2004 | 8 | | | | |

## 2006 Engin rs National Roster Issue 1-21-06

| Number | Name | Entered Service | Zone | Prior RR | Prior Rights | Original Zone | Status |
|--------|------|-----------------|------|----------|--------------|---------------|--------|
| 1301 | FACTEAU, K. | 5/14/2004 | 10 | | | | TRN |
| 1302 | CAUDILL, M. | 5/14/2004 | 12 | | | | |
| 1303 | WHITLOW, D. | 5/14/2004 | 5 | | | | |
| 1304 | CASKEY, T. | 5/14/2004 | 10 | | | | |
| 1305 | KAMINKOW, R. E. | 5/14/2004 | 4 | | | | |
| 1306 | WILSON, R. A. | 5/22/2004 | 5 | | | | |
| 1307 | MCKEOWN, T. | 7/9/2004 | 10 | | | | |
| 1308 | CLARK, M. K. | 7/9/2004 | 1 | | | | |
| 1309 | THOMPSON, M. K. | 7/9/2004 | 10 | | | | |
| 1310 | EDWARDS, S. | 7/9/2004 | 1 | | | | |
| 1311 | EVANS, N. J. | 7/9/2004 | 2 | | | | |
| 1312 | WHITMAN, S. | 7/9/2004 | 2 | | | | |
| 1313 | DAWSON, J. P. | 8/9/2004 | 2 | | | | |
| 1314 | COLE, J. D. | 8/10/2004 | 2 | | | | |
| 1315 | MORRISON, B. G. | 8/11/2004 | 6 | | | | FUR |
| 1316 | MARSHALL, A. W. | 8/11/2004 | 6 | | | | |
| 1317 | DE VILLE, D. | 8/19/2004 | 12 | | | | |
| 1318 | MAGILL, D. T. | 9/7/2004 | 3 | | | | |
| 1319 | MASTERS, S. | 9/7/2004 | 2 | | | | |
| 1320 | CRANSTON, G. E. | 9/7/2004 | 3 | | | | |
| 1321 | HARRIGAN, C. | 9/9/2004 | 5 | | | | |
| 1322 | DUNCAN, P. | 9/24/2004 | 12 | | | | |
| 1323 | RUIZ, J. | 9/24/2004 | 12 | | | | |
| 1324 | LY, T. | 9/24/2004 | 12 | | | | |
| 1325 | MEYER, G. L. | 9/24/2004 | 5 | | | | |
| 1326 | CRAWLEY, J. M. | 9/24/2004 | 9A | | | | |
| 1327 | SOLIMINE, G. | 9/24/2004 | CS2 | | | | |
| 1328 | YACOVETTI, M. J. | 9/24/2004 | 12 | | | | |
| 1329 | FLIPPO, T. L. | 9/24/2004 | CS2 | | | | |
| 1330 | DUVALL, W. M. | 9/24/2004 | 12 | | | | |
| 1331 | SNYDER, H. J. | 9/24/2004 | 12 | | | | |
| 1332 | CARROLL, B. | 9/24/2004 | 12 | | | | |
| 1333 | CONWAY, J. B. | 10/1/2004 | 2 | CRRR | F | 2 | |
| 1334 | PADOVANO, A. R. | 10/1/2004 | 2 | CRRR | F | 2 | |
| 1335 | STUMPF, E. A. | 11/19/2004 | 12 | | | | |
| 1336 | LU, X. | 11/19/2004 | 12 | | | | |
| 1337 | FLOTTE, U. | 11/19/2004 | 12 | | | | |
| 1338 | FLOTTE, B. | 11/19/2004 | 12 | | | | |
| 1339 | GALLO, D. | 11/19/2004 | CS2 | | | | |
| 1340 | PELAEZ, A. | 11/19/2004 | 12 | | | | |
| 1341 | HIIVALA, J. L. | 11/19/2004 | 7 | | | | TRN |
| 1342 | MILLER, C. R. | 12/22/2004 | 3 | | | | |
| 1343 | NEWHARD, C. A. | 12/22/2004 | 2 | | | | |
| 1344 | TOLBERT, T. E. | 12/23/2004 | 12 | | | | |
| 1345 | CROSS, E. L. | 12/23/2004 | 12 | | | | |
| 1346 | POWELL, J. | 1/3/2005 | 2 | | | | |
| 1347 | VINCENT, G. | 1/10/2005 | 5 | | | | |
| 1348 | DILLON, D. T. | 2/18/2005 | 3 | | | | |
| 1349 | HACKLEY, J. W. | 2/18/2005 | 2 | | | | |
| 1350 | MACKINNON, J. C. | 2/18/2005 | 12 | | | | |

