KATHLEEN MAYLIN (SBN (SBN 155371)
CARA CHING-SENAHA (SBN 298467)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile: (415) 394-9401

Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK and JOE DEELY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL, | Case No. C05-05434 MJJ |
| Plaintiff, | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| v. | |
| NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK, JOE DEELY, and DOES 1-15, inclusive, | |
| Defendants. | Concurrently Filed Herewith: Supplemental Declaration of Steven Shelton; Supplemental Declaration of Susan Venturelli |
| | Hearing |
| | Date: May 22, 2007 |
| | Time: 9:30 a.m. |
| | Courtroom: 11 |
| | Floor: 19 |
| | Judge: The Hon. Martin J. Jenkins |
| | Complaint Filed: 12/30/05 |
| | FAC Filed: 2/23/06 |
| | Trial Date: 7/23/07 |

REPLY MEMORANDM IN SUPPORT OF DFDT. AMTRAK'S MTN FOR SUMM. JUDGMENT, OR IN THE
ALT., PARTIAL SUMM. JUDGMENT                                    Case No. C05-05434 MJJ

## Table of Contents

Page

I. INTRODUCTION ................................................................................................................. 1

II. POINTS AND AUTHORITES ............................................................................................. 3

    A. PLAINTIFF'S EVIDENCE FAILS TO CREATE TRIABLE ISSUES OF FACT SUPPORTING DISCRIMINATION ................................................................. 3

        1. Plaintiff's Opposition Must Rely Upon Admissible Evidence ................... 3

        2. Plaintiff's Contradicting Declaration Does Not Defeat Defendants' Motions For Summary Judgment ............................................................... 4

        3. Plaintiff Has No Direct Evidence of Racial Animus ................................. 4

        4. Plaintiff Has No Evidence of Disparate Treatment .................................... 5

        5. Amtrak Rightly Disqualified Plaintiff From Promotion For Legitimate, Nondiscriminatory Reasons ...................................................................... 7

        6. Moreover, Amtrak's Employment Decisions Were Independently Verified By Nonbiased Decision-makers .................................................. 7

        7. Plaintiff Has No Proof Of Pretext ............................................................ 10

        8. Plaintiff's Sham Evidence Is Irrelevant ................................................... 11

    B. Plaintiff's Retaliation Claim Should Be Adjudicated Against Him ..................... 12

    C. Plaintiff's Emotional Distress Claims Are No Longer In Dispute ....................... 13

IV. CONCLUSION ................................................................................................................... 13

**Table of Authorities**

Page

## CASES

Aragon v. Republic Silver State Disposal, Inc.,
  292 F.3d 654, 660 (9th Cir. 2002) .................................................................. 5, 7

Beale v. GTE California,
  999 F.Supp. 1312 (C.D. Cal. 1996) ................................................................. 8, 9

Brinson v. Linda Rose Joint Venture,
  53 F.3d 1044, 1049 (9th Cir. 1995) ..................................................................... 3

City of Richmond v. J.A. Croson Co.
  (1989) 488 U.S. 469, 102 L.Ed.2d 854, 109 S.Ct. 706 ....................................... 11

Cohen v. Fred Meyer, Inc.,
  686 F.2d 793, 797 (9th Cir. 1982) ..................................................................... 12

Coleman v. Quaker Oats Co.,
  232 F.3d 1271, 1282 (9th Cir. 2000) .................................................................. 11

DeHorney v. Bank of America Nat'l Trust and Sav. Ass'n,
  879 F.2d 459, 468 (9th Cir. 1989) ..................................................................... 8, 9

Ercegovich v. Goodyear Tire & Rubber Co., 1
  54 F.3d 344, 352 (6th Cir. 1998) ........................................................................ 5

Fuentes v. Perskie,
  32 F.3d 759, 765 (3d Cir. 1994) ..................................................................... 2, 11

Gunther v. County of Washington,
  623 F.2d 1303, 1316 (9th Cir. 1979) .................................................................. 12

