1  PAMELA Y. PRICE (SBN 107713)
   PRICE AND ASSOCIATES
2  The Latham Square Building
3  1611 Telegraph Avenue, Ste 1450
   Oakland, CA 94612
4  Telephone: (510) 452-0292
   Facsimile: (510) 452-5625
5
6  Attorneys for Plaintiff
   JOHN EARL CAMPBELL
7
8  KATHLEEN MAYLIN (SBN  (SBN 155371)
   CARA CHING-SENAHA (SBN  298467)
9  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
10 San Francisco, California  94105
   Telephone:  (415) 394-9400
11 Facsimile:  (415) 394-9401

12 Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
13 CORPORATION dba AMTRAK and JOE DEELY

14

15                  UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17

18 JOHN EARL CAMPBELL,              | Case No. C05-05434 MJJ

19              Plaintiff,          | **JOINT SEPARATE STATEMENT OF**
                                    | **UNDISPUTED FACTS**
20      v.
                                    | Date:       May 22, 2007
21 NATIONAL RAILROAD PASSENGER      | Time:       9:30 a.m.
   CORPORATION dba AMTRAK, JOE DEELY, | Courtroom:   11
22 and DOES 1-15, inclusive,        | Floor:      19
                                    | Judge:      The Hon. Martin J. Jenkins
23              Defendants.
                                    | Complaint Filed:    12/30/05
24                                  | FAC Filed:          2/23/06
                                    | Trial Date:         7/23/07
25
                                    | **[Fed.R.Civ.Proc. 56; JUDGE JENKINS'**
26                                  | **STANDING ORDER]**

27

28

---

JOINT SEPARATE STATEMENT OF UNDISPUTED FACTS                    Case No. C05-05434 MJJ

1    Pursuant to The Hon. Martin J. Jenkins' Standing Order, the PARTIES, Plaintiff

2  JOHN EARL CAMPBELL ("Plaintiff") and Defendants NATIONAL RAILROAD

3  PASSENGER CORPORATION (aka AMTRAK) and JOE DEELY (jointly "Defendants"),

4  hereby submit this Joint Statement of Undisputed Material Facts for consideration in connection

5  with Defendants Amtrak and Joe Deely's Motions for Summary Judgment or Partial Summary

6  Judgment, both of which are scheduled for hearing on May 22, 2007, at 9:30 a.m.

7                    **UNDISPUTED MATERIAL FACTS**

8
9  **AMTRAK'S    EEO    POLICIES    PROHIBITING    DISCRIMINATION,**
   **HARASSMEHT AND RETALIATION**
10
       1.    Removed
11
       2.    Removed
12
       3.    As an Assistant Conductor at Amtrak, Plaintiff was responsible for taking
13
   passenger tickets, assisting passengers on and off the train, and insuring the safe movement and
14
   operation of the trains. (Pl. Depo., 41:16-21.)
15
       4.    At, or shortly following, the start of Plaintiff's employment, he received
16
   AMTRAK's polices prohibiting racial discrimination and retaliation and describing formal
17
   internal procedure for reporting EEO Complaints. (Venturelli Decl., ¶ 5, Ex. D; Pl. Depo., 85:15-
18
   22, 84:15—85:14 and Pl. Depo. Ex. 8; Venturelli Decl., ¶ 4 and Ex. C thereto.)
19
   **AMTRAK'S SAFETY AND OPERATING RULES**
20
       5.    Specific to Conductors, Engineers, and other crew employees, Amtrak has adopted
21
   a series of safety and operating rules, along with materials and instructions, including: the
22
   General Code of Operating Rules; Service Standards for Train Service Employees; AMT-3,
23
   Amtrak's Air Brake and Train Handling Rules and Instructions; and, AMT- 5, Amtrak's Safety
24
   Instruction for Transportation Employees (aka "Amtrak safety and operating rules").
25
   (Declaration of Steve Shelton ("Shelton Decl."), filed with Defendants' motions, ¶ 2, 8 and Ex. C
26
   thereto; and Venturelli Decl., ¶ 4 and Ex. C thereto.)
27
       6.    All Amtrak conductors and engineers are charged with knowing and following
28

---

1    Amtrak's safety and operating rules as a condition of employment.  (Shelton Decl., ¶¶ 2, 8 and

2    Ex. C thereto.)

3        7.    Removed

4        **AMTRAK TWICE PROMOTES PLAINTIFF**

5        8.    Removed

6        9.    Removed

7        10.    A Yard Conductor is primarily responsible for switching equipment for train make

8    up to stage trains for departure and arrival.  Adherence to safety and operation rules and policies

9    is a critical job function given the high frequency that a Yard Conductor switches equipment.

10    (Shelton Dec., ¶ 4.)

11        **SAFETY AND OPERATING RULES VIOLATIONS**

12        11.    Amtrak employs conductors pursuant to a collective bargaining agreement with

13    the United Transportation Union.   That agreement provides that a conductor will not be

14    disciplined without the benefit of a hearing, unless the conductor agrees to waive the charge(s)

15    against him, and includes a right of appeal.  (Shelton Dec., ¶ 3.)

