1  Kathleen Maylin (SBN 155371)
   Cara Ching-Senaha (SBN 209467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California 94105
   Telephone: (415) 394-9400
4  Facsimile: (415) 394-9401

5  Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
6  CORPORATION dba AMTRAK and JOE DEELY

7

8                 UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  JOHN EARL CAMPBELL,                  Case No. C05-05434 MJJ (EDL)

12          Plaintiff,
                                         **_SUPPLEMENTAL_ DECLARATION OF**
13      v.                               **CARA CHING-SENAHA IN SUPPORT**
                                         **OF DEFENDANT NATIONAL**
14  NATIONAL    RAILROAD    PASSENGER    **RAILROAD PASSENGER**
    CORPORATION dba AMTRAK, JOE DEELY,   **CORPORATION'S REQUEST FOR**
15  and DOES 1-15, inclusive,            **LEAVE TO FILE MOTION FOR**
                                         **RECONSIDERATION OF ORDER RE**
16          Defendants.                  **MOTIONS TO COMPEL**

17                                       [CONCURRENTLY FILED HEREWITH:
                                         NOTICE OF SUPPLEMENTAL FILING
18                                       IN SUPPORT OF DEFENDANT
                                         NATIONAL RAILROAD PASSENGER
19                                       CORPORATION'S REQUEST FOR
                                         LEAVE TO FILE MOTION FOR
20                                       RECONSIDERATION OF ORDER RE
                                         MOTIONS TO COMPEL]
21

22                                       Complaint Filed:   12/30/05
                                         FAC Filed:         2/23/06
23                                       Trial:             7/23/2007

24                                       Hearing Date: May 1, 2007
                                         Hearing Time: 9:00 a.m.
25                                       Dept.: Courtroom E, 15th Floor
                                         Magistrate Judge Elizabeth D. Laporte
26

27                                       [L.R. 7-9(a), (b)]

28

                                         1

1    I, Cara Ching-Senaha, declare on the basis of personal knowledge:

2    1.    I am an attorney with the law firm of Jackson Lewis LLP, counsel of record for

3    Defendants NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK and JOE

4    DEELY. I am licensed to practice law in the above-referenced district court. I make the

5    following statements based on personal knowledge.

6    2.    I attended the discovery hearing before Magistrate Judge Elizabeth D. Laporte on

7    May 1, 2007 at 2:00 p.m.

8    3.    Our office previously ordered a copy of the hearing transcript from the court

9    reporter who recorded the hearing.

10    4.    Attached hereto as Exhibit A is a true and correct copy of the discovery hearing

11    transcript, which we received this morning excerpts from the court reporter.

12

13    Executed this 5th day of June, 2007 in San Francisco, California. I declare under penalty

14    of perjury under the laws of California and the United States of America that the foregoing is true

15    and correct.

16                                 CARA CHING-SENAHA

17

18    H:\N\National Railroad Passenger Corp (40707)\Campbell (89560)\Pleadings\Motion for Reconsideration\CMC suppl declaration ISO
19    recon req 060507.doc

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL DECLARATION OF CARA CHING-SENAHA IN SUPPORT OF DFDT. AMTRAK'S
REQUEST FOR LEAVE TO FILE MOTION FOR RECONSIDERATION    Case No. C05-05434 MJJ (EDL)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

*SUPPLEMENTAL* DECLARATION OF CARA CHING-SENAHA IN SUPPORT OF DFDT. AMTRAK'S
REQUEST FOR LEAVE TO FILE MOTION FOR RECONSIDERATION    Case No. C05-05434 MJJ (EDL)

5107RR

1

```
1                    UNITED STATES DISTRICT COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3

4    JOHN EARL CAMPBELL,           )

5                    PLAINTIFF,    )

6    VERSUS                        )   CASE NO. C05-5434 MJJ(EDL)

7                                  )   MAY 1, 2007

8    NATIONAL RAILROAD             )   SAN FRANCISCO, CALIFORNIA

9    PASSENGER CORPORATION,        )

10                   DEFENDANT.    )

11   _____)

12           BEFORE THE HONORABLE ELIZABETH D. LAPORTE

13              UNITED STATES DISTRICT COURT JUDGE

14   APPEARANCES:
     FOR PLAINTIFF:        PAMELA PRICE
15   (VIA TELEPHONE)       ATTORNEY AT LAW
                           1611 TELEGRAPH AVENUE STE 1450
16                         OAKLAND, CALIFORNIA 94612

17

18   FOR DEFENDANT:        JACKSON LEWIS
                           BY:  CARA CHING-SENAHA
19                         ATTORNEY AT LAW
                           199 FREMONT STREET 10TH FL.
20                         SAN FRANCISCO, CALIFORNIA 94105

21

22

23   REPORTED BY:          JUANITA GONZALEZ

24                         CSR NO. 3003

25
```

2

```
1           THE CLERK:  CALLING CIVIL 05-5434, JOHN EARL CAMPBELL

2    VERSUS NATIONAL RAILROAD PASSENGER CORPORATION.
```

