1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CAMPBELL,

            Plaintiff,

  v.

NATIONAL PASSENGER RAILROAD
CORPORATION ET AL,

           Defendant.

_____/

No. C05-05434 MJJ

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Before the Court are two Motions for Summary Judgment, one brought by each Defendant:
National Railroad Passenger Corporation ("Amtrak") and Joe Deely ("Deely") (collectively,
"Defendants"). (Docket Nos. 38 and 41.) Plaintiff Joe Campbell ("Campbell" or "Plaintiff")
opposes the Motions. For the following reasons, the Court **GRANTS IN PART AND DENIES IN
PART** Defendants' Motions for Summary Judgment.

**FACTUAL BACKGROUND**

**I.    Plaintiff's Employment with Amtrak**

The following facts are undisputed. Plaintiff, an African-American man, began his career
with Amtrak in September 1998. (*See* Campbell Decl. ¶ 3.) For his first year of employment he
worked as an Assistant Conductor. (*See id.*) In September 1999 Plaintiff became an Assistant Yard

**United States District Court**
For the Northern District of California

Conductor. (*See id.* at ¶¶ 3-4.) In 2000, Plaintiff became a Yard Conductor. (*See id.* ¶ 5.) Except for a one-year stint on a special project with the Baby Bullet Project in San Francisco, Plaintiff remained a Yard Conductor until his termination in 2004. (*See id.* ¶¶ 5-6.)

**A.      Plaintiff's Applications for Promotion**

On seven different occasions during Plaintiff's employment with Amtrak he applied, or attempted to apply, for a promotion to an engineer position. (*See id.* ¶¶ 24-28, 30.[1]) Plaintiff was never promoted to an engineer position during his tenure. The promotion process for "Locomotive Engineer Trainee" positions is as follows. Initially, a pool of candidates is given to the personnel department, and the personnel department narrows that list to those candidates that are eligible for the position. (Pamela Price Decl., Exh. C. ("Schulthies Depo.") at 168.) Only the eligible candidates are given to an interviewing committee. (*Id.*) The interviewing committee asks the candidates standardized questions and then votes on a candidate. (*Id.*) The committee then recommends the candidate with the majority of votes to Joe Deely ("Mr. Deely"), the Division Superintendent, who then accepts or rejects the committee's candidates. (*Id.*) Final decision-making authority lies with Mr. Deely. (*Id.* at 168-169.) As far as qualifications, generally the candidate had to be in "train service" for a year, although that rule was not always followed. (*Id.* at 168.) Beyond that, however, seniority was not considered and applicants were evaluated on the basis of their interview score, safety record, discipline record, job experience and managers' recommendations. (*See* Venturelli Decl. ¶ 9.)

Plaintiff's applications, or attempted applications, include:

(1) In October 1998 Plaintiff applied for a train engineer position. (*See* Campbell Decl. ¶ 24.) Plaintiff's supervisors at the time were Tom Oughton and Mark Schulthies. (*See* Cara Ching-Senaha Decl., Exh. A ("Campbell Depo.") at 42:21, 47:22.) Plaintiff filled out the application and returned it to Mr. Schulthies, who was going to write Plaintiff a recommendation before sending the application to Human Resources in Los Angeles. (*See* Campbell Decl. ¶ 24; Campbell Depo. at 53:6-17) Mr. Schulthies testifies that he observed Mr. Oughton throw away Plaintiff's application.

---

[1] Defendants object to the majority of Plaintiff's declaration. The Court does not, however, rely on any portions of this evidence for which Defendants' objections are meritorious. Defendants' objections are discussed in greater detail below.

**United States District Court**
For the Northern District of California

1   (Schulthies Depo. at 65-67.)  Plaintiff did not receive the promotion.  (*See* Campbell Decl. ¶ 24.)

2       (2) In 1999, Plaintiff applied for a departmental transfer in response to an Amtrak job posting

3   in Engine Service and did not receive the position.  (*See id.*)

4       (3) In 2000, Plaintiff applied for a departmental transfer in response to an Amtrak job posting

5   in engine service.  According to Amtrak procedure, Plaintiff mailed and faxed an application to the

6   Human Resources Department in Los Angeles.  (*See id.* ¶ 25.)  Plaintiff received a standard rejection

7   letter in response.  (*See id.*)

8       (4) On August 14, 2001, Plaintiff applied for four engineer positions.  (*See id.* ¶ 26.)

9   According to Amtrak procedure, Plaintiff mailed and faxed an application to the Human Resources

10  Department in Los Angeles.  (*See id.*)  Plaintiff received a letter from Amtrak confirming receipt of

11  the application.  (*See id.*)  Plaintiff also received an interview for the Locomotive Engineer Trainee

12  position, and interviewed with Richard Barnes, Steve Shelton and Richard Edson.  (*See id.*)  Plaintiff

13  did not receive the position.  (*See id.*)

14      (5) In 2002, Plaintiff applied and was interviewed for an engineer position.  (*See id.* ¶ 27.)

15      (6) In 2003, Plaintiff applied for a train engineer position.  (*See id.* ¶ 28.)  According to

16  Amtrak procedure, Plaintiff mailed and faxed an application to the Human Resources Department in

17  Los Angeles.  (*See id.*)  Plaintiff did not receive an interview or the position.  (*See id.*)

18      (7) In May 2004, Plaintiff applied for an engineer position.  (*See id.* ¶ 30.)  According to

19  Amtrak procedure, Plaintiff mailed and faxed an application to the Human Resources Department in

20  Los Angeles.  (*See id.*)  Plaintiff received an interview and on July 7, 2004 was interviewed by Chad

21  Skinner, Larry Follis and Susan Venturelli.  (*See id.* ¶ 31.)  Plaintiff did not receive the position.

22  (*See id.* ¶ 32.)

