MICHAEL J. CHRISTIAN (SBN 173727)
PATRICK C. MULLIN (SBN 72041)
CARA CHING-SENAHA (SBN 209467)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile: (415) 394-9401
Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION dba AMTRAK and JOE DEELY

PAMELA Y. PRICE (SBN 107713)
DANIEL MARTINEZ DE LA VEGA (STATE BAR NO. 255885)
PRICE AND ASSOCIATES
The Latham Square Building
1611 Telegraph Avenue, Ste 1450
Oakland, CA 94612
Telephone: (510) 452-0292
Facsimile: (510) 452-5625
Attorneys for Plaintiff
JOHN EARL CAMPBELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK, JOE DEELY and DOES 1 through 15 inclusive,<br><br>Defendants. | Case No. C05-05434 CW<br><br>**JOINT CASE MANAGEMENT<br>CONFERENCE STATEMENT**<br><br>Case Mgmt. Conference<br>Date: July 22, 2008<br>Time: 2:00 p.m.<br>Location: Ctrm 2, 4th Floor,<br>1301 Clay Street, Oakland, CA<br>Judge: Hon. Claudia Wilken |

Plaintiff John Earl Campbell and Defendant National Railroad Passenger Corporation ("Amtrak") ("Defendant") (Plaintiff and Defendant are collectively referred to herein as "the Parties") jointly submit this Joint Case Management Statement in this case.

## I. JURISDICTION AND SERVICE

No issues regarding personal jurisdiction, subject matter jurisdiction, venue or service are known to the parties to be unresolved at this time.

## II. FACTS

### A. Plaintiff's brief chronology of the facts and of the principal factual issues in dispute

MR. CAMPBELL worked on the railroad for fourteen (14) years. On September 29, 1998, Mr. Campbell began his career with Defendant AMTRAK as an Assistant Conductor at the Oakland Crew Base. MR. CAMPBELL was repeatedly passed over for promotion by other less qualified Caucasian candidates. He was fired on September 17, 2004 after he filed several Charges of Discrimination against Amtrak for racial discrimination.

### The Promotion

During his tenure with AMTRAK, Mr. Campbell watched as people he trained when they were Assistant Conductors under him were selected and promoted to Engineer service. They include Josh Kyles, Brian Willson, Ken Powell, Jason Garman, Mike Poirier, Brice Carroll, Mike Yacovetti, Heidi Snyder, and Frank Caron.

From 2000 up until his termination in August 2004, except for a one year stint in San Francisco, Mr. Campbell worked as a Yard Conductor in the Oakland Yard.

In May 2004, Mr. Campbell again applied for an engineer position. On July 7, 2004, Mr. Campbell interviewed with Chad Skinner, Larry Follis, and Susan Venturelli. During the interview, he described his experience as a Machine Operator with Southern Pacific. Within days after the interview, Mr. Skinner called him on the radio while he was working in the Yard and said, "You finally made it," in reference to the engineer position.

At that time, Mr. Campbell was the most senior person interviewed, he had one of the highest scores, and the interviewers unanimously agreed that he was the most qualified person for the job. Approximately two weeks later, Mr. Campbell received a rejection letter from AMTRAK informing him that he did not get the position. The evidence will show that Defendant Deely has a history, pattern and practice of refusing to promote African Africans.

### The Termination

On March 24, 2000, Mr. Campbell was involved in an incident on the Yard where some cables were accidentally pulled apart. Almost two years later in January 2002, Mr. Campbell was involved in an incident where a boxcar derailed. In that incident, Engineer Bill Birkett ignored Mr. Campbell's instructions and pushed the boxcar off the tracks. Mr. Birkett was not charged with any type of disciplinary action as a result of the incident.

On July 24, 2004, Mr. Campbell was involved in an incident where his assistant conductor and engineer had a mis-communication resulting in a hard coupling.[1] On the night of the incident and at all times thereafter, the Assistant Conductor, Anthony Gillard, admitted his error as the cause of the incident and accepted responsibility for the event. Mr. Gillard was never charged with any rule violation or disciplined in any way.

