IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EARL CAMPBELL,<br><br>        Plaintiff,<br><br>   v.<br><br>NATIONAL PASSENGER RAILROAD<br>CORPORATION, et al.,<br><br>        Defendants.<br>_____/ | No. C 05-05434 CW<br><br>ORDER GRANTING<br>PLAINTIFF'S<br>APPLICATION FOR<br>ATTORNEYS' FEES AND<br>NON-STATUTORY COSTS<br>AND GRANTING IN PART<br>DEFENDANT'S MOTION<br>TO REVIEW TAXED<br>COSTS |

Plaintiff John Earl Campbell moves for an award of attorneys' fees in the amount of $994,606 and non-statutory costs of $44,702. Defendant National Passenger Railroad Corporation (Amtrak) opposes the motion. Amtrak asks the Court to review the Clerk's taxation of costs for Plaintiff. Plaintiff opposes this motion. The motions were taken under submission on the papers. Having considered all of the papers filed by the parties, the Court grants Plaintiff's motion for attorneys' fees and non-statutory costs. The Court awards attorneys' fees in the amount of $770,596 and non-statutory costs in the amount of $44,702. The Court grants in part Amtrak's motion to review taxed costs and denies it in part and awards Plaintiff $12,011.93 in statutory costs.

On February 11, 2010, Plaintiff filed the fourth declaration

of Pamela Price requesting attorneys' fees and non-statutory costs incurred in responding to Amtrak's objections to his bill of costs and objecting to Defendant Deely's bill of costs. This declaration is not considered in this order; it will be considered separately so that Defendants may file an opposition, if they wish to do so.

BACKGROUND

On December 30, 2005, Plaintiff, represented by Price and Associates, filed suit against Defendants Amtrak and Joe Deely, an Amtrak manager and district supervisor. On February 22, 2006, Plaintiff filed his first amended complaint (FAC) alleging claims for (1) race discrimination in violation of 42 U.S.C. § 1981; (2) retaliation in violation of 42 U.S.C. § 1981; (3) retaliation in violation of California's Fair Employment and Housing Act (FEHA); (4) wrongful termination in violation of public policy; and (5) and (6) intentional and negligent infliction of emotional distress. Defendants moved for summary judgment. In his opposition to Defendants' motion, Plaintiff voluntarily dismissed his claims for intentional and negligent infliction of emotional distress. On April 3, 2008, the Court granted summary judgment to Deely on all claims and summarily adjudicated the two retaliation claims in favor of Amtrak. The Court denied Amtrak's motion with regard to the wrongful termination and failure to promote claims based on racial discrimination. A jury trial was held from February 9, 2009 to March 3, 2009. The jury returned a verdict for Plaintiff, awarding him $676,916 including $297,716 for back pay, $259,200 for future pay, and $120,000 for non-economic damages. The Court granted Plaintiff's post-trial motion for re-instatement and denied Amtrak's post-trial motion for a judgment notwithstanding the

verdict or a new trial.

Plaintiff now moves to recover attorneys' fees and costs. In support of this request, Plaintiff submits time records indicating the hours billed by each attorney together with each attorney's requested billing rate and years of experience. The following is a summary of Plaintiff's attorneys' records.[1]

| Attorney | Yrs of Experience | Proposed Rate | Hours | Fee App Hours | Total Fees |
|---|---|---|---|---|---|
| Pamela Price | 26 | $750 | 589.75 | 46.65 | $477,299 |
| Daniel De La Vega | 1 | $400 | 384.50 | | $163,412 |
| Kendra Fox Davis | 2 | $400 | 394.95 | | $167,853 |
| Renee Sanchez | 2 | $400 | 273.30 | | $116,152 |
| Ok-Hee Shim | 3 | $425 | 57.50 | | $ 25,875 |
| Grace Chung | not given | $250 | | 70.35 | $ 17,587 |
| Howard Moore | 47 | $625 | 8.5 | | $ 5,312 |
| **Paralegals/ Law Clerks** | **Yrs of Experience** | **Proposed Rate** | **Hours** | **Fee App Hours** | **Fees** |
| Monique Beaver | | $200 | 32.70 | | $ 6,500 |
| Charla Gray | | $200 | 47.00 | | $ 9,400 |
| George Khoury | | $200 | 25.70 | | $ 5,140 |
| **TOTAL** | | | | | **$994,530[2]** |

---

[1]The information in the table is a compilation of the information in the tables included in Pamela Price's declaration, first supplemental declaration and third supplemental declaration.

[2]In Plaintiff's first table summarizing the fees requested for each attorney, he included $5,312 for Mr. Howard Moore. See First Declaration of Pamela Price, Ex. G. In the updated table summarizing fees requested, Plaintiff does not include fees for Mr. Moore. See Third Declaration of Pamela Price, Ex. N. The Court assumes the omission of Mr. Moore was an oversight.

Plaintiff also requests a total of $$44,702 in costs.[3]

## EVIDENTIARY OBJECTIONS

Amtrak objects to statements in the Price declaration. The Court has reviewed these evidentiary objections and has not relied on any inadmissible evidence. The Court will not discuss each objection individually. To the extent that the Court has relied on evidence to which Amtrak objects, such evidence has been found admissible and the objections are overruled.