# 2006 Engin   rs National Roster Issue  1-21-06

| Number | Name | Entered Service | Zone | Prior RR | Prior Rights | Original Zone | Status |
|--------|------|-----------------|------|----------|--------------|---------------|--------|
| 1401 | CARROLL, R. J. | 12/20/2005 | 3 | | | | |
| 1402 | ANDERSON, C. A. | 12/20/2005 | 5 | | | | |
| 1403 | REED, T. A. | 12/28/2005 | 6 | | | 5 | |
| 1404 | GEHRING, S. M. | 2/24/2006 | 4 | | | | |
| 1405 | WEST, D. | 2/24/2006 | 12 | | | | |
| 1406 | RUTH, W. | 2/24/2006 | 4 | | | | |
| 1407 | BURRALL, J. | 2/24/2006 | 11 | | | | |
| 1408 | DAPPA, S. | 2/24/2006 | 11 | | | | |
| 1409 | LEWIS, A. | 2/24/2006 | 4 | | | | |
| 1410 | HEWITT, T. | 2/24/2006 | 4 | | | | |
| 1411 | COMPORATO, A. | 2/24/2006 | 12 | | | | |
| 1412 | ROUNDS, M. | 2/24/2006 | 12 | | | | |
| 1413 | EDWARDS, R. | 2/24/2006 | 12 | | | | |
| 1414 | SADORRA, B. P. | 2/24/2006 | 11 | | | | |
| 1415 | GIBSON, R. | 2/24/2006 | 4 | | | | |

# * * * EMPLOYMENT * * *

OMPLAINT OF DISCRIMINATION UNDER     DFEH #   E-200506-M-0250-00-c
HE PROVISIONS OF THE CALIFORNIA
AIR EMPLOYMENT AND HOUSING ACT                    DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

UR NAME (Indicate Mr. or Ms.)   John  Earl  Campbell     TELEPHONE NUMBER (INCLUDE AREA CODE)
                                                          510-638-4260

DRESS   2210   109TH   Ave.

TY/STATE/ZIP   Oakland   CA   94603     COUNTY  Alameda     COUNTY CODE

AMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP
OMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:
ME   Amtrak                                    TELEPHONE NUMBER (Include Area Code)

DRESS   5040   Water   St.   5th Floor     DFEH USE ONLY

TY/STATE/ZIP   Oakland   CA   94607     COUNTY  94607     COUNTY CODE

. OF EMPLOYEES/MEMBERS (if known)   DATE MOST RECENT OR CONTINUING DISCRIMINATION   RESPONDENT CODE
                                    TOOK PLACE (month, day, and year)

E PARTICULARS ARE:

n   SEPT. 17, 2004   I was   ✓ fired          ___ denied employment       ___ denied family or medical leave
                              ___ laid off      ___ denied promotion        ___ denied pregnancy leave
                              ___ demoted       ___ denied transfer         ___ denied equal pay
                              ___ harassed      ___ denied accommodation    ___ denied right to wear pants
                              ___ genetic characteristics testing   ___ impermissible non-job-related inquiry   ___ denied pregnancy accommodation
                              ___ forced to quit   ___ other (specify) _____

r   JOE DEELY                    DIVISION SUPT.
    Name of Person               Job Title (supervisor/manager/personnel director/etc.)

ecause of my:   ___ sex            ___ national origin/ancestry    ___ physical disability   ___ cancer              ___ (Circle one) filing;
                ___ age            ___ marital status              ___ mental disability     ___ genetic characteristic   Protesting; participating in
                ___ religion       ___ sexual orientation                                                            investigation (retaliation for)
                ___ race/color     ___ association                ___ other (specify) _____

e reason given by   JOE   DEELY - DIVISION SUPT.
                    Name of Person and Job Title

Vas        RETALIATION  FOR  Filing  An  EEOC  Discrimination
ecause of  Complain  Against  Amtrak  For  Not  Promoting
lease state
hat you    BLACKS  TO  THE  Engineer  position  in  Oakland
elieve to be
ason(s)]

h to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I
t a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the
H "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

e not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair
loyment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

lare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to
ars stated on my information and belief, and as to those matters I believe it to be true.

d   8-16-05

OAKLAND                          John  Earl  Campbell
City                             COMPLAINANT'S SIGNATURE

                    REC

EXHIBIT  PLT    5
                DEFT       for identification
WITNESS: J. Campbell
DATE: 2-26-07
SHARON TRUJILLO, CSR 6120

-300-03 (01/05)     DATE FILED:   08/17/0  AUG 1 7 2005             000015
RTMENT OF FAIR EMPLOYMENT AND HOUSING                S        STATE OF CALIFORNIA



**NATIONAL RAILROAD PASSENGER CORPORATION**
810 North Alameda Street, Los Angeles, CA 90012

April 21, 2004



John E. Campbell
2210 109ᵗʰ Avenue
Oakland, CA 94603

Dear Mr. Campbell:

On April 2, 2004, the Dispute Resolution Office (DRO) of Amtrak's Business Diversity Department received a copy of the e-mail you sent Human Resources Officer Susan Venturelli, complaining that you had been passed over five times for engine service and that no African-Americans had been promoted to engine service since 1998. Your e-mail address read, "ThongLickerOne The Real BIGNA$TY [mailto:johnny468@webtv.net]."