Guz v. Bechtel National, Inc.
  (2000) 24 Cal.4th 317, 358 .................................................................................. 2

Hansen v. United States
  7 F.3d 137, 139 (9th Cir. 1993) ........................................................................... 3

Hazelwood School Dist. v. United States
  (1977) 433 U.S. 299, 308, 53 L.Ed.2d 768, 97 S.Ct. 2736 .................................. 11

Hersant v. Dept. of Social Services
  (1997) 57 Cal.App.4th 997, 1005 .................................................................. 2, 11

La Montagne v. American Convenience Products, Inc.
  750 F.2d 1405, 1412 (7th Cir. 1984) ................................................................... 8

Long v. Eastfield College,
  88 F.3d 300, 306-07 (5th Cir. 1996) ................................................................... 9

Lynn v. Deaconess Med. Center-West Campus,
   160 F.3d 484, 487 (8th Cir. 1998) .................................................................................. 5

Machado v. Johnson,
   191 Fed. Appx. 531 (9th Cir. 2006) ............................................................................. 5, 6

McGuinness v. Lincoln Hall,
   263 F.3d 49, 53-54 (2d Cir. 2001) .................................................................................. 5

Moran v. Selig,
   447 F.3d 748 (9th Cir. 2006) .......................................................................................... 5

Nemours and Co.
   100 F.3d 1061, 1072 (3d Cir. 1996) ......................................................................... 2, 11

People v. Bell
   (1989) 49 Cal.3d 502, 555 ............................................................................................ 11

Radobenko v. Automated Equip. Corp.,
   520 F.2d 540, 544 (9th Cir. 1975) .................................................................................. 4

Shager v. Upjohn Co.,
   913 F.2d 398, 405 (7th Cir. 1990) .............................................................................. 7, 8

St. Mary's Honor Ctr. v. Hicks,
   509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993) ...................................... 5

Vasquez v. County of Los Angeles,
   349 F.3d 634, 640 ........................................................................................................ 8, 9

Yartzoff v. Thomas,
   809 F.2d 1371, 1375 (9th Cir. 1989) ............................................................................ 12

**STATUTES**

42 U.S.C. section 1981 ............................................................................................... 9, 10

Title VII or 42 U.S.C. 1981 ................................................................................................ 7

**RULES**

Federal Rule of Civil Procedure 56(e) .................................................................................. 3

## I. INTRODUCTION

Plaintiff's opposition is riddled with half-truths, deliberate mischaracterizations, inapposite authority, and unmitigated speculation, none of which create any triable issue of fact. Perhaps no distortion figures more prominently than Plaintiff's reliance on faulty "comparable evidence" which he uses to bolster his claim that Amtrak allowed Caucasian conductors to routinely disable or cut out the brakes while it fired him for committing the same act. *See* Opp. Brief at 10:7-10 and 17:12-18.

Plaintiff indiscriminately assumes that all disabling of brakes are the same. In truth, releasing the brakes on a stationary locomotive parked over a maintenance pit is nothing like disabling the brakes on a locomotive that is on the track and about to be connected to an oncoming train. Similarly, none of the persons Plaintiff casts insofar as cutting out the brakes are concerned are true "comparables." Plaintiff admitted that he never witnessed another yard conductor disable the brakes, and hence, he had only gossip on which to base his claim. Ray Clarke, Tim Sheridan, and Don Magers testified that they never cut out the brakes in the manner Plaintiff did.

Moreover, at least two of the persons identified by Plaintiff as having cut out the brakes on a near daily basis with immunity are themselves African-American: Kevin Mayberry and Cynthia Hubbard. *See* Opp. Brief at 5:19-20.