16        12.    After being charged with a disciplinary violation, a formal investigatory hearing is

17    convened in which the employee, the employee's union representative, and a company

18    representative (referred to as the Charging Officer) attend the hearing and present evidence to a

19    Hearing Officer.  The Hearing Officer is a full-time management employee.  At the hearing, the

20    employee has the ability to call any witness desired.  The hearing is recorded and transcribed.

21    The decision of the Hearing Officer may be appealed to the Labor Relations officer, and that

22    decision may be appealed to the Public Law Board where the claim is finally decided by a panel

23    of three: an Organization Member (union), a Carrier Member (company), and a Neutral Member

24    (non-railroad affiliated) who is the Chairman of the Board.  (Shelton Dec., ¶ 5.)

25        13.    Also part of the disciplinary process is the waiver option, which is a plea bargain

26    negotiated between the union and management, where the employee admits guilt to a rule or rules

27    violation and waives his right to a hearing in exchange for a negotiated specified discipline.

28    (Shelton Dec., ¶ 6.)

2

14.    Removed

## PLAINTIFF COMMITS A SERIES OF SAFETY AND OPERATING RULES VIOLATIONS IN 2000 AND 2002

### March 2000 Incident

15.    Removed

16.    Removed

17.    Removed

### January 2002 Incident

18.    In January 2002, Plaintiff was charged with four serious rules infractions relating to a boxcar derailment on January 10, 2002.  (Declaration of Gregg Baxter ("Baxter Decl.", ¶ 2, filed with Defendants' motions; Pl. Depo., 118:22—119:1 and Pl. Depo. Exh. 27.)  The charges included moving a train at an unsafe speed (Charge 1), failing to work safely and to avoid damage to equipment (Charge 2), failing to verify cars were properly secured before coupling or moving cars (Charge 3), and failing to control train movement while moving cars into a spur track (Charge 4).  (Baxter Dec., ¶ 2 and Ex. A thereto; Pl. Depo., 118:19—120:3, 123:12--124:1 and Pl. Depo. Exh. 14; Shelton Dec., ¶ 11)

19.    Removed

20.    Removed

## AMTRAK TERMINATES PLAINTIFF'S EMPLOYMENT AFTER HIS THIRD SAFETY VIOLATION

21.    Removed

22.    As a result of the incident, AMTRAK charged Plaintiff with five rules violations of the General Code of Operating Rules, Service Standards for Train Service Employees, and AMT-3, Amtrak Air Brake and Train Handling Rules and Instructions.  (Shelton Dec., ¶¶ 8 and 10, Ex. C; Pl. Depo., 139:19—142:11 and Pl. Depo. Exh. 19.)

23.    Removed

24.    Plaintiff had the ability to call witnesses and offer information on his behalf during the investigative process. (Pl. Depo., 157:23—158:3)

25.    Removed

3

JOINT SEPARATE STATEMENT OF UNDISPUTED FACTS                    Case No. C05-05434 MJJ

1    26.    On September 17, 2004, hearing officer Patrick Gallagher issued a Decision which

2    stated in pertinent part that it was "evident on the record by the testimony of the Corporation's

3    witnesses and your own testimony that you clearly violated the rules and instructions regarding

4    the movement and coupling of cars and engines."   (Shelton Dec., ¶ 11, Ex. D; Pl. Depo.,

5    154:17—155:4 and Pl. Depo. Exh. 19.)

6    27.    Removed

7    28.    Removed

8    29.    On September 28, 2004, the union appealed Plaintiff's termination to Amtrak's

9    Director of Labor Relations.  On November 9, 2004, the Director denied the appeal, and noted

10   that "Claimant's approach to operating rule compliance is the proverbial 'accident waiting to

11   happen'" and continued that Amtrak "should not be required to retain Claimant until there is a

12   serious incident where injuries, damage or delays occur because of Claimant's misguided

13   decision to short cut operating rules."   (Shelton Dec., ¶ 12 and Ex. E; Pl. Depo., 155:17-24 and

14   Pl. Depo. Exh. 21.)

15   30.    Removed

16   **PLAINTIFF APPLIES REPEATEDLY FOR PROMOTION TO ENGINEER**

17   31.    Removed

18   32.    Removed

19   33.    Removed

20   34.    Removed

21   35.    Removed

22   **Plaintiff's Applications Within His First Year Of Employment**

23   36.    Within his first year of employment, Plaintiff submitted two applications for

24   promotion to Engineer position. (Pl. Depo, 52:25—53:5, 187:17-21, 53:18-24, 187:17-21)

25   37.    Removed

26   38.    Plaintiff knew that AMTRAK had a one-year policy because Oughton informed

27   him of it when he was hired. (Pl. Depo., 54:23—55:7; Pl. Depo, 53:22—54:8, 54:23—55:10,

28   187:17-21.)