5107RR

3          YOUR APPEARANCES, PLEASE, COUNSEL.

4          MS. PRICE:  (VIA TELEPHONE)  PAMELA PRICE ON BEHALF OF

5     PLAINTIFF JOHN EARL CAMPBELL.  GOOD AFTERNOON.

6          MS. CHING-SENAHA:  CARA CHING-SENAHA ON BEHALF OF

7     NATIONAL RAILROAD PASSENGER CORPORATION AKA AMTRAK.

8          THE COURT:  ALL RIGHT.  NOW, YOU HAVE A LOT OF DISPUTES

9     AND I AM DISAPPOINTED THERE HASN'T BEEN THE ABILITY TO RESOLVE

10    THESE AFTER THE PRIOR SEVERAL MOTIONS.  BUT HERE WE ARE AGAIN.

11    ARE YOU STILL FIGHTING OVER THE GEOGRAPHIC SCOPE?

12         MS. PRICE:  I DON'T BELIEVE SO, YOUR HONOR.  I THOUGHT

13    THE COURT HAD RESOLVED THAT WITH AN ORDER.

14         THE COURT:  ALL RIGHT.  IS INTERROGATORY ONE IN

15    DISPUTE, THE NUMBER OF COMPLAINTS --

16         MS. CHING-SENAHA:  WELL, SOMETHING I WAS GOING TO SAY.

17    ACTUALLY, NO, I DON'T BELIEVE IT IS.  YOUR HONOR ACTUALLY, AFTER

18    ALL THAT BRIEFING WAS DONE, YOUR HONOR MADE A RULING.  I DON'T

19    BELIEVE IT'S IN DISPUTES.

20         THE COURT:  OKAY.  TELL ME WHAT IS IN DISPUTE, FIVE AND

21    SIX?

22         MS. PRICE:  YES, YOUR HONOR, I BELIEVE SO.  FIVE, SIX

23    NINE, 10, 11, 12, AND INTERROGATORIES -- EVERYTHING EXCEPT FOR

24    NUMBER ONE.  I HAVE BEEN GETTING RESPONSES EVERYDAY.  SO IF

25    COUNSEL COULD TELL US IF THERE HAS BEEN SOME SUPPLEMENTAL

3

1     RESPONSE I AM NOT AWARE OF.

2          MS. CHING-SENAHA:  THERE IS NO SUPPLEMENTAL RESPONSE TO

3     THE INTERROGATORIES THAT IS THE SUBJECT OF THE SECOND MOTION TO

4     COMPEL AND THE SUBJECT THAT IS THE THIRD MOTION TO COMPEL, I

5     BELIEVE WE BRIEFED WHAT WAS MOOT AND WHAT IS STILL AT ISSUE.

5107RR

6           THE COURT:  WELL, FIVE AND SIX IS THE TOTAL NUMBER OF
7   ASSISTING CONDUCTORS AND WHO AMONG THEM WERE AFRICAN AMERICAN
8   FROM '98 TO THE PRESENT.  IN GENERAL, STATISTICAL INFORMATION
9   CAN BE RELEVANT TO NOT JUST IN DISPARATE IMPACT CASES, EVEN IN
10  DISPARATE TREATMENT CASES.  NOW, WHETHER THE PLAINTIFF IS GOING
11  TO BE ABLE TO USE IT EFFECTIVELY WITHOUT AN EXPERT, I DON'T
12  KNOW.  IT'S POSSIBLE.  THEY MAY NEED TO CROSS-EXAMINE YOUR
13  EXPERT OR THERE MAY BE OTHER REASONS.  GENERALLY SPEAKING, IT'S
14  RELEVANT.

15          MS CHING-SENAHA:  MY UNDERSTANDING IS THAT NO EXPERT
16  HAS BEEN DESIGNATED BY EITHER SIDE AND THE ISSUE WITH RESPECT TO
17  FIVE AND SIX RELATES SPECIFICALLY TO ASSISTANT CONDUCTORS.  MR.
18  CAMPBELL WAS PROMOTED TWICE AND WAS ABOVE AN ASSISTANT
19  CONDUCTOR.  HIS ISSUE, AS I UNDERSTAND IT, PLED IN THE FIRST
20  AMENDED COMPLAINT, IS HIS LACK OF PROMOTION OR FAILURE TO BE
21  PROMOTED TO ENGINEER.  THAT IS THE ISSUE THAT'S REALLY AT ISSUE
22  HERE.

23          THE COURT:  SO ENGINEERS  -- WHY DO YOU WANT ASSISTANT
24  CONDUCTORS?

25          MS. PRICE:  BECAUSE THE DATA THAT WE HAVE, AS COUNSEL

0

                                                              4

1   IS WELL AWARE, MR. CAMPBELL'S COMPLAINT WAS THAT PEOPLE WHO
2   REPORTED TO HIM, WHO WERE ASSISTANT CONDUCTORS WHO HE TRAINED,
3   WERE PROMOTED TO ENGINEER.  COUNSEL IS CORRECT, YES, YOU'RE
4   SUPPOSED TO BE A CONDUCTOR BEFORE YOU GET TO BE AN ENGINEER, BUT
5   THAT'S NOT WHAT'S HAPPENING.  MOST OF THE PEOPLE THAT WE HAVE
6   IDENTIFIED AS COMPARATORS, SIMILARLY SITUATED PERSONS, HAVE BEEN
7   ASSISTANT CONDUCTORS THAT HE TRAINED, AND THEY WERE PROMOTED
8   WITHOUT HAVING TO BE CONDUCTORS.

9           SO IT'S VERY RELEVANT.  THAT IS THE POOL FROM WHICH
                         Page 3

5107RR

10  AMTRAK IS PROMOTING PEOPLE TO ENGINEERS.  WE WOULD LIKE TO KNOW
11  HOW MANY THERE ARE TOTAL AND HOW MANY OF THOSE ARE
12  AFRICAN/AMERICANS.