23      **B.      Plaintiff's Record of Safety-Related Incidents**

24      Amtrak has a formal policy regarding how discipline is assessed.  (Price Decl., Exh. A

25  ("Deely Depo.") at 67:11-15.)  After being charged with a disciplinary violation, a formal

26  investigatory hearing is convened in which the employee, the employee's union representative, and a

27  company representative (referred to as the Charging Officer) attend the hearing and present evidence

28  to a Hearing Officer.  (Shelton Decl. ¶ 5.)  The Hearing Officer is a full-time management employee.

United States District Court
For the Northern District of California

1    (*Id.*)  At the hearing, the employee has the ability to call witnesses.  (*Id.*)  The decision of the

2    Hearing Officer may be appealed to the Labor Relations officer, and that decision may be appealed

3    to the Public Law Board, where the claim is finally decided by a panel of three: an Organization

4    member (union), a Carrier Member (company), and a Neutral Member (non-railroad affiliated).  (*Id.*)

5    A waiver under the disciplinary process is a plea bargain that is negotiated between the union and

6    management, where the employee admits guilt to a rule violation and waives his right to a hearing in

7    exchange for a negotiated specific discipline.  (*Id.* ¶ 6.)  Mr. Deely, the District Supervisor, reviews

8    all discipline recommendations before discipline is assessed.  (Deely Depo. at 65:13-17.)  Under

9    Amtrak's Progressive Discipline Procedures, a third formal discipline is grounds for dismissal.

10   (Shelton Decl. ¶ 7.)

11       Plaintiff has been involved with three safety-related incidents during his employment at

12   Amtrak.  The first, on March 24, 2000, was an incident on the yard involving the accidental pulling

13   apart of certain cables.  (Campbell Decl. ¶ 10; Campbell Depo. at 117.)  Plaintiff waived his right to

14   formal investigation of this incident and agreed to accept the assessed discipline: a letter of

15   reprimand in his personnel file.  (*See* Campbell Depo. at 117; Campbell Depo. Exh. 13.)  The

16   specifications of Plaintiff's charges included "[d]amage to equipment . . . [and d]amage to cables ."

17   (*See* Campbell Depo. Exh. 13.)

18       The second incident, on January 10, 2002, was an incident on the yard involving a boxcar

19   derailing.  (*See* Campbell Depo. at 118; Campbell Depo. Exh. 14.)  Plaintiff was charged with four

20   infractions.  (*See* Campbell Depo. at 119-20.)  This incident went to a formal investigation in which

21   there was a hearing.  (*See id.* at 120.)  Plaintiff was assessed a 20-day suspension, ten days of which

22   were held in abeyance.  (*See id.*; Campbell Depo. Exh. 14 at 3.)  Plaintiff's union appealed the

23   suspension and the Public Law Board upheld the suspension.  (*See id.* at 120-21.)  The specifications

24   of Plaintiff's charges included "while working . . . on the Yard . . . you were directing movement

25   when an alleged hard coupling resulted in equipment damage and the derailment of a boxcar."  (*See*

26   Campbell Depo. Exh. 14 at 2.)

27       The third incident, in July 2004, involved allegations that Plaintiff released the brakes, or

28   "cut the brakes out," of a locomotive.  (*See* Campbell Depo. at 139-140.)  Plaintiff was charged with

4

United States District Court

For the Northern District of California

1   five violations.  (*See* Campbell Depo. Exh. 19.)  The incident went to a formal investigation in which

2   there was a hearing.  (*See* Campbell Depo. at 140-41.)  The hearing officer found Plaintiff had

3   violated four of the five charges and agreed that termination, as recommended by Plaintiff's

4   managers, was the appropriate discipline.  (*See id.* at 141; Shelton Depo. 126:22-127:5.)  Plaintiff's

5   union appealed the decision and the Public Law Board upheld the decision.  (*Id*. at 142.)

6   Accordingly, Amtrak terminated Plaintiff.

7           **C.      Plaintiff's Protected Activities**

8           In January 2004, Plaintiff filed a complaint with the California Department of Fair

9   Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission

10   ("EEOC") alleging racial discrimination in Amtrak's employment practices.  (*see* Campbell Depo.

11   Exh. 2.)  On April 1, 2004, Plaintiff sent an email to Susan Venturelli in Amtrak's human resources

12   department.  (*See* Campbell Decl. ¶ 35.)  In the email Plaintiff complained about Amtrak's allegedly

13   racially discriminatory hiring practices and disparate treatment of African-Americans.  (*See id.*)

14   That same month, Plaintiff received a call from Rickie Donofrio, Amtrak's Dispute Resolution Case

15   Intake Coordinator, during which Plaintiff restated his concerns.  (*See id.* ¶ 36.)  On April 10, 2004,

16   Plaintiff left a voicemail for Ms. Donofrio to inform her that he had already filed a complaint with

17   the DFEH and EEOC.  (*See id.* ¶ 37.)  On April 21, 2004 Amtrak informed Plaintiff that it would not

18   be investigating his complaint because Plaintiff had already filed with the relevant state and federal

19   investigatory agencies.  (*See id.* ¶ 38.)

20   **II.     This Action**

21           Plaintiff filed this action on December 30, 2005 alleging retaliation in violation of 42 U.S.C.

22   § 1981, retaliation in violation of the Fair Employment and Housing Act ("FEHA") and negligent

23   and intentional infliction of emotional distress against all Defendants.  (*See* Complaint at 6-11.)

24   Plaintiff also alleges race discrimination in violation of 42 U.S.C. § 1981 and wrongful termination

25   in violation of public policy against Amtrak alone.  Defendants now seek summary judgment on all

26   of Plaintiff's claims.  In his Opposition to this Motion, Plaintiff concedes his claims of negligent and

27   intentional infliction of emotional distress.  (*See* Plf.'s Opp. at 1 n.1.)  Defendants are, therefore,

28   entitled to summary judgment on these claims.