On September 17, 2004, AMTRAK terminated Mr. Campbell, ostensibly because he released the air brakes while the train cars were sitting on the Yard. This procedure was a common occurrence on the Yard, and is referred to as "cutting the trucks." Defendants have asserted that they terminated Mr. Campbell's employment based upon a "three-strikes" rule that allows them to terminate an employee who has incurred three "major" rule violations in the course of his employment. The evidence clearly demonstrates, however, that "cutting the trucks" was not "major" but quite common on the Yard. Engineer Richard Barrow, who was present on the night of the event, testified under oath that "cutting the trucks out" was "pretty much common practice."

Mr. Barrow's testimony is corroborated by the Declarations of Chad Skinner and Richard Barnes, who also both attest to the fact that "cutting out trucks" was a common practice in the Yard. Messrs. Barnes and Skinner met with Steve Shelton following Mr. Campbell's termination and he even admitted to them that "he told them that it was not a terminating offense and that he knew you would get back with pay. Joe told him just to do as he is told." The evidence will show that Defendant Deely has a history, pattern and practice of disciplining African-American

---

[1] A "hard coupling" occurs when two train cars are joined at excessive speed.

employees more harshly than Caucasian employees. Amtrak's employment records also reflect that numerous Caucasian conductors were either not disciplined or not fired upon their third charge, including but not limited to Ray Clarke (six (6) "strikes"), and Donald Bruce Shelton (five (5) "strikes").

Procedural Facts

The Court denied Defendant AMTRAK's Motion for Summary Judgment regarding (1) Mr. Campbell's § 1981 race discrimination claim relating to his termination and his May 2004 application for promotion (First Cause of Action); (2) Mr. Campbell's wrongful termination claim under the Fourth Cause of Action, and (3) Mr. Campbell's claim for punitive damages. The Court granted Defendants AMTRAK and DEELY's motions on all other claims, including the Second Cause of Action (Retaliation), the Third Cause of Action (FEHA - Retaliation), the Fifth Cause of Action (Intentional Infliction of Emotional Distress), and the Sixth Cause of Action (Negligent Infliction of Emotional Distress).

Principal Factual Issues in Dispute

Whether Mr. Campbell's September 2004 termination was based on his race.

Whether Defendants failed to select Mr. Campbell for the Engineer position in May 2004 because of his race.

**Whether Defendants promoted Mr. Campbell.**

**B. Defendant Amtrak's brief chronology of the facts and of the principal factual issues in dispute**

Background Facts

Working on a railroad crew is an inherently dangerous line of work. Every year we hear of too many injuries and deaths of employees, passengers, and the public from railroad accidents around the world. Some of these accidents are just that – unavoidable accidents.

However, some injuries and deaths may result from the poor safety practices of an individual employee who works for a railroad company that has the highest safety standards. It is that railroad company's obligation and responsibility to have policies and practices in place to identify and remove that safety-challenged employee from service before a serious accident

occurs. AMTRAK is just such a company and Plaintiff John Campbell is that employee who a neutral accurately described as an "accident waiting to happen."

Defendant National Passenger Railroad Corporation dba AMTRAK hired John Campbell as an Assistant Conductor on September 30, 1998. During Mr. Campbell's first two years of employment, he was promoted twice - first to Assistant Yard Conductor and then to Yard Conductor. During the next few years of Mr. Campbell's employment, he committed a series of serious safety and operating rules violations for which he was repeatedly disciplined. During the same period of time he was being disciplined for various rules infractions, Mr. Campbell applied several times, and was logically rejected, for promotion to AMTRAK's Locomotive Engineer Trainee - a position with even greater safety responsibilities than Mr. Campbell's conductor position.