## LEGAL STANDARD

A district court may authorize an award of attorneys' fees to a prevailing party in a civil rights action under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). The purpose of section 1988 is to ensure that victims of civil rights violations have representation from competent counsel so that they may effectively access the judicial process. Id. A prevailing plaintiff should ordinarily recover attorneys' fees unless special circumstances would render that award unjust. Id. The exception based on special circumstances only applies in unusual cases. Mendez v. County of San Bernardino, 540 F.3d 1109, 1126 (9th Cir. 2008). Such an unusual circumstance might arise where, at the outset of the case, there was a strong likelihood of success on the merits and of a substantial judgment so that litigants with similar claims would not be dissuaded from bringing suit by the lack of

[3]This amount is computed from Plaintiff's motion in which he requests $39,879 in non-statutory costs, Ms. Price's second supplemental declaration stating that additional costs in the amount of $1,170 were incurred, and her third supplemental declaration stating that additional costs in the amount of $3,653 were incurred.

availability of an award of attorneys' fees.  <u>Id.</u>  In determining
whether to apply the special circumstances exception, the court
must evaluate whether allowing attorneys' fees would further the
purposes of section 1988 and whether the balance of equities favors
or disfavors the denial of fees.  <u>Id.</u>

DISCUSSION

I. Special Circumstances

Amtrak argues that Plaintiff's motion for attorneys' fees must
be denied because Plaintiff committed perjury while testifying,
which qualifies as a special circumstance that renders an award of
attorneys' fees unjust.  It is undisputed that Plaintiff, on direct
examination by his attorney, admitted that he had testified falsely
at his deposition by stating that he had not cut out the brakes of
the locomotive, the safety rule violation for which Amtrak claimed
it fired him.

In support of its argument, Amtrak cites <u>Franchitti v.
Bloomberg, L.P.</u>, 411 F. Supp. 2d 466 (S.D.N.Y. 2006)[4] and the
dissent in <u>Price v. Pelka</u>, 690 F.2d 98, 101-02 (6th Cir. 1982).
Amtrak acknowledges that there is no Ninth Circuit case addressing
this issue.

Amtrak's cases are distinguishable.  In <u>Franchitti</u>, the court
addressed a motion to award attorneys' fees to a prevailing
defendant where the plaintiff's case was frivolous, unreasonable,
groundless and brought in bad faith.  411 F. Supp. 2d at 469.  The
court found that the plaintiff made up most of the events about
which he testified.  <u>Id.</u>  However, the court denied the defendant's

---

[4]Amtrak cites <u>Franchitti v. Bloomberg, L.P.</u>, 411 F. Supp. 2d
453 (S.D.N.Y. 2006), which was superseded by the above-cited case.

request for attorneys' fees because it, too, had dissembled at trial. Id. at 470. The denial of a defendant's attorneys' fee application would not have a chilling effect on a plaintiff's ability to obtain legal representation and access to the courts. Franchitti is not applicable to this case.

In Price, the court held that the plaintiff's perjury was not a circumstance that would render the award of fees unjust and that the award of attorneys' fees was necessary to avoid chilling a victim's ability to obtain competent counsel. Id. 690 F.2d at 101.

The dissent argued that, on equitable principles, attorneys' fees should not be awarded because the plaintiff's "deliberate and repeated falsehoods under oath" in the district court were as reprehensible as the defendants' discriminatory conduct. Id. at 103-04. The dissent reasoned that an award of attorneys' fees would provide "an incentive for civil rights plaintiffs and their counsel to win cases and attorney's fees through deception and unethical conduct, thereby undermining the integrity of the judicial process." Id. at 104. The Court is not persuaded by the reasoning of the dissent.

In balancing the equities, the Court finds that denying an award of attorneys' fees under the circumstances here, where Plaintiff is the prevailing party in a civil rights case, would more likely chill a victim's ability to find competent counsel than undermine the integrity of the judicial process. Furthermore, it was not apparent from the beginning that there was a strong likelihood that Plaintiff would win on the merits or that he would be awarded a substantial judgment. This case was intensely litigated over the course of four years and Plaintiff's recovery of

damages was not certain until the jury reached a verdict.
Therefore, Amtrak's argument for a denial of Plaintiff's attorneys'
fees based on special circumstances is not persuasive.

Alternatively, Amtrak argues that the rates and hours sought
by Plaintiff's attorneys are not reasonable and must be reduced
significantly.