This letter will serve two purposes. One, it will serve as a letter of counseling regarding the sending of a vulgar and inappropriate e-mail address through the corporate e-mail system. Second, it will explain why the DRO will not be investigating your complaints.

On April 9, 2004, I contacted you at your home to discuss your e-mail communication with Amtrak. In addition to addressing your concerns, I first had an obligation to advise you that the e-mail address you used was inappropriate for business transactions. After I identified myself, I first addressed the e-mail title. You told me that the e-mail address "is just a joke" and that you have been using this same e-mail address for six years. I attempted to explain why it was inappropriate and a violation of Amtrak's Harassment Policy, when you interrupted me and said, "let's get on to what you're really calling me for." I again attempted to explain, as was my obligation, why the transmission of your e-mail title via the Amtrak internet system was considered vulgar and inappropriate pursuant to the Amtrak Harassment Policy, however, you again interrupted me, saying, "yeah, yeah, but let's get to why you're really calling." Once again I tried to address the first issue that of your e-mail address title, but you repeated said, "let's get to why you're really calling." At this point, I informed you that you would be receiving a counseling letter from the DRO regarding the e-mail.

Accordingly, this counseling letter is being sent to inform you that Amtrak strictly prohibits employees from sending e-mails that are sexually suggestive or otherwise offensive or demeaning toward any group of people because of that group's gender, race, color, religion, national origin, age, disability, veteran's status, sexual orientation or other characteristic protected by law. The use of the phrase "ThongLickerOne The Real BIGNA$TY" in a communication sent through the corporate e-mail system is vulgar, improper and a violation of Amtrak's Harassment Policy. Sending such an e-mail violates Amtrak's Harassment Policy, and may also violate Amtrak's Corporate E-Mail policy and may subject you to disciplinary action under either or both of those policies. Therefore, be advised that in the future, when communicating with Amtrak, please follow the Harassment Policy and avoid the use of derogatory, demeaning, and sexually referenced syntax. Furthermore, be advised that if in the future you are found to be in



D10539

violation of this policy, you may be disciplined up to and including termination. I am attaching a copy of Amtrak's Harassment Policy. Please review it and familiarize yourself with it.

**AMTRAK**

Notwithstanding the above, my primary reason for my initial call to you, was to inquire about your concerns that you have been passed over five times for engine service and your allegation that no African-Americans had been promoted to engine service since 1998. You explained that you had first applied for engine service in 1999, and that your former supervisor Tom Oughton tore up your application. You also told me that four months ago you applied for engine service and that you were neither interviewed, nor did you receive a letter from the Human Resource Department regarding your application. You said that two Caucasians (James Garman and Mike Poitier) were selected for the positions. During our conversation, you also alleged that there have not been any African-Americans promoted to engine service since 1998. You said, "they pick out minorities just to meet their quota and then that person flunks out." You then said, "I'm not getting no damn job." You used the word "damn" on at least two separate occasions during this explanation. I advised you that it was not necessary for you to use the word "damn." At that point, you told me that that you were "not getting anywhere " with me. You said, "So let's talk to EEO lawyers. Goodbye." and you hung up. On April 10, 2004, you left me a voice mail message. In your voice mail message you stated that "since you could not have a civilized conversation with me," you were directing me to contact Martin Sheer (510-637-3240) with the EEOC in Oakland. You also indicated that in the future I should direct any "e-mail, certified letter, or smoke signal or anything" to Mr. Sheer. You said, "you can explain to him why my six year old e-mail address and me charging the company with harassment is all of a sudden [sic] coincident." You said, "then he can explain to you what harassment and wrongful termination means. I [have]...spent enough oxygen over this. Have a nice day."

In summary, although the DRO is responsible for addressing and resolving internal complaints of discrimination, harassment (including sexual harassment), and unfair treatment on the basis of race, color, national origin, sex, age, religion, disability, veteran status, sexual orientation or other protected group status, since you informed the DRO that you have taken your concerns to the EEOC, the DRO will not be looking you're your concerns.

If you have any questions regarding this letter, please feel free to contact me at (213) 683-6822.