Nothing in Plaintiff's so-called "evidence" disputes that an employee who has committed three *major* operating safety violations within a four-year period is subject to progressive discipline that may result in discharge under Amtrak's policy. Plaintiff's disagreement with the reasons for this rule, with Amtrak's judgment that his three egregious safety violations in 2000, 2002, and 2004 qualified as major operating safety violations (while "split switches" and other "routine" switching mistakes did not), and with the emphasis Amtrak places on coupling safety do not create a factual issue. Courts will not sit as "super-personnel" departments to second-guess the qualifications for a job, the inherent discretion employers possess to take disciplinary action, or the strategic direction a department should take.

Quite simply, the issue is not whether others may have committed the same exact offense as Plaintiff because even if they had, Steve Shelton, the person who charged Plaintiff with the July 2004 incident and who made the decision to terminate his employment, *honestly believed* that it was appropriate for Amtrak to fire Plaintiff based on Plaintiff's disciplinary history and admission that he knowingly and willfully cut out the brakes of a locomotive prior to coupling it with another train. Shelton previously testified that he knew of no one else who had committed the same offense, under the same circumstances, as Plaintiff. *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 358 (accuracy of reason is irrelevant, employer merely must honestly believe in nondiscriminatory reason); *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); *Sheridan v. E.I. DuPont de Nemours and Co.* 100 F.3d 1061, 1072 (3d Cir. 1996); *Hersant v. Dept. of Social Services* (1997) 57 Cal.App.4th 997, 1005.

Plaintiff's opposition also contains several glaring omissions, including that in 2002 and in 2004, two separate neutral investigations determined that Plaintiff had committed the offenses as charged. (Plaintiff admitted his guilt and accepted a written reprimand as the result of an incident in 2000.) In addition, a separate, higher review was conducted by three unbiased members of the Public Law Board sitting in Washington D.C. None Law Board member met with Plaintiff or Steve Shelton. Still, the Public Law Board upheld Plaintiff's discharge as appropriate and commensurate with the offense he committed in July 2004 and with his past record of discipline. Tellingly, Plaintiff admits that neither the investigators nor the Public Law Board were racially biased or had a reason to retaliate against him. Moreover, at no time during his numerous and lengthy grievances and appeals did Plaintiff or his legal representatives characterize his discharge or discipline as discrimination or retaliation.

As to Plaintiff's failure to promote claims, his contention that Amtrak did not promote or hire an African-American engineer since 1998 is irrefutably false. In Oakland alone, at least seven African-Americans have worked as engineer since 1998. Amtrak has a commendable record of promoting African-Americans to management and director-level positions, including four African-American directors and eight African-American managers within the Bay Area. In

addition, at least four Corporate Vice Presidents within Oakland are African-American. *Supplemental Declaration of Susan Venturelli*, submitted concurrently herewith. Steve Shelton, the same person who Plaintiff contends was racially biased against him, promoted or hired at least four African-Americans to engineer or higher positions. *Supplemental Declaration of Steven Shelton*, submitted concurrently herewith.

Despite his attempts to obfuscate and confuse the record, and manufacture bogus statistical evidence, Plaintiff falls short of presenting a triable issue of fact sufficient to overcome Defendants' Motion for Summary Judgment.

## II.     POINTS AND AUTHORITES

### A.     PLAINTIFF'S EVIDENCE FAILS TO CREATE TRIABLE ISSUES OF FACT SUPPORTING DISCRIMINATION

#### 1.     Plaintiff's Opposition Must Rely Upon Admissible Evidence

Federal Rule of Civil Procedure 56(e) states that supporting and opposing affidavits: shall be made on personal knowledge; shall set forth facts as would be admissible in evidence; and, shall show affirmatively that the affiant is competent to testify to the matters stated therein. When a party opposing summary judgment "relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States* 7 F.3d 137, 139 (9th Cir. 1993). Nor may the opposing party rely on self-serving statements or characterizations. The opposing party may only oppose a motion for summary judgment with factual evidence that would be admissible at trial. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

As set forth in Defendants' Objections to Plaintiff's Evidence, concurrently filed herewith, substantial portions of Plaintiff's declaration and his other opposition "evidence" are inadmissible because they: lack the necessary foundation; are irrelevant; consist of nothing more than unsupported speculation or counsel's interpretation of events; are inadmissible hearsay statements for which Plaintiff has not established an exception; and are demonstrably incomplete, false or misleading.