---

4

JOINT SEPARATE STATEMENT OF UNDISPUTED FACTS                    Case No. C05-05434 MJJ

39.    Removed

40.    Plaintiff believes the application of AMTRAK's one year policy in 1998 and 1999 was discriminatory because he believes AMTRAK promoted other employees to Engineer who had worked less than a year. (Pl. Depo., 55:11-15)

41.    Removed

42.    Removed

43.    Plaintiff did not file a lawsuit under 42 U.S.C. 1981 within four years of his unsuccessful applications in October 1998 or June 1999.

### Plaintiff's Alleged 2000 Application

44.    AMTRAK's records show that Plaintiff never applied for Locomotive Engineer Trainee in the year 2000: OAK0315, OC0031, and 50117308. (Venturelli Decl., ¶ 13; Pl. Depo., 298:15—299:3)

### Plaintiff's 2001 Application

45.    Plaintiff alleges that he applied for an Engineer position in 2001 and was not promoted, despite allegedly being more qualified than Caucasian employees who were promoted. (First Amended Complaint ("FAC"), ¶¶ 8, 9.)

46.    Removed

47.    Amtrak records reflect that on August 14, 2001, Plaintiff applied for an Engineer position out of Amtrak's San Jose, California facility, was interviewed on October 12, 2001, and received a 3/5 interview score. (Ho Dec., ¶¶ 8, 10, Ex. H.)

48.    On January 25, 2002, Plaintiff was issued a letter advising him that he had not been selected for the position. (Ho Dec., ¶ 11 and Ex. I thereto.)

49.    Five job offers were extended for Engineer Trainee positions in 2001. Three candidates received a score of 2 on the interview, with 1 being the highest possible score. Two other candidates given offers received a score of 3, the same score as Plaintiff's. No candidate with an interview score lower than Plaintiff was offered an Engineer position. (Ho Dec., ¶ 12.)

50.    Removed

JOINT SEPARATE STATEMENT OF UNDISPUTED FACTS                Case No. C05-05434 MJJ

51.    Removed

52.    Removed

**Plaintiff Alleged Application in 2002**

53.    Plaintiff alleges that he again applied for an Engineer position in 2002.  (FAC, ¶ 9.)  Plaintiff further alleges that he received a call canceling his interview and that Amtrak failed to reschedule his interview as promised. (FAC, ¶9.)

54.    Removed

55.    Removed

**Plaintiff's Application in November 2003**

56.    Plaintiff applied for another Engineer trainee position in November 2003.  (Ho Dec., ¶ 5.)

57.    As reflected on the posting, Amtrak was only considering internal applicants for the position.  (Ho Dec., ¶ 4; Pl. Depo., 190:5—192:2 and Pl. Depo. Exh. 23.)

58.    Removed

59.    Removed

60.    Removed

**Plaintiff's Extensive Discipline Record Excluded Him from Promotion Consideration in 2004**

61.    Removed

62.    Plaintiff applied for the Oakland positions on May 17, 2004 and was subsequently interviewed by Sue Venturelli, Larry Follis, and union representative Chad Skinner.  (Venturelli Dec., ¶ 14; Follis Dec., ¶ 2.)

63.    Removed

64.    Removed

65.    Removed

66.    Plaintiff was notified that Amtrak had denied his 2004 application for promotion. (Pl. Dep. 229:14-22.)

JOINT SEPARATE STATEMENT OF UNDISPUTED FACTS                    Case No. C05-05434 MJJ

## PLAINTIFF'S RETALIATION CLAIM

67.    Plaintiff filed a Charge of Discrimination with the EEOC and DFEH against Amtrak on February 9, 2004 alleging race discrimination for not being called to interview for the Engineer position that posted in November 2003.  (Pl. Dep. 65:18-66:10 and Pl. Depo. Ex. 3 and 4.)    He later filed a Complaint of Discrimination with the DFEH on August 17, 2005 alleging that his September 17, 2004 termination was a result of race discrimination and retaliation by Amtrak for his previous complaint to the EEOC in February 2004.  (Pl. Depo., 75:13-76:20, Pl. Depo. Ex. 5 and 6.)

68.    Removed

69.    Removed

70.    Removed

71.    Removed

72.    Removed

Respectfully submitted,

Dated: May _11_, 2007

PRICE AND ASSOCIATES

By:_____

PAMELA Y. PRICE
Attorneys for Plaintiff
JOHN EARL CAMPBELL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

JACKSON LEWIS LLP

Dated: May ⎜⎟, 2007                    By: _____

Kathleen Maylin
Cara Ching-Senaha
Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK and JOE
DEELY

H:\N\National Railroad Passenger Corp (40707)\Campbell (89560)\Pleadings\MSJ\JOINT separate stmt of undisputed facts - REVISED.doc

---

JOINT SEPARATE STATEMENT OF UNDISPUTED FACTS                    Case No. C05-05434 MJJ