13        MS. CHING-SENAHA:  I UNDERSTAND COUNSEL TO BE TALKING
14  AGAIN ABOUT THE POOL FROM WHICH THE ENGINEERS ARE SELECTED.  IN
15  OTHER WORDS, THE POOL OF APPLICANT ENGINEERS, NOT THE POOL OF
16  APPLICANT ASSISTANT CONDUCTORS.  MR. CAMPBELL WAS PROMOTED
17  TWICE.  HE WAS ASSISTANT CONDUCTOR FOR LESS THAN A YEAR, AND IN
18  1999 HE WAS NO LONGER ASSISTANT CONDUCTOR.  SO I SUBMIT TO THE
19  COURT THAT THE RELEVANT POOL IS NOT ASSISTANT CONDUCTORS.   MR.
20  CAMPBELL HAD LONG SURPASSED --

21        MS. PRICE:  WELL, THE PEOPLE WHO WE HAVE IDENTIFIED AS
22  COMPARATORS WERE ASSISTANT CONDUCTORS.  PEOPLE HE WAS TRAINING
23  WERE PROMOTED TO THE ENGINEER POSITION, AND HE WAS NOT PROMOTED.
24  THE RECORD SHOULD BE CLEAR ABOUT THAT.

25        MR. CAMPBELL BECAME A CONDUCTOR BY VIRTUE OF HIS UNION

5

1  SENIORITY.  HE BID ON THE ASSISTANT CONDUCTOR POSITION AND THE
2  CONDUCTOR POSITION.  HE TOOK A PAY CUT TO BECOME AN ASSISTANT
3  CONDUCTOR IN THE YARD; SO THERE WAS NO PROMOTIONAL PRACTICE BY
4  WHICH HE RECEIVED EITHER ONE OF THOSE POSITIONS, AND THAT'S NOT
5  HOW IT WORKS.  YOU BID ON THEM.  YOU HAVE SENIORITY, YOU GET IT.
6  IT'S A POSTED POSITION.  THERE IS NO APPLICATION, INTERVIEW,
7  SELECTION PROCESS.  IT'S A BID PROCESS.

8        THE COURT:  MISS PRICE.

9        MS. PRICE:  HE WAS NOT PROMOTED, TWICE.

10        THE COURT:  MISS PRICE, I'M NOT GOING TO ALLOW YOU TO
11  APPEAR BY PHONE AGAIN.  I CAN'T GET A WORD IN EDGEWISE, AND IF
12  YOU CONTINUE TO MAKE THE SAME POINT, AND I DON'T NEED IT MADE,

5107RR
13  AND YOU GO ON AT LENGTH, IT'S NOT VERY PRODUCTIVE.

14          MS. PRICE:  YES, YOUR HONOR.

15          THE COURT:  I MEAN, YOU'RE ONLY IN THE EAST BAY, YOU

16  KNOW.

17          MS. PRICE:  UNDER THE BRIDGE.

18          THE COURT:  ALL RIGHT.  YOU DO HAVE A BETTER EXCUSE

19  NOW, BUT BART IS APPARENTLY RUNNING.

20          MS. PRICE:  A LOT OF PEOPLE ON IT.  I APPRECIATE BEING

21  ABLE TO APPEAR BY TELEPHONE, YOUR HONOR IN OPPOSITION TO THIS

22  MOTION FOR SUMMARY JUDGMENT, IT'S DUE TODAY, SO IF I SEEM

23  ARGUMENTATIVE, IT'S BECAUSE I'M WRITING THE MOTION AND I'M

24  DEFINITELY PASSIONATE ABOUT WHAT I AM SEEING IN TERMS OF THE

25  EVIDENCE.

6

1           THE COURT:  TONE IT DOWN FOR THIS FORUM.

2           WELL, I HAVE TO GIVE THE PLAINTIFFS SOME ROOM FOR THEIR

3   THEORY OF THE CASE, WHICH MAY OR MAY NOT BE MISGUIDED, AT LEAST

4   IN YOUR VIEW.  SO I AM GOING TO ALLOW THEM TO GET THAT DATA.

5   AS I SAID, IT'S HARD TO FOR ME TO TELL, BUT I AM NOT HERE TO

6   RULE ON THE MERITS.  IT MAY BE THAT IT'S UNAVAILABLE TO THE

7   PLAINTIFF, BUT I DON'T THINK IT'S EXTREMELY BURDENSOME AND THEY

8   THINK IT'S RELEVANT, AND HAVE A THEORY OF RELEVANCE.  SO I AM

9   GOING TO OVERRULE THAT OBJECTION.  SO THAT'S TO FIVE AND SIX,

10  ASSISTANT CONDUCTORS.

11          SEVEN AND EIGHT ARE NO LONGER AN ISSUE, CORRECT?

12          MS. PRICE:  CORRECT.

13          THE COURT:  SO NINE HAS TO DO WITH ASSISTANT

14  CONDUCTORS.

15          MS. CHING-SENAHA:  AGAIN, YOUR HONOR --

16          THE COURT:  IT'S REALLY THE SAME ISSUE.
                          Page 5

5107RR

17        MS CHING-SENAHA:  YES, YOUR HONOR.  IT'S THE SAME
18  RULING.
19        THE COURT:  TEN IDENTIFIES THE AFRICAN AMERICA
20  CONDUCTORS WHO APPLIED FOR A POSITION AS ENGINEER.  NOW, I AM
21  OVERRULING THE OBJECTION.  IT EXCEEDS THE PERMISSIBLE NUMBER OF
22  INTERROGATORIES.  IN GENERAL, THINGS THAT ARE ON A COMMON
23  SUBJECT COUNT AS ONE; AND IN ANY CASE, I THINK, PERSONALLY, THAT
24  UNLESS WE'RE TAKING ABOUT VERY EXCESSIVE, OVER 25, THE PARTIES
25  WORK THESE THING OUT AND NOT BURDEN THE COURT WITH COUNTING