**United States District Court**
For the Northern District of California

1

**LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

**ANALYSIS**

**I.      Section 1981 and Title VII Framework**

Before turning to the record before the Court, an overview of the law applicable to disparate treatment claims under § 1981 is instructive. Section 1981 states, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . . For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981 (a), (b). The Court applies the standards developed in the Title VII context to disparate treatment claims under § 1981. *Williams v. Edward Apffels Coffee Co.*, 792 F.2d 1482,

1   1484 (9th Cir. 1986).  There are three levels to this analysis.

2           First, the plaintiff must establish a prima facie case.  To do this, the plaintiff must offer

3   evidence that "gives rise to an inference of unlawful discrimination, either through the framework

4   set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence of

5   discriminatory intent."  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004)

6   (citations and quotations omitted).  "Establishment of the *prima facie* case in effect creates a

7   presumption that the employer unlawfully discriminated against the employee."  *Texas Dep't of*

8   *Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

9           Under the *McDonnell Douglas* framework, to establish a prima facie case of discrimination

10  the plaintiff bears the initial burden of showing: (1) that the plaintiff belongs to a class of persons

11  protected by Title VII, (2) that the plaintiff performed his or her job satisfactorily, (3) that the

12  plaintiff suffered an adverse employment action, and (4) that the plaintiff's employer treated the

13  plaintiff differently than a similarly-situated employee who does not belong to the same protected

14  class as the plaintiff.  *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  Similarly, to

15  establish a prima facie case of retaliation, a plaintiff must offer proof: (1) that the plaintiff was

16  involved in a protected activity opposing an unlawful employment practice, (2) that the plaintiff

17  suffered an adverse employment action, and (3) that there was a causal link between the protected

18  activity and the adverse action.  *See Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006).

19          "When a plaintiff does not rely exclusively on the presumption but seeks to establish a prima

20  facie case through the submission of actual evidence, very little such evidence is necessary to raise a

21  genuine issue of fact regarding an employer's motive[.]"  *Lowe v. City of Monrovia*, 775 F.2d 998,

22  1009 (9th Cir.1985).  This principle, however, "do[es] not prevent the summary disposition of

23  meritless suits but simply ensure[s] that when a genuine issue of material fact exists a civil rights

24  litigant will not be denied a trial on the merits."  *Lowe*, 775 F.2d 998, *as amended,* 784 F.2d 1407

25  (9th Cir. 1986).

26          Next, if the plaintiff is able to make out a prima facie case, the burden of production shifts to

27  the employer to articulate some legitimate, nondiscriminatory reason for the employment action.

28  *McDonnell Douglas*, 411 U.S. at 802.  As the Supreme Court explained, "the *McDonnell Douglas*

United States District Court
For the Northern District of California

7

United States District Court

For the Northern District of California

1 presumption places upon the defendant the burden of producing an explanation to rebut the *prima*

2 *facie* case - *i.e.*, the burden of 'producing evidence' that the adverse employment actions were taken

3 'for a legitimate, nondiscriminatory reason.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506

4 (1993) (quoting *Burdine*, 450 U.S. at 254). This burden is one of production, not persuasion; it "can

5 involve no credibility assessment." *Id*. Thus, to rebut the presumption of discrimination arising

6 from the prima facie showing, "[t]he defendant need not persuade the court that it was actually

7 motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. In effect, if the defendant meets its

8 burden at this stage, "[t]he presumption, having fulfilled its role of forcing the defendant to come

9 forward with some response, simply drops out of the picture." *Id.* at 255.

10 Finally, the burden then shifts back to the plaintiff to prove that the defendant's stated

11 reasons are merely pretextual. *St. Mary's*, 509 U.S. at 508. At this final stage, the factual inquiry

12 proceeds to a new level of specificity to prove pretext. *Burdine*, 450 U.S. at 255. The Court's

13 inquiry turns from the generalized factors that establish a prima facie case, to the specific proofs and

14 rebuttals of discriminatory motivation. *St. Mary's*, 509 U.S. at 516. Accordingly, the plaintiff must

15 do more than show that the employer's reason is false. The plaintiff must adduce sufficient evidence

16 to raise a triable issue of fact that the presumptively valid reasons for the plaintiff's rejection or

17 termination were in fact a coverup for a discriminatory decision. *McDonnell Douglas*, 411 U.S. at

18 805. As the Supreme Court explained, "[A] reason cannot be proved to be 'a pretext for

19 discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the

20 reason." *St. Mary's*, 509 U.S. at 515 (emphasis in original). Throughout this process, the plaintiff at

21 all times bears the ultimate burden of persuasion. *Id.* at 511. Thus, in the final stage of the analysis,

22 the plaintiff's burden of production "merges with the ultimate burden of persuading the court that

23 she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

24 With this framework as background, the Court turns to the present case.

25 **I.    Retaliation Claims**

26 Plaintiff alleges that Defendants retaliated against him after he engaged in protected activity,

27 in violation of 42 U.S.C. § 1981 and FEHA. Specifically, Plaintiff alleges that he engaged in the

28 protected activity of filing a Charge of Discrimination with DFEH and EEOC in January 2004. (*See*

**United States District Court**
For the Northern District of California

1    Complaint ¶ 25.)  Defendants, he alleges, were aware of Plaintiff's activity and retaliated against

2    him by not promoting him to the position of engineer in August 2004 and then by terminating him in

3    September 2004.  (*See id.* ¶ 26.)  In this Motion, Defendants argue that there is no private right of

4    action for retaliation under § 1981.  Defendants also contend that Plaintiff's FEHA retaliation claim

5    is time-barred because Plaintiff received a right-to-sue notice from DFEH on February 9, 2004 and

6    did not file this action until December 30, 2005.  In addition, Defendant Deely argues that Plaintiff's

7    retaliation claim based on Defendants' failure-to-promote Plaintiff in August 2004 is time-barred

8    and any claim against Mr. Deely is barred because Plaintiff did not name him on the complaint filed

9    with the DFEH and thus has not exhausted his administrative remedies.  Finally, on the merits,

10   Defendants argue that Plaintiff cannot state a prima facie case of retaliation because there is

11   insufficient evidence of causation and because Plaintiff cannot show that Defendants' legitimate

12   reasons were pretextual.