Despite his earlier promotions when his performance was acceptable, and his series of serious safety violations thereafter, Mr. Campbell alleges AMTRAK's failure to promote him to the position of Engineer trainee was motivated by racial bias. Mr. Campbell alleges he applied for and was denied the position several times while other employees Mr. Campbell believed to be less qualified, or who Mr. Campbell believed had less seniority, were selected for the position. Mr. Campbell, however, was not eligible for promotion to the Engineer trainee position the first two times he allegedly applied because he had not worked the requisite one-year period pursuant to AMTRAK's policy. Thereafter, his applications were rejected either because of his record of safety violations or because he did not properly apply for the position.

AMTRAK finally discharged Mr. Campbell for his third serious rules infraction, consistent with AMTRAK's progressive discipline guidelines. Every instance of Mr. Campbell's rules violation was for his failure to follow basic but critical operating rules relating to passenger or employee safety. Mr. Campbell's repeated violations of AMTRAK's safety rules, not his race, disqualified him for promotion to the position of Engineer trainee and eventually lead to his termination from employment on September 17, 2004. It is of great importance that the Public Law Board, the highest and final level of appeal available to Mr. Campbell's union to challenge AMTRAK's decision to terminate his employment (which is

chaired by a neutral, non-railroad affiliated member), determined the termination decision was just and upheld it.

Procedural Facts

This case was previously set for trial in January 2008. The Court suspended the trial date before trial could commence. The case was subsequently reassigned to United States District Court Judge Claudia Wilken. A new trial date has not been set.

On April 3, 2008, the Court granted in part and denied in part Defendants' motions for summary judgment. In brief, the Court dismissed all of Plaintiff's causes of action against individual defendant Joe Deely (General Superintendent of Amtrak's Pacific division). The Court dismissed some but not all of Plaintiff's claims against Amtrak. The issues of Plaintiff's May 17, 2004 promotion application (Job Posting No. 50178956) and his termination from employment (racial discrimination claims against Amtrak under 42 U.S.C. 1981) remain, as well as his claim for damages against Amtrak.

Specifically, the Court granted in part and denied in part Defendants' motions for summary judgment, as follows: (1) First Cause of Action, for race discrimination under 42 U.S.C. 1981, pled against Amtrak only – summary judgment denied as to Campbell's May 17, 2004 promotion application and termination from employment, summary judgment granted as to all other aspects of Plaintiff's First Cause of Action including Plaintiff's promotion applications pre-dating May 2004; (2) Second Cause of Action, for retaliation under 42 U.S.C. 1981, pled against Amtrak and Deely – summary judgment granted, hence this cause of action has been completely dismissed; (3) Third Cause of Action, for retaliation under the California Fair Employment and Housing Act (FEHA), pled against Amtrak and Deely – summary judgment granted, hence this cause of action has been completely dismissed; (4) Fourth Cause of Action, for wrongful termination in violation of public policy, pled against Amtrak only – summary judgment granted in part, denied in part, to the same extent as Plaintiff's First Cause of Action; (5) Fifth Cause of Action, for intentional infliction of emotional distress, pled against Amtrak and Deely – summary judgment granted, hence this cause of action has been completely dismissed; (6) Sixth Cause of Action, for negligent infliction of emotional distress, pled against Amtrak and Deely – summary

judgment granted, hence this cause of action has been completely dismissed.

<u>Principal Factual Issues in Dispute</u>

Whether Plaintiff was performing satisfactorily and competently in his position prior to and at the time his employment was terminated;

Whether Amtrak took any adverse action against Plaintiff, including any failure to promote him in 2004 to an engineer position (Plaintiff's May 17, 2004 promotion application, Job Posting No. 50178956), because of his race;

Whether Plaintiff was qualified for a promotion to an engineer position, both in terms of meeting minimum qualifications and in terms of being more qualified than others not selected for an engineer position;

Whether Plaintiff has suffered any of the damages alleged in his Complaint, and if so, what is the extent of any such damages;

The extent, if any, of Plaintiff's efforts to mitigate his damages;

Whether Amtrak acted with malice, fraud, or oppression in their dealings with Plaintiff in a manner so as to justify the imposition of punitive damages; and

Defendant Amtrak reserves the right to modify or supplement this list of disputed factual issues if and when additional or different issues become known.