II. Lodestar Calculation

If the court determines that an applicant is a prevailing
party who should be awarded attorneys' fees under section 1988, it
must next determine what fees are reasonable.  In the Ninth
Circuit, reasonable attorneys' fees are determined by first
calculating the "lodestar."  Jordan v. Multnomah County, 815 F.2d
1258, 1262 (9th Cir. 1987).  "The 'lodestar' is calculated by
multiplying the number of hours the prevailing party reasonably
expended on the litigation by a reasonable hourly rate."  Morales
v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996).  There is
a strong presumption that the lodestar figure represents a
reasonable fee.  Jordan, 815 F.2d at 1262.  However, the court may
adjust the award from the lodestar figure upon consideration of
additional factors that may bear upon reasonableness.  Kerr v.
Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

A. Hourly Rate

Determining a reasonable hourly rate is a critical inquiry.
Jordan, 815 F.2d at 1262 (citing Blum v. Stenson, 465 U.S. 886, 895
n.11 (1984)).  The fee applicant has the burden to produce
evidence, other than the declarations of interested counsel, that
the requested rates are in accordance with those prevailing in the
community for attorneys of comparable skill and reputation.  Id. at

1263. In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. <u>Cabrales v. County of Los Angeles</u>, 864 F.2d 1454, 1464 (9th Cir. 1988). Other factors that can be considered are (1) the time and labor required; (2) the preclusion of employment by the attorney due to acceptance of the case; (3) time limitations imposed by the client or circumstances; (4) the amount involved and the results obtained; (5) the "undesirability" of the case; and (6) awards in similar cases. <u>Hensley</u>, 461 U.S. at 430 n.3. These factors are subsumed in the initial lodestar calculation, and should not serve as independent bases for adjusting fee awards. <u>Morales</u>, 96 F.3d at 363-64.

    1. Pamela Price

    Plaintiff seeks $750 per hour for the services of lead attorney Pamela Price, on the ground that this is the prevailing rate for attorneys with similar skills and experience in the San Francisco Bay Area. In support of the requested $750 per hour rate, Plaintiff submits the declarations of Ms. Price and attorneys Bill Lann Lee, William McNeill, James Finberg and John Burris.

    Ms. Price states that she graduated from the University of California School of Law, Boalt Hall, in 1982; she then worked in public interest law firms; and, in 1991, she opened her own law firm, specializing in civil rights. Ms. Price has been a panelist, teacher and author in the area of civil rights litigation and she has been the lead counsel on many notable civil rights cases. Regarding her hourly rate, Ms. Price states that in 2001, she was

awarded $375 per hour in <u>Croskey, et al. v. Contra Costa County</u>,

C 73-0906 JCS, and, in a 2009 case that settled out of court, she

requested and received a rate of $575 per hour.

All three of the attorneys who submit declarations have

practiced law in the Northern District of California for many

years. Mr. Lee states that he has been practicing from 1974 to the

present as a civil rights attorney in private practice and as

Assistant Attorney General for Civil Rights in the United States

Department of Justice. He states that he presently works at the

Lewis Feinberg law firm where his billing rate is $750 an hour. He

states that Ms. Price is known as a skillful litigator who has a

wealth of experience and knowledge in prosecuting civil rights

cases and who achieves excellent results for her clients. He

believes that $750 per hour is a reasonable rate in the Northern

District for a lawyer with her experience and abilities.

Mr. Finberg has been practicing since 1983 and, during that

time, has served as an attorney in many complex class actions. He

states that, in 2008, his hourly rate was $750 and, in 2009, his

hourly rate is $775. To support his hourly rate, Mr. Finberg cites

fees he received in settlements of class action lawsuits. However,

class actions are distinguishable from the instant case because

they are generally more complex than cases brought by one

plaintiff. Mr. Finberg states that he is familiar with Ms. Price,

who is known as a skillful litigator with experience and knowledge

in prosecuting civil rights cases, and that he believes that $750

per hour is within the range of rates awarded to attorneys in the

Bay Area with her experience and background.

Mr. McNeill states that he has specialized in employment

discrimination cases since 1973, that he has known Ms. Price for many years, working with her on some cases, and that she has exceptional knowledge of the legal issues in discrimination cases and has achieved excellent results for clients. He states that he is familiar with the rates charged by attorneys in the San Francisco Bay Area and that the rate of $750 per hour is consistent with the market rate for senior attorneys with the length and breadth of Ms. Price's experience and reputation. Mr. Burris similarly states that he has known Ms. Price for many years, he has worked with her on a number of cases and the market rate for an attorney of her skills and expertise is as high as $750 per hour.

Amtrak argues that Ms. Price should be awarded $450 per hour, which is in line with the hourly rate set by the court in <u>Freitag v. California Dep't of Corrections</u>, C 00-2278 TEH. In December, 2008, Magistrate Judge Zimmerman recommended an hourly rate of $525 for Ms. Price based upon her September, 2008 fee request at a rate of $550 per hour.[5] Amtrak also submits Ms. Price's June 15, 2007 letter to this Court, indicating that her rate was $500 per hour. Amtrak's Exhibit Binder, Ex. H. And, Amtrak submits the declarations of Douglas A. Kahn and Dylan Carp. Mr. Kahn is an attorney with twenty-two years of experience in employment law and was selected by his peers, in 2008, as one of Northern California's super lawyers. He currently bills at $380 per hour. Mr. Carp is one of Defendants' attorneys. He submits the resume of Patrick Mullin, who also represents Defendants. According to Mr. Mullin's resume, he has been practicing as a trial attorney since 1976 in

[5]The plaintiffs objected to the magistrate judge's order. The case settled, however, and the objections were withdrawn.

United States District Court
For the Northern District of California

the areas of employment law, unfair competition and trade secrets, has tried over sixty cases to verdict, and lectures on trial practice. Mr. Carp states that Mr. Mullin's hourly rate is $495.