Sincerely,

*Rickie Donofrio*

Rickie Donofrio
Case Intake Coordinator

cc: Dawn P. Marcelle, Senior Director for Dispute Resolution
    Susan Brooks, Dispute Resolution Officer

**D10540**

**Venturelli, Susan**

To:
Subject:                     ThongLickerOne The Real BIGNA$TY
                            RE: hiring from within.

```
-----Original Message-----
From: ThongLickerOne The Real BIGNA$TY [mailto:johnny468@webtv.net]
Sent: Thursday, April 01, 2004 8:20 PM
To: sventure@amtrak.com
Subject: hiring from within.
```

dear susan my name is john campbell &          i'am a conductor in the
oakland crewbase. being a employee with a damn good record & someone who
has been passed over 5 times for engine maybe you can tell me what's the
secret to becoming an amtrak engineer? this is 2004 & no
african-american has been promoted to engine service since 1998 & the
oakland crewbase is just a coincident. if you can give me a good answer
too this simple question before april 9(the closing date for the
engineer's position) i will call off the EEOC dogs. have a safe day.
LIFE-LIVE IT DAY-TO-DAY & ENJOY EVERY MOMENT;   UNTIL GOD ASK YOU FOR A
FAVOR.

http://community.webtv.net/ JOHN CAMPBELL'S "A BETTER YESTERDAY"

DOH : 1/30/98 . AC

```
EXHIBIT RPT  10
                        for identification
WITNESS:     J. Campbell
DATE: 2-26-07
        SHARON TRUJILLO, CSR 6120
```

D10209

1

# Notice of Formal Investigation

*EX-1*

### Fed Ex Tracking # 7927 0272 0838

~~Signature Required~~

August 6, 2004

Mr. John Campbell
2210 109th Avenue
Oakland, CA 94603

**Case No. 386.04**

Dear Mr. Campbell:

You are hereby directed to appear for a Formal Investigation to be conducted as follows:

|  |  |
|---|---|
| **Date:** | August 10, 2004 |
| **Time:** | 2:00 PM |
| **Location:** | Amtrak's Jack London Station |
|  | 245 2nd Street, 2nd Floor |
|  | Oakland, CA 94607 |

The purpose of this investigation is to develop the facts and determine your responsibility, if any, in connection with the following:

**Charge 1:** Your alleged violation of Amtrak's **Service Standards for Train Service Employees – Manual No. 2 (effective 5/3/2004) – Chapter 3B – Safety Rules for Train Service Employees - Rule 5800 – Coupling or Uncoupling Engine or Cars,** which reads

"Prior to going on, under or between standing equipment for the purpose of coupling or uncoupling engines or cars, crewmembers must:

- Discuss safety matters and work to be performed.
- Communicate before action is taken.
- Protect against moving equipment.
- Secure equipment before action is taken.
- Mentor less experienced employees to perform service safely."

**Charge 2:** Your alleged violation of **General Code of Operating Rules-Fourth Edition - April 2, 2000-Rule 7.1 – Switching Safely and Efficiently,** which reads in part… "While switching, employees must work safely and efficiently and avoid damage to contents of cars, equipment, structures, or other property."

Pl. EXHIBIT 25B Shelton 7/07/06

000024

Mr. John Campbell
Case No. 386.04
Page 2 of 2

**Charge 3:** Your alleged violation of **General Code of Operating Rules-Fourth Edition - April 2, 2000--Rule 1.47 - Duties of Trainmen and Enginemen, Item D Other Crew Members' Responsibilities, Part 1.** "To ensure the train is operated safely and rules are observed, other crew members must assume as much responsibility as possible to prevent accidents or rule violations."

**Charge 4:** Your alleged violation of **General Code of Operating Rules-Fourth Edition - April 2, 2000—Rule 7.4 - Precautions for Coupling or Moving Cars or Engines,** which reads in part... "Before coupling to or moving cars or engines, verify that the cars or engines are properly secured and can be coupled and moved safely."

**Charge 5:** Your alleged violation of **Amtrak Air Brake and Train Handling Rules and Instructions, AMT-3 – Revised and Reissued August 19, 2002- Rule 2.14.16:** which reads... " Multiple lite locomotives may be moved within the confines of a yard or terminal without connecting the M. U. hoses, as long as the brake pipe and main reservoir hoses are connected with associated angle and main reservoir cocks open. "

**Specification:** It is alleged that on July 24, 2004 while assigned to position CYO103 working as the Conductor in the Oakland Diesel Shop you cut out the brakes on a locomotive and failed to properly secure it prior to coupling.

You may produce any witnesses you desire and may be accompanied by a representative as provided in you current and governing agreement, without expense to the National Railroad Passenger Corporation.

All requests for postponements of this investigation must be handled through the Hearing Office at (213) 683-6969.

Sincerely,


Tim Sheridan
Trainmaster – San Joaquins
Charging Officer

cc:    S. E. Shelton – Acting Superintendent – Bay District
       P. Preusser – Assistant Superintendent – Bay District
       E. Friend – Company Witness
       D. West – Company Witness
       R. Ford - Witness
       R. Wood – Labor Relations
       P. Gallagher – Hearing Office
       R. Gruber - UTU Local Chairman