A motion for summary judgment or summary adjudication may not be denied based on

issues not raised in the pleadings. To present a triable issue of material fact, the opposing party must present evidence directed to issues raised in the pleading. Accordingly, evidence which is immaterial because it is not related to issues raised in the pleadings is irrelevant and inadmissible. To the extent Plaintiff bases a great deal of his opposition on events not alleged in his First Amended Complaint ("FAC"), his opposition cannot create triable issues of fact.

### 2.    Plaintiff's Contradicting Declaration Does Not Defeat Defendants' Motions For Summary Judgment

A party cannot oppose summary judgment purposes by submitting an affidavit or declaration that contradicts his previous testimony without sufficient explanation for the contradiction. *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). Plaintiff's opposing declaration unwittingly contradicts his deposition testimony at several critical junctures, without sufficient explanation or any explanation at all. For example, Plaintiff testified at deposition that throughout his employment, he was interested in working as an engineer in Oakland only and that he never applied for engineer openings located in other parts of the Bay Area. *See* Plaintiff's deposition ("Pl. Depo.") at 45:5-13 (Exhibit A to the supplemental declaration of Cara Ching-Senaha, concurrently filed herewith). In an about face, Plaintiff states in his that he was interested in any engineer opening within the Bay Area after November 2002. *See* Opp. Brief at 6:20-22.

Additional and similarly egregious contradictions are listed in Defendants' evidentiary objections, concurrently filed herewith.

### 3.    Plaintiff Has No Direct Evidence of Racial Animus

Plaintiff attempts to create a triable issue regarding his wrongful termination claim by claiming that defendant Joe Deely made racist statements in the past about other employees. Plaintiff concedes that in order to make out a case based on direct evidence, the speaker who made the incriminating statements must either have been the decision-maker, or worked closely in formulating the decision with others who actually made the decision in question. Plaintiff has utterly failed to demonstrate that Deely had any involvement in the decision to terminate his employment, or that Deely worked closely and influenced the decision-maker in reaching the

decision to terminate. As such, any alleged racist statement made by Joe Deely made years earlier can not constitute direct evidence to support Campbell's discrimination claim.

### 4. Plaintiff Has No Evidence of Disparate Treatment

Plaintiff admits that he must present evidence as part of his *prima facie* claim for discrimination that he was treated less favorably than others who were "similarly situated." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993). Opp. Brief at 10:7-12.

The Ninth Circuit Court of Appeals has long held that "comparable evidence" necessarily requires that the employees with whom the plaintiff seeks to make a comparison are "similarly situated in *all* material respects." *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002) (citing with approval, *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) (emphasis added); *Moran v. Selig*, 447 F.3d 748 (9th Cir. 2006), following *Aragon, supra*. See also *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (holding "plaintiff must show that the "comparables" are similarly-situated in all respects"));*Lynn v. Deaconess Med. Center-West Campus*, 160 F.3d 484, 487 (8th Cir. 1998) (requiring employees be "similarly situated in all relevant respects").

In order to qualify as "similarly situated" in all material respects, each person with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, must have been subjected to the same standards, and must have engaged in the same conduct as the plaintiff "without any differentiating or mitigating circumstances that would explain distinguish their conduct or the employer's treatment of them for it." *Machado v. Johnson*, 191 Fed. Appx. 531 (9th Cir. 2006).

To start, none of the so-called other offenses Plaintiff describes are comparable to Plaintiff's conduct on July 24, 2004, when he admits he knowingly released the air brakes on a locomotive during an active move. Plaintiff's conduct on July 24, 2004 was akin to (1) parking an automobile in neutral, (2) turning off the engine, and (3) releasing the parking brake in the wake of a second, oncoming car. Predictably, the locomotive rolled uncontrollably.