7

1  INTERROGATORIES.
2        NOW, IS THERE ANY DIFFERENCE ON THE RELEVANCE ISSUE ON
3  THIS ONE?
4        MS CHING-SENAHA:  NUMBER 10?
5        THE COURT:  YES, FROM THE EARLIER ONES.  IN OTHER
6  WORDS, IT SEEMS TO BE AS RELEVANT AS THE OTHER ONES.  ANY REASON
7  WHY I SHOULD RULE DIFFERENTLY ON THIS?
8        MS. CHING-SENAHA:  THE ONLY OBJECTION THAT I WOULD HAVE
9  TO THE PACIFIC DIVISION IS THE SAME OBJECTION YOUR HONOR
10  SUSTAINED ON APRIL 17; THAT IS THAT WE'RE LOOKING AT LOCATIONS
11  IN WHICH MR. CAMPBELL WAS INTERESTED AND APPLIED AND WHICH HE
12  TESTIFIED AT DEPOSITION HE APPLIED, WHICH IS OPEN.  THAT'S THE
13  ONLY OBJECTION.
14        THE COURT:  WHAT ABOUT THAT GEOGRAPHICAL ISSUE?
15        MS. PRICE:  MR. CAMPBELL APPLIED FOR -- HE WAS
16  INTERVIEWED FOR A POSITION IN SAN JOSE.  IT'S NOT ACCURATE THAT
17  HE WAS ONLY -- WELL, THERE WAS A PERIOD OF TIME WHERE
18  MR. CAMPBELL WAS THE PRIMARY CARETAKER FOR HIS MOTHER.  THAT'S
19  WHAT HE TESTIFIED TO; THAT HE WAS NOT INTERESTED OUTSIDE OF

Page 6

5107RR
20  OAKLAND BECAUSE HIS MOTHER WAS SICK.  HIS MOTHER PASSED AWAY IN

21  NOVEMBER OF 2002 AND MR. CAMPBELL APPLIED FOR PROMOTION TWO

22  ADDITIONAL TIMES AFTER THAT.  ONE OF THEM THAT HE WAS ACTUALLY

23  INTERVIEWED FOR A SAN JOSE POSITION.  SO WHEN WE SAY -- I AM

24  PREPARED TO LIMIT THE SCOPE TO THE BAY AREA LOCATION.  THAT

25  WOULD INCLUDE SAN JOSE, SACRAMENTO, AND OAKLAND.


8

 1          THE COURT:  I THINK THOSE ARE THE THREE WE HAD LAST

 2  TIME.

 3          MS. CHING-SENAHA:  I JUST WANT TO POINT THE COURT TO

 4  THE TRANSCRIPT OF MR. CAMPBELL'S DEPOSITION IN WHICH HE

 5  ADMITTED, AT PAGE 45, LINE 9.

 6          "ISN'T IT FAIR TO SAY THAT YOU WEREN'T INTERESTED IN A

 7  POSITION OUTSIDE OF THE OAKLAND SITE?"

 8          THERE IS AN OBJECTION.

 9          "WITNESS:  CORRECT."

10          "WHY IS THAT?"