13           Before turning to the merits, the Court notes that Defendants' preliminary contentions are

14   unavailing.  First, Plaintiff's retaliation claim is cognizable under § 1981.  *See Manatt v. Bank of*

15   *America, NA*, 339 F.3d 792, 800 (9th Cir. 2003).  In *Manatt* the Ninth Circuit confirmed the

16   Circuit's prior holding that where:

17           a plaintiff charges an employer with racial discrimination in taking retaliatory action, a
             cause of action under § 1981 has been stated.  If an employer retaliates against the
18           former employee with the intent to perpetuate the original act of discrimination, or with
             some other racially discriminatory motive in mind, then interference with rights
19           protected by § 1981 has occurred, and that section must come into play.

20   *Id.*  (quoting *London v. Coopers & Lybrand*, 644 F.2d 811, 819 (9th Cir. 1981)).  Here, Plaintiff

21   alleges that Defendants retaliated against him with discriminatory motive and because of Plaintiff's

22   claims of race discrimination.  Plaintiff's claims are thus cognizable under *Manatt*.

23           Next, the Court turns to the questions of timeliness and exhaustion.  Subject to limited

24   exceptions, under FEHA "[n]o complaint may be filed after the expiration of one year from the date

25   upon which the alleged unlawful practice or refusal to cooperate occurred."  Cal. Gov. Code §

26   12960.  Therefore, any alleged violations of FEHA that took place prior to one year before the date

27   that the complaint was filed are time-barred.  *See Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th

28   1031, 1040 (2002).  As the Court in *Cucuzza* held, "any conduct occurring prior to [one year before

9

1    the complaint was filed with DFEH] cannot serve as the basis for liability unless some exception to

2    the one-year limitations period applies." *Id.* In addition, an employee must file suit within one year

3    of the date of the DFEH's right-to-sue notice. Cal. Gov. Code § 12965(b).

4        Here, Plaintiff filed an initial claim with the EEOC and DFEH in January 2004 alleging race

5    discrimination. On August 17, 2005, Plaintiff filed a second claim with the DFEH asserting that

6    Defendants discriminated against him and retaliated against him for filing his initial claim of

7    discrimination. (Campbell Decl. ¶ 40, Exh. 5.) In reference to Plaintiff's second claim, Plaintiff

8    received a right-to-sue notice, dated August 29, 2005, from the DFEH. (*See* Campbell Depo., Exh.

9    6.) Therefore, Plaintiff's complaint, filed in this Court on December 30, 2005, was timely filed

10   within one year of the date on DFEH's right-to-sue notice. *See* Cal. Gov.Code § 12965(b).

11   Defendants' argument to the contrary does not account for Plaintiff's second complaint filed with

12   the DFEH and is therefore unavailing.

13       Defendant Deely also argues that Plaintiff's FEHA retaliation claim based on failure-to-

14   promote is time-barred because it occurred more than one year prior to Plaintiff's August 17, 2005

15   complaint with DFEH. Deely argues that Plaintiff's last attempt to apply for a promotion was in

16   July 2004 and that Plaintiff was on notice that Amtrak denied his application for that promotion on

17   or before August 10, 2005. (Deely Motion at 8; Campbell Depo. at 229:14-22.) Plaintiff does not

18   substantively respond to this argument, nor does he argue that any exception to the one-year

19   limitations period applies. The record, however, does not support Defendant's contention.

20   Defendant's only evidence of when Defendant decided not to promote Plaintiff, or when Plaintiff

21   became aware of Defendant's decision not to promote him, is Plaintiff's deposition, in which

22   Plaintiff testifies to receiving a letter on August 10, 2004. (*See* Campbell Depo. at 229:14-22.) The

23   contents or relevance of that letter are, however, not in the record before the Court. Instead, the only

24   relevant evidence is Plaintiff's testimony that in 2004 it was his belief that other people received the

25   promotion he applied for. (Plf.'s Decl. ¶ 33.) Therefore, the Court cannot find, on this record, that

26   Plaintiff's August 2004 retaliation claim based on failure to promote is barred by the FEHA statute

27   of limitations.

28       Finally, Plaintiff's failure to name Defendant Deely as a charged party in his DFEH claim

United States District Court
For the Northern District of California

10

does not bar Plaintiff's action against him.  In *Valdez v. City of Los Angeles*, the case relied upon by

Defendant Deely, the California Court of Appeal held that a plaintiff who fails to name individual

defendants in his charge filed with the DFEH has failed to exhaust his administrative remedies

against those individuals and is barred from bringing suit against them.  *See Valdez*, 231 Cal. App.

3d 1043, 1061-62 (1991).  The California Court of Appeal later clarified, however, that if a

defendant is named in the body of the administrative complaint, but not as a charged party, the strict

rule laid out in *Valdez* does not apply.  *See Saavedra v. Orange County Consolidated Transportation

Service Agency*, 11 Cal. App. 4th 824, 827-28 (1992); *Martin v. Fisher*, 11 Cal. App. 4th 118, 122

(1992).  As the court in *Martin* noted:

> The function of an administrative complaint is to provide the basis for an
> investigation into an employee's claim of discrimination against an employer, and not
> to limit access to the courts. A strict rule would harm victims of discrimination
> without providing legitimate protection to individuals who are made aware of the
> charges through the administrative proceeding. If they are described in the charge as
> the perpetrators of the harm, they can certainly anticipate they will be named as
> parties in any ensuing lawsuit.

11 Cal. App. 4th at 122.  Here, Plaintiff named "Joe Deely" in the body of the complaint he filed

with DFEH.  (*See* Campbell Decl., Exh. 5.)  Specifically, Plaintiff alleged that Joe Deely, the

Division Superintendent, was responsible for retaliation and discrimination based on race.  (*See id.*)

This complaint therefore provided the DFEH with a basis for investigation into Defendant Deely's

alleged actions and adequately put Deely on notice such that he could anticipate being named as a

party in any ensuing lawsuit.  *See Martin*, 11 Cal. App. 4th at 122.  Therefore, Plaintiff's failure to

name Defendant Deely as a charged party in his DFEH claim does not bar this action against him.