## III. LEGAL ISSUES

**A. Plaintiff's Statement of Disputed Legal Points of Law**

Whether AMTRAK'S allegations of Mr. Campbell's performance deficiencies are a pretext for discrimination.

Whether Mr. Campbell was treated differently than similarly-situated white employees.

Whether Defendants acted with malice or reckless indifference to Mr. Campbell's rights under federal law, thus warranting an assessment of punitive damages.

Plaintiff reserves the right to modify or supplement this list of disputed factual issues if and when additional or different issues become known.

**Whether Defendant Mr. Joe Deely prevailed on Summary Judgment.**

### B. Defendant Amtrak's Statement of Disputed Legal Points of Law

Whether Plaintiff was discriminated against based on his race with regard to his termination from employment;

Whether Plaintiff was discriminated against based on his race with regard to his May 17, 2004 application for promotion to Engineer;

Whether Amtrak had legitimate, non-discriminatory and non-retaliatory reasons for its treatment of Plaintiff, including his discharge and his denied application for promotion in May 2004;

Whether Plaintiff can refute Amtrak's legitimate, non-discriminatory and non-retaliatory business reasons for its conduct and establish those reasons were pretext for discrimination;

Whether Plaintiff can establish a claim for punitive damages, including whether Amtrak acted with malice or reckless disregard to Plaintiff's rights;

Whether Plaintiff's Complaint states any claim upon which relief may be granted against Amtrak;

Whether Plaintiff fails to state facts sufficient to constitute a cause of action upon which relief can be granted against Amtrak;

Whether Plaintiff's damages should be barred or limited by his failure to mitigate;

Whether Amtrak can establish that Plaintiff is barred or otherwise limited under any of the affirmative defenses pled in its answer to Plaintiff's first amended complaint; and

Defendant Amtrak reserves the right to modify or supplement this list of disputed legal issues if and when additional or different issues become known.

### IV. MOTIONS

None pending.

### V. AMENDMENT OF PLEADINGS

None anticipated.

### VI. EVIDENCE PRESERVATION

The parties have exchanged tens of thousands of documents including emails, recruitment files, personnel records, and other items requested in the course of discovery which has closed.

## VII. DISCLOSURES

The parties have provided initial and supplemental initial disclosures in accordance with Fed.R.Civ.Proc. 26.

## VIII. DISCOVERY

### A. Plaintiff's Statement

All discovery is closed. Plaintiff has reserved the right and intends to inspect Defendant's last production of documents before trial.

### B. Defendant Amtrak's Statement

All discovery is completed and closed.

With the exceptions of Amtrak's anticipated motions in limine and an anticipated motion to bifurcate the trial into liability and damages phases, Defendant does not contemplate bringing any other motions before the Court prior to trial.

## IX. CLASS ACTIONS

Not applicable.

## X. RELATED CASES

None.

## XI. RELIEF

### A. Plaintiff's Statement of Relief Sought

**Compensatory Damages:** Mr. Campbell seeks compensatory and special damages, including but not limited to, loss of employment benefits and income, and damages for mental and emotional distress. The following chart outlines his economic damages:

|                   | 2005     | 2006     | 2007     | 2008     |
|-------------------|----------|----------|----------|----------|
| Expected Income   | $46,000  | $46,000  | $46,000  | $46,000  |
| Mitigating Income | $27,000  | $780     | $13,000  | $14,000  |
| Total Damages:    | $19,000  | $45,220  | $33,000  | $32,000  |

**Emotional Distress:** Mr. Campbell was emotionally traumatized by the denial of promotion, selection of less qualified Caucasian applicants, and his wrongful termination. Mr.

Campbell has endured substantial grief and heartache due to Defendant's actions. He anticipates requesting an amount of compensatory damages for his emotional distress at trial well in the range of $500,000 to $1,000,000.

**Punitive Damages:** Mr. Campbell seeks punitive damages in an amount deemed appropriate by the jury to punish and make an example of Defendants' willful, wanton, malicious and oppressive conduct.