The attorneys' declarations submitted by both parties support a market rate from $380 to $775 per hour for experienced employment and civil rights attorneys in the Northern District. In considering the _Cabrales_ factors, the Court finds that the issues presented in this case were not especially novel or complex. On the other hand, Ms. Price's expertise and quality of representation were outstanding and the results she achieved were excellent. In regard to the _Hensley_ factors, this litigation extended over a four-year period, and the drain on the resources of Ms. Price's small law firm was substantial, especially in the months preceding and during the trial. Finally, Ms. Price states that civil rights suits based on racial discrimination are difficult to prove, allegations of race discrimination are likely to elicit bias in jurors and, consequently, these cases are not "desirable." Many of these factors support a finding that Ms. Price should be awarded a rate that is at the high end of the market rate in her community.

In balancing these factors, the Court concludes that the appropriate rate for Ms. Price's work is $700 per hour. This rate is in line with the overall market rate for experienced civil rights attorneys of similar abilities and experience in the Northern District and takes into account the difficulties encountered in representing Plaintiff.

    2. Kendra Fox-Davis

Plaintiff seeks $400 per hour for the services of attorney Kendra Fox-Davis, on the ground that this is the prevailing rate

11

for attorneys with similar skills and experience in the San Francisco Bay Area.   In support of the requested $400 per hour rate, Plaintiff submits the declarations of Ms. Fox-Davis and attorneys Michael Begert and Robert Rubin.

Ms. Fox-Davis states she graduated from the University of California, Los Angeles, School of Law in 2006 with a specialization in critical race studies and public interest law and policy.   After graduation she was a fellow with the Lawyers' Committee for Civil Rights (LCCR), and for the last two years, she has been a staff attorney for LCCR.   Ms. Fox-Davis indicates that, during the three years since her graduation, she has been co-counsel on two significant civil rights cases.   She states that she was co-lead counsel on Plaintiff's case; Ms. Price states that Ms. Fox-Davis was primarily responsible for organizing, tracking and maintaining exhibits and other documents.

Although Ms. Fox-Davis does not indicate what hourly rate she seeks, experienced attorney Michael Begert states that $400 per hour is commensurate with fees charged by attorneys with similar experience.   Experienced attorney Robert Rubin states that he has been Ms. Fox-Davis' supervisor for three years and knows that she is an excellent lawyer and that $400 per hour is consistent with, if not below, the market rate for an attorney having Ms. Fox-Davis' qualifications and experience.

Amtrak argues that Ms. Fox-Davis' fee should be $255 per hour. It points out that no declarant states what Ms. Fox-Davis charges, and that neither Mr. Begert nor Mr. Rubin indicate what the market rate is for attorneys with three years of experience who are primarily responsible for the organizing and tracking of  documents

**United States District Court**
For the Northern District of California

during the litigation of a case.  In his declaration, Mr. Carp states that Christine Young, a two-year associate at his firm, has second chaired parts of a three month jury trial and her billing rate is $245 per hour.

The Court finds that the requested $400 rate for Ms. Fox-Davis is beyond the market rate for attorneys with her level of experience.  Therefore, the Court finds that a reasonable rate for Ms. Fox-Price is $265 per hour.

### 3. Daniel Martinez de la Vega

Plaintiff seeks $400 per hour for the services of attorney Daniel Martinez de la Vega.  Ms. Price states that, although Mr. de la Vega graduated from law school in 2007, he acted as second-chair during the trial.  He assisted Ms. Price with the pretrial preparation and trial and was primarily responsible for the witnesses, including interviews, statements and scheduling.  Ms. Price states that this case was Mr. de la Vega's second trial since he graduated from law school and $400 is the market rate for an attorney of his skill and expertise.

Amtrak argues that a rate of $400 per hour is shockingly high and unreasonable for an attorney who has been out of law school for only two years.  It points out that there is no evidence submitted about what his rate is or what attorneys admitted to the bar in 2008 charge.  It argues his rate should be $245 per hour.

There is insufficient evidence regarding the reasonable market rate for an attorney with the limited experience of Mr. de la Vega. Ms. Price's declaration is that of an interested party and there are no declarations from objective witnesses.  Furthermore, Plaintiff does not argue against Amtrak's suggested rate of $245

per hour.  The Court concludes that $245 is a reasonable market rate for Mr. de la Vega.

### 4. Other Junior Associates

Plaintiff seeks a rate of $425 per hour for the services of attorney Ok-Hee Shim, $400 per hour for the services of attorney Renee Sanchez and $250 per hour for the services of attorney Grace Chung.  Ms. Price states that Ms. Shim graduated from the University of California, Hastings College of the Law, in 2005 and her work on this case included serving Defendants and preparing for the initial case management conference.  Ms. Price believes $425 is a reasonable rate for Ms. Shim's services and is consistent with the market rate charged by other Bay Area law firms for associates with comparable experience.  Ms. Price states that Ms. Sanchez's role was limited to conducting discovery during the pre-trial stage of this case.  Ms. Price states that Ms. Sanchez was admitted to practice law in California in 2006 after graduating from New College of California School of Law.  Based upon her knowledge and experience, Ms. Price believes a reasonable rate for Ms. Sanchez' services is $400 per hour.  Ms. Price states, in her first supplemental declaration, that Ms. Chung is a first year associate who assisted her with the fee application.  Ms. Price believes that $250 per hour is a reasonable rate for Ms. Chung's services.