*Supplemental Declaration of Steve Shelton,* concurrently filed herewith. Had Dave West not bolted into action and reapplied the brakes, 125 tons of steel would have continued to move without control, creating grave risk to railroad personnel and equipment.[1]

Plaintiff's attempt to liken his disarming of the brakes during an active move to the disarming of brakes of a parked train that is undergoing maintenance is not comparable. The first plainly violates Amtrak's written safety manuals, violates training that Plaintiff admits he repeatedly underwent, and violates model safety rules adopted by the national railroad safety agency that identifies unsafe coupling and disregard of air brake rules as leading causes of fatal railroad accident in the United States. *Id.* The second may or may not violate Amtrak rules, depending on the circumstances. *Id.* Plaintiff's opposition "evidence" does not detail the circumstances in which others cut out the brakes on a locomotive undergoing repair.

In another faulty comparison, Plaintiff attempts to liken his intentional disarming of the brakes during an active move to improper switching. Switching refers to the process by which different portions of track are aligned together. A switch is a lever point in the direction of adjoining track. Running through or splitting a switch refers to dislodging a switch from its intended route. Switching has nothing to do with air brake safety. It also does not affect an engineer's ability to stop a wayward train. *Id.*

Derailments can arise from a number of different situations. In general, a derailment occurs when any portion of a train or car separates from the track. A derailment is not necessarily the result of negligence or misconduct. For example, derailments can occur when the track is obstructed or the engineer's line of sight is impeded. Even if Plaintiff had included facts about the circumstances of derailments by others, derailments are not synonymous with the cutting out of brakes during an active move. *Id.*

As detailed above, none of the offenses allegedly committed by others can compare to Plaintiff's July 24, 2004 incident on the most basic level, let alone "in all material respects."

---

[1] That Assistant Conductor Anthony Gillard, who had not witnessed Plaintiff cut out the brakes, initially thought he could have been responsible somehow for the incident (i.e., "hard" coupling) does not mitigate the severity of Plaintiff's act.

Because Plaintiff has failed to demonstrate he is similarly situated in all material respects to the Caucasian employees he claims received more favorable treatment, he has not established a *prima facie* case of discrimination under Title VII or 42 U.S.C. 1981.

### 5. Amtrak Rightly Disqualified Plaintiff From Promotion For Legitimate, Nondiscriminatory Reasons

Plaintiff argues that Amtrak should not have disqualified him from consideration for promotion because he believes none of his rules violations were sufficiently severe. (In 2000, he admitted that he had violated seven sections of the Amtrak General Code of Operating Rules, Safety Rules, and AMT-3 Rule, and he agreed to a formal letter of reprimand because Plaintiff failed to timely report damaged equipment. In 2002, he was charged with four serious rules infractions relating to a boxcar derailment on January 10, 2002. After a formal investigation resulted in a 20-day suspension (10 days to be served, 10 days to be held in abeyance), Plaintiff unsuccessfully appealed the suspension.)

In his opposition, Plaintiff claims that Amtrak did not disqualify from promotion others who had committed similar disciplinary offenses. However, Plaintiff made no attempt to show how his 2002 and 2004 offenses "compared" to offenses committed by others in "all material respects." Without competent comparable evidence, Plaintiff's *prima facie* case fails as a matter of law. *Aragon, supra.*, 292 F.3d 654, 660 (9th Cir. 2002).