11          HE GOES ON TO GIVE THE REASON THAT MISS PRICE STATED.

12  HOWEVER, HE NEVER TESTIFIED HE WAS INTERESTED IN ANY OTHER

13  LOCATION OTHER THAN OAKLAND, AND I THINK GIVEN THE PLAINTIFF'S

14  OWN TESTIMONY, THAT IS THE PROPER SCOPE.

15          THE COURT:  HE ACTUALLY APPLIED AND WAS INTERVIEWED FOR

16  A DIFFERENT ONE.

17          MS.CHING-SENAHA:  I DON'T BELIEVE HE WAS.

18          THE COURT:  MISS PRICE?

19          MS. PRICE:  YES, YOUR HONOR.

20          THE COURT:  ARE YOU CERTAIN THAT HE IN FACT DID APPLY

21  FOR ANOTHER  --

22          MS. PRICE:  THAT HE WAS INTERVIEWED BY MARK COLLINS IN

23  SAN JOSE DURING THE TIME THAT HE ACTUALLY WAS ASSIGNED TO SAN

Page 7

24  FRANCISCO.  MR. CAMPBELL WORKED FOR A YEAR IN SAN FRANCISCO AND

25  WOULD HAVE BEEN GLAD TO HAVE BEEN AN ENGINEER IN SAN FRANCISCO,

☐

9

1  AND HE WENT TO SAN JOSE TO BE INTERVIEWED BY MARK COLLINS AT THE

2  TIME HE WAS WORKING IN SAN FRANCISCO IN 2003 AFTER HIS MOTHER

3  DIED.

4           THE COURT:  WHAT'S THE RELEVANCE OF SACRAMENTO?

5           MS. PRICE:  IT'S THE POSITION THAT THEY HAVE SAID WHEN

6  THEY INTERVIEW PEOPLE THEY CAN PUT THEM BASICALLY ANYWHERE,

7  UNLESS THE PERSON IS -- SACRAMENTO IS A POSITION THAT WHERE

8  PEOPLE WHO WERE SELECTED OUT OF THE 2004 POSITION THAT WENT,

9  WERE SENT TO SACRAMENTO.  THE EVIDENCE THAT MR. CAMPBELL

10  ACTUALLY RECEIVED THE HIGHEST INTERVIEW SCORES IN THE 2004

11  SELECTION PROCESS -- SO HE COULD HAVE, IF THEY WERE REALLY --

12  IT'S OUR CONTENTION IF THINGS WERE BEING DONE FAIRLY, HE SHOULD

13  HAVE BEEN GIVEN HIS PICK OF WHERE HE WANTED TO GO.

14           I'M LOOKING AT MISS VENTERELLI'S DEPOSITION.  THEY

15  FILLED FOUR POSITIONS IN SACRAMENTO -- FROM EXHIBIT 35, IT SHOWS

16  THAT FOUR PEOPLE OUT OF OAKLAND WERE ASSIGNED TO SACRAMENTO, AND

17  I BELIEVE THREE OF THOSE PEOPLE, MR. CAMPBELL TRAINED.

18           THE COURT:  WELL, I'M GOING TO ALLOW THE BAY AREA

19  LOCATIONS.

20           MS. CHING-SENAHA:  I DO WANT TO RESPOND TO WHAT I THINK

21  IS A LIBERAL, IF NOT SOMETHING ELSE, INTERPRETATION OF THE

22  RECORD.  THAT WASN'T THE TESTIMONY ABOUT PLACEMENT OF

23  INDIVIDUALS.  EACH POSITION THAT IS POSTED FOR THAT LOCATION

24  MUST BE FILLED WITH APPLICANTS WHO APPLY FOR THAT POSITION.  SO

25  IF SOMEONE APPLIED FOR ONLY SAN JOSE, THEY WOULD ONLY BE

5107RR

10

1  CONSIDERED FOR SAN JOSE.

2       THE COURT:  BOTH OF YOU -- I'M NOT GOING TO BE RULING
3  ON THE MERITS, SO I THINK --

4       MS CHING-SENAHA:  I THINK IT AFFECTS THE SCOPE.  THAT'S
5  WHY I'M CONCERNED ABOUT THESE -- MISS PRICE IS NOW TESTIFYING --
6  AND THERE IS NO POINTING TO THE RECORDS OF WHERE THIS IS.

7       THE COURT:  OKAY.  MY RULING STANDS.  ALL RIGHT.  WHAT
8  NOW ARE WE ON?  WE HAVE JUST TONS OF THINGS THAT YOU ALL DID NOT
9  RESOLVE THAT I'M TRYING TO GET THROUGH.

10      MS. CHING-SENAHA:  THERE WAS NO ATTEMPT TO RESOLVE.
11  THAT'S THE POINT BROUGHT UP IN OUR PAPERS.  THE FIRST POINT IS
12  THAT THERE WAS NO ATTEMPT TO MEET AND CONFER.  WE RECEIVED A
13  LETTER A DAY BEFORE THE MOTION WAS FILED.

14      THE COURT:  MISS PRICE.

15      MS. PRICE:  I CALLED THEM, YOUR HONOR.  THEY WENT ON
16  VACATION.  THEY TOLD ME MISS MAYLIN WOULD BE BACK.  MR. OSBORNE
17  IS IN THE CASE.  HE WOULDN'T RESPOND TO ME.  NOBODY RESPONDED.

18      MS. CHING-SENAHA:  I WENT ON VACATION THE DAY THE
19  MOTION WAS FILED.

20      THE COURT:  WELL, ALL RIGHT.  THERE IS A LOT OF
21  FRUSTRATION.  I DON'T WANT TO BE IN A POSITION OF SHARING THE
22  PARTIES' FRUSTRATION.  SO YOUR POINT MAY BE RIGHT, BUT I'M GOING
23  TO FOLLOW THROUGH ON THE MERITS AND TRY TO GET THIS OVERWITH.

24      SO WHAT NUMBER ARE WE ON?

25      MS. PRICE:  11 AND 12, YOUR HONOR.  IT ASKS FOR THE

11

1  TERMINATION OF ASSISTANT CONDUCTORS BY RACE.  12 ASKS FOR THE
2  TERMINATION OF AFRICAN AMERICAN ENGINEERS.
                        Page 9