Preliminaries aside, the Court now turns to the merits of Plaintiff's retaliation claims.

**A.    Plaintiff Does Not Make Out a Prima Facie Case of Retaliation.**

To make out a prima facie case under § 1981 Plaintiff must, under the *McDonnell Douglas*

framework, offer proof: (1) that the plaintiff was involved in a protected activity opposing an

unlawful employment practice, (2) that the plaintiff suffered an adverse employment action, and (3)

that there was a causal link between the protected activity and the adverse action.  *See Freitag*, 468

F.3d at 541.  Similarly, to establish a prima facie case of retaliation under FEHA, "the plaintiff must

show that he engaged in a protected activity, his employer subjected him to adverse employment

action, and there is a causal link between the protected activity and the employer's action." *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992); *Iwekaogwu v. City of Los Angeles*, 75 Cal. App. 4th 803, 814 (1999).

Neither party contests that Plaintiff engaged in a protected activity by filing a complaint with the EEOC and DFEH in January 2004, nor do they disagree that Plaintiff subsequently suffered two adverse employment actions in that he was denied a promotion in the summer of 2004 and he was terminated in September 2004.  Defendants argue, instead, that Plaintiff fails to establish the causal link between the protected activity and the adverse action.  The Court agrees.

"Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  When temporal proximity is the only evidence of causality, the Supreme Court has held that the time between the two events must be "very close," and has cited with approval cases holding that a three-month or four-month period is insufficient alone to establish causation.  *See Clark Co. School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (4-month period insufficient)).

Here, there is no direct evidence that Amtrak's failure-to-promote Plaintiff or termination of Plaintiff were causally related to Plaintiff's protected activity.  Thus, Plaintiff relies on the combination of Defendants' knowledge of his protected activity and the proximity in time between the events.  Even if Plaintiff could establish that Defendants had knowledge, the two events are not "very close" in time such that the Court can infer that the adverse employment actions were causally related to the protected activity.  Indeed, Plaintiff argues, and testifies, that in April 2004 he informed Susan Venturelli, Amtrak's Human Resources Officer, that he had filed EEOC and DFEH charges.  Sometime in August 2004 Plaintiff did not receive a promotion that he applied for.  Then, on September 17, 2004, Plaintiff was terminated.  Thus, the periods of delay between the protected activity and the alleged acts of retaliation were approximately four and five months respectively.

United States District Court

For the Northern District of California

1  These periods of delay are not sufficiently short periods of time, under *Clark*, to alone establish

2  causation.

3        In addition, there was at least one significant intervening event that tempers the inferences

4  that the Court can draw from the circumstantial evidence of retaliation.  In July 2004, after Plaintiff

5  informed Venturelli of his protected activity but before he was terminated or passed over for

6  promotion, he was involved in one of the three safety incidents in his career with Amtrak.   As a

7  result of this incident he was charged with five safety violations and, when the issue went to a

8  formal hearing, the hearing officer found that Plaintiff violated four of the charged violations and

9  recommended his termination.  Thus, the inferences the Court may draw from proximity alone are

10  not sufficient to establish causation.

11        In sum, therefore, Plaintiff has not made out a prima facie case of retaliation under § 1981 or

12  FEHA because he has not established causation.  Even if Plaintiff had established a prima facie case,

13  he cannot, on this record, show that Defendants' legitimate reasons, Plaintiff's history of safety

14  violations, were pretext for retaliation.  Therefore, the Court finds that Plaintiff has not created an

15  issue of material fact on his claims of retaliation under § 1981 and FEHA.  The Court therefore

16  **GRANTS** Defendants' Motions for Summary Judgment on Plaintiff's second and fourth causes of

17  action - retaliation under § 1981 and FEHA.

18  **II.**     **Race Discrimination Claims**

19        Plaintiff alleges that Defendant Amtrak discriminated against him because of his race, in

20  violation of 42 U.S.C. § 1981 and wrongfully terminated him in violation of public policy.  The

21  Court first analyzes Plaintiff's § 1981 claims.

22        **A.     Plaintiff Makes Out a Prima Facie Case of Race Discrimination.**

23        Plaintiff submits direct evidence in order to establish a prima facie case of discrimination.

24  As noted above, "[w]hen a plaintiff does not rely exclusively on the presumption but seeks to

25  establish a prima facie case through the submission of actual evidence, very little such evidence is

26  necessary to raise a genuine issue of fact regarding an employer's motive[.]"  *Lowe*, 775 F.2d at

27  1009.  In addition, "[a]t summary judgment, the degree of proof necessary to establish a prima facie

28  case is 'minimal and does not even need to rise to the level of a preponderance of the evidence.'"

*Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005) (quoting *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002)).  Instead, comments that overtly exhibit hostility to a protected class, even if they are general comments about the class, or are directed to other people, are probative of discriminatory intent.  *See id.*  "Where a decisionmaker makes a discriminatory remark against a member of the plaintiff's class, a reasonable factfinder may conclude that discriminatory animus played a role in the challenged decision."  *Id.*  In addition, the person exhibiting discriminatory animus need only be one of the people who participated in, or influenced, the decision making process and the plaintiff need not show that this person communicated his bias to the other decision makers.  *See id.* at 1040.