**Injunctive Relief:** Mr. Campbell seeks an order compelling Defendants to take affirmative steps to ensure a safe and fair work environment and equal employment opportunity for all current, potential, and future African-American employees.

Attorneys' fees and costs of suit incurred herein.

**B. Defendant Amtrak's Statement**

Defendant Amtrak disputes that Plaintiff is entitled to any relief as a result of its actions or omissions.

## XII. SETTLEMENT AND ADR

### A. Plaintiff's Statement

The Parties unsuccessfully participated in Early Neutral Evaluation Program on July 13, 2006. Pursuant to the Court's Order of May 6, 2008, the parties are preparing to participate in a court-mediated settlement conference with Magistrate Judge Maria Elena James.

### B. Defendant Amtrak's Statement

Prior to the filing of Defendants' Motions for Summary Judgment, the parties participated in an early neutral evaluation, without result. Nevertheless, Defendants have invited Plaintiff to engage in further settlement negotiations, as required under the Court's Amended Pre-Trial Order. Amtrak is awaiting a long-promised settlement demand from Plaintiff's counsel.

A mandatory settlement conference is scheduled for August 5, 2008 before Magistrate Judge Maria Elena-James.

## XIII. MAGISTRATE JUDGE

Plaintiff declines assignment of this case to a United States Magistrate Judge for jury trial. Defendant declines assignment to a Magistrate Judge for trial.

### XIV. OTHER REFERENCES

The parties agree that this case is not suitable for reference to binding arbitration, special master or the Judicial Panel on Multidistrict Litigation.

### XV. NARROWING OF ISSUES

**A. Plaintiff's Statement**

None.

**B. Defendant Amtrak's Statement**

Amtrak provided Plaintiff with a courtesy advance copy of its trial exhibit listing on December 19, 2008, before the Court vacated the trial date. Thereafter, the parties stipulated that Defendant's trial exhibits shall start at number 500. Defendant served its amended trial exhibit list and a corresponding set of tabbed trial exhibits to Plaintiff on December 21, 2007.

Amtrak has proposed that the parties meet and confer to identify joint or common exhibits. In addition, Amtrak has proposed that the parties agree to narrow the issues and events presented at trial, for the purpose of reducing the number of exhibits in Defendant's exhibit listing.

### XVI. EXPEDITED SCHEDULE

Not applicable.

### XVII. SCHEDULING

The Parties previously agreed to try this case in September of 2008 or sometime thereafter, as the schedules of the parties, their counsel, and witnesses permit.

Scheduling with regard to expert witnesses (there are none), discovery cutoff, hearing of dispositive motions, etc. is complete and therefore, inapplicable.

As stated above, Amtrak seeks bifurcation of the compensatory and punitive damages issues in this case.

### XVIII. TRIAL

**A. Plaintiff's Statement**

The parties request a trial date of February 5, 2008, or as soon thereafter as the Court calendar permits, and that the Final Pretrial Conference be set for January 20, 2008. Plaintiff

anticipates that he will need approximately twelve (12) court days to present his case. Plaintiff's counsel is not available for trial in either October, November or December 2008, or June 2009.

**B. Defendant Amtrak's Statement**

The Court in its Amended Pretrial Order dated July 12, 2007 estimated that it would take the parties three weeks to present all evidence at trial. Defendant intends to adhere as close to the Court's 3-week estimate for trial as possible.

**XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

**Plaintiff:**

None.

Dated: July 15, 2008                             PRICE AND ASSOCIATES


By:_____/s/_____
   PAMELA Y. PRICE
   DANIEL MARTINEZ DE LA VEGA
   Attorneys for Plaintiff
   JOHN EARL CAMPBELL


Date: July 15, 2008                              JACKSON LEWIS LLP


By:_____/s/_____
   MICHAEL J. CHRISTIAN
   PATRICK C. MULLIN
   CARA CHING-SENAHA
   Attorneys for Defendants
   NATIONAL RAILROAD PASSENGER
   CORPORATION dba AMTRAK and
   JOE DEELY