Amtrak argues that Plaintiff provides no evidence for the rates he seeks for these three attorneys.  It argues that reasonable hourly rates for Ms. Shim and Ms. Sanchez are $275 and $265 respectively.  Amtrak does not address the rate requested for Ms. Chung because fees for her services were first requested in Ms. Price's supplemental declaration, which was submitted after Amtrak

14

had filed its opposition.

Plaintiff has failed to submit sufficient evidence in support of the reasonableness of the rates requested for these three attorneys. As discussed previously, Ms. Price's testimony cannot be heavily weighed. Plaintiff has not objected to Amtrak's suggested rates for attorneys Shim and Sanchez. Therefore, the Court concludes that a reasonable hourly rate for Ms. Shim is $275 and a reasonable hourly rate for Ms. Sanchez is $265. Because there is no evidence of a reasonable rate for Ms. Chung, the Court awards her the same rate that is awarded to Mr. de la Vega, which, as previously discussed, is $245 per hour.

5. Howard Moore

Plaintiff seeks $625 per hour for the services of attorney Howard Moore. In his declaration, Mr. Moore states that, since 1961 when he began practicing law, he has specialized in civil rights cases and criminal defense, has litigated numerous employment discrimination cases and class actions, and has lectured on civil rights matters at many universities and professional associations. In this case, he conducted the deposition of one of the key witnesses. He states that, for the purposes of this motion only, his hourly rate for services rendered is $625. He explains that it is lower than the rate requested for Ms. Price because he did not have responsibility as lead counsel.

Amtrak argues that Mr. Moore's statement, that his $625 hourly rate is for this motion only, does not indicate what his rate actually is and whether he is charging a higher or lower rate than usual for his work on this case. It argues that his rate should be $400 to account for his lesser responsibilities on this case.

15

United States District Court
For the Northern District of California

1    Amtrak's argument is unpersuasive.  The Court finds that an

2  attorney of Mr. Moore's experience and knowledge is entitled to at

3  least the $625 per hour rate that he requests in this case.

4           6. Paralegals and Law Clerks

5    Plaintiff requests $200 per hour for the services of her

6  paralegal and two law clerks.  Ms. Price states that paralegal

7  Monique Beaver assisted her during the discovery phase of the case,

8  that law clerk Charla Gray worked on the opposition to Defendants'

9  motion for summary judgment and that law clerk George Khoury

10 assisted during the trial with preparation of exhibits and the

11 final presentation of the case to the jury.

12    Amtrak argues that the rate for the paralegal and law clerks

13 should be $120 per hour.  It bases this on the fact that, in 2003,

14 Ms. Price's paralegal was awarded $105 per hour in <u>Freitag</u>, C 00-

15 2278 TEH, and $120 represents a fourteen percent increase.  It

16 presents evidence that a paralegal who worked for Jackson Lewis,

17 Defendants' law firm, bills at a rate of $160 per hour.  <u>See</u> Carp

18 Dec. at ¶ 6.[6]

19    Plaintiff fails to submit sufficient evidence to support the

20 rates requested for the paralegal and law clerks.  The evidence

21 before the Court is that one paralegal at Defendants' law firm

22 bills at $160 per hour.  The Court will award a rate of $160 per

23 hour.

24    B. Number of Hours

25    In calculating a reasonable number of hours, the applicant

26 _____

27    [6]In its opposition, Amtrak indicates that this paralegal bills
   at $120 per hour, but Mr. Carp's declaration indicates an hourly
28 rate for the paralegal of $160.

must justify his or her claim by submitting detailed time records. The court may adjust these hours downward if the documentation is inadequate, or the hours are duplicative, excessive or unnecessary. Chalmers, 796 F.2d at 1210. An upward adjustment of the lodestar is appropriate only in extraordinary cases, such as when the attorneys faced exceptional risks of not prevailing or not recovering any fees. Id. at 1212.

1. Block Billing

Amtrak argues that approximately forty-four percent of the total hours billed by the Price law firm are block-billed. It argues that the block-billed hours should be reduced by thirty percent, which would mean a thirteen percent reduction in the total number of hours billed.

Block billing is a time-keeping method where an attorney enters the total daily time spent working on a case, rather than itemizing the time spent on a specific task. Mendez, 540 F.3d at 1129 n.2. It can be appropriate to reduce hours that are block-billed by twenty percent. Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007).

In support of its argument, Amtrak submits the declaration of James Schratz, an attorney who specializes in auditing fee applications in fee shifting cases such as this. He identified block-billed entries as the ones in which semicolons were used by the timekeeper because, in general, the timekeepers used semicolons to separate individual tasks.

The entries identified by Amtrak do not meet the definition of block billing provided in Mendez because individual tasks are specified. The Court concludes that the entries Amtrak identifies

17

United States District Court

For the Northern District of California

as block-billed are detailed enough for the Court to assess the reasonableness of the hours billed.  Therefore, a reduction for block billing is not necessary.