### 6. Moreover, Amtrak's Employment Decisions Were Independently Verified By Nonbiased Decision-makers

There can be no discrimination as a matter of law when an adverse personnel decision is made by a neutral committee or unbiased decision-maker. *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). In *Shager*, the plaintiff sued for age discrimination on the grounds that his supervisor told younger salespersons that "These older people don't much like or much care for us baby boomers, but there isn't much they can do about it." *Id.* at 400. When plaintiff experienced performance problems, his supervisor recommended to the employer's Career Path Committee, which reviewed and terminated the plaintiff's employment. *Id.* The Court stated that since the Career Path Committee made the decision, the issue is whether the committee was

tainted by the supervisor's prejudice against older workers. *Id.* at 405. If the committee's decision to terminate plaintiff's employment was not tainted by the supervisor's prejudice, "the causal link between that prejudice and [the plaintiff's] discharge is severed, and [the plaintiff] cannot maintain this suit even if [the employer] is fully liable for [the supervisor's] wrongdoing." *Id.*; citing to *La Montagne v. American Convenience Products, Inc.* 750 F.2d 1405, 1412 (7th Cir. 1984). On two separate occasions (in 2002 and 2004), hearing officers listened to testimony (including testimony offered by Plaintiff), weighed evidence and independently concluded that Plaintiff had violated Amtrak's rules.

Even if there had been no hearing officer, appeal process or further review by the Public Law Board, an employee does not establish discrimination if the ultimate decision-makers were not motivated by racial animus or if the ultimate decision-makers were unaware of and uninfluenced by of the alleged animus of others. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640; *Beale v. GTE California*, 999 F.Supp. 1312 (C.D. Cal. 1996) (recognizing that the discriminatory motives of an employee's supervisor cannot be imputed to a higher level manager who made the decision to terminate the employee); *DeHorney v. Bank of America Nat'l Trust and Sav. Ass'n*, 879 F.2d 459, 468 (9th Cir. 1989) (requiring a nexus between the alleged animus and the decision to terminate in Section 1981 cases).

In *Vasquez*, the Court affirmed summary judgment against plaintiff on the theory that the ultimate decision-maker held no animus against the plaintiff based on his national origin as a Hispanic person. *Vasquez*, 349 F.3d at 640. The plaintiff, a deputy probation officer at a youth detention center operated by defendant, claimed his coworker yelled at him, made negative comments about plaintiff's "typical Hispanic macho attitude," and stated that plaintiff should work in the field, rather than at the detention center, because "Hispanics do good in the field." *Id.* at 638. During an investigation over whether the plaintiff violated defendant's policy of not allowing the youth to play football, the plaintiff's supervisor conducted an independent investigation and decided to send the plaintiff into the field, rather than work in the detention center. *Id.* at 640. The plaintiff challenged this decision as discriminatory.

The Court found that plaintiff offered only the comments made by his coworker as evidence of discriminatory animus. The Court reasoned that this evidence was insufficient because plaintiff's coworker "was not the decision-maker" and plaintiff "offered no evidence of discriminatory remarks made by [the ultimate decision-maker]. *Id.* at 641; citing to *Long v. Eastfield College*, 88 F.3d 300, 306-07 (5th Cir. 1996) (finding that "if the final decision-maker based the decision on independent investigation, causal link between subordinate's retaliatory motive and plaintiff's termination would be broken.").

Similarly, in *Beale, supra*, the Court held that the plaintiffs failed to establish age and gender discrimination because "they have failed to show the persons who decided to terminate them had discriminatory motives for making the decision." *Beale*, 999 F.Supp. at 1321. In *Beale*, the plaintiffs claimed discrimination arising from the employer's decision to terminate their employment as part of a reduction in force. The Court stated that while the plaintiffs have shown that low level managers and supervisors may have had discriminatory animus, there is no evidence showing that the persons who had responsibility for reducing the workforce ever made any discriminatory statements related to the termination decision. *Id.* Moreover, the Court held "Plaintiffs' allegation that [the ultimate decision-makers] met with low-level managers to discuss the force reduction cannot create a triable issue of fact because Plaintiffs have not adduced any evidence that the low-level managers made force reduction recommendations or that [the ultimate decision-makers] relied on these recommendations." *Id.* at 1321, n. 5.