5107RR

3        MS CHING-SENAHA:  BASICALLY EVERYONE WHO HAS EVER BEEN

4  FIRED FROM AMTRAK FOR THE LAST 10 YEARS.

5        THE COURT:  ONLY IF THEY'RE AFRICAN/AMERICAN, OR

6  EVERYBODY?

7        MS. PRICE:  PRESUMABLY THEY FIRED PEOPLE OTHER THAN

8  ASSISTANCE CONDUCTORS.  ELEVEN ASK THEM TO LIST, BY RACE ONLY,

9  ALL ASSISTANCE CONDUCTORS TERMINATED.

10        THE COURT:  INVOLUNTARILY.  WHY FROM '95?

11        MS. PRICE:  MR. CAMPBELL HAS BEEN THERE SINCE 1990 --

12  HE HAS BEEN IN THERE SINCE '98, BUT IT'S OUR CONTENTION THAT

13  THIS PROBLEM DATES FROM AT LEAST 1995, AND WE INTEND TO PRESENT

14  EVIDENCE OF THAT.:

15        MS. CHING-SENAHA:  WELL, I BELIEVE, YOUR HONOR, WHEN WE

16  LAST ADDRESSED THIS ISSUE, MISS PRICE ARGUED THAT IT WAS BECAUSE

17  THERE WAS A PARTICULAR INDIVIDUAL, JOE DEELY, WHO ALSO IS AN

18  INDIVIDUAL DEFENDANT IN THIS CASE, AND THAT IT WAS BECAUSE OF

19  HIS PRESENCE AS GENERAL SUPERINTENDENT THAT THERE WERE ALL THESE

20  ALLEGED PATTERNS WITH RESPECT TO HIRING AND FIRING.  HOWEVER,

21  MR. DEELY WAS NOT GENERAL SUPERINTENDENT UNTIL NOVEMBER 2002,

22  AND NOW THAT THAT FACT DOESN'T FIT MISS PRICE'S THEORY, SHE WENT

23  BACK TO ANOTHER THEORY TAKING IT BACK TO '95.

24        THE COURT:  WELL, ALL RIGHT.  SHE IS TRYING TO GET THE

25  STATISTICS WITHOUT IDENTIFYING INDIVIDUALS.  SO THE OBJECTION IS

12

1  OVERRULED AND THE NUMBER OF INTERROGATORIES IS OVERRULED.  SO I

2  THINK IT SHOULD JUST BE THE STATISTICS AND THE RELEVANT TIME

3  PERIOD, BUT I'M NOT CLEAR THAT YOU NEED TO GO BACK TO '95.  I

4  THINK 12 ASKS FOR JANUARY '98, DOESN'T IT?

5        MS. PRICE:  YES, YOUR HONOR.

Page 10

```
                                   5107RR
 6          THE COURT: SO LET'S GO FROM JANUARY '98.
 7          MS. CHING-SENAHA: ARE WE TALKING ABOUT THE SAME
 8   GEOGRAPHIC LOCATIONS?
 9          THE COURT SAME GEOGRAPHICAL LOCATIONS, CORRECT?
10          MS. PRICE: YES, YOUR HONOR.
11          THE COURT: SO 13 TO 17 FIRST -- DECIDED TO HIRE AND
12   PROMOTE 24 DIFFERENT PEOPLE TO ENGINEER.
13          NOW, DID YOU PROVIDE THAT INFORMATION THROUGH
14   DOCUMENTS? IS THAT WHAT YOU'RE SAYING?
15          MS. CHING-SENAHA: AMTRAK PROVIDED THE ACTUAL APPLICANT
16   FILES AND EVERYTHING ASSOCIATED WITH THOSE APPLICATIONS, WHICH
17   WOULD INCLUDE THE SIGNED OFF OF THE PERSON WHO MAKES THE
18   DECISION TO HIRE THAT PARTICULAR ENGINEER. SO ALL THESE
19   DOCUMENTS ARE ALREADY IN MISS PRICE'S POSSESSION AND I DON'T
20   THINK THERE IS ANY OTHER WAY TO COLLECT THAT INFORMATION SHORT
21   OF GOING THROUGH IT ONE BY ONE AS, PRESUMABLY, MISS PRICED HAS
22   ALREADY DONE.
23          THE COURT: CAN YOU GIVE HER BATES RANGES?
24          MS. CHING-SENAHA: THERE IS OVER 10,000 PAGES.
25          THE COURT: WELL, MISS PRICE, HAVE YOU LOOKED THROUGH
```

                                                            13

```
 1   THAT?
 2          MS. PRICE: YEAH. SHE IS RIGHT. THEY GAVE US 10,000
 3   PAGES WITHOUT ANY KIND OF PLEADING, RESPONSE, ANYTHING. AND WE
 4   HAVE GONE THROUGH THEM AS BEST WE CAN, BUT IT'S OBVIOUSLY
 5   OVERWHELMING AND IS CONFUSING AND YOU DON'T KNOW WHEN YOU FOUND
 6   EVERYTHING OR NOT.
 7          MS. CHING-SENAHA: WELL, UNFORTUNATELY, THAT IS THE
 8   ONLY WAY -- IT'S EQUALLY BURDENSOME ---
 9          THE COURT: IF IT'S PARTICULARLY BURDENSOME, THEN I AM
                          Page 11
```