Here, Plaintiff shows that Mr. Deely had final authority on both promotions and discipline within Plaintiff's department.  Plaintiff also submits evidence that Mr. Deely told Plaintiff's direct supervisor, Mr. Schulthies, that it was his responsibility to keep Plaintiff "in his place."  (Schulthies Depo. at 45:9-12.[2])  Mr. Deely was Ms. Mary Fontaine's immediate supervisor for two years.  (*See* Plf.'s Req. for Jud. Notice, Exh. 1 ¶ 6.[3])  Ms. Fontaine testifies that she heard Mr. Deely referring to an African-American employee as a "nigger."  (*Id*. ¶ 8.)  Mr. Deely also told Mr. Schulthies that he did not attend the annual Christmas party because "I am not going to go out and associate with those people . . . it's an all black party . . . [a]t work I have to associate with them . . . but on my own time, I'm not going to."  (Schulthies Depo. at 119:2-24.)  Other supervisors in the division also used derogatory terms such as the "n-word" and "boy" in reference to African-American employees.  (*See id.* at 53:17-21.)  One supervisor in particular, Mr. Oughton, told Mr. Schulthies that he did not want to promote Plaintiff because he wasn't intelligent enough, didn't know his place and he didn't want to "reward an uppity nigger with a better job."  (*Id.* at 64:6-13.)

---

[2] On March 28, 2008 the Court requested Plaintiff's counsel to re-submit the portions of the Schulthies deposition that Plaintiff relies upon in the paragraph at the bottom of page 14 of Plaintiff's Opposition.  The Court only relies upon the portions of the Schulthies deposition that Plaintiff cited to in Opposition to this Motion.  Insofar as Plaintiffs' re-submission of the Schulthies deposition may contain any new evidence, the Court does not consider or rely upon it.

[3] Plaintiff submits nine documents in a request for judicial notice.  (*See* Plf.'s Req. for Jud. Notice.)  Plaintiff's request is granted as to Exhibit 1, Declaration of Mary J. Fontaine, as this is the only document upon which the Court relies.  This document is appropriate for judicial notice because it was a document filed with the court in another matter.  Fed. R. Evid. 201; *Biggs v. Terhune*, 334 F.3d 910, 916 n.3 (9th Cir. 2003) ("Materials from a proceeding in another tribunal are appropriate for judicial notice.").  Defendants object to this declaration on evidentiary grounds.  Defendants' evidentiary objections to the evidence relied upon by the Court are not meritorious and are therefore overruled.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1    Plaintiff, therefore, has set out a prima facie case of discrimination with this direct evidence

2    of racial animus by Plaintiff's supervisors and specifically by Mr. Deely, who had influence over the

3    promotion and discipline decisionmaking process.  The burden next shifts to Defendant to set forth

4    its legitimate reasons for the adverse employment actions.

5            **B.        Defendant Sets Forth Legitimate Reasons for the Adverse Employment Actions.**

6            As a preliminary matter, Defendant argues that Plaintiff's claims of discrimination prior to

7    2001 are barred by the four-year statute of limitations that applies to claims under 42 U.S.C. § 1981.

8    The Court agrees.  In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), the Supreme Court

9    held:

10           the statute of limitations for a cause of action brought under 42 U.S.C. § 1981, as
             amended by the Civil Rights Act of 1991, was governed by the four-year statute of
11           limitations set forth in 28 U.S.C. § 1658(a) rather than by the personal injury statute
             of limitations of the forum state. The Court held that "a cause of action aris[es] under
12           an Act of Congress enacted after December 1, 1990--and therefore is governed by §
             1658's four-year statute of limitations--if the plaintiff's claim against the defendant
13           was made possible by a post-1990 enactment."  The 1991 amendment to § 1981
             added the subsection defining the statute's "make and enforce contracts" language to
14           include the "termination of contracts and the enjoyment of all benefits, privileges,
             terms, and conditions of the contractual relationship."
15
     *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir.
16
     2004).
17
             Here, Plaintiff's claims are based not on his ability to make and enforce his employment
18
     contract, but rather on the enjoyment of the benefits, terms and conditions of the contractual
19
     relationship as well as the termination of that contract.  *See Kaulia v. County of Maui*, No. 05-0290,
20
     2006 WL 4660130, at *4 n.3 (D.Haw. May 24, 2006) (explaining that, prior to 1991, "§ 1981's
21
     reach was limited to discrimination only in the making and enforcement of contracts . . . [and] did
22
     not allow a suit based on discriminatory conditions of employment.") (quotations omitted).
23
     Therefore, the four year statue of limitations applies to Plaintiff's discrimination claims under §
24
     1981.  Plaintiff does not substantively respond or make any arguments, tolling or otherwise, that
25
     would change this finding.  Therefore, because Plaintiff filed this action on December 30, 2005,
26
     Plaintiff's § 1981 claims prior to December 30, 2001 are barred by the four-year statute of
27
     limitations.
28
             On Plaintiff's remaining failure-to-promote claims, Defendant contends that Amtrak's

                                                        15

United States District Court

For the Northern District of California

decisions to deny Plaintiff's applications for promotions to the position of Engineer were based on legitimate, non-discriminatory reasons.  Defendant submits evidence that Amtrak did not have a record that Plaintiff applied for an engineer position in 2002, and only one engineer position was posted that year, for which Plaintiff was not qualified.  (*See* Venturelli Decl. ¶¶ 11-14.)  Defendant next argues that in 2003 Plaintiff submitted a resume that stated that he was an external candidate and was thus disqualified for the open position, which was for internal candidates only.[4]  (*See* Ho Decl. ¶¶ 4-6; Campbell Depo. 190-92, 137; Campbell Decl. ¶ 28.)  Finally, Defendants argue that Plaintiff was disqualified in 2004 because of his history of repeated and serious operating and safety rules violations.  (*See* Venturelli Decl. ¶¶ 12, 14; Follis Decl. ¶¶ 2, 4.)  With regards to Plaintiff's termination, Defendant offers evidence that the decision to terminate Plaintiff, after a formal hearing and appeal, was also based on his record of safety violations.  (*See* Shelton Decl. ¶¶ 7, 10-14, Exh. D.)

Defendant has, therefore, set forth legitimate reasons for the alleged discriminatory acts within the relevant time period.  The burden now shifts back to Plaintiff to show that Defendant's proffered reasons for the employment action are a pretext for race discrimination.

**C.      Plaintiff Shows That Some of Defendants' Legitimate Reasons are Pretextual**.

The Court takes each allegedly discriminatory employment action in turn.