2. Hours Spent on Dismissed Claims

Amtrak argues that hours for legal services spent before the Court issued its April 3, 2008 Order on Defendants' motion for summary judgment should be reduced by fifty percent because the Court dismissed many of Plaintiff's claims in that order.

Where a plaintiff succeeds on only some of his claims, the court must address whether the plaintiff failed to prevail on claims that were unrelated to the successful claims.  Schwarz v. Secretary of Health & Human Servs., 73 F.3d 895, 901 (9th Cir. 1995).  If the unsuccessful and successful claims are based on different facts and legal theories, the hours spent on the unsuccessful claims should be disallowed.  Id.  On the other hand, if the successful and unsuccessful claims involve a common core of facts or are based on related legal theories, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," so that a plaintiff who has achieved substantial relief should not have attorneys' fees reduced because the court did not adopt each contention raised.  Id.

As discussed above, in his FAC, Plaintiff alleged against both Amtrak and Deely two claims for emotional distress and two claims for retaliation based on his protected activity of filing complaints in which he had alleged racial discrimination in Amtrak's employment practices.  Plaintiff also alleged against Amtrak alone claims of race discrimination in violation of 42

18

U.S.C. § 1981 and wrongful termination in violation of public policy. Plaintiff's § 1981 race discrimination claim was based on Amtrak's failure to promote him on six different occasions and its termination of his employment. In its April 3, 2008 Order, the Court granted judgment in favor of Deely on all claims and judgment in favor of Amtrak on the retaliation claims and five of the six failure to promote claims. Plaintiff himself moved to dismiss the emotional distress claims. After the April 3, 2008 Order, the two claims that remained were the § 1981 race discrimination claim based on Amtrak's failure to promote Plaintiff on one occasion and its termination of Plaintiff and the claim for termination in violation of public policy.

Fee auditor Schratz has categorized Plaintiff's attorneys' records into billings for services that occurred prior and subsequent to the April 3, 2008 Order. According to Mr. Schratz, fees and costs in the first category total $304,005. Mr. Schratz suggests that one half of that amount be disallowed to account for the time invested in legal and factual claims that did not come to fruition and did not significantly benefit the litigation.

Plaintiff cites Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991), for the proposition that, in litigation, losing is part of winning and that "a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough." Also, citing Cunningham v. County of Los Angeles, 879 F.2d 481, 485-86 (9th Cir. 1989), Plaintiff argues that Amtrak's' "unifactor approach" has been rejected by the Ninth Circuit. In Cunningham, the court rejected an approach in lodestar calculations that tied the number of hours

accepted as reasonable to the proportion of the defendants against whom the plaintiff ultimately prevailed.  Id. at 486. Nevertheless, the Ninth Circuit held that the district court's analysis was proper because it examined the importance of each defendant to the plaintiff's case, the claims brought against each defendant and the degree to which each factor shed light on the significance of the overall relief obtained.  Id.

Plaintiff's retaliation claim was premised upon actions Defendants took in response to his complaints of race discrimination.  His emotional distress claims were based upon race discrimination and retaliation for complaining of the discrimination.  Therefore, these claims are based upon the same common core of facts as his successful race-based claims. Furthermore, all the failure to promote claims were based on a common core of facts and the same legal theories.  Therefore, all of Plaintiff's claims were related and aided in the litigation of the successful race-based claims.  Amtrak's argument regarding reductions for dismissed claims is unpersuasive.

3. Excessive Conferencing and Clerical Work

Based upon Mr. Schratz's declaration, Amtrak argues that the total number of hours billed for inter-office conferences should be reduced.  Mr. Schratz states that inter-office conferences in three large fee applications he audited amounted to two percent of the total fees requested.  Thus, he postulates that two percent of total fees is a reasonable amount to bill for conferencing.  His audit of Plaintiff's fee application shows that Plaintiff's attorneys attribute over six percent of their total fee request to

conferencing.  Therefore, Amtrak urges a four percent reduction of Plaintiff's billing for conferencing.  The Court does not find this methodology persuasive.

The Court has reviewed the hours billed for conferencing and finds that they are not excessive.  Therefore, no reduction is required.

Amtrak argues that 10.25 attorney hours that were billed for clerical tasks should be disallowed.  In his audit of Plaintiff's fee applications, Mr. Schratz found 7.15 hours billed for calendaring or docketing, .10 hours billed for clerical work and three hours billed for a press release.  Plaintiff does not respond to this argument.

Clerical and secretarial work is not compensable as attorneys' fees.  Davis v. City and County of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992) vacated in part on other grounds at 984 F.2d 345 (9th Cir. 1993).  Thus, the calendaring, docketing and clerical work hours are not compensable.  Writing a press release, however, is not clerical work and will not be disallowed as such. Therefore, 8.75 hours are disallowed as non-compensable clerical work.  However, Amtrak does not indicate who billed these hours and the Court will not comb through the billing records to find them. Thus, the Court will allocate this time to a paralegal because a paralegal was the most likely to have performed clerical work.