In *DeHorney, supra*, the plaintiff filed an action for wrongful discharge, interference with contract, intentional infliction of emotional distress and racial discrimination under 42 U.S.C. section 1981. The plaintiff, a bank teller, was asked by a customer to retrieve a $20 check which he cashed in another branch of the bank. The processed check was to be sent to the customer, but instead of returning the processed check to the file, the plaintiff included the processed check in her cash-paid check pile. When asked by the bank's auditor as to how the check was processed twice, the plaintiff admitted she was unprepared to answer the question. During the interrogation, the auditor stated "You people are always having problems," to which the plaintiff responded

"Are you calling me because I'm Black?" *Id.* at 461.

In dismissing the plaintiff's racial discrimination claim, the *DeHorney* Court found that the auditor's reference to "you people" as insufficient for plaintiff to establish racial animus. *Id.* at 467. The Court further found that even if the auditor "did express racial animus toward [plaintiff], plaintiff had not shown that [the auditor] was responsible for the termination." The evidence showed the plaintiff was terminated by her branch area administrator, and "absent some showing that [the auditor's] involvement was more than that of an investigator whose report to the ultimate decision maker was not tainted with racial bias, [the plaintiff] could not show that the termination was racially motivated." *Id.*

In this case, a formal hearing was convened, witness testimony was taken and exhibits were submitted in 2004. Hearing Officer Patrick Gallagher held that it was "evident on the record by the testimony of the Corporation's witnesses and [Plaintiff's] own testimony that [he] clearly violated the rules and instructions regarding the movement and coupling of cars and engines." (Shelton Dec., ¶ 11, Ex. D; Pl. Depo., 154:17—155:4 and Pl. Depo. Exh. 19, submitted with Defendants' moving papers.) Shortly thereafter, Plaintiff's union appealed his discharge to Amtrak's Director of Labor Relations. After the Director denied the appeal, the union filed an appeal with the Public Law Board. After review, the Board dismissed the claim (denied the appeal).

Assuming for the sake of argument that Plaintiff could somehow prove that Shelton or Deely based his discharge on a bias against African-Americans, their decision would nevertheless cease to be discriminatory after the hearings officer, the Director of Labor Relations, and the Public Law Board each decided on their own to uphold Plaintiff's termination.

### 7. Plaintiff Has No Proof Of Pretext

To survive summary judgment in the face of Amtrak's legitimate lawful showing, Plaintiff must present "specific [and] substantial" evidence of falsity or pretext. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000); *Hersant v. Dept of Social Srvs.*, 57 Cal.App.4th 997, 1004-05 (1997) (plaintiff must rebut employer's reasons with substantial evidence, not by

speculation and conjecture). A plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise or competent. See *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); *Sheridan v. E.I. DuPont de Nemours and Co.* 100 F.3d 1061, 1072 (3d Cir. 1996); *Hersant v. Dept. of Social Services* (1997) 57 Cal.App.4th 997, 1005.

In this case, the vast majority of Plaintiff's "evidence" wrongly assumes that splitting switches, derailments, and disarming the brakes on a train during maintenance were the same as the offense he committed on July 24, 2004. *See Shelton Supp. Decl.* Plaintiff has no evidence that Shelton was aware that other conductors had committed the same offense as he. Nor has he presented any evidence to suggest that Shelton did not *honestly believe* that it was the appropriate and right thing for Amtrak to fire him in September 2004.

### 8. Plaintiff's Sham Evidence Is Irrelevant

Plaintiff's offer of sham statistical evidence on Amtrak's hiring patterns is irrelevant. In order to be relevant to a claim of discrimination, statistical data must be based on a statistically valid sampling that includes the "relevant population" -- those persons having the essential qualifications of the class claimed to have been excluded. *City of Richmond v. J.A. Croson Co.* (1989) 488 U.S. 469, 102 L.Ed.2d 854, 109 S.Ct. 706. "Where special qualifications are necessary [for the job], the relevant statistical pool for purposes of demonstrating discriminatory exclusion must [include] the number of minorities qualified to undertake the particular task." *People v. Bell* (1989) 49 Cal.3d 502, 555, quoting *Hazelwood School Dist. v. United States* (1977) 433 U.S. 299, 308, 53 L.Ed.2d 768, 97 S.Ct. 2736. Without such evidence, it is impossible to evaluate overall minority representation or draw a negative inference of discrimination. *People, supra,* 49 Cal.3d at 555-556.