5107RR

10  NOT GOING TO ORDER IT, BUT  --

11        MS. PRICE:  WELL, YOUR HONOR, THEY PUT IT TOGETHER.

12  THEY KNEW WHEN THEY PUT IT TOGETHER WHAT THEY WERE PUTTING

13  TOGETHER.  THEY COULD HAVE EASILY IDENTIFIED THESE DOCUMENTS AS

14  OPPOSED TO JUST PUTTING THEM ALL IN A BOX.  SOME OF THEM ARE NOT

15  ALWAYS IN ORDER, AND THEY JUST GIVE IT TO US.

16        THE COURT:  YOU HAVE TO EITHER LABEL THEM ACCORDING TO

17  HOW THEY'RE KEPT IN THE USUAL COURSE OF BUSINESS.  IF YOU DIDN'T

18  DO THAT, PROVIDE IT MORE.  IF YOU HAVE A SPECIFIC QUESTION, THEN

19  YOU SHOULD MEET AND CONFER ABOUT THAT AND SEE IF YOU CAN GET

20  SOME GUIDANCE, MISS PRICE.   OTHERWISE, DENIED.

21        THE COURT:  NUMBER 18.

22        MS. CHING-SENAHA:  THEY'RE ALL THE SAME.

23        THE COURT:  SAME ISSUE, SO SAME RULING.  ALL RIGHT.

24        NOW WE STILL HAVE DOCUMENT REQUESTS.

25        MS. CHING-SENAHA:  YES, YOUR HONOR.

14

1        MS. PRICE:  THE INFORMATION THAT COUNSEL IS REFERRING

2  TO THAT I THINK THAT I HAVE, DOES NOT INCLUDE -- THERE IS

3  ANOTHER LAYER OF DECISIONS THAT WE APPARENTLY HAVE BEEN -- HAS

4  BEEN EXPLAINED TO US WHAT COUNSEL DESCRIBED IN THOSE DOCUMENTS,

5  WHICH WE'VE SEEN, ARE THE PANEL INTERVIEW BOOKLETS.  BUT WHAT

6  MISS VETERELLI TESTIFIED TO --SHE'S THEIR H.R. PERSON -- IS THAT

7  AFTER SHE DOES THAT, AFTER THE PANEL INTERVIEWS THEM, THAT THEN

8  THE SUPERINTENDENTS, ONE OR MORE OF THEM, MAKE THE DECISION.  SO

9  I DON'T HAVE DOCUMENTS THAT SHOW ME, FOR INSTANCE, WHO WAS --

10  WHO MADE THE ULTIMATE DECISION TO HIRE MR. OLEMAN OR ANY OF

11  THESE INDIVIDUALS.  I BELIEVE ARE THE INTERVIEW BOOKLET.

12        MS. CHING-SENAHA:  I BELIEVE IT GOES BEYOND THE

Page 12

5107RR
13  INTERVIEW BOOKLETS.  IT ALSO INCLUDES THE FINAL DECISION-MAKING

14  PAPERWORK THAT'S SIGNED OFF, AND UNDER THAT IT'S PRINTED.  SO

15  EVEN IF YOU CAN'T READ THE SIGNATURE, IT'S THERE.  I BELIEVE

16  THERE'S OTHER ADDITIONAL INFORMATION, INCLUDING BACKGROUND CHECK

17  FORMS, E-MAILS ABOUT PROSPECTIVE CANDIDATES.  THAT IS ALL IN THE

18  10,000 PAGES PRODUCED AUGUST OF LAST YEAR.

19          MS. PRICE:  WE HAVE NOT FOUND THAT CONSISTENTLY AT ALL.

20          MS. CHING-SENAHA:  I DON'T KNOW THAT.

21          MS. PRICE:  AND, AGAIN, THEY JUST SENT $10,000

22  DOCUMENTS.

23          THE COURT:  MISS PRICE.  MISS PRICE.  YOU'RE TALKING

24  OVER OTHER PEOPLE.  THE COURT REPORTER CAN'T DO IT.  I CAN'T GET

25  A WORD IN EDGEWISE.  THIS PHONE APPEARANCE IS NOT WORKING VERY

☐

15

1  WELL.

2          MS. PRICE:  SORRY.

3          THE COURT:  ALL RIGHT.  DENIED.

4          18 IS THE SAME.  NOW WE'RE ON DOCUMENTS.