Regarding Plaintiff's 2002 application, Plaintiff submits evidence that Frank Caron received the position, but that Frank Caron was working under Plaintiff at that time as an Assistant Conductor on the Baby Bullet Project.  (*See* Campbell Decl. ¶ 27.)  Plaintiff, however, does not rebut Defendant's showing that there were no positions posted in 2002 for which he was qualified and for which he applied.  (*See e.g.*, Venturelli Decl. ¶¶ 11-14.)  Therefore, Plaintiff has not created a material issue of fact as to whether Defendant's legitimate reasons were pretextual.  Accordingly, Defendant is entitled to summary judgment regarding Plaintiff's failure-to-promote claim based on his 2002 application.

---

[4] On page 11 of Amtrak's Motion, Defendant Amtrak argues that this application occurred in connection with Plaintiff's 2003 application.  (*See* Amtrak Motion at 11-12.)  However, on page 16, Defendant argues that this incident occurred in connection with Plaintiff's application in 2001.  (*See* Amtrak Motion at 16.)  Given the record on this incident, it appears that the "2001" date was a typo and Defendant is in fact referring to Plaintiff's November 2003 application that he submitted to Mr. Paul Ho.  (*See* Campbell Depo. at a190:5-192:2, Exh. 23; Ho Decl. ¶ 5, Exh. B.)

United States District Court

For the Northern District of California

1       Turning to Plaintiff's 2003 application, as noted above, Defendant submits evidence that

2   Plaintiff was not considered for the job because his application did not state that he was an internal

3   candidate and the position, Job Reference # 50173583, was for internal applicants only.  (*See* Ho

4   Decl. ¶ 4, Exh. A.)  Specifically, Mr. Paul Ho, Human Resources Officer for Defendant, testifies that

5   he received a faxed two-page submission from Plaintiff on November 19, 2003.  (*See* Ho Decl. ¶ 5.)

6   This submission consisted of a fax cover page that listed the job reference number and a one-page

7   resume that did not indicate that Plaintiff was an Amtrak employee.  (*See id.*)  Instead, the resume

8   states that Mr. Campbell was employed by the County of Alameda as an In-Home Caregeiver, and

9   had been so employed since April 1997.  (*See id.*)  Defendant submits a copy of this two page

10  submission.  (*See id.* Exh. B.)

11      In response, Plaintiff testifies that he used the Amtrak Job Opportunity Application form and

12  points to a copy of this form that he submitted in 2001 as an example of his annual submission for

13  promotion.  (*See* Campbell Decl. ¶ 28; Ho Decl. Exh. D.)  Plaintiff contends that his 2003

14  application stated that he was a current Amtrak employee, even though his resume did not so

15  indicate.  (Campbell Decl. ¶ 28.)  Plaintiff, however, does not submit a copy of his 2003 application

16  which establishes this.  Thus, Plaintiff does not rebut Defendant's showing that the application

17  Amtrak received indicated that Plaintiff was an "external" candidate.  In addition,  Plaintiff submits

18  no evidence as to who ultimately received the position that he attempted to apply for.  Therefore,

19  Plaintiff has not created a material issue of fact as to whether Defendant's legitimate reasons were

20  pretextual.  Accordingly, Defendant is entitled to summary judgment regarding Plaintiff's failure-to-

21  promote claim based on his 2003 application.

22      Next, Plaintiff has created a material issue of fact as to his 2004 application.  Unlike the two

23  applications already discussed, there is evidence in the record that Plaintiff applied, and was

24  considered, for this position.  (*See* Campbell Decl. ¶ 30; Venturelli Decl. ¶ 15.)  Plaintiff submits

25  evidence that he received high marks in his interview, yet was later disqualified by a manager or

26  Division Superintendent, due to his safety violations.  (*See* Venturelli Depo. at 124:16 ; Price Decl.

27  Exhs. K, L.)  Plaintiff also offers evidence showing that there was ample discretion in the promotion

28  and discipline process such that Division Superintendents, such as Mr. Deely, could influence both

17

United States District Court

For the Northern District of California

1   the severity of an employee's discipline in regards to a specific safety violation and the weight that

2   prior safety violations were accorded in the promotion process.  (*See e.g.,* Venturelli Depo. at 114:1-

3   8, 116:15-117:4, 118:4-119:8, Exh. 35.[5])  In conjunction with the direct evidence of animus

4   discussed above, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that there

5   is a material issue of fact as to whether Defendant's legitimate reasons for failing to promote

6   Plaintiff in 2004 were pretextual.  Accordingly, Defendant is not entitled to summary judgment on

7   Plaintiff's failure-to-promote claim based on his 2004 application.

8          Finally, Plaintiff has created a material issue of fact as to his termination.  Defendant submits

9   evidence that Plaintiff's third safety violation, in July 2004, led to his termination.  As above,

10  however, Plaintiff submits evidence that the managers and Division Superintendent, Mr. Deely in

11  particular, could influence whether an employee was charged with a rule violation and the severity

12  of an employee's discipline in response.  (*See e.g.,* Schulthies Depo. at 132:23-133:5; Deely Depo.

13  at 65:13-17; 67:11-15; Barnes Decl. ¶ 6.[6])  In addition, even if the decision to terminate Plaintiff was

14  ultimately made by a Hearing Officer, and upheld by the Public Law Board, Plaintiff has submitted

15  evidence that the decision to recommend termination, as well as his discipline history upon which

16  his termination allegedly rested, was tinged by discretion of his managers and Mr. Deely.  (*See e.g.,*

17  Barnes Decl. ¶ 6; Schulthies Depo. at 144:13-16; Shelton Depo. at 126:22-127:9, 115:8-19.)  Thus,

18  drawing all reasonable inferences in Plaintiff's favor, the Court finds that there is a material issue of

19  fact as to whether Defendant's legitimate reasons for terminating Plaintiff in 2004 were pretextual.

20  Accordingly, Defendant is not entitled to summary judgment on Plaintiff's claim based on his

21  termination.