III. Adjusted Lodestar Calculation

The following table reflects the lodestar adjustments, as discussed above.

| Attorney | Rate | Hours | Fee App Hrs | Total Fees[7] |
|---|---|---|---|---|
| Pamela Price | $700 | 589.75 | 46.65 | $445,480 |
| Daniel De La Vega | $245 | 384.50 | | $ 94,203 |
| Kendra Fox Davis | $265 | 394.95 | | $104,662 |
| Renee Sanchez | $265 | 273.30 | | $ 72,425 |
| Ok-Hee Shim | $275 | 57.50 | | $ 15,813 |
| Grace Chung | $245 | | 70.35 | $ 17,236 |
| Howard Moore | $625 | 8.50 | | $  5,313 |
| Monique Beaver | $160 | 23.95[8] | | $  3,832 |
| Charla Gray | $160 | 47.00 | | $  7,520 |
| George Khoury | $160 | 25.70 | | $  4,112 |
| | | | | |
| **TOTAL** | | | | $770,596 |

Thus, the final total of fees awarded is $770,596.

IV. Non-Statutory Costs

Under 42 U.S.C. § 1988, the prevailing party may recover those out-of-pocket expenses that would normally be charged to a fee paying client. Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005). As with attorneys' fees, an applicant seeking reimbursement of costs has the burden of providing sufficient detail to support its request for reimbursement of costs. Hensley, 461 U.S. at 437. The

---

[7]Total fees have been rounded up or down to the nearest dollar.

[8]The number of hours submitted for Ms. Beaver has been reduced by 8.75 to adjust for the non-compensable clerical work.

requested expenses must be reasonable.  <u>Danq</u>, 422 F.3d at 814.

Amtrak argues that Plaintiff's request for non-statutory costs incurred from November 1, 2005 through June 30, 2009 should be denied because it is impossible to tell from the summary of costs, submitted in Exhibit H to the Price Declaration, what actual costs he wants reimbursed.  In his reply, Plaintiff argues that Exhibit H is accurate and also submits Exhibit J to the Price Supplemental Declaration, which lists the total costs billed by month.  He indicates that actual costs are detailed in the monthly billing statements submitted with the first Price Declaration.

Plaintiff's reply explaining that the specific costs are detailed in the monthly billing statements remedies the insufficient detail in Exhibits H and J.  Therefore, Plaintiff's request for reimbursement of $44,702 in non-statutory costs is granted.

V. Statutory Costs

A. Legal Standard

Federal Rule of Civil Procedure 54(d)(1) authorizes the Court to grant the prevailing party its statutory costs.  "Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded."  <u>Stanley v. Univ. of S. Cal.</u>, 178 F.3d 1069, 1079 (9th Cir. 1999) (citing <u>Nat'l Info. Servs., Inc. v. TRW, Inc.</u>, 51 F.3d 1470, 1471-72 (9th Cir. 1995)).

The determination of taxable costs is governed by 28 U.S.C. § 1920 and, more particularly, Civil L.R. 54-3, which specifically

enumerates the standards for costs recoverable in this District.

The Court may only tax costs explicitly authorized by § 1920.

See Alflex Corp. v. Underwriters Labs., Inc., 914 F.2d 175, 177-78

(9th Cir. 1990); see also Crawford Fitting Co. v. J.T. Gibbons,

Inc., 482 U.S. 437, 442 (1987).  Section 1920 permits the taxing of

costs for:

> (1) Fees of the clerk and marshal; (2) Fees for
> printed or electronically recorded transcripts
> necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and
> witnesses; (4) Fees for exemplification and the
> costs of making copies of any materials where
> the copies are necessarily obtained for use in
> the case; (5) Docket fees under section 1923 of
> this title; (6) Compensation of court appointed
> experts, compensation of interpreters, and
> salaries, fees, expenses, and costs of special
> interpretation services under section 1828 of
> this title.

B. Analysis

As a prevailing party, Plaintiff filed a Bill of Costs

totaling $15,376.14.  After disallowing several items, the Clerk

taxed costs for Plaintiff in the amount of $12,444.89.  Amtrak

challenges the Clerk's taxation of fees for service of subpoenas,

deposition transcripts, witness fees, copies and expenses incurred

by Plaintiff's counsel to depose Timothy Sheridan.  It does not

challenge the Clerk's taxation of $250.00 for the docket fee.

1.  Fees for Service of Subpoenas

The Clerk awarded Plaintiff $630.00 for fees for service of

subpoenas.  Of this total, Amtrak objects to $150.00 for the

attempted service of process on Steve Shelton on the basis that,

because he is an Amtrak employee, a subpoena was not necessary.  In

addition, Amtrak objects to $115.00 for service of process on Ryan Peterson because he did not appear at trial or at any deposition.

Plaintiff maintains that service of process on Mr. Shelton was necessary because Amtrak refused to agree to produce him for February 9, 2009, the first day of trial. He provides a letter from Amtrak's counsel, which states that if Plaintiff sought to have Mr. Shelton testify on either the first or second day of trial, he would have to serve Mr. Shelton personally. Amtrak did not a file a reply to Plaintiff's opposition and, accordingly, did not respond to Plaintiff's proffer of this letter. Based on this letter, it appears that the subpoena of Mr. Shelton was required.

With regard to Mr. Peterson, Plaintiff asserts that he was a potential third-party witness who could have been called at trial. Even though he was not called, it was necessary to serve him in case his testimony was needed.