As noted above, Amtrak hired or promoted at least seven African-Americans to engineer in Oakland alone. In addition, numerous African-Americans hold management and director-level positions at Amtrak. *Supplemental Declaration of Susan Venturelli*, submitted concurrently herewith. There is nothing within the record to support an inference or assumption that Amtrak

hires and promotes based on race.

### B.  Plaintiff's Retaliation Claim Should Be Adjudicated Against Him

Defendants established in their opening brief that none of the decision makers involved in Plaintiff's termination were aware that Plaintiff had engaged in protected activity at the time the challenged decisions were made. Plaintiff's opposition merely confirms that neither Shelton or Deely knew about an administrative charge Plaintiff filed with the EEOC and DFEH in February 2004 or an internal complaint he raised with the Office of Dispute Resolution at around the same time.

To survive summary adjudication in the face of Defendants' showing, Plaintiff can not rely on mere speculation, conclusory allegations, or inadmissible evidence. He must present specific evidence to establish that the decision makers in question were aware that: (1) he sent an email with Amtrak's Human Resources alleging (falsely) that Amtrak did not hire or promote a single African-American to engineer since 1998, or (2) he filed an administrative charge with the EEOC and the DFEH. Plaintiff has utterly failed to make out his minimal burden of proof. Without such evidence, there is no possibility that Plaintiff can satisfy his *prima facie* burden of establishing a causal connection between protected conduct and an adverse employment action. See *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1989); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982) (rejecting mere temporal proximity).

The Ninth Circuit underscored that point in *Gunther*, requiring plaintiffs to provide evidence of actual knowledge. *Gunther v. County of Washington*, 623 F.2d 1303, 1316 (9th Cir. 1979) ("Only if there is evidence that the Sheriff actually knew that the plaintiffs raised such claims . . . can we infer that the Sheriff gave negative recommendations to the plaintiffs and positive recommendations to the other matrons for vindictive reasons. The plaintiffs presented no such evidence. Having not shown that the defendants were aware which matrons were actively supporting the claim for equal pay, the plaintiffs have not proved the necessary link between their demands and the defendants' adverse action that would establish a prima facie violation . . . .").

Defendants have shown through admissible evidence that there is no possible causal

connection because the decision maker never knew that Plaintiff had engaged in protected conduct. The possibility that a causal connection *could* have been established *if they had known about Plaintiff's protected conduct* is immaterial. Plaintiff has presented nothing but mere speculation in opposition to Defendants' showing. That mere speculation is insufficient to withstand summary judgment on Plaintiff's retaliation claims.

### C. Plaintiff's Emotional Distress Claims Are No Longer In Dispute

Plaintiff agrees in his opposition to drop his Fifth (Intentional Infliction of Emotional Distress) and Sixth (Negligent Infliction of Emotional Distress) claims as preempted. *See* Opp. Brief at 1, fn. 1.

## IV. CONCLUSION

Based on the foregoing, Amtrak respectfully requests that the Court grant its motion for summary judgment in its entirety. Alternatively, to the extent the Court finds any triable issue of material fact, Amtrak requests summary adjudication of each claim

Respectfully submitted,

JACKSON LEWIS LLP

Dated: May 8, 2007        By: _____
                              Kathleen Maylin
                              Cara Ching-Senaha
                              Attorneys for Defendants
                              NATIONAL RAILROAD PASSENGER
                              CORPORATION dba AMTRAK and JOE
                              DEELY

H:\N\National Railroad Passenger Corp (40707)\Campbell (89560)\Pleadings\MSJ\CAMPBELL Reply ISO MSJ - Amtrak.doc