5          MS. CHING-SENAHA:  YES, YOUR HONOR.

6          THE COURT:  OKAY.  I THINK I RULED ON 17.  DID I?  YES.

7  THE DEELY FILE.  WHAT IS STILL AT ISSUE?

8          MS. PRICE:  THEY'VE GIVEN US 18, 19 -- I THINK I GOT

9  YESTERDAY 18, 19, 20, 21.  I DON'T BELIEVE I GOT -- COUNSEL,

10  AGAIN, CORRECT ME IF I'M WRONG.  I DON'T THINK I HAVE A RESPONSE

11  TO 22, 23, 24, THROUGH THE END OF THIS.

12          MS CHING-SENAHA:  CORRECT.  WE DID NOT SUPPLEMENT OUR

13  RESPONSES TO THE DOCUMENTS.  THESE ARE DOCUMENT REQUESTS.

14          THE COURT:  ARE THESE PARALLEL TO THE INTERROGATORIES

15  THAT I ALREADY RULED ON?

16              MS. CHING-SENAHA:  THEY ARE.  HOWEVER, THEY'RE MUCH
                            Page 13

5107RR

17  MORE BURDENSOME.  THE REASON WHY -- NOT JUST ASKING FOR A NUMBER

18  OF INDIVIDUALS WHO APPLY FOR A PARTICULAR POSITION.  IT'S

19  ACTUALLY ASKING FOR EVERY SINGLE RECORD RELATED TO EVERY SINGLE

20  PERSON EVER HIRED FOR THE LAST 10 YEARS.

21         THE COURT:  THEN THAT WOULD BE OVERBROAD.  WE ALREADY

22  NARROWED THE GEOGRAPHIC SCOPE.  IS THERE SOME OTHER APPROPRIATE

23  NARROWING THAT SHOULD BE DONE?

24         MS. CHING-SENAHA:  WELL, I THINK, YOUR HONOR, THERE

25  NEEDS TO BE A MORE SIGNIFICANT AND STRONGER BASIS TO JUSTIFY THE

16

1  PRODUCTION OF HUNDREDS OF VARIOUS APPLICATIONS BEYOND WHAT'S

2  ALREADY BEEN PRODUCED.  AS MISS PRICE SAID, WE PRODUCED IN

3  EXCESS OF 10,000 PAGES, BECAUSE MISS PRICE ASKED FOR EVERY

4  SINGLE APPLICATION FOR A TEN-YEAR TIME PERIOD.

5         THE COURT:  WHY SHOULDN'T THIS BE MODIFIED TO SUBMIT

6  DOCUMENTS SUFFICIENT TO SHOW THE RELEVANT ISSUES?

7         MS. PRICE:  22, FOR INSTANCE, IS NOT FOR 10 YEARS.

8  IT'S SINCE JANUARY OF 1998.  WE'RE ASKING THEM TO GIVE US THE

9  APPLICATION OF EACH AFRICAN AMERICAN CONDUCTOR WHO APPLIED FOR

10  AN ENGINEER POSITION.  WE DON'T THINK THERE ARE THAT MANY, BUT

11  WE DON'T KNOW.

12         MS. CHING-SENAHA:  A PERFECT EXAMPLE WOULD BE THAT THE

13  10,000 PLUS, THEY ONLY SEE A SPECIFIC GEOGRAPHIC LOCATION WHERE

14  MR. CAMPBELL APPLIED.  TIMES THAT IS FOUR OR FIVE, ANOTHER FORTY

15  OR FIFTY THOUSAND PAGES.

16         THE COURT:  SO THAT'S TOO MUCH.  I'M GOING TO ORDER YOU

17  TO MEET AND CONFER AND REACH AN AGREEMENT.  THERE IS RELEVANCE,

18  BUT THERE IS OVER-BREADTH.

19         MS. PRICE:  I APPRECIATE THAT, YOUR HONOR.  I WASN'T

Page 14

5107RR
20 AWARE THAT THERE WERE THAT MANY AFRICAN AMERICAN CONDUCTORS WHO

21 APPLIED FOR ENGINEERS, THAT IT WOULD BE FORTY, 50,000 PAGES.

22          MS. CHING-SENAHA:  SOME WOULD HAVE TO GO  --

23          THE COURT:  OKAY.  KNOW, THIS KIND OF BICKERING TONE IS

24 UNPLEASANT TO THE COURT AND I JUST ISSUED AN ORDER SAYING YOU

25 MEET AND CONFER ON THIS.  I AM ONLY GRANTING IN PART ONLY TO THE

17

1 EXTENT IT'S RELEVANT; BUT IT NEEDS TO BE SIGNIFICANTLY NARROWED

2 SO IT'S NOT UNDULY BURDENSOME AS CURRENTLY.  I HAVE GIVEN YOU

3 GUIDELINES ON NARROWING, BUT THE DEFENDANT HAS TO COME UP WITH

4 MORE COMPELLING REASONS ABOUT HOW MANY DOCUMENTS, NOT JUST

5 GENERALITIES, NO DUMPING THE DOCUMENTS WITHOUT THEM BEING

6 ORGANIZED.  I DON'T KNOW IF IT'S BEEN DONE OR NOT, BUT I'M

7 SAYING THAT.

8          ANYTHING FURTHER?

9          MS. PRICE:  SO THE ORDER IS AS TO 22 THROUGH 29, YOUR

10 HONOR?

11          MS CHING-SENAHA:  28.

12          MS. PRICE:  28 IS ACTUALLY WHERE THEY CUT OFF.

13          THE COURT:  28.

14          MS. PRICE:  29 IS SEPARATE.  PERHAPS WE CAN TALK ABOUT

15 THAT.

16          THE COURT:  BRIEFLY.

17          I AM NOT GOING TO HAVE ANOTHER TELEPHONE APPEARANCE.

18          MS. PRICE:  WELL, I GUESS  --

19          THE COURT:  I THOUGHT YOU HAD AGREED TO COMPROMISE ON

20 29.

21          MS. PRICE:  I THOUGHT THAT I HAD A COMPROMISE, BUT THEN

22 IT DIDN'T -- I THINK IT ULTIMATELY DIDN'T WORK OUT.

23          THE COURT:  THE UNUSUAL INCIDENT REPORT?
                        Page 15

5107RR

24          MS. CHING-SENAHA:  I BELIEVE THAT WAS A COMPROMISE AND
25  I BELIEVE THAT INFORMATION IS STILL BEING COMPILED.


☐

                                                          18

1           THE COURT:  THE UNUSUAL INCIDENT REPORT SO IT'S AS THE
2   PARTIES HAVE AGREED.  AND NUMBER THIRTY IS NOT IN THE SEPARATE
3   STATEMENT OF ISSUES, SO I THINK IT'S MOOT.  SO WE'RE FINISHED.
4   ALL RIGHT.
5           MS. PRICE:  CAN WE HAVE A DATE FOR COMPLIANCE WITH THE
6   ONES THAT YOU HAVE ORDERED, PLEASE.
7           THE COURT:  WHEN?
8           MS. CHING-SENAHA:  NEXT WEEK BEING THE PERIOD FOR
9   DEFENDANTS TO PREPARE THEIR REPLY TO TWO SEPARATE MOTIONS FOR
10  SUMMARY JUDGMENT, IT'S PROBABLY GOING TO HAVE TO BE THREE WEEKS
11  AFTER THAT.  WE'RE TALKING ABOUT TENS OF LOCATIONS.
12          THE COURT:  SO, IN OTHER WORDS, FOUR WEEKS TOTAL IS
13  WHAT YOU'RE ASKING FOR.
14          MS. CHING-SENAHA:  YES.
15          THE COURT:  FOUR WEEKS.  ALL RIGHT.  THANK YOU.
16
17
18
19
20
21
22
23
24
25

5107RR

19

```
1
2
3
4
5
6
7
8          I CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE
9   TRANSCRIPT OF THE PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER.
10
11
12
13
14
15
16
17
18   _____
19   JUANITA GONZALEZ
20   CSR NO. 3003
21
22
23
24
25
```