22         In sum, therefore, Plaintiff has created a triable issue of material fact on his termination and

23  denial of promotion in 2004.  Defendant's Motion for Summary Judgment on these claims is,

24  therefore, **DENIED**.  The Court **GRANTS** Defendant's Motions for Summary Judgment on the

25  remaining discrimination claims under § 1981 for the reasons set forth above.

26

27         [5] Defendants' evidentiary objections to portions of this evidence are overruled.  The Court addresses Defendants' evidentiary objections in general below.

28         [6] Defendants objections to this evidence are overruled.  The Court addresses Defendants' evidentiary objections in general below.

United States District Court
For the Northern District of California

1   **D.      Plaintiff's Claim of Termination in Violation of Public Policy Partially Survives.**

2       Plaintiff alleges that Defendant Amtrak terminated him in violation of public policy.

3   Plaintiff bases his public policy claim on his statutory claims of race discrimination and retaliation,

4   as well as California Labor Code § 1102.5(b).  Both parties agree that as such, to the extent

5   Plaintiff's discrimination and retaliation claims fail, so must his public policy cause of action.  The

6   Court agrees.  *See Sequoia Insurance v. Superior Court*, 13 Cal. App. 4th 1472, 1475, 1479 (1993)

7   (holding that to make out a claim for wrongful termination in violation of public policy, the

8   employer's conduct must be prohibited by a constitutional or statutory provision).  Therefore, as

9   above, Defendants are entitled to summary judgment on all claims except Plaintiff's claim that

10  Amtrak discriminated against him by denying him a promotion in 2004 and subsequently

11  terminating him.  In addition, the only provision Plaintiff cites which is not already considered by

12  the Court, Cal. Lab. Code § 1102.5(b) prohibits retaliation for "disclosing information to a

13  government or law enforcement agency, where the employee has reasonable cause to believe that the

14  information discloses a violation of state or federal statute."  Cal. Lab. Code § 1102.5.  Here, as

15  discussed above, Plaintiff has not shown that he was terminated in retaliation for filing with the

16  DFEH and EEOC.  Therefore, like Plaintiff's retaliation claims under FEHA and § 1981, Defendants

17  are entitled to summary judgment on this claim.  In sum, therefore, the Court **GRANTS** Defendant's

18  Motion for Summary Judgment on Plaintiff's wrongful termination claim for all adverse

19  employment actions except Plaintiff's racial discrimination claims relating to his denial of

20  promotion in 2004 and subsequent termination.

21  **III.    Punitive Damages**

22      Plaintiff argues that there are triable issues of material fact as to whether Defendants are

23  liable for punitive damages.  "An award of punitive damages under Title VII is proper where the acts

24  of discrimination giving rise to liability are willful and egregious, or display reckless indifference to

25  the plaintiff's federal rights."  *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir.1998).

26  In light of the Court's denial of summary judgment on two of Plaintiff's discrimination claims, the

27  Court finds that the question of punitive damages on these claims should go to the jury.  *See EEOC*

28  *v. Wal Mart Stores*, 156 F.3d 989, 993 (9th Cir. 1988) (holding that the question of punitive damages

19

1   should go to the jury when there is evidence of, inter alia, intentional discrimination).  The Court

2   therefore **DENIES** Defendants' Motion for Summary Judgment on punitive damages.

3   **IV.     Evidentiary Objections**

4           Defendants object to much of Plaintiff's evidence including Plaintiff's declaration, all of the

5   declarations Plaintiff submits in its request for judicial notice and various other declarations and

6   depositions.  Insofar as the Court relies upon evidence that is objected to, Defendants' objections are

7   overruled as noted above or as stated in this section.  As a general matter, the Court finds that many

8   of Defendants' contentions are not well-founded.  First, while Defendants object to the declarations

9   of witnesses that were taken for the purposes of a different lawsuit,

> [s]worn deposition testimony may be used by or against a party on summary judgment
> regardless of whether the testimony was taken in a separate proceeding.  *Curnow v.*
> *Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir.1991).  Such testimony is considered to
> be an affidavit pursuant to Federal Rule of Civil Procedure 56(c), and may be used
> against a party on summary judgment as long as the proffered depositions were made
> on personal knowledge and set forth facts that were admissible in evidence.  *Id.*

*Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1049, 1055 (9th Cir. 2001).  In addition, the

statements to which Defendants make hearsay objections, and upon which the Court relies, were

made by Defendants or their agents and are offered against them.  Thus, they are admissible under

Federal Rules of Evidence 801(d)(2)(D).  *See* Fed. R. Evid. 801(d)(2)(D) (excluding from the

definition of hearsay "a statement by the party's agent or servant concerning a matter within the

scope of the agency or employment, made during the existence of the relationship").  The Court

therefore **OVERRULES** Defendant's evidentiary objections.  Defendants may, of course, renew

specific objections to discrete pieces of evidence through a motion in limine or at the time of trial.

*//*

*//*

*//*

*//*

*//*

*//*

*//*

*//*

United States District Court

For the Northern District of California

20

1

2                                            **CONCLUSION**

3          For the foregoing reasons, the Court **DENIES** Defendant Amtrak's Motion with regards to

4    Plaintiff's § 1981 race discrimination claim relating to his termination and 2004 application for

5    promotion.  The Court **DENIES** Defendant Amtrak's Motion with regards to Plaintiff's wrongful

6    termination claim, based on race discrimination, relating to his termination and 2004 application for

7    promotion.  The Court further **DENIES** Defendant Amtrak and Defendant Deely's Motions with

8    regards to Plaintiff's claim for punitive damages.  The Court **GRANTS** Defendant Amtrak and

9    Defendant Deely's Motions on all other claims.  Furthermore, The Court **OVERRULES**

10   Defendants' evidentiary objections and **GRANTS** Plaintiff's request for judicial notice as to Exhibit

11

12

13   **IT IS SO ORDERED.**

14

15

16   Dated: April 3, 2008                              _____
                                                        MARTIN J. JENKINS
17                                                      UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28