Because Amtrak does not show that service of process on these individuals was not necessary, the Court does not modify the Clerk's award of $630.00 for service fees.

2.    Fees for Deposition Transcripts

Noting that Plaintiff only partially prevailed in this action, Amtrak asks the Court to reduce his award for deposition transcripts by two-thirds. However, Amtrak does not explain how it reached this figure, except to say that the "depositions were pertinent at least in part to the claims on which Defendants prevailed" and that a reduction by two-thirds accounts "for Mr.

25

Deely's complete success and Amtrak's partial success." Mot. at 2.

As discussed above, all of Plaintiff's claims were related and aided in the litigation of the successful race-based claims. Accordingly, the Clerk's award for deposition transcripts remains unchanged. Plaintiff is awarded $7,986.20[9] for the cost of deposition transcripts necessarily obtained for use in this case.

### 3. Witness Fees and Expenses

Amtrak argues that Plaintiff waived recovery of costs for Tashea Campbell because he failed to make a timely claim. Civil Local Rule 54-1(c) provides that a party waives costs if they are not claimed within fourteen days from the date judgment enters. Although judgment entered on October 9, 2009, Plaintiff did not claim costs for Ms. Campbell until November 20, 2009. Because he did not claim Ms. Campbell's costs in accordance with Civil L.R. 54-1, the Court disallows Plaintiff's recovery for her expenses.

With regard to Chris Clipper, Mark Schulthies, Richard Barnes, Mary Gotthardt and Richard Barrows, Amtrak asserts that Plaintiff can recover no more than forty dollars per day for witness fees. This is incorrect. Although witnesses are paid a forty dollar attendance fee for each day they attend trial proceedings, they are also entitled to reimbursement for their actual travel expenses to the court's location and to payment of a subsistence allowance when

---

[9] The Clerk disallowed $2,688.74 from Plaintiff's claim of $10,674.94 for deposition transcript costs, which should have reduced his claim to $7,986.20. However, the Clerk taxed $7,886.20 for such costs. (Docket No. 321.) The Court accounts for this inadvertent arithmetic error here and in its calculations below.

an overnight stay is necessary.  28 U.S.C. § 1821; Civil L.R. 54-3(e).  These costs are taxable.  See id. §§ 1821(c)(4) and 1920(3);

Civil L.R. 54-3(e).

Plaintiff has proffered sufficient documentation to support the recovery of expenses for Chris Clipper ($474.54), Mark Schulthies ($227.33), Richard Barnes ($193.99) and Mary Gotthardt ($105.89); Amtrak does not argue that these expenses were unreasonable.  The Court therefore does not disturb the Clerk's calculation of costs for these witnesses.  However, Plaintiff has not provided sufficient documentation as to the one-day appearance of Richard Gaylin Barrows.  Plaintiff only offers a check stub dated March 26, 2007 for what appears to be costs attributed to Mr. Barrows's deposition; no further explanation is provided.  Because Plaintiff has not provided documentation to show that these costs were taxable, the Court reduces Mr. Barrows's costs to $40, the attendance fee available under section 1821.

Accordingly, the Court awards Plaintiff witness costs in the amount of $1,041.75.

4.   Copying Costs

Amtrak asserts that Plaintiff's award for copying costs should be reduced by two-thirds because he only partially prevailed in this action.  For the reasons stated above, the Court declines to reduce his award.  Accordingly, the Court taxes copying costs in the amount of $2,103.98.

5.   Costs for Counsel's Travel to Depose Witness

The Clerk taxed $238.96 for expenses incurred by Plaintiff's counsel to travel to Seattle, Washington to depose Tim Sheridan. However, Civil Local Rule 54-3(c)(2) does not permit the taxing of the expenses of counsel to attend depositions.  Accordingly, the Court disallows Plaintiff's claim in the bill of costs for his counsel's travel to Seattle.

In summary, the Court disallows Plaintiff's claims for Tashea Campbell's witness expenses and his counsel's travel costs to depose Mr. Sheridan.  The Court reduces Mr. Barrows's witness expenses to $40.  Accordingly, the Court awards Plaintiff $12,011.93 in costs, as follows: $630.00 for service of subpoenas; $7,986.20 for deposition transcript costs; $1,041.75 for witness fees and expenses; $2,103.98 for copying costs; and $250.00 for the docket fee.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for an award of attorneys' fees and costs is granted (Docket # 267) and Amtrak's motion for review of taxation of costs is granted, in part (Docket # 323).  Attorneys' fees are awarded in the amount of $770,596, non-statutory costs are awarded in the amount of $44,702, and statutory costs are awarded in the amount of $12,012.  Amtrak shall pay these amounts forthwith.  If Defendants wish to file an opposition to Plaintiff's request for additional fees and non-statutory costs as stated in Ms. Price's fourth supplemental

declaration, they must do so within two weeks from the date of this order.  If Plaintiff wishes to file a reply, he may do so one week thereafter.  Plaintiff's request for additional fees and non-statutory costs will be taken under submission.

     IT IS SO ORDERED.

Dated: February 18, 2010

_____
CLAUDIA WILKEN
